## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| RAVN AIR GROUP, INC., *et al.*,[1] | Case No. 20-10755 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. 13** |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364
AND 507, BANKRUPTCY RULES 2002, 4001, AND 6004 (I) AUTHORIZING THE
DEBTORS TO OBTAIN POSTPETITION SENIOR SECURED
SUPERPRIORITY FINANCING, (II) AUTHORIZING
THE DEBTORS' LIMITED USE OF CASH COLLATERAL, (III) GRANTING
ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES,
(IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

Upon the motion dated April 5, 2020 (the "Motion") of the above referenced debtors and

debtors in possession (collectively, the "Debtors"), in the above-referenced chapter 11 cases (the

"Chapter 11 Cases"), for entry of an interim order ("Interim Order") and a final order ("Final

Order"), pursuant to sections 105, 361, 362, 363, 364 and 507 of title 11 of the United States Code,

11 U.S.C. §§ 101, *et seq.* (as amended, the "Bankruptcy Code"), Rules 2002, 4001, and 6004 of

the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and Rules

4001-2 and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States

Bankruptcy Court for the District of Delaware (the Local Rules), seeking, *inter alia*:

    (i)    authorization for the Debtors to obtain senior secured superpriority postpetition

           financing (the "DIP Facility") pursuant to this Interim Order and a senior secured

---

1 The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: Ravn Air Group, Inc. (3047), Ravn Air Group Holdings, LLC (5356), JJM, Inc. (4858), HoTH, Inc. (9957), Peninsula Aviation Services, Inc. (6859), Corvus Airlines, Inc. (7666), Frontier Flying Service, Inc. (8091), and Hageland Aviation Services, Inc. (2754).  The notice address for all of the Debtors is 4700 Old International Airport Road, Anchorage, AK 99502.

-1-

superpriority debtor-in-possession credit agreement substantially in the form annexed hereto as <u>Exhibit A</u> (as the same may be amended, supplemented or otherwise modified from time to time, the "<u>DIP Credit Agreement</u>"), by and among the Debtors, BNP Paribas, as administrative agent (in such capacity, the "<u>DIP Agent</u>") for itself and certain other financial institutions (collectively, in their capacities as such, the "<u>DIP Lenders</u>" and together with the DIP Agent, the "<u>DIP Secured Parties</u>"), in accordance with the terms of the DIP Budget (defined below) and related documents required to be delivered by or in connection with the DIP Credit Agreement, including, without limitation, this Interim Order (collectively, the "<u>DIP Credit Documents</u>") (capitalized terms not otherwise defined herein shall have the meanings ascribed to those terms in the DIP Credit Documents, with, where applicable, the addition of "<u>DIP</u>");

(ii)    authorization for the Debtors to, subject to the Carve-Out (defined below), grant valid, enforceable, non-avoidable and fully perfected security interests, liens, and superpriority claims (including a superpriority administrative claim pursuant to sections 364(c)(1), 503(b) and 507(b) of the Bankruptcy Code, liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code) to the DIP Agent, for the benefit of DIP Secured Parties, to secure all obligations of the Debtors under and with respect to the DIP Facility (collectively, the "<u>DIP Obligations</u>"), including, **subject to entry of the Final Order**, on the proceeds and property recovered in respect of the Debtors' claims and causes of action (but not on the actual claims and causes of action) arising under Chapter 5 of the Bankruptcy Code, including sections 510,

544, 545, 547, 548, 549, 550 and 553(b), or any other similar state or federal law (collectively, the "Avoidance Action Proceeds");

(iii)    authorization for the Debtors, pursuant to Bankruptcy Code sections 105, 361, 362, 363 and 507 to use cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code ("Cash Collateral," which shall not include loan proceeds of the DIP Facility and all other non-cash Prepetition Collateral (defined below), solely in accordance with the terms of this Interim Order and the other DIP Credit Documents; and in accordance with the terms of the DIP Budget (defined below), as provided herein;

(iv)    to provide Adequate Protection (defined below), including, **subject to entry of the Final Order**, liens on Avoidance Action Proceeds, of the liens and security interests granted pursuant to that certain Credit Agreement dated as of July 31, 2015 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "Prepetition Credit Agreement"), and Pledge and Security Agreement dated as of July 31, 2015 (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "Prepetition Pledge and Security Agreement" and together with the Prepetition Credit Agreement and the other agreements, documents, notes and instruments entered into in connection with the Prepetition Credit Agreement and Prepetition Pledge and Security Agreement, the "Prepetition Credit Documents") among Ravn Air Group Holdings, LLC, Ravn Air Group, Inc., and the Guarantors from to time to time party thereto, as pledgors, assignors and debtors (collectively, the "Prepetition Loan Parties"), BNP Paribas, in its capacity as Administrative Agent and Collateral Agent (collectively, the

-3-

"Prepetition Agent") and the Lenders party thereto (collectively, the "Prepetition Lenders" and together with the Prepetition Agent, the "Prepetition Secured Parties") (capitalized terms relating to the Prepetition Credit Documents used but not defined herein shall have the meanings ascribed to such terms in the Prepetition Credit Documents with, where applicable, the prefix "Prepetition");

(v)     **subject to entry of the Final Order**, authorizing the roll-up of a portion of the Prepetition Obligations of those Prepetition Lenders that participate in the DIP Facility;

(vi)    **subject to entry of the Final Order**, except to the extent of the Carve Out, the waiver of all rights to surcharge any DIP Collateral, Prepetition Collateral (defined as "Collateral" in the Prepetition Credit Agreement), DIP Lenders or the Prepetition Secured Parties (defined below) under sections 506(c) or 552(b) of the Bankruptcy Code or any other applicable principle of equity or law;

(vii)   modification of the automatic stay imposed under section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order and the Final Order;

(viii)  that this Court hold an interim hearing (the "Interim Hearing") to consider the relief sought in the Motion and entry of the proposed Interim Order;

(ix)    that this Court schedule a final hearing (the "Final Hearing") to consider entry of the Final Order granting the relief requested in the Motion on a final basis; and waiver of any applicable stay with respect to the effectiveness and enforceability of the Interim Order or the Final Order (including a waiver pursuant to Bankruptcy Rule 6004(h));

146484.01600/123083747v.4

and the Interim Hearing having been held by this Court; and pursuant to Bankruptcy Rule 4001; and it appearing due and sufficient notice of the Motion and the relief sought at the Interim Hearing having been given under the particular circumstances by the Debtors, having considered all of the pleading filed with this Court; and having overruled all unresolved objections (if any) to the relief granted in this Interim Order; and upon the record made by the Debtors at the Interim Hearing; and after due deliberation; and consideration, and good and sufficient cause appearing therefor,

THE COURT HEREBY FINDS:

A.      On April 5, 2020 (the "Petition Date"), each Debtor filed with this Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are continuing to operate their respective businesses and manage their respective properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.      Given the nature of the relief sought in the Motion, the Court concludes that no further notice is necessary and that the form, scope and timing of notice of the Motion were adequate and sufficient under the circumstances.

C.      An Official Committee of Unsecured Creditors (the "Committee"), as provided for under section 1102 of the Bankruptcy Code, has not yet been appointed in the Chapter 11 Cases.

D.      **Subject to Paragraph 20 below**, without prejudice to the rights, if any, of any other party, the Debtors admit, stipulate and agree that: (i) pursuant to the Prepetition Credit Documents, the Prepetition Lenders agreed to extend financial accommodations to the Prepetition Loan Parties from time to time, including, *inter alia*, Term Loans in an aggregate principal amount of $95,000,000, Revolving Loans in an aggregate principal committed amount of up to $15,000,000, Letters of Credit, and Swing Line Loans; and (ii) pursuant to the Prepetition Credit Documents, each Debtor granted to the Prepetition Agent, for the benefit of the Prepetition Secured

-5-

Parties, to secure each such Debtor's Prepetition Obligations, a first-priority security interest in and continuing Lien on the Prepetition Collateral.

F.    The Debtors have an immediate and critical need to obtain postpetition financing under the DIP Facility and to use Cash Collateral to, among other things, pay the costs and expenses of administering the Chapter 11 Cases in accordance with the DIP Budget, fund the Debtors' working capital needs and other general corporate purposes, in each case, in accordance with the DIP Budget, and to provide Adequate Protection. The Debtors' access to sufficient working capital and liquidity through the incurrence of postpetition financing under the DIP Facility and the use of Cash Collateral under the terms of this Interim Order is vital (i) to satisfy the Debtors' postpetition liquidity needs, (ii) to preserve and maintain the value of the Debtors' estates, and (iii) pay the Debtors' accrued obligations to members of its workforce, including a large number of employees that have been laid off. Consequently, without access to the DIP Facility and the continued use of Cash Collateral to the extent authorized pursuant to this Interim Order, the Debtors and their estates would suffer immediate and irreparable loss or damage.

G.    In light of the Debtors' facts and circumstances, the Debtors are unable to obtain (i) adequate unsecured credit allowable either (a) under sections 364(b) and 503(b)(1) of the Bankruptcy Code or (b) under section 364(c)(1) of the Bankruptcy Code, (ii) adequate credit secured by (x) a senior lien on unencumbered assets of their estates under section 364(c)(2) of the Bankruptcy Code, and (y) a junior lien on encumbered assets under section 364(c)(3) of the Bankruptcy Code, or (iii) secured credit under section 364(d)(1) of the Bankruptcy Code from sources other than the DIP Agent and the DIP Lenders. The only viable source of secured credit available to the Debtors, other than the use of Cash Collateral, is the DIP Facility. The Debtors

146484.01600/123083747v.4

require both additional financing under the DIP Facility and the continued use of Cash Collateral under the terms of this Interim Order to satisfy their postpetition liquidity needs.

