**KBK** | **KELLER BENVENUTTI KIM**
www.kbkllp.com

Jane Kim, Esq.
Direct: 415.364.6793
jkim@kbkllp.com

April 13, 2020

<u>VIA ELECTRONIC MAIL AND ECF FILING</u>

The Honorable Brendan L. Shannon
United States Bankruptcy Court for the District of Delaware
824 North Market Street
6th Floor
Wilmington, DE  19801

Re: <u>In re Ravn Air Group, Inc., Chapter 11 Case No. 20-10755 (BLS) (Bankr. D. Del.):  North Slope Borough</u>

Dear Judge Shannon:

    We submit this letter on behalf of Ravn Air Group, Inc. and certain of its affiliates (collectively, "<u>Ravn</u>" or the "<u>Debtors</u>"), who are debtors and debtors-in-possession in the above-referenced proceeding, to provide an update to the Court and other parties-in-interest with respect to the consensual resolution of a matter that was raised at the "First Day Hearing" on April 7, 2020.

    As Your Honor was informed at the First Day Hearing, following the Debtors' filing of these Chapter 11 Cases, on April 5, 2020, Harry G. Brower, mayor of the North Slope Borough (the "<u>Borough</u>"), issued Emergency Order 06-2020 (the "<u>Emergency Order</u>"), by which the North Slope Borough purported to "commandeer" and "immediately take[ ] possession of all assets controlled by Ravn within the boundaries of the North Slope Borough."

    As was expressed at the First Day Hearing, it is the position of the Debtors, as well as other parties, including the State of Alaska, that the Emergency Order is void and prohibited under both state and federal law, and that the Borough does not have any legal authority to commandeer property of the Debtors' estate under the Bankruptcy Code or any other applicable law or regulation.

    No request was before the Court at the time of the First Day Hearing with respect to the Borough or the Emergency Order, and the Debtors expressed the hope that the parties would be able to resolve the matter consensually.  Your Honor indicated that the Court would be available in the event that the parties required the Court's intervention.

    The Debtors, prior to the filing of these Chapter 11 Cases, had already been assisting Borough residents by allowing the Debtors' employees to ground-handle aircraft from other carriers, so that delivery of food, bypass mail, and medicine would continue after the Debtors' aircraft had

650 California Street, Suite 1900
San Francisco, CA 94108

been removed from Barrow Airport. In addition, following the filing of the Chapter 11 Cases, the Debtors engaged in discussions with these other air carriers with respect to the potential sublease of the Debtors' facilities, if permitted by the Debtors' secured lenders (the "DIP Lenders"). It is the Debtors' position that the Borough's Emergency Order – and the substantial media and public attention the Emergency Order garnered – interrupted these efforts, put the orderly administration of the Debtors' Chapter 11 Cases at risk, and jeopardized the Debtors' DIP financing, which the Debtors required to pay recently-terminated Ravn employees their final wages.

However, in view of the fact that the State of Alaska Department of Transportation was unable to sublease these facilities in a timely manner, and in recognition of the Borough's interest in ensuring an equitable manner of continued delivery of essential goods and services to its residents, as well as a desire to resolve an issue that has generated concern among the DIP Lenders and other airline carriers, the Debtors and the Borough spent last week in negotiations to provide the Borough access to certain of the Debtors' facilities and related personal property in order for other air carriers to continue delivery and transport services to the Borough, on terms that recognized the unprecedented impact the global Covid-19 pandemic has had on our nation, the State of Alaska, and RavnAir Group; the crisis situation the Borough caused; and the high costs and expenses the Debtors have incurred in dealing with this matter.

The Debtors are pleased to inform the Court and other parties-in-interest that they have agreed with the Borough in principle on certain terms with respect to the sublease of facilities in the Borough and use of ground support equipment and related personal property, which terms are memorialized in a term sheet attached as Exhibit 1 hereto (the "Term Sheet"). On Friday, April 10, 2020, the Debtors and the Borough executed the Term Sheet, and the Borough paid the Debtors the facilitation fee and first month's rent payable under the Term Sheet (a total initial payment of $110,000), in order to permit the Borough to have immediate access to the facilities and equipment that are the subject of the Term Sheet, while the Debtors and the Borough enter into a definitive lease agreement.