H.    The DIP Agent and the DIP Lenders have indicated a willingness to provide the Debtors with certain financing commitments, but solely on the terms and conditions set forth in this Interim Order and in the DIP Credit Documents.  Accordingly, after considering all of their practical alternatives, the Debtors have concluded, in an exercise of their sound business judgment, that the financing to be provided by the DIP Lenders pursuant to the terms of this Interim Order and the other DIP Credit Documents represents the best financing currently available to the Debtors.

I.    The security interests and liens granted pursuant to this Interim Order to the DIP Agent, for the benefit of the DIP Secured Parties, are appropriate under section 364(d) of the Bankruptcy Code.

J.    Good cause has been shown for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2).  In particular, the authorization granted under this Interim Order for the Debtors to execute the DIP Credit Documents, to continue using the Prepetition Collateral, including Cash Collateral, and to obtain interim financing, including on a priming lien basis, is necessary to avoid immediate and irreparable harm to the Debtors and their estates.  Entry of this Interim Order is in the best interest of the Debtors, their estates and creditors.  The terms of the DIP Credit Documents (including the Debtors' continued use of the Prepetition Collateral, including Cash Collateral) are fair and reasonable under the circumstances, and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.

K.    The Debtors, the DIP Agent and the DIP Lenders have negotiated the terms and conditions of the DIP Credit Documents (including the Debtors' continued use of the Prepetition

146484.01600/123083747v.4

Collateral, including Cash Collateral) and this Interim Order in good faith and at arm's-length, and any credit extended and loans made to the Debtors pursuant to this Interim Order shall be, and hereby are, deemed to have been extended, issued or made, as the case may be, in "good faith" within the meaning of sections 363(m) and 364(e) of the Bankruptcy Code.

L.     The Prepetition Secured Parties are entitled to receive Adequate Protection of their interests as set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code for any diminution in the value of their respective interests in the Prepetition Collateral as of the Petition Date, including Cash Collateral, resulting from the automatic stay or the Debtors' use, sale or lease of the Prepetition Collateral, including Cash Collateral, during the Chapter 11 Cases.

M.     Based on the foregoing, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:[2]**

1.     <u>Jurisdiction and Venue</u>.     Consideration of the Motion constitutes a "core-proceeding" as defined in 28 U.S.C. § 157(b)(2). This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012.  Venue for the Chapter 11 Cases and the proceedings on the Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     <u>Notice</u>.  Under the circumstances, notice of the Motion and the Interim Hearing constitutes due and sufficient notice thereof and complies with all applicable Bankruptcy Rules, including Rules 2002, 4001(b) and (c), 5003(e) and 9014, and no other notice need be given.

---

[2] Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact.

3.      The Motion is approved on the terms and conditions set forth in this Interim Order. The Debtors are hereby authorized to enter into the DIP Credit Documents, including the DIP Credit Agreement and such additional documents, instruments and agreements as may be reasonably required or requested by the DIP Agent and the DIP Lenders to implement the terms or effectuate the purposes of this Interim Order.  The Debtors are authorized to comply with and perform all of the terms and conditions contained in the DIP Credit Documents, and to repay amounts borrowed, together with interest and fees thereon, as well as any other outstanding DIP Obligations to the DIP Lenders in accordance with and subject to the terms and conditions set forth in the DIP Credit Documents and this Interim Order.

4.      The DIP Budget.

(a)     The Debtors have provided the DIP Agent and DIP Lenders a 13-week cash flow projection and initial DIP budget in form and substance acceptable to the DIP Agent and the Requisite DIP Lenders in their sole and absolute discretion and containing such details and assumptions that are satisfactory to the DIP Agent and the Requisite DIP Lenders (the "Initial DIP Budget") substantially in the form annexed hereto as Exhibit B, ; provided that, and with the consent of the DIP Agent and the Requisite DIP Lenders, the Initial DIP Budget may be updated no more than once per month (as so approved, together with the Initial DIP Budget, the "DIP Budget").

(b)     Unless waived by the DIP Agent and Requisite DIP Lenders, it shall be an Event of Default if (i) actual cumulative disbursements are more than 115% of projected disbursements in the DIP Budget and (ii) actual cumulative total receipts minus total disbursements ("Net Cash Flow"), if negative, being more than 110% of the projected Net Cash Flow in the DIP Budget, and, if positive, being less than 85% of the projected Net Cash Flow in

the DIP Budget. Budget variances shall be tested on the fourth business day of each week, on a rolling-four week and a cumulative basis commencing on the Petition Date, commencing with the first full week ended after the Petition Date, showing actual versus budgeted disbursements and Net Cash Flow. Until such time as the applicable period shall have elapsed since the Petition Date, any reference herein to any such period shall mean such shorter period from the Petition Date to the date of determination.

(c)    Subject to the foregoing, the DIP Budget may be amended, supplemented, extended or otherwise modified from time to time in any manner as to which Debtors, the DIP Agent and Requisite DIP Lenders mutually agree without further order of this Court (except for material amendments, for which three (3) Business Days' notice shall be given to the U.S. Trustee and counsel to any Committee). The Debtors shall promptly provide any modified DIP Budget to the U.S. Trustee and counsel for any Committee; provided, however, the Debtors may take appropriate actions with respect to confidentiality of any portion of the DIP Budget.

(d)    Pursuant to and in accordance with the DIP Budget and the other DIP Credit Documents, the DIP Facility shall be available:

(i)    to fund the Debtors' working capital requirements, operating expenses, capital expenditures related to aircraft maintenance and other line items in accordance with the terms of the DIP Budget necessary to accomplish an orderly wind-down of the Debtors' operations and a liquidation of the Debtors' assets;

(ii)    to fund postpetition allowed fees and expenses incurred by the Retained Professionals (defined below) during the administration of the Chapter 11 Cases;

(iii)    to fund the Roll Up Obligations (defined below) following payment of the DIP Obligations;

(iv)    to fund the payment of cash-pay interest accrued on the DIP Facility;

(v)    to pay fees and expenses of the DIP Agent related to the DIP Facility and the Chapter 11 Cases, as set forth below; and

(vi)    to pay fees and expenses of counsel to certain DIP Lenders and Prepetition Lenders, as set forth below.

(e)    No proceeds of the DIP Facility nor the Prepetition Lenders' Cash Collateral shall be transferred to, or used by, any entity other than Debtors, except as permitted under the DIP Budget, and the Interim Order or Final Order, as applicable.

5.    <u>Reports</u>. The Debtors shall deliver the DIP Budget and the other reports required under the DIP Loan Documents to the DIP Agent for distribution to the DIP Lenders, to the Prepetition Agent for distribution to the Prepetition Lenders, and counsel to any Committee; <u>provided, however</u>, the Debtors may take appropriate actions with respect to confidentiality of any portion of such reports.

6.    <u>Use of Prepetition Collateral (including Cash Collateral)</u>.

(a)    **Immediately upon entry of this Interim Order**, the Debtors are authorized to use Cash Collateral, subject to and as set forth in the DIP Budget, this Interim Order and the DIP Credit Documents. In no event shall the Debtors be authorized to use Cash Collateral for any purpose or under any terms other than those set forth in the DIP Budget, this Interim Order and the DIP Credit Documents. The Debtors are further authorized to use the Prepetition Collateral (including Cash Collateral) during the period from the Petition Date through and including the DIP Termination Date in accordance with the terms and conditions of this Interim Order, <u>provided</u>, that the Prepetition Secured Parties are granted Adequate Protection as set forth in this Interim Order. Notwithstanding anything to the contrary herein, nothing herein shall waive the Debtors' right to

-11-

seek non-consensual use of Cash Collateral, and the right of the Prepetition Lenders to request additional adequate protection.

    (b)  Subject to the Carve-Out and the other provisions of this Interim Order, all financial institutions with which the Debtors maintain accounts containing Cash Collateral are authorized to (i) comply with any reasonable request of the DIP Agent while an Event of Default (as defined in the DIP Credit Agreement) has occurred and is continuing and (ii) turn over to the DIP Agent all Cash Collateral therein without offset or deduction of any kind.  The DIP Agent shall enjoy the benefit of all deposit account control agreements.  Notwithstanding and without minimizing the force of the foregoing, the Debtors are authorized to enter into, and cause the financial institutions servicing the Debtors' deposit accounts to enter into, such deposit account control agreements and other collateral agreements with the DIP Agent and such financial institutions as the DIP Agent may reasonably require, or alternatively, the DIP Agent shall be entitled to enjoy the benefit of all control agreements to which the Debtor is a party, as set forth above, without the need to enter into any such new agreements.

    7.  <u>Borrowing Authorization</u>.

    (a)  The Debtors are authorized to enter into the DIP Credit Agreement substantially in the form annexed hereto as <u>Exhibit A</u> and the other DIP Credit Documents.  The failure to mention any particular provision of the DIP Credit Documents herein shall not impair the applicability or enforceability of any such provision, and all such provisions whether or not stated herein shall be of equal force and effect.