The terms of the Term Sheet require the Borough to rescind the Emergency Order immediately upon its execution.

The Debtors believe the terms reflected in the Term Sheet are commercially reasonable and provide the Debtors fair compensation for the use of their facilities and personal property. The Debtors have kept the DIP Lenders informed of the negotiations with the Borough and entry into the Term Sheet. The Debtors have received and expect to continue to receive inquiries from other municipalities and airline carriers, who wish to discuss commercial arrangements with respect to the use of the Debtors' other facilities and personal property, and the Debtors hope they will be able to enter into similar arrangements with such other municipalities and counterparties.

The Debtors greatly appreciate the Court's previous offer to make itself available if the parties were unable to resolve this issue. While the Debtors reserve the right to seek the Court's attention with respect to related matters involving the Borough or other parties, we are hopeful the resolution of the Emergency Order with the Borough will facilitate the Debtors' negotiations in similar situations and enable the Debtors to achieve acceptable commercial resolutions while allowing municipalities to ensure their constituents continue to receive essential goods and services.

The Honorable Brendan L. Shannon
United States Bankruptcy Court for the District of Delaware
Page 3

    The Debtors view the transaction described in the Term Sheet as an ordinary course and commercially reasonable post-petition transaction, and as such, the Debtors do not seek Court approval or a hearing at this time with respect to the Term Sheet. Nevertheless, because this matter was raised before the Court at the First Day Hearing, we wanted to keep the Court and other parties-in-interest apprised as to how the matter was resolved.

    The Debtors remain available to address any questions the Court may have in this regard.

    Respectfully submitted,

    KELLER BENVENUTTI KIM LLP

By _____
    Jane Kim

*Proposed Attorneys for Debtors and Debtors in Possession*

Copies (by electronic mail) to:
    David Neier, Esq., counsel for BNP Paribas, as DIP Agent
    Timothy Fox, Esq., Office of the United States Trustee
    Jessica Dillon, Esq., counsel for the North Slope Borough
    Yan Teytelman, Esq., Assistant Borough Attorney for the North Slope Borough

**Exhibit 1**
**Term Sheet**

# TERM SHEET BETWEEN RAVN AIR GROUP, INC. AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION AND NORTH SLOPE BOROUGH REGARDING SUBLEASE OF FACILITIES AND GROUND SUPPORT EQUIPMENT

*This term sheet is not meant to be binding on the parties and is subject in all respects to the execution of definitive documentation (the "Lease") and the satisfaction of certain other conditions, including the approval of the Bankruptcy Court.*

| Lessor and Sublessor | Ravn Air Group, Inc. and its affiliated Debtors and Debtors-in-Possession (collectively, "Ravn" or the "Debtors") |
|---|---|
| Lessee and Sublessee | North Slope Borough ("Lessee") |
| Facilities to be Leased (collectively, the "Facilities") | <ul><li>R-001-241-07 – Blk 100 Lot 7A – Old Terminal/NAC</li><li>White Tent Hangar, Modular Office, two smaller buildings (R-001-241-06, Blk 100 Lot 4A), 12,000 sq. ft.</li><li>New Terminal (R-001-321-04, Blk 300 Lot 4), 5,500 sq. ft. and</li><li>Deadhorse Hanger and terminal office building (R-010-361-19, Blk 900 Lot 13), 9025 sq. ft. hanger and 5700 sq. ft. terminal building</li></ul> |
| Equipment to be Leased (collectively, the "GSE") | Ground support equipment and personal property belonging to the Debtors located on the Facilities as of the Effective Date, other than fuel truck. For the avoidance of doubt, the Lease excludes any bypass mail goods, USPS mail, or personal property belonging to persons other than the Debtors that is stored at the Facilities. |
| Term | Three (3) month, terminable upon thirty (30) days' written notice. Debtors may terminate lease after one month with one (1) week's (7 calendar days) notice in the event of (a) Ravn, any successor to Ravn, or any affiliate of Ravn resumes operations in the Facilities; (b) confirmation of a plan of reorganization or liquidation, or (c) a final sale of the Facilities to another entity that owns or operates an air carrier that intends to provide services to the North Slope Borough residents, (an "Early Termination Event"). |
| Rent | $100,000 per month, payable in advance upon execution of the Term Sheet and every month on the same calendar date thereafter. The rent includes Facilities, GSE, and Department of Transportation Land Leases for the Facilities. |
| Additional Charges | Upon execution of this Term Sheet, Lessee shall pay:<ul><li>One-time facilitation fee of $10,000.</li></ul> |
| Security | Lessee shall be responsible for paying for and maintaining 24-hour security at the Facilities. |
| Utilities | Lessee shall reimburse the Debtors at cost for all utilities. |
| Insurance | Lessee shall demonstrate proof of insurance against liability, loss, or damage to the Facilities and GSE in an amount equal to |