    (b)  <u>The DIP Facility</u>.  The Debtors are authorized to enter into and perform the transactions contemplated in this Interim Order and the DIP Credit Documents and to receive financial accommodations and borrow under a multiple draw term loan in an aggregate principal

amount equal to $12,000,000 as follows:

(i)      $6,000,000 to be available upon entry of this Interim Order and the satisfaction of terms and conditions acceptable to the DIP Agent and the Requisite DIP Lenders under the DIP Credit Documents; provided, however, that the amount of the DIP Facility shall be reduced by a reserve for the amount of the Carve-Out;

(ii)      subject to the prior satisfaction of the conditions set forth in (i) and the satisfaction of terms and conditions acceptable to the DIP Agent and the Requisite DIP Lenders, an additional $6,000,000 available as a delayed draw upon request of the Debtors after entry of the Final Order and the filing of an Acceptable Plan (defined below); provided, however, that the amount of the DIP Facility shall be reduced by a reserve for the amount of the Carve-Out; and,

(iii)      after entry of the Final Order, the DIP Lenders may, in their sole and absolute discretion, provide an incremental facility of up to an additional $2,000,000 (the "Incremental Facility") with the same rate and security as the DIP Facility.

(c)      The DIP Credit Agreement and the other DIP Credit Documents shall constitute and are hereby deemed to be the legal, valid and binding obligations of the Debtors party thereto and each of their respective estates, enforceable against each such Debtor and its respective estate in accordance with the terms hereof and the DIP Credit Documents and any successor of each such Debtor or any representative of the estates (including a trustee, responsible person, or examiner with expanded powers). The Debtors are authorized to obtain financial accommodations pursuant to the terms of the DIP Budget, this Interim Order, the DIP Credit Agreement, and the other DIP Credit Documents.

(d)      All proceeds of the DIP Facility shall be held in a deposit account held at a

-13-

depository institution authorized by the U.S. Trustee for Region 3 or other depository institution approved by the Bankruptcy Court, subject to an account control agreement in favor of the DIP Agent, and may only be utilized in accordance with the DIP Budget. The DIP Agent and the Requisite DIP Lenders shall have the right to require the delivery of certifications and other evidence form the Debtors regarding any use of proceeds in connection with any withdrawals from such deposit account.

8.    Roll-Up Obligations. **Subject to entry of the Final Order**, as more fully set forth in the DIP Credit Documents, so as to induce Prepetition Lenders to participate in the DIP Facility, for each dollar provided to the Debtors as part of the DIP Facility by Prepetition Lenders, 200% of the Prepetition Obligations of such Prepetition Lender shall be rolled-up and converted into a Postpetition Obligation under the DIP Facility (the "Roll-Up Obligations"), and the amount of each Lender's Roll-Up Obligations shall be deducted from each DIP Lender's Prepetition Obligations. The Roll-Up Obligations will have the same Superpriority Claims and DIP Liens and will be *pari passu* in all respects with the DIP Obligations but shall be immediately junior in right of payment to the DIP Facility, and the Prepetition Obligations under the Prepetition Loan Documents shall be immediately junior in right of payment to the Roll-Up Obligations. Interest on the Roll-Up Obligations shall be paid in-kind until six months after indefeasible payment in full in cash of the DIP Obligations and thereafter, shall be payable at the rate of 1% per annum in cash and at the Alternate Base Rate (referenced in the DIP Credit Agreement) plus 7% per annum paid in-kind.

9.    Post-Confirmation Treatment. Following the confirmation of an Acceptable Plan that does not indefeasibly pay the DIP Obligations, Roll-Up Obligations and Prepetition in full in cash, the Debtors agree that any unpaid portions of the DIP Obligations, Roll-Up Obligations and

-14-

Prepetition Obligations shall, subject to approval of the Court and confirmation of the Plan, be rolled to the liquidating trust or other post-confirmation entity for payment in order of priority.

10.     Acceptable Plan/Plan Milestones.

(a)     No later than twenty (20) days after the Petition Date, the Debtors agree to file a (i) chapter 11 plan and (ii) disclosure statement that indefeasibly either (a) pays the DIP Obligations, Roll-Up Obligations, and Prepetition Obligations in full in cash, or (b) that is otherwise acceptable in form or substance to the DIP Agent, Requisite DIP Lenders, Prepetition Agent and Prepetition Required Lenders ((a) or (b), an "Acceptable Plan").

(b)     No later than forty-eight (48) days from the Petition Date, the Debtors agree to obtain approval (subject to the Court's availability) of a disclosure statement for an Acceptable Plan by the Bankruptcy Court acceptable in form and substance to the DIP Agent and the Requisite DIP Lenders.

(c)     No later than seventy-six (76) days from the Petition Date, the Debtors agree to obtain (subject to the Court's availability) confirmation of an Acceptable Plan.

11.     Due Authorization.  The Debtors acknowledge, represent, stipulate and agree that:

(a)     subject to the entry of this Interim Order, the Debtors have obtained all authorizations, consents and approvals necessary from, and have made all filings with and given all notices to, all federal, state and local governmental agencies, authorities and instrumentalities required to be obtained, made or given by the Debtors in connection with the execution, delivery, performance, validity and enforceability of the DIP Credit Documents;

(b)     in entering into the DIP Credit Documents and obtaining the use of Cash Collateral, and as consideration therefor and for the other accommodations and agreements of the DIP Lenders reflected herein and in the DIP Credit Documents, the Debtors hereby agree that until

-15-

such time as all of the DIP Obligations are indefeasibly paid in final in full in cash and the DIP Credit Agreement and DIP Credit Documents are terminated in accordance with the terms thereof, the Debtors shall not in any way prime or seek to prime the DIP Obligations, the DIP Liens or the DIP Superpriority Claims provided to the DIP Lenders under this Interim Order by offering a subsequent lender or a party in interest a superior or *pari passu* lien or administrative expense pursuant to sections 105(a), 326, 328, 330, 331, 364(c), 364(d), 503, 506, 507, 546(c), 552(b), 726 (other than expenses of a trustee under section 726(b)) or 1114 of the Bankruptcy Code or otherwise or acquiescing thereto except as expressly authorized in the DIP Credit Agreement (provided, that the DIP Liens, the DIP Superpriority Claims, the liens of the Prepetition Secured Parties, the Adequate Protection Liens (defined below), and the Section 507(b) Claims (defined below) of the Prepetition Secured Parties, shall be subordinate and subject to the Carve-Out;

(c)    each Debtor is jointly and severally liable for, and hereby absolutely and unconditionally guarantees to the DIP Agent and DIP Lenders and their respective successors and assigns, the full and prompt payment when due (whether at the maturity or earlier, by reason of acceleration or otherwise, and at all times thereafter) and performance of, all DIP Obligations owed or hereafter owing to the DIP Secured Parties by each other Debtor. Each Debtor agrees that (i) its guarantee obligation hereunder shall be, and is absolute and unconditional for all purposes in these Chapter 11 Cases and is a present and continuing guaranty of payment and performance and not of collection, and (ii) its obligations under this Interim Order and any DIP Credit Document shall not be discharged until the indefeasible payment and performance, in full in cash (or other consideration acceptable to the DIP Secured Creditors in their absolute and sole discretion) of the DIP Obligations, and the termination of the lending commitments under the DIP Credit Documents unless otherwise agreed by the DIP Agent and Requisite DIP Lenders; and

-16-

(d)    In determining to make any loan under the DIP Credit Agreement, the DIP Secured Parties shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors, so long as the DIP Secured Parties' actions do not constitute, within the meaning of 42 U.S.C. § 9601(2)(F), actual participation in the management or operational affairs of a vessel or facility owned or operated by a Debtor, or otherwise cause liability to arise to the federal or state government or the status of responsible person or managing agent to exist under applicable law (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 *et seq.*, as amended, or any similar federal or state statute).

12.    <u>Payment of DIP Fees and Expenses</u>.

(a)    The DIP Obligations shall bear interest at the applicable rate (including any applicable default rate after the occurrence of an Event of Default) set forth in the DIP Credit Documents, and be due and payable in accordance with this Interim Order and the DIP Credit Documents, in each case without further notice, motion or application to, order of, or hearing before, this Court.

(b)    The Debtors shall pay to the DIP Agent, for itself and, if applicable, the ratable benefit of the DIP Lenders, the fees payable under the terms of the DIP Credit Documents, including the following: (i) the DIP Agent's fees, (ii) the DIP Lenders' fees, and (iii) the Commitment Fee, all as set forth in the DIP Credit Documents, in each case whether or not such amounts are included in the DIP Budget or arose before or after the Petition Date.  None of the fees payable pursuant to this sub-paragraph (b) shall be subject to any other notice or approval by this Court.