1

| | |
|---|---|
| | the full replacement cost of the Facilities and GSE and shall maintain such insurance throughout the term of the Lease. |
| Indemnification | Lessee shall indemnify, defend, and hold harmless the Debtors, its agents, representatives, and employees from and against any and all liabilities, claims, etc. related to Lessee's use of the Facilities and/or GSE, any condition of the Facilities or GSE due to or resulting from Lessee's use of the Facilities and/or GSE, or any act, omission, or negligence of Lessee or its agents, contractors, employees, licensees, or invitees. |
| Maintenance and Repairs | Lessee shall be solely responsible for maintaining, servicing, and providing for the upkeep of all Facilities and GSE. The Debtors shall not be required to furnish any services or facilities or make any repair or alteration in or to the Facilities or GSE. |
| Liability for Loss | The Debtors shall not be liable for any damage occasioned by the negligence or fault of the Lessee or of any third party, or for damages to Lessee's property as a result of vandalism, flooding, fire, or casualty.<br>Lessee shall reimburse Debtor for any damage or repairs that may be necessary to restore Debtor's facilities, equipment or other property to the condition it was in when the lease began. |
| Hold Harmless | Use of the Facilities and GSE by Lessee, its officers, agents, employees, contractors, customers, and guests shall be at their own risk. |
| Conditions to Effective Date | All necessary approvals and consents, including approval of the United States Bankruptcy Court for the District of Delaware, and execution of the Lease. |
| Early Termination | In the event of termination because of an Early Termination Event or the non-occurrence of the Effective Date, the Debtors shall return any rent paid in advance with respect to the portion of the term that Lessee does not have use of the Facilities and GSE as a result of such termination, on a pro rata basis, less (x) any damages to the Facilities or GSE caused by Lessee or its agents, contractors, employees, licensees, or invitees, and (y) unpaid utilities costs. |
| Access to Facilities | Lessee shall have immediate access to Facilities and GSE upon execution of this Term Sheet and payment of first month's rent. |
| Executive Order | Lessee will rescind Executive Order 06-2020, April 5, 2020, immediately upon execution of the Term Sheet. |
| Joint Press Release | Lessee and Ravn agree to issue a joint press release noting rescission of the Executive Order, sublease of the property by Ravn and its lenders, and the joint cooperation and assistance of all involved in this lease. |

[*Signatures on next page*]

**Ravn Air Group, Inc., on behalf of itself and its affiliated Debtors and Debtors-in-Possession**

By: _____
    John Mannion
    Title: Chief Financial Officer

**North Slope Borough**

By: _____
    Harry K. Brower Jr.
    Title: Mayor

Ravn Air Group, Inc., on behalf of itself and its affiliated Debtors and Debtors-in-Possession

By:_____
    David H. Pflieger, Jr.
    Title: Chief Executive Officer

**North Slope Borough**

By: *[signature: Harry Brower Jr.]*
    Harry K. Brower Jr.
    Title: Mayor

*Approved as to form*
*[signature]*
*Borough attorney*
*4/10/20*