146484.01600/123083747v.4

(c)       The Debtors shall pay the reasonable prepetition and postpetition fees and expenses of (i) the attorneys (including Winston & Strawn LLP and Ashby & Geddes) and advisors for the DIP Agent as provided under the DIP Credit Documents upon the closing of such transaction and thereafter; and (ii) Paul Hastings LLP as counsel to certain DIP Lenders and Prepetition Lenders in an amount not to exceed $75,000.  Invoices supporting such fees and expenses shall be submitted to counsel to the Debtors, with copies to the U.S. Trustee, counsel to the Prepetition Agent, and counsel to any Committee.  Invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine, and the providing of invoices shall not constitute a waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine, or other protections to which the DIP Agent and DIP Lenders may avail themselves under contract, statute or other law.  No attorney or advisor to the DIP Agent shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.  The Debtors, the U.S. Trustee and any Committee shall have ten (10) business days in which to raise an objection to the payment of any fees and expenses of such attorneys and advisors.  If the Debtors, U.S. Trustee or any Committee object to the reasonableness of the invoices submitted by the DIP Agent, and the parties cannot resolve such objection within 10 days of receipt of such invoices, the Debtor, U.S. Trustee or the Committee, as the case may be, shall file with the Court and serve on the DIP Agent an objection (a "Fee Objection") limited to the issue of reasonableness of such fees and expenses.  The Debtors shall promptly pay the submitted invoices after the expiration of the ten (10) business day notice period if no Fee Objection is received in such ten (10) business day period.

146484.01600/123083747v.4

If a Fee Objection is timely received, only the undisputed amount of the invoice shall be paid and the Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute.

13.    Amendments. Each of the Debtors is expressly authorized and empowered to enter into amendments or other modifications of the DIP Credit Agreement or any other DIP Credit Documents without further order of the Court, in each case, in such form as the DIP Agent and the Requisite DIP Lenders may agree with the Debtors in writing; provided, that notice of any modification or amendment shall be provided by the Debtors to the U.S. Trustee, counsel to the Prepetition Agent and counsel to any Committee, which parties may object to such modification or amendment, in writing, within three (3) Business Days from the date of the transmittal of such notice (which, to the extent such contact information for such parties is known to the Debtors, shall be transmitted by fax or e-mail, and, if not known, by overnight mail); further provided, that, notwithstanding the foregoing, any material modification of the DIP Credit Documents shall require Court approval; and further provided, that if such objection is timely provided, then such modification or amendment shall be permitted only pursuant to an order of the Court, the entry of which may be sought on an expedited basis.

14.    Superpriority Claims and DIP Liens. In respect of the DIP Obligations under the DIP Credit Agreement, the other DIP Credit Documents and this Interim Order, the DIP Agent is granted, for the benefit of the DIP Secured Parties, the following with respect to the Debtors, their estates and all DIP Collateral:

(a)    pursuant to Bankruptcy Code section 364(c)(1), a superpriority administrative expense claim with priority over all other administrative expenses pursuant to the Bankruptcy Code (including the kinds specified in or arising or ordered pursuant to Bankruptcy

-19-

Code sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 552(b), 726 (other than expenses of a trustee under section 726(b)) and 1114 thereof or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment), which superpriority expenses of the DIP Agent and DIP Lenders shall be subordinate to the DIP Liens, the Carve-Out (the "DIP Superpriority Claims"); provided that pursuant to applicable bankruptcy law, the granting of such DIP Superpriority Claims does not affect the status and superior priority of any liens, including the liens of the DIP Secured Parties, the Prepetition Secured Parties and the holder of any Permitted Prior Senior Lien (defined below).

(b)     pursuant to Bankruptcy Code section 364(d)(1), a first priority, priming security interest in and lien on all encumbered property of the Debtors and their estates (the "Section 364(d)(1) Liens"), which Section 364(d)(1) Liens shall be senior to any existing liens or claims, including, without limitation, to the Prepetition Liens, subject only to (i) the Carve-Out; (ii) liens on property of a Debtor (including the proceeds of such property) that are in existence on the Petition Date other than the Prepetition Liens, but only, if applicable, (A) to the extent a lien on any property is valid, perfected, and not avoidable, (B) the lien on such property (or the proceeds of such property, as applicable) on the Petition Date is a valid, perfected and non-avoidable permitted lien senior in priority to the Prepetition Liens on such property or (C) valid, non-avoidable liens that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (the foregoing clauses (a)-(c) being referred to collectively as the "Permitted Prior Senior Liens");

(c)     pursuant to Bankruptcy Code section 364(c)(2), a first priority security interest and lien on all unencumbered property of the Debtors (the "Section 364(c)(2) Liens"), including, **subject to entry of the Final Order**, Avoidance Action Proceeds, which Section

-20-

364(c)(2) Liens shall be subject only to the Carve-Out; and

       (d)     pursuant to Bankruptcy Code section 364(c)(3), a junior security interest and lien on all property of the Debtors and their estates that is subject to a Permitted Prior Senior Lien (collectively, the "Section 364(c)(3) Liens"), which Section 364(c)(3) Liens are also subject to the Carve-Out.  The Section 364(d)(1) Liens, Section 364(c)(2) Liens, and Section 364(c)(3) Liens shall be collectively referred to as the "DIP Liens.").

       15.     DIP Collateral. The DIP Liens of the DIP Agent, for the benefit of the DIP Secured Parties, under the DIP Credit Documents and as approved and perfected by this Interim Order include, inter alia, liens upon and security interests (collectively, the "DIP Collateral") in (i) all of those items and types of collateral in which security interests may be created under Article 9 of the Uniform Commercial Code, (ii) to the extent not expressly prohibited by law or contract, all of those items and types of collateral not governed by Article 9 of the Uniform Commercial Code, including, without limitation, licenses issued by any federal or state regulatory authority, any leasehold or other real property interests, and commercial tort claims of the Debtors, (iii) any and all other DIP Collateral of any nature or form  (including without limitation aircraft, engines and spareparts), and (iv) the products, rents, offspring, profits, and proceeds of any of the foregoing. None of the DIP Obligations, DIP Liens or DIP Superpriority Claims shall (a) be subject to or *pari passu* with any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code, (b) be subject to or *pari passu* with any inter-company claim, whether secured or unsecured, of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, (c) be subject to sections 510, 549, or 550 of the Bankruptcy Code, or (d) hereafter be subordinated to or made *pari passu* with any other lien or security interest under sections 361, 363 or 364 of the Bankruptcy Code or otherwise, except as expressly provided in

this Interim Order.

16.   Carve-Out.

(a)   Generally.  The DIP Liens, the DIP Superpriority Claims, the liens of the

Prepetition Secured Parties, the Adequate Protection Liens, and the Section 507(b) Claims (defined

below) of the Prepetition Secured Parties, shall be subject to the payment, without duplication, of

the following fees and expenses (the amounts set forth in (i) through (iii) below, together with the

limitations set forth therein, collectively, the "Carve-Out") from either Cash Collateral or proceeds

resulting from liquidation of DIP Collateral or Prepetition Collateral (and not from either cash

collateral or proceeds resulting from the liquidation of any collateral of any holder of a Permitted

Prior Senior Lien):

(i)   the reasonable fee and expense claims of the respective retained

professionals of the Debtors and any Committee that have been approved by this Court and are

included in the DIP Budget (for the avoidance of doubt, budgeted amounts shall be prorated for

partial periods) at any time during the Chapter 11 Cases pursuant to sections 330 and 331 of the

Bankruptcy Code (the Court approved professionals of the Debtors and any Committee are

collectively referred to as the "Retained Professionals"), the reasonable expenses of members of

any Committee that are included in the DIP Budget ("Committee Member Expenses", which shall

not include legal fees and expenses of such Committee member) which were incurred on and after

the Petition Date and before the Carve-Out Trigger Date (defined below) in an aggregate amount

not exceeding $250,000 for all Retained Professionals and Committee Member Expenses,

provided that, in each case, such fees and expenses of the Retained Professionals and Committee

Member Expenses are included in the DIP Budget and ultimately allowed on a final basis by this

Court pursuant to sections 330 and 331 of the Bankruptcy Code or otherwise and are not excluded

-22-

from the Carve-Out under Paragraph 21 of this Interim Order (nothing herein shall waive the right

of any party to object to the allowance of any such fees and expenses); and, provided further, that

the Carve-Out shall not include any bonus, transaction, success fees, completion fees, substantial

contribution fees or any other fees of similar import of any of the foregoing for Retained

Professionals;

(ii)    the unpaid fees payable to the U.S. Trustee and Clerk of the

Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code plus statutory

interest, if any, imposed under 31 U.S.C. § 3717.  There is no limitation on the obligations of the

Debtors and their estates with respect to unpaid fees payable to the U.S. Trustee and Clerk of the

Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code; and

(iii)    In the event the Chapter 11 Cases are converted to Chapter 7, there

shall be a separate carve-out of $25,000 in the aggregate that may be used for the reasonable fees

and expenses of a Chapter 7 trustee and such separate Trustee Carve-Out shall have the same

priorities as the Carve-Out.

(b)    Carve-Out Trigger Date.  As used herein, the term "Carve-Out Trigger

Date" means the date on which the DIP Agent provides written notice to the Debtors and their

counsel, the U.S. Trustee and counsel to any Committee that the Carve-Out is invoked, which

notice may be delivered only on or after the occurrence of an Event of Default under the DIP Credit

Documents or upon the DIP Termination Date.

(c)    Reduction of Amounts.  The fixed dollar amount of $250,000 available to

be paid under the Carve-Out following the Carve-Out Trigger Date on account of allowed fees and

expenses incurred on and after the Carve-Out Trigger Date shall be reduced, dollar-for-dollar, by

the aggregate amount of payments made on and after the Carve-Out Trigger Date on account of

-23-

fees and expenses incurred on and after the Carve-Out Trigger Date to Retained Professionals and Committee Member Expenses (whether from Cash Collateral, any proceeds of the DIP Financing, or otherwise).  There is no limitation on the obligations of the Debtors and their estates with respect to unpaid fees payable to the U.S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code plus statutory interest, if any, imposed under 31 U.S.C. § 3717.

(d)    <u>Reservation of Rights</u>.  The DIP Agent and Prepetition Secured Parties reserve their rights to object to the allowance of any fees and expenses, including any fees and expenses sought that are not provided for in the DIP Budget.  The payment of any fees or expenses of the Retained Professionals and Committee Member Expenses pursuant to the Carve-Out shall not, and shall not be deemed to (i) reduce any Debtor's obligations owed to any of the DIP Secured Parties, Prepetition Secured Parties or to any holder of a Permitted Prior Senior Lien, or (ii) modify, alter or otherwise affect any of the liens and security interests of such parties in the DIP Collateral or Prepetition Collateral (or their respective claims against the Debtors).  The DIP Agent, DIP Lenders, and Prepetition Secured Parties shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Retained Professionals, Committee Member Expenses, the U.S. Trustee or Clerk of the Bankruptcy Court (or of any other entity) incurred in connection with the Chapter 11 Cases or any successor case, and nothing in this Interim Order or otherwise shall be construed to obligate such parties in any way to pay such compensation to or to reimburse such expenses.

(e)    At the option of the Retained Professionals, or any of them, and with the consent of the DIP Agent and Requisite DIP Lenders, upon approval of this Court a professional fee trust may be established and funded from the DIP Budget.

-24-

17.    <u>Waiver of Right to Surcharge</u>.    **Subject to entry of the Final Order**, in light of (i) the consent of the DIP Agent and DIP Lenders to the current payment of administrative expenses of the Debtors' estates in accordance with the DIP Budget, and (ii) the agreement of the DIP Agent and DIP Lenders to subordinate their Superpriority Claims to the Carve-Out, (ii) the agreement of the DIP Agent and DIP Lenders to subordinate their DIP Liens to the Carve-Out and Permitted Prior Senior Liens, the DIP Agent, DIP Lenders, and Prepetition Secured Parties are each entitled to a waiver of (a) the provisions of section 506(c) of the Bankruptcy Code and (b) any "equities of the case" claims or other claims under sections 105(a) or 552(b) of the Bankruptcy Code. Accordingly, no costs or expenses of administration or other charge, lien, assessment or claim incurred at any time (including, without limitation, any expenses set forth in the DIP Budget) by any Debtor or any other person or entity shall be imposed or charged against any or all of the DIP Collateral, the DIP Agent, the DIP Lenders, the Prepetition Collateral, and the Prepetition Secured Parties or their respective claims or recoveries under the Bankruptcy Code, including sections 105(a), 506(c), 552(b) thereof, or otherwise, and the Debtors, on behalf of their estates, waive any such rights. It is expressly understood by all parties that in making all such undertakings and proceeding in compliance with the DIP Budget, this Interim Order and the DIP Credit Documents, the DIP Agent, DIP Lenders, and Prepetition Secured Parties have each relied on the foregoing provisions of this Paragraph. Notwithstanding any approval of or consent to the DIP Budget, nothing in this Interim Order shall constitute or be deemed to constitute the consent by any of the DIP Agent, DIP Lenders and Prepetition Secured Parties to the imposition of any costs or expense of administration or other charge, lien, assessment or claim (including, without limitation, any amounts set forth in the DIP Budget) against such party, its claims or its collateral under sections 105(a), 506(c) or 552(b) of the Bankruptcy Code or otherwise and no such consent

-25-

shall be implied from any other action or inaction by such parties.

18.    Automatic Perfection.

(a)    The (i) DIP Liens granted to the DIP Agent, for the benefit of the DIP Secured Parties pursuant to this Interim Order and the other DIP Credit Documents, and the (ii) Adequate Protection Liens granted pursuant to this Interim Order to the Prepetition Secured Parties shall be valid, enforceable, and perfected by operation of law upon entry of this Interim Order by the Court without any further action by any party. Neither the DIP Secured Parties in respect of the DIP Liens, nor the Prepetition Secured Parties in respect of the Adequate Protection Liens, shall be required to enter into or to obtain (unless required by law or contract) any control agreements, landlord waivers, mortgagee waivers, bailee waivers or warehouseman waivers or to give, file or record any UCC-1 financing statements, mortgages, deeds of trust, leasehold mortgages, notices to account debtors or other third parties, notices of lien or similar instruments in any jurisdiction (including filings with the Federal Aviation Administration, the United States Patent and Trademark Office, the United States Copyright Office or any similar agency in respect of aircraft and trademarks, copyrights, trade names or patents with respect to intellectual property) (collectively, the "Perfection Documents"), or obtain consents from any licensor or similarly situated party in interest, or take any other action to validate, record or perfect the DIP Liens granted under the DIP Credit Documents and this Interim Order and the Adequate Protection Liens granted under this Interim Order and approved hereby, all of which are automatically and immediately perfected by the entry of this Interim Order. If the DIP Agent, DIP Lenders, Prepetition Secured Parties, independently or collectively, in each of their sole discretion respectively, choose to obtain, enter into, give, record or file any Perfection Documents, (x) all such Perfection Documents shall be deemed to have been obtained, entered into, given, recorded

-26-

or filed, as the case may be, as of the Petition Date, (y) no defect in any such act shall affect or impair the validity, perfection, priority or enforceability of the DIP Liens and Adequate Protection Liens, and (z) such liens shall have the relative priority set forth herein notwithstanding the timing of filing of any such Perfection Documents. In lieu of optional recording or filing any Perfection Documents, the DIP Agent, DIP Lenders, the Prepetition Agent and Prepetition Lenders may, in each of their sole discretion, choose to record or file a true and complete copy of this Interim Order in any place that any Perfection Document would or could be recorded or filed (which may include a description of the collateral appropriate to be indicated in a recording or filing at such place of recording or filing), and such recording or filing by the DIP Agent, the DIP Lenders, the Prepetition and the Prepetition Lenders shall have the same effect as if such Perfection Document had been filed or recorded as of the Petition Date. In addition, the DIP Agent may, in its sole discretion, at the Debtors' expense, require the Debtors to file or record any Perfection Document. The Debtors are authorized and directed to execute and deliver promptly upon demand to the DIP Agent all Perfection Documents as the DIP Agent may reasonably request.

(b)      Until the indefeasible payment in full in cash of the DIP Obligations, DIP Collateral and Perfection Documents evidencing liens subordinate to the DIP Liens in the possession, custody or control of the Prepetition Agent (or in the possession, custody or control of agents or bailees of the Prepetition Agent) shall be deemed to be an agent or bailee, as the case may be, on behalf of and for the benefit of the DIP Secured Parties for the purposes of perfecting the security interests granted in such DIP Collateral. Upon an Event of Default and the request of the DIP Agent, the Prepetition Agent (or its agents or bailees, as applicable) shall transfer, assign and otherwise convey, as applicable, any DIP Collateral and Perfection Documents in its possession, custody or control to the DIP Agent for the enforcement of rights and remedies under

-27-

the DIP Credit Documents, and, upon the indefeasible payment in full in cash of all DIP

Obligations, the DIP Agent (or its agents or bailees, as applicable) shall transfer, assign and

otherwise convey any Prepetition Collateral and Perfection Documents to the Prepetition Agent.

The authorization, grant, perfection, scope and vesting of the DIP Liens, DIP Superpriority Claims

and DIP Obligations are fully effectuated by this Interim Order and any security agreements,

collateral agreements or other Perfection Documents executed as part of the DIP Credit Documents

shall supplement the authorization, grant, perfection, scope and vesting set forth herein as well as

the powers and protections accorded to the DIP Agent, on behalf of the DIP Secured Parties, but

in no event shall any such security agreement, collateral agreement or other Perfection Document

be interpreted as a limitation of such provisions of this Interim Order.

19.     <u>Stipulations and Waivers</u>:  After consultation with their attorneys and financial

advisors, **<u>subject to and without prejudice to the rights of any Committee and any other party</u>**

**<u>with standing as set forth in Paragraph 20 below</u>**, the Debtors admit, stipulate, and agree to the

following, and make the releases and waivers set forth below, on and as of the Petition Date:

(a)     All Prepetition Liens are valid and enforceable by the Prepetition Secured

Parties against each of the Debtors in accordance with their respective priorities.  Except with

respect to any exceptions the Debtors may provide to the Prepetition Agent within two (2) business

days hereof, as set forth below, with respect to the Prepetition Collateral, the Prepetition Secured

Parties have valid, duly-authorized, perfected, enforceable, non-voidable and binding security

interests in, and liens on, substantially all of the Prepetition Collateral as of the Petition Date,

including, without limitation, the Cash Collateral.  The Debtors further admit, acknowledge and

agree that (i) the Prepetition Secured Obligations constitute legal, valid and binding obligations of

each of the Debtors, (ii) no offsets, defenses or counterclaims to the Prepetition Secured

-28-

Obligations exist, and (iii) no portion of the Prepetition Secured Obligations is subject to avoidance, disallowance, reduction or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

(b)     The Debtors have no valid claims (as such term is defined in section 101(5) of the Bankruptcy Code) or causes of action against the Prepetition Secured Parties with respect to the Prepetition Credit Documents, whether arising at law, in contract or at equity, including any recharacterization, subordination, avoidance or other claims arising under or pursuant to sections 105, 510 or 542 through 553, inclusive, of the Bankruptcy Code.

(c)     As of the Petition Date, the Prepetition Secured Obligations for which the Debtors, without defense, counterclaim or offset of any kind, were truly and justly indebted to the Prepetition Secured Parties in an amount not less than approximately $90,907,954.51 in aggregate principal amount of Prepetition Obligation plus all accrued or hereafter accruing and unpaid interest thereon and any additional amounts, charges, fees and expenses (including any attorneys', accountants', appraisers' and financial advisors' fees and expenses that are chargeable or reimbursable under the Prepetition Credit Documents) now or hereafter due under the Prepetition Credit Documents.

(d)     The Debtors do not have, and hereby forever release and waive, any claims, objections, challenges, counterclaims, causes of action, defenses, setoff rights, obligations, rights to subordination or any other liabilities, whether arising under the Bankruptcy Code or applicable non-bankruptcy law, against the Prepetition Secured Parties, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees with respect to any matter arising, concerning or otherwise related to the Prepetition Credit Documents and the Prepetition Obligations from the beginning of time through the Petition Date.

-29-

(e)    Due to the commencement of these Chapter 11 Cases, the Debtors are in default with respect to their Prepetition Obligations and an Event of Default has occurred under the Prepetition Credit Documents.

20.    Effect of Stipulations on Third Parties.

(a)    Generally.  The admissions, stipulations, agreements, releases, and waivers set forth in the immediately preceding Paragraph 19 and Paragraph D above of this Interim Order (collectively, the "Prepetition Lien and Claim Matters") are and shall be binding on the Debtors, any subsequent trustee, responsible person, examiner with expanded powers, any other estate representative and all parties-in-interest and all of their successors-in-interest and assigns, including, without limitation, any Committee, unless, and solely to the extent that, a party-in-interest with standing and requisite authority, (i) has timely filed the appropriate pleadings, and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in Paragraph 21 of this Interim Order) challenging the Prepetition Lien and Claim Matters (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "Challenge") no later than the earlier of (a) sixty (60) days from the date of appointment of any Committee or (b) seventy-five (75) days from the Petition Date (collectively, the "Challenge Deadline"), as such applicable date may be extended in writing from time to time in the sole discretion of the Prepetition Agent or by this Court for good cause shown pursuant to an application filed by a party in interest prior to the expiration of the Challenge Deadline, and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding and any such judgment has become a final judgment that is not subject to any further review or appeal; provided,

-30-

however, that nothing contained in the DIP Credit Documents or this Interim Order shall be deemed to confer standing any party-in-interest to commence a challenge. For the avoidance of doubt, the timely filing of a Challenge tolls the expiration of the Challenge Deadline.

(b)    Binding Effect. To the extent any Prepetition Lien and Claim Matters are not subject to a Challenge timely and properly commenced by the Challenge Deadline, or to the extent any Challenge does not result in a final and non-appealable judgment or order of this Court that is inconsistent with the Prepetition Lien and Claim Matters, then, without further notice, motion or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, the Prepetition Lien and Claim Matters shall pursuant to this Interim Order become binding, conclusive and final on any person, entity or party-in-interest in the Chapter 11 Cases, and their successors and assigns, and in any successor case for all purposes and shall not be subject to challenge or objection by any party-in-interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers or other representative of the Debtors' estates. Notwithstanding anything to the contrary herein, if any such proceeding is properly and timely commenced, the Prepetition Lien and Claim Matters shall nonetheless remain binding unless such Challenge is successful pursuant to an order or judgment that is final and no longer subject to appeal or further review. To the extent any such Challenge proceeding is timely and properly commenced, the Prepetition Secured Parties shall be entitled to include the related costs and expenses, including but not limited to reasonable attorneys' fees, incurred in defending themselves in any such proceeding pursuant to the Prepetition Credit Documents.

21.    Limitation on Use of Proceeds and Collateral. Notwithstanding anything in this Interim Order to the contrary, no portion or proceeds of the DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, or the Carve-Out, and no disbursements set forth in the

-31-

DIP Budget shall be used for the payment of professional fees, disbursements, costs or expenses incurred in connection with: (a) objecting, contesting or raising any defense to the validity, perfection, priority, or enforceability of, or any amount due under, the DIP Credit Documents or the Prepetition Credit Documents or any security interests, liens or claims granted under this Interim Order, the DIP Credit Documents, or the Prepetition Credit Documents to secure such amounts; (b) asserting any Challenges, claims, actions or causes of action against any of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties or any of their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors; (c) preventing, hindering or otherwise delaying enforcement or realization on the DIP Collateral or the Prepetition Collateral; (d) seeking to amend or modify any of the rights granted to the DIP Secured Parties, the Prepetition Secured Parties under this Interim Order, the DIP Credit Documents or the Prepetition Credit Documents, including seeking to use Cash Collateral and/or DIP Collateral on a contested basis; or (f) contesting the Prepetition Lien and Perfection Matters; provided that no more than $15,000 in the aggregate of the proceeds of the DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, and the Carve-Out may be used by any Committee to investigate (but not prosecute or Challenge) Prepetition Lien and Claim Matters (the "Investigation Budget").

22.    Avoidance Action Proceeds. **Subject to entry of the Final Order**, (i) Avoidance Action Proceeds shall be DIP Collateral and shall be subject to the DIP Liens and DIP Superpriority Claims, and, (ii) subject and subordinate to the DIP Liens and DIP Superpriority Claims, Avoidance Action Proceeds shall be subject to the Adequate Protection Liens and Section 507(b) Claims of the Prepetition Secured Parties.

23.    Adequate Protection. The Prepetition Secured Parties agree, and this Court finds, that the adequate protection provided in this Interim Order (the "Adequate Protection"), including,

-32-

without limitation, in this Paragraph, is reasonable and calculated to protect the interests of the Prepetition Secured Parties. Notwithstanding any other provision hereof, (i) the grant of Adequate Protection to the Prepetition Secured Parties pursuant hereto is without prejudice to the right of the Prepetition Secured Parties to seek adequate protection or to seek modification of a grant of Adequate Protection provided in this Interim Order so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such request; and (ii) any Adequate Protection Payments (defined below) received by a Prepetition Secured Party that are later determined to be undersecured shall be recharacterized as payments of principal as set forth below.

(a)    Prepetition Agent Adequate Protection Liens. As adequate protection, the Prepetition Agent, in accordance with sections 361, 363(e) and 364(d) of the Bankruptcy Code, is hereby granted, for the benefit of the Prepetition Secured Parties, valid, binding, enforceable and perfected security interests and replacement liens (the "Prepetition Agent Adequate Protection Liens") upon all property of the Debtors whether arising prepetition or postpetition of any nature whatsoever, wherever located, in each case to secure the Prepetition Obligations against, without duplication, the aggregate diminution, if any, subsequent to the Petition Date, in the value of the Prepetition Collateral by: (i) the reduction in Prepetition Collateral available to satisfy Prepetition Obligations as a consequence of the priming of the Prepetition Obligations by the DIP Obligations; (ii) depreciation, use, sale, loss, decline in market price or otherwise of the Prepetition Collateral as a consequence of the use, sale or lease of the Prepetition Collateral by the Debtors or as a result of the imposition of the automatic stay; and (iii) the sum of the aggregate amount of all Cash Collateral and the aggregate value of all non-cash Prepetition Collateral which is applied in payment of the DIP Obligations or any other obligations or expenses of the Debtors other than

-33-

Prepetition Obligations, but only to the extent of any decrease in the value of the Prepetition Collateral on account of subsections (i), (ii) and (iii) above, all to the extent authorized by the Bankruptcy Code. The Prepetition Agent Adequate Protection Liens are subject and subordinate to (A) the Carve-Out, (B) the DIP Obligations, DIP Liens and DIP Superpriority Claims, and (C) the Permitted Prior Senior Liens. The Prepetition Agent Adequate Protection Liens shall not (x) be subject to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code, (y) subject to any inter-company claim, whether secured or unsecured, of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, or (z) hereafter be subordinated to or made *pari passu* with any other lien or security interest under sections 361, 363 or 364 of the Bankruptcy Code or otherwise except as expressly provided in this Interim Order and the DIP Credit Documents, including, without limitation, with respect to the Carve-Out, Permitted Prior Senior Liens, DIP Obligations, DIP Liens and DIP Superpriority Claims.

(b)    Section 507(b) Claims.  To the extent the Prepetition Agent shall hold claims allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code, notwithstanding the provision of Adequate Protection hereunder, the Prepetition Agent, for the benefit of the Prepetition Secured Parties is hereby each granted an administrative expense claim pursuant to and to the extent permitted by section 507(b) of the Bankruptcy Code (each, a "Section 507(b) Claim") with priority over all other administrative expenses, but in all cases subject and subordinate to the Carve-Out, Permitted Prior Senior Liens, DIP Obligations, DIP Liens and DIP Superpriority Claims.

(c)    Adequate Protection Payments.  The payments under this Paragraph 23 shall be referred to collectively as the "Adequate Protection Payments." In the event any Adequate

-34-

Protection Payment would be required to be repaid to the Debtors as a result of application of Bankruptcy Code section 506(b) or otherwise, any such amounts shall not be repaid and instead shall be applied as follows:  first, to the DIP Obligations until such obligations are indefeasibly paid in full, in cash; second, to the Roll-Up Obligations until such obligations are indefeasibly paid in full, in cash; third, to the Prepetition Obligations until such obligations are indefeasibly paid in full, in cash; and fourth, to the Debtors and their estates, or subject to further order of this Court. The Debtors shall promptly make Adequate Protection Payments, whether incurred prior to or following the Petition Date, all reasonable fees and expenses provided for in the Prepetition Credit Documents, including the reasonable fees and expenses of (i) Winston & Strawn LLP and Ashby & Geddes, as counsel to the Prepetition Agent; and (ii) Paul Hastings LLP as counsel to certain Prepetition Lenders and DIP Lenders in an amount not to exceed $75,000.

(d)    Invoices supporting fees and expenses being charged by attorneys for any Prepetition Secured Parties shall be submitted to counsel to the Debtors, with copies to the U.S. Trustee, counsel to the DIP Agent and counsel to any Committee.  Invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine, and the providing of invoices shall not constitute a waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine, or other protections to which the Prepetition Lenders may avail themselves under contract, statute or other law.  No attorney to any of the Prepetition Secured Parties shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.  The Debtors, U.S. Trustee and any Committee shall have ten (10) business days in which to raise an objection

to the payment of any fees and expenses of such attorneys and advisors. If the Debtors, U.S. Trustee or any Committee object to the reasonableness of the invoices submitted, and the parties cannot resolve such objection within ten (10) business days of receipt of such invoices, the Debtor, U.S. Trustee or the Committee, as the case may be, shall file with the Court and serve a Fee Objection limited to the issue of reasonableness of such fees and expenses. The Debtors shall promptly pay the submitted invoices after the expiration of the ten (10) business day notice period if no Fee Objection is received in such ten (10) business day period. If a Fee Objection is timely received, only the undisputed amount of the invoice shall be paid and the Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute.

24.     Indemnification. The Debtors shall indemnify the DIP Agent and DIP Lenders and their respective affiliates, successors and assigns and the officers, directors, employees, agents, advisors, controlling persons and members of each of the foregoing (each, an "Indemnified Person") and hold each of them harmless from and against all costs, expenses (including reasonable fees, disbursements and other charges of counsel) and liabilities of such Indemnified Person arising out of or relating to any claim or any litigation or other proceeding (regardless of whether such Indemnified Person is a party thereto and regardless of whether such matter is initiated by a third party or by the Debtors or any of their affiliates or shareholders) that relates to the DIP Facility or this Interim Order, including the financing contemplated hereby, the Chapter 11 Cases, or any transactions in connection therewith, provided that no Indemnified Person will be indemnified for any cost, expense or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from such Person's gross negligence or willful misconduct. Nothing herein is meant to limit the scope of any indemnity

-36-

provided for the benefit of the DIP Agent or DIP Lenders in the DIP Credit Documents. This Paragraph does not apply or otherwise affect any indemnification rights or obligations in respect of the Prepetition Secured Parties.

25.    <u>DIP Termination Date</u>. The DIP Facility and the commitments thereunder shall terminate upon the date (the "<u>DIP Termination Date</u>") that is the earliest of the following of any the following:

(a)    ninety (90) days from the Petition Date;

(b)    the earlier of (i) the date upon which this Interim Order expires, or (ii) thirty-five (35) days after the entry of the Interim Order, in either case, if the Final Order has not been entered prior to the expiration of such period;

(c)    if a plan of reorganization has been confirmed by order of the Bankruptcy Court, the earlier of (i) the effective date of such plan of reorganization or (ii) thirty (30) days after the date of entry of the confirmation order;

(d)    the closing of a sale of substantially all of the equity or assets of the Debtors Borrowers;

(e)    the date of the indefeasible prepayment in full in cash by the Debtors of all obligations under the DIP Facility in accordance with the terms hereof and thereof;

(f)    the filing of a plan of reorganization that is not an Acceptable Plan;

(g)    An Event of Default and an acceleration of the DIP Facility.

26.    <u>Remedies</u>. Upon the occurrence of an Event of Default under the DIP Credit Documents or upon the Termination Date, and in each case without further notice, motion or application to, order of, or hearing before, this Court, the DIP Agent is granted leave to cease making financial accommodations to the Debtors, accelerate any or all of the DIP Obligations and

146484.01600/123083747v.4

declare such DIP Obligations to be immediately due and payable in full, in cash.  Upon the

Termination Date, and after providing five (5) days' prior notice to the Court, the Debtors and their

counsel, U.S. Trustee, counsel to the Prepetition Agent and counsel to any Committee, then the

DIP Agent, for the benefit of the DIP Secured Parties, shall be entitled to exercise all of its rights

and remedies under this Interim Order and the DIP Credit Documents, including, without

limitation, foreclose upon the DIP Collateral or otherwise enforce the DIP Obligations, DIP Liens

and DIP Superpriority Claims on any or all of the DIP Collateral and/or to exercise any other

default-related remedies under the DIP Credit Documents, this Interim Order or applicable law in

seeking to recover payment of the DIP Obligations.  With respect to Permitted Prior Senior Liens,

any exercise of such rights and remedies shall be in accordance with applicable non-bankruptcy

law in respect of Permitted Prior Senior Liens.  During the five (5) day notice period, any party in

interest may seek an order of the Court staying the DIP Agent's exercise of such remedies against

the DIP Collateral and, if no such stay is obtained, then the DIP Agent may exercise any and all

such rights and remedies without further order of the Court or notice to any party and the Debtors'

authority to use Cash Collateral under this Interim Order shall terminate.

27.     Access to DIP Collateral.  **Subject to appropriate notice and entry of the Final**

**Order**, notwithstanding anything contained herein to the contrary and without limiting any other

rights or remedies of the DIP Agent, exercisable on behalf of the DIP Secured Parties, contained

in this Interim Order or the DIP Credit Documents, or otherwise available at law or in equity, and

subject to the terms of the DIP Credit Documents, upon written notice to the landlord of any leased

premises that an Event of Default or the Termination Date has occurred and is continuing under

the DIP Credit Documents, the DIP Agent may, subject to the applicable notice provisions, if any,

in this Interim Order and any separate agreement by and between such landlord and the DIP Agent,

-38-

enter upon any leased premises of the Debtors or any other party for the purpose of exercising any remedy with respect to DIP Collateral located thereon and shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from the landlords thereunder, provided that the DIP Agent shall only be obligated to pay rent of the Debtors that first accrues after the DIP Agent's written notice referenced above and that is payable during the period of such occupancy by the DIP Agent, calculated on a daily per diem basis.  Nothing herein shall require the DIP Agent to assume any lease as a condition to the rights afforded to the DIP Agent in this Paragraph.  In addition, any landlord's lien, right of distraint or levy, security interest or other interest that any landlord, warehousemen or landlord's mortgagee may have in any DIP Collateral of the Debtors located on such leased premises, to the extent the same is not void under section 545 of the Bankruptcy Code, is hereby subordinated to the DIP Obligations, DIP Liens, and DIP Superpriority Claims.

28.    Further Assurances.  The Debtors are authorized to execute and deliver to the DIP Agent, the DIP Lenders and the Prepetition Secured Parties, all such agreements, financing statements, instruments and other documents as the DIP Agent, the DIP Lenders and the Prepetition Secured Parties may reasonably request to evidence, confirm, validate or perfect the DIP Liens or the Adequate Protection Liens granted pursuant to this Interim Order.  Further, the Debtors are authorized to do and perform all acts, to make, execute and deliver all instruments and documents, and to pay all fees and expenses that may be required or necessary for the Debtors' performance under the DIP Credit Documents, including, without limitation, (i) the execution of the DIP Credit Documents and (ii) the payment of the fees, costs and other expenses described in the DIP Credit Documents as such become due.  If the DIP Agent or the Prepetition Agent reasonably requests that the Debtors execute and deliver to the DIP Agent or the Prepetition Agent

-39-

financing statements, security agreements, collateral assignments, or other instruments and documents considered by such agent to be reasonably necessary or desirable to further evidence the perfection of the DIP Liens or the Adequate Protection Liens, as applicable, the Debtors are hereby authorized to execute and deliver such financing statements, security agreements, collateral assignments, instruments, and documents, and the DIP Agent or the Prepetition Agent is hereby authorized to file or record such documents in its discretion without seeking modification of the automatic stay under section 362 of the Bankruptcy Code, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order.

29.    <u>Insurance Policies</u>.  Effective as of entry of this Interim Order, the DIP Secured Parties and the Prepetition Secured Parties shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors that in any way relates to DIP Collateral or Prepetition Collateral, as applicable.

30.    <u>Successors and Assigns</u>.  This Interim Order, the DIP Credit Agreement and the other DIP Credit Documents shall be binding upon all parties in interest in these Chapter 11 Cases, including any subsequently appointed trustee, responsible individual, examiner with expanded powers, or other estate representative.

31.    <u>Survival</u>.  The provisions of this Interim Order and any actions taken pursuant hereto shall survive the entry of any subsequent order (other than entry of any subsequent Final Order which shall supersede this Interim Order), and the rights, remedies, powers, privileges, liens and priorities of the DIP and Prepetition Secured Parties provided for in this Interim Order and in any DIP Credit Document shall not be modified, altered or impaired in any manner by any order, including any order (i) confirming any plan of reorganization or liquidation in any of the Chapter 11 Cases (and, to the extent not indefeasibly paid in full in cash, the DIP Obligations shall not be

discharged by the entry of any such order, each of the Debtors having hereby waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code); (ii) converting any of the Chapter 11 Cases to a Chapter 7 case; (iii) dismissing any of the Chapter 11 Cases; or (iv) any superseding cases under the Bankruptcy Code. The terms and provisions of this Interim Order as well as the DIP Obligations, DIP Liens, DIP Superpriority Claim, DIP Credit Documents, and Adequate Protection Liens shall continue in full force and effect notwithstanding the entry of any such order, and such rights, claims and liens shall maintain their priority as provided by this Interim Order and the DIP Credit Documents to the maximum extent permitted by law until all of the DIP Obligations are indefeasibly paid in full, in cash.

32.     <u>Good Faith</u>.  The DIP Facility, the use of Cash Collateral, and the other provisions of this Interim Order, the DIP Credit Agreement and the other DIP Credit Documents have been negotiated in good faith and at arm's-length among the Debtors, the DIP Agent, DIP Lenders, and the Prepetition Secured Parties, and the extension of the financial accommodations to the Debtors by the DIP Agent, DIP Lenders, and Prepetition Secured Parties pursuant to this Interim Order and the DIP Credit Documents have been and are deemed to be extended in good faith, as that term is used in section 364(e) of the Bankruptcy Code. The DIP Agent, DIP Lenders, and Prepetition Secured Parties are entitled to, and are hereby granted, the full protections of section 364(e) of the Bankruptcy Code.

33.     <u>Subsequent Reversal or Modification</u>.  Subject to Paragraphs 31 and 32, if any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, that action will not affect (i) the validity of any obligation, indebtedness or liability under this Interim Order and the DIP Credit Documents by the Debtors prior to the date of receipt of written notice to the DIP Agent and Prepetition Agent of the effective date of such action; or (ii) the validity and

-41-

enforceability of any lien, administrative expense, right, or priority authorized or created hereby

or pursuant to this Interim Order and the DIP Credit Documents, including, without limitation, the

DIP Obligations, DIP Liens and DIP Superpriority Claims, the Prepetition Secured Obligations,

the Adequate Protection Liens, the Adequate Protection Payments and Section 507(b) Claims.

34.    <u>No Waiver</u>. This Interim Order shall not be construed in any way as a waiver or

relinquishment of any rights that the DIP Secured Parties and Prepetition Secured Parties may have

to bring or be heard on any matter brought before the Court.    Any consent, modification,

declaration of default, or exercise of remedies or non-exercise of remedies under or in connection

with this Interim Order or the DIP Credit Documents shall require the approval of DIP Agent, and,

as and to the extent required by the voting provisions of the DIP Credit Agreement and shall not

be deemed a waiver or relinquishment of any of the rights of the DIP Secured Parties.    Except as

expressly set forth herein, nothing contained in this Interim Order (including without limitation,

the authorization to use any Cash Collateral) shall impair, prejudice or modify any rights, claims

or defenses available in law or equity to the DIP Agent on behalf of the DIP Secured Parties, or

Prepetition Secured Parties, including, without limitation, the right to (a) request conversion of the

Debtors' chapter 11 case to chapter 7, (b) seek to terminate the exclusive rights of the Debtors to

file, and solicit acceptances of, a plan of reorganization under section 1121 of the Bankruptcy Code

or propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or

plans, (c) object to the fees and expenses of any Retained Professionals, and (d) seek relief from

the automatic stay.    All such rights, claims and defenses, and the rights, objections and defenses

of all parties in connection therewith, are hereby reserved.

35.    <u>Additional Defaults</u>. In addition, and without limitation of the Events of Default

set forth in and defined in the DIP Credit Documents or this Interim Order, it shall be a default

-42-

hereunder (and constitute an "Event of Default" under the DIP Credit Documents) if an order is entered dismissing or converting any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or appointing a Chapter 11 trustee or an examiner or other estate representative with expanded powers.  Any order for dismissal or conversion shall be automatically deemed to preserve the rights of the DIP Secured Parties, and Prepetition Secured Parties under this Interim Order and shall preserve the Carve-Out.  It shall be an Event of Default for the sale of substantially all of the assets of the Debtors, unless, upon the closing of such transaction, all liens securing the DIP Obligations and Prepetition Secured Obligations (in their respective priority) are transferred to the proceeds of such sale.  If an order dismissing any of these Chapter 11 Cases under section 305 or 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall be deemed to provide that (a) the DIP Liens and DIP Superpriority Claims granted to the DIP Secured Parties hereunder and in the DIP Credit Documents, as the case may be, and the Carve-Out shall continue in full force and effect, shall remain binding on all parties in interest and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and indebtedness owing to the DIP Secured Parties under the DIP Credit Documents shall have been indefeasibly paid in full in cash and the DIP Lenders' obligations and commitments under the DIP Credit Documents shall have been terminated, and the Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the DIP Obligations, DIP Liens, DIP Superpriority Claims, Adequate Protection Liens, Adequate Protection Payments, 507(b) Claims, and the Carve-Out.

36.    <u>Order Governs</u>.  In the event of any conflict between the provisions of this Interim Order and the DIP Credit Documents, the Motion, or any supporting documents, the provisions of this Interim Order shall control and govern to the extent of such conflicts.

37.    <u>Right to Credit Bid</u>.  Pursuant to section 363(k) of the Bankruptcy Code, unless the

-43-

court for cause orders otherwise, (i) the DIP Agent, on behalf of Requisite DIP Lenders, shall have the exclusive right to use the DIP Obligations, DIP Liens and DIP Superpriority Claim to credit bid with respect to any bulk or piecemeal sale of all or any portion of the DIP Collateral; and (ii) subject to the indefeasible payment in full in cash of the DIP Obligations, the Prepetition Agent shall have the exclusive right to use the Prepetition Obligations and the Prepetition Agent Adequate Protection Liens and Section 507(b) Claims to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Prepetition Collateral.

38. No Marshaling. **Subject to entry of the Final Order**, none of the DIP Agent, DIP Lenders, DIP Collateral, Prepetition Secured Parties or Prepetition Collateral shall be subject to the doctrine of marshaling or any similar doctrine or law of any jurisdiction requiring the recovery upon or application to any indebtedness of any collateral or proceeds in any particular order or action.

39. Master Proof of Claim. The Prepetition Agent, on behalf of the Prepetition Secured Parties, will not be required to file proofs of claim in the Chapter 11 Cases or any successor case for any claim. Notwithstanding any order to the contrary entered by the Court in relation to the establishment of a bar date in the Chapter 11 Cases or any successor case, the Prepetition Agent on behalf of the Prepetition Secured Parties shall each be authorized (but not required) in its sole discretion to file a master proof of claim against the Debtors (each a "Master Proof of Claim") on account of their prepetition claims arising under the Prepetition Credit Documents, as applicable. Upon the filing of a Master Proof of Claim against the Debtors, the applicable Prepetition Secured Party and each of its respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against the Debtors arising under the Prepetition Credit Documents, and the claims of the Prepetition Secured Party

-44-

(and its respective successors and assigns) named in the Master Proof of Claim shall be allowed or disallowed as if such entity had filed a separate proof of claim in each Chapter 11 Case or any successor cases in the amount set forth opposite each name listed in the Master Proof of Claim. The Prepetition Agent shall further be authorized to amend its respective Master Proof of Claim from time to time to, among other things, reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from any transfer of such claims. The provisions set forth in this Paragraph and any Master Proof of Claim filed pursuant to the terms hereof are intended solely for the purpose of administrative convenience and shall not affect the substantive rights of any party in interest or their respective successors in interest, including, without limitation, the rights of each Prepetition Secured Party as the holder of a claim against the Debtors under applicable law, and the numerosity requirements set forth in section 1126 of the Bankruptcy Code.

40.    Jurisdiction. The Bankruptcy Court shall have exclusive jurisdiction with respect to any and all disputes or matters under, or arising out of or in connection with, this Interim Order and the other DIP Credit Documents.

41.    Headings. The headings in this Interim Order are for reference purposes only and will not in any way affect the meaning and interpretation of the terms of this Interim Order.

42.    Immediate Docketing and Effect of Interim Order. This Interim Order shall take effect immediately upon execution hereof, and, notwithstanding anything to the contrary contained in Bankruptcy Rules, including Bankruptcy Rule 4001(a)(3), there shall be no stay of execution of effectiveness of this Interim Order. All objections to the entry of this Interim Order have been withdrawn or overruled and the Motion is approved on an interim basis on the terms and conditions set forth herein.

146484.01600/123083747v.4

43.    <u>Final Hearing.</u>  The Final Hearing is scheduled for April 29, 2020, at 11:00 a.m.
(prevailing Eastern Time) before this Court.  Any objections or responses to entry of the Motion
on a final basis shall be filed with the Court and served upon counsel for the Debtors by April 22,
2020 at 4:00 p.m. (prevailing Eastern Time).  The Debtors shall promptly serve a notice of entry
of this Interim Order and the Final Hearing, together with a copy of this Interim Order, by first
class mail, postage prepaid, facsimile, electronic mail or overnight mail upon the Notice Parties.

**Dated: April 7th, 2020 Wilmington,**
**Delaware**

**BRENDAN L. SHANNON UNITED STATES BANKRUPTCY**
**JUDGE**