# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

In re: RAVN AIR GROUP, INC., et al.  Chapter 11
Debtor  **Case No. 20-10755 (BLS)**

### INITIAL MONTHLY OPERATING REPORT

**File report and attachments with Court and submit copy to United States Trustee within 15 days after order for relief.**

Certificates of insurance must name United States Trustee as a party to be notified in the event of policy cancellation. Bank accounts and checks must bear the name of the debtor, the case number, and the designation "Debtor in Possession." Examples of acceptable evidence of Debtor in Possession Bank accounts include voided checks, copy of bank deposit agreement / certificate of authority, signature card, and/or corporate checking resolution.

| Required Documents | Document Attached | Explanation Attached |
|---|---|---|
| **Cash Flow Projection** | Exhibit A | |
| **Certificates of Insurance:** | Exhibit B | |
|     Workers Compensation | | |
|     Property | | |
|     General Liability | | |
|     Vehicle | | |
|     Other: | | |
|     Identify areas of self-insurance w/liability caps | | |
| **Evidence of Debtor in Possession Bank Accounts** | Exhibit C | |
|     Tax Escrow Account | | |
|     General Operating Account | | |
|     Money Market Account pursuant to Local Rule 4001-3 | | |
|     Other: | | |
| **Retainers Paid (Form IR-2)** | Exhibit D | |

I declare under penalty of perjury (28 U.S.C. Section 1746) that this report and the documents attached are true and correct to the best of my knowledge and belief.

_____    _____
Signature of Debtor    Date

_____    _____
Signature of Joint Debtor    Date

_____    April 20, 2020
Signature of Authorized Individual*    Date

John J. Mannion, Chief Financial Officer
Printed Name of Authorized Individual Title of Authorized Individual

*Authorized individual must be an officer, director or shareholder if debtor is a corporation; a partner if debtor is a partnership; a manager or member if debtor is a limited liability company.

**Exhibit A: DIP Budget**

**Ravn Air Group, Inc.**
**DIP Cash Flow Forecast**

| Actual/Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Forecast | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Start Date | 4/6/20 | 4/11/20 | 4/18/20 | 4/25/20 | 5/2/20 | 5/9/20 | 5/16/20 | 5/23/20 | 5/30/20 | 6/6/20 | 6/13/20 | 4/6/20 |
| End Date | 4/10/20 | 4/17/20 | 4/24/20 | 5/1/20 | 5/8/20 | 5/15/20 | 5/22/20 | 5/29/20 | 6/5/20 | 6/12/20 | 6/19/20 | 6/19/20 |
| **Total Cash Receipts** | $ 930,000 | $ 1,080,000 | $ 1,125,000 | $ 280,000 | $ 295,000 | $ 260,000 | $ 155,000 | $ 120,000 | $ 305,000 | $ 115,000 | $ 10,000 | $ 4,675,000 |
| **Operating Disbursements** | | | | | | | | | | | | |
| Payroll and benefits | $ (6,520,000) | $ - | $ (165,000) | $ - | $ (170,000) | $ - | $ (190,000) | $ - | $ (170,000) | $ - | $ (545,000) | $ (7,760,000) |
| Rent | (110,000) | - | - | (130,000) | - | - | - | - | (120,000) | - | - | (360,000) |
| Utilities | - | (50,000) | - | - | - | (50,000) | - | - | - | (50,000) | - | (150,000) |
| Excise Tax | - | - | - | - | - | - | - | - | - | - | (320,000) | (320,000) |
| Insurance | - | - | (1,500,000) | (200,000) | - | - | - | - | (200,000) | - | - | (1,900,000) |
| Ordinary Course Professionals | - | (10,000) | - | (10,000) | - | - | - | - | (10,000) | - | - | (30,000) |
| Other - Contingency | (75,000) | (75,000) | (75,000) | (75,000) | (75,000) | (75,000) | (75,000) | (75,000) | (75,000) | (75,000) | (75,000) | (825,000) |
| **Total Operating Disbursements** | $ (6,705,000) | $ (135,000) | $ (1,740,000) | $ (415,000) | $ (245,000) | $ (125,000) | $ (265,000) | $ (75,000) | $ (575,000) | $ (125,000) | $ (940,000) | $ (11,345,000) |
| **Operating Cash Flow** | $ (5,775,000) | $ 945,000 | $ (615,000) | $ (135,000) | $ 50,000 | $ 135,000 | $ (110,000) | $ 45,000 | $ (270,000) | $ (10,000) | $ (930,000) | $ (6,670,000) |
| **Non-Operating Disbursements** | | | | | | | | | | | | |
| Interest & fees | $ (560,000) | $ - | $ - | $ (51,000) | $ - | $ - | $ - | $ - | $ (101,000) | $ - | $ (71,000) | $ (783,000) |
| Professional fees | (355,000) | - | - | (60,000) | (315,000) | - | - | - | (1,015,000) | (315,000) | (2,990,000) | (5,050,000) |
| U.S. Trustee fees | - | - | - | - | - | - | - | - | - | - | (250,000) | (250,000) |
| **Total Non-Operating Disbursements** | $ (915,000) | $ - | $ - | $ (111,000) | $ (315,000) | $ - | $ - | $ - | $ (1,116,000) | $ (315,000) | $ (3,311,000) | $ (6,083,000) |
| **Net Cash Flow** | $ (6,690,000) | $ 945,000 | $ (615,000) | $ (246,000) | $ (265,000) | $ 135,000 | $ (110,000) | $ 45,000 | $ (1,386,000) | $ (325,000) | $ (4,241,000) | $ (12,753,000) |
| **Cash Position:** | | | | | | | | | | | | |
| Beginning Cash Balance - Book | $ 1,090,000 | $ 400,000 | $ 1,345,000 | $ 730,000 | $ 484,000 | $ 219,000 | $ 6,354,000 | $ 6,244,000 | $ 6,289,000 | $ 4,903,000 | $ 4,578,000 | $ 1,090,000 |
| Plus Receipts | 930,000 | 1,080,000 | 1,125,000 | 280,000 | 295,000 | 260,000 | 155,000 | 120,000 | 305,000 | 115,000 | 10,000 | 4,675,000 |
| Less Disbursements | (7,620,000) | (135,000) | (1,740,000) | (526,000) | (560,000) | (125,000) | (265,000) | (75,000) | (1,691,000) | (440,000) | (4,251,000) | (17,428,000) |
| DIP facility draws / (repayments) | 6,000,000 | - | - | - | - | 6,000,000 | - | - | - | - | - | 12,000,000 |
| **Ending Cash Balance - Book** | $ 400,000 | $ 1,345,000 | $ 730,000 | $ 484,000 | $ 219,000 | $ 6,354,000 | $ 6,244,000 | $ 6,289,000 | $ 4,903,000 | $ 4,578,000 | $ 337,000 | $ 337,000 |

**Exhibit B: Certificates of Insurance**



# CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
04/15/2020

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

**IMPORTANT:** If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Gayla L. Guest, Area Vice President | |
|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | FAX (A/C, No): 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | |
| 9515 Hillwood Dr. | INSURER(S) AFFORDING COVERAGE | NAIC # |
| Las Vegas                          NV  89134 | INSURER A: New Hampshire Insurance Company | |
| **INSURED** | INSURER B: | |
| Ravn Alaska, Hageland Aviation Services, Inc., et al | INSURER C: | |
| | INSURER D: | |
| 4700 Old International Airport Rd. | INSURER E: | |
| Anchorage                          AK  99502 | INSURER F: | |

| COVERAGES | CERTIFICATE NUMBER: | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **COMMERCIAL GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE  ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY  ☐ PRO-JECT  ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | OTHER: | | | | | | | $ |
| A | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY  ☐ SCHEDULED AUTOS | Y | | 01-CA-019047092-7 | 04/15/2019 | 05/31/2020 | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY  ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB  ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB  ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED  ☐ RETENTION $ | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** ☐ Y / N | | | | | | ☐ PER STATUTE  ☐ OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | N/A | | | | | E.L. EACH ACCIDENT | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)**

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| State of Alaska, Department of Natural Resources | **AUTHORIZED REPRESENTATIVE** |
| 550 West 7th Avenue, Suite 1230 | |
| Anchorage                          AK  99501 | Bradley A. Meinhardt, Area Executive Vice President, Nat'l Producer #2730043 |

© 1988-2015 ACORD CORPORATION. All rights reserved.

**ACORD 25 (2016/03)**          The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 04/15/2020 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT:  If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed.  If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Gayla L. Guest, Area Vice President | | |
|---|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | | FAX (A/C, No): 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | | |
| 9515 Hillwood Dr. | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| Las Vegas          NV  89134 | INSURER A : New Hampshire Insurance Company | | |
| INSURED | INSURER B : | | |
| Ravn Air Group Holdings, LLC, Corvus Airlines, Inc.,and | INSURER C : | | |
| Peninsula Aviation Services, Inc., et al | INSURER D : | | |
| 4700 Old International Airport Rd. | INSURER E : | | |
| Anchorage          AK  99502 | INSURER F : | | |

## COVERAGES          CERTIFICATE NUMBER:          REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | COMMERCIAL GENERAL LIABILITY | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE  ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY  ☐ PRO-JECT  ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | OTHER: | | | | | | | $ |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| A | ☐ OWNED AUTOS ONLY  ☐ SCHEDULED AUTOS | Y | | 01-CA-019047092-7 | 04/15/2019 | 05/31/2020 | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY  ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB  ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB  ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED  ☐ RETENTION $ | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY  Y / N | | | | | | ☐ PER STATUTE  ☐ OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | N/A | | | | | E.L. EACH ACCIDENT | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES  (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Location:  Lot 1A, Block 23, Cold Bay, Alaska

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| Aleutians East Borough | |
| 3380 C St., Suite 205 | AUTHORIZED REPRESENTATIVE |
| Anchorage          AK  99503 | Bradley A. Meinhardt, Area Executive Vice President, Nat'l  Producer #2730043 |

© 1988-2015 ACORD CORPORATION.  All rights reserved.

ACORD 25 (2016/03)          The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
04/15/2020

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Gayla L. Guest, Area Vice President | | |
|---|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | | FAX (A/C, No): 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | | |
| 9515 Hillwood Dr. | **INSURER(S) AFFORDING COVERAGE** | | NAIC # |
| Las Vegas                       NV   89134 | INSURER A : New Hampshire Insurance Company | | |
| **INSURED** | INSURER B : | | |
| Ravn Alaska, Hageland Aviation Services, Inc., et al | INSURER C : | | |
| | INSURER D : | | |
| 4700 Old International Airport Rd. | INSURER E : | | |
| Anchorage                        AK   99502 | INSURER F : | | |

## COVERAGES          CERTIFICATE NUMBER:                    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **COMMERCIAL GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE  ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | OTHER: | | | | | | | $ |
| A | **AUTOMOBILE LIABILITY** | | | 01-CA-019047092-7 | 04/15/2019 | 05/31/2020 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y / N | | | | | | ☐ PER STATUTE ☐ OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? ☐ (Mandatory in NH) | N/A | | | | | E.L. EACH ACCIDENT | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Reference: 2002 International Fuel Truck, VIN #1HTSCABN02H520155

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| Crowley Maritime Corporation | |
| 9487 Regency Square Blvd. | **AUTHORIZED REPRESENTATIVE** |
| Jacksonville                    FL   32225 | Bradley A. Meinhardt, Area Executive Vice President, Nat'l Producer #2730043 |

© 1988-2015 ACORD CORPORATION. All rights reserved.

**ACORD 25 (2016/03)**          The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 04/15/2020 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Gayla L. Guest, Area Vice President | | |
|---|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | | FAX (A/C, No): 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | | |
| 9515 Hillwood Dr. | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| Las Vegas                    NV   89134 | INSURER A : New Hampshire Insurance Company | | |
| INSURED | INSURER B : | | |
| Ravn Air Group Holdings, LLC, Corvus Airlines, Inc.,and | INSURER C : | | |
| Peninsula Aviation Services, Inc., et al | INSURER D : | | |
| 4700 Old International Airport Rd. | INSURER E : | | |
| Anchorage                    AK   99502 | INSURER F : | | |

| COVERAGES | CERTIFICATE NUMBER: | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **COMMERCIAL GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | OTHER: | | | | | | | $ |
| A | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | ☑ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | Y | | 01-CA-069968135-6 | 04/15/2019 | 05/31/2020 | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ **UMBRELLA LIAB** ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ **EXCESS LIAB** ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y / N | N/A | | | | | ☐ PER STATUTE ☐ OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | | | | | | E.L. EACH ACCIDENT | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Vehicles:          2006 Ford Expedition, VIN #1FMPU16586LA93591          2005 Chevrolet Avalanche, VIN #3GNEK12Z65G221307

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| Massachusetts Port Authority | |
| 1 Harborside Drive | AUTHORIZED REPRESENTATIVE |
| East Boston                    MA   02128 | Bradley A. Meinhardt, Area Executive Vice President, Nat'l  Producer #2730043 |

© 1988-2015 ACORD CORPORATION.  All rights reserved.

ACORD 25 (2016/03)          The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
04/15/2020

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Gayla L. Guest, Area Vice President | | |
|---|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | | FAX (A/C, No): 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | | |
| 9515 Hillwood Dr. | **INSURER(S) AFFORDING COVERAGE** | | NAIC # |
| Las Vegas                          NV   89134 | INSURER A : Travelers Property Casualty Company of America | | |
| **INSURED** | INSURER B : | | |
| Ravn Air Group Holdings, LLC, Corvus Airlines, Inc., et al | INSURER C : | | |
| | INSURER D : | | |
| 4700 Old International Airport Rd. | INSURER E : | | |
| Anchorage                          AK   99502 | INSURER F : | | |

## COVERAGES      CERTIFICATE NUMBER:      REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **COMMERCIAL GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE  ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY  ☐ PRO-JECT  ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ OTHER: | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| A | ☐ OWNED AUTOS ONLY  ☐ SCHEDULED AUTOS | Y | | 01-CA-019047092-7 | 04/15/2019 | 05/31/2020 | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY  ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB  ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB  ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED  ☐ RETENTION $ | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**  Y / N | | | | | | ☐ PER STATUTE  ☐ OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | N / A | | | | | E.L. EACH ACCIDENT | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)**

Oil Search (Alaska) LLC is included as an additional insured.

Agreement: OSA00000

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| Oil Search (Alaska) LLC  510 L Street  Suite 310  Anchorage                          AK   99501 | **AUTHORIZED REPRESENTATIVE**  Bradley A. Meinhardt, Area Executive Vice President, Nat'l Producer #2730043 |

© 1988-2015 ACORD CORPORATION. All rights reserved.

**ACORD 25 (2016/03)**      The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
04/15/2020

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Gayla L. Guest, Area Vice President | | |
|---|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | | FAX (A/C, No): 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | | |
| 9515 Hillwood Dr. | **INSURER(S) AFFORDING COVERAGE** | | NAIC # |
| Las Vegas                          NV   89134 | INSURER A : New Hampshire Insurance Company | | |
| **INSURED** | INSURER B : | | |
| Ravn Air Group Holdings, LLC, Corvus Airlines, Inc.,and | INSURER C : | | |
| Peninsula Aviation Services, Inc., et al | INSURER D : | | |
| 4700 Old International Airport Rd. | INSURER E : | | |
| Anchorage                          AK   99502 | INSURER F : | | |

## COVERAGES                CERTIFICATE NUMBER:                REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **COMMERCIAL GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ OTHER: | | | | | | | $ |
| A | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | Y | | 01-CA-019047092-7 | 04/15/2019 | 05/31/2020 | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ **UMBRELLA LIAB** ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ **EXCESS LIAB** ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y / N | | | | | | ☐ PER STATUTE ☐ OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? | N / A | | | | | E.L. EACH ACCIDENT | $ |
| | (Mandatory in NH) If yes, describe under | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)**

Re Agreements: ADA-90744, ADA-01351, ADA-31879 (PW# 103684), ADA-32008 (PW# 105052) , ADA-02847 & ADA-31815. / ADA-30562 (PW#-103569)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| Ted Stevens Anchorage International Airport Leasing & Property Management PO Box 196960 | **AUTHORIZED REPRESENTATIVE** |
| Anchorage                          AK   99519 | Bradley A. Meinhardt, Area Executive Vice President, Nat'l  Producer #2730043 |

© 1988-2015 ACORD CORPORATION.  All rights reserved.

**ACORD 25 (2016/03)**          The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 04/15/2020 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Gayla L. Guest, Area Vice President | | |
|---|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | | FAX (A/C, No): 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | | |
| 9515 Hillwood Dr. | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| Las Vegas                    NV  89134 | INSURER A: New Hampshire Insurance Company | | |
| INSURED | INSURER B: | | |
| Ravn Air Group Holdings, LLC, Corvus Airlines, Inc., et al | INSURER C: | | |
| | INSURER D: | | |
| 4700 Old International Airport Rd. | INSURER E: | | |
| Anchorage                    AK  99502 | INSURER F: | | |

## COVERAGES          CERTIFICATE NUMBER:          REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **COMMERCIAL GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ OTHER: | | | | | | | $ |
| A | **AUTOMOBILE LIABILITY** | | | 01-CA-019047092-7 | 04/15/2019 | 05/31/2020 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ **UMBRELLA LIAB** ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ **EXCESS LIAB** ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**           Y / N | | | | | | ☐ PER STATUTE ☐ OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? ☐ | N/A | | | | | E.L. EACH ACCIDENT | $ |
| | (Mandatory in NH) If yes, describe under | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| To Whom It May Concern | AUTHORIZED REPRESENTATIVE |
| | Bradley A. Meinhardt, Area Executive Vice President, Nat'l Producer #2730043 |

© 1988-2015 ACORD CORPORATION. All rights reserved.

**ACORD 25 (2016/03)**          The ACORD name and logo are registered marks of ACORD

® 

# EVIDENCE OF PROPERTY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 04/15/2020 |

**THIS EVIDENCE OF PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST NAMED BELOW. THIS EVIDENCE OF PROPERTY INSURANCE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.**

| AGENCY | COMPANY |
|---|---|
| **PHONE (A/C, No, Ext):** 702-647-2333 | |
| Arthur J. Gallagher Risk Management Services, Inc. | New Hampshire Insurance Company |
| 9515 Hillwood Drive | through Preferred Aviation Underwriter |
| Las Vegas, NV 89134 | |

| **FAX (A/C, No):** 702-647-5433 | **E-MAIL ADDRESS:** |
|---|---|
| CODE: | SUB CODE: |
| AGENCY CUSTOMER ID #: | |

| INSURED | | |
|---|---|---|
| Ravn Air Group Holdings, LLC, Peninsula Aviation Services, Inc. dba PenAir, et al 4700 Old International Airport Road Anchorage, AK 99502 | | |

| LOAN NUMBER | | POLICY NUMBER |
|---|---|---|
| | | 01-LX-066143056-7 |

| EFFECTIVE DATE | EXPIRATION DATE | |
|---|---|---|
| 04/15/2019 | 05/31/2020 | ☐ CONTINUED UNTIL TERMINATED IF CHECKED |

THIS REPLACES PRIOR EVIDENCE DATED:

## PROPERTY INFORMATION

**LOCATION/DESCRIPTION**

Lot 2B, Block 1, King Salmon, AK 99613

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS EVIDENCE OF PROPERTY INSURANCE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

## COVERAGE INFORMATION

| COVERAGE/PERILS/FORMS | AMOUNT OF INSURANCE | DEDUCTIBLE |
|---|---|---|
| Building | $2,241,947 | $1,000 |
| Business Personal Property | $500,000 | $1,000 |
| Business Personal Property - EDP | $250,000 | $1,000 |

## REMARKS (Including Special Conditions)

Regarding: Purchase Agreement and Assignment of Lease / State of Alaska, Department of Transportation Ground Lease Agreement No. ADA-04250

## CANCELLATION

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL  10  DAYS WRITTEN NOTICE TO THE ADDITIONAL INTEREST NAMED BELOW, BUT FAILURE TO MAIL SUCH NOTICE SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES.

## ADDITIONAL INTEREST

| NAME AND ADDRESS | ☐ MORTGAGEE  ✓ ADDITIONAL INSURED |
|---|---|
| AKN Leasing, LLC PO Box 777 King Salmon, AK 99613 | ☐ LOSS PAYEE |
| | LOAN # |
| | AUTHORIZED REPRESENTATIVE |
| | Bradley A. Meinhardt, National Producer #2730043 |

ACORD 27 (2006/07)

© ACORD CORPORATION 1993-2006. All rights reserved.
The ACORD name and logo are registered marks of ACORD

 **ACORD**®

# EVIDENCE OF PROPERTY INSURANCE

**DATE (MM/DD/YYYY)**
04/29/2019

THIS EVIDENCE OF PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST NAMED BELOW.  THIS EVIDENCE OF PROPERTY INSURANCE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

| AGENCY | COMPANY |
|---|---|
| **PHONE (A/C, No, Ext):** 702-647-2333<br>Arthur J. Gallagher Risk Management Services, Inc.<br>9515 Hillwood Drive<br>Las Vegas, NV 89134<br><br>**FAX (A/C, No):** 702-647-5433   **E-MAIL ADDRESS:** | New Hampshire Insurance Company<br>through Preferred Aviation Underwriter |

| CODE: | SUB CODE: |
|---|---|

**AGENCY CUSTOMER ID #:**

| INSURED | |
|---|---|
| Ravn Air Group Holdings, LLC, Peninsula Aviation Services, Inc. dba PenAir, et al<br>4700 Old International Airport Road<br>Anchorage, AK 99502 | **LOAN NUMBER** |

| | POLICY NUMBER |
|---|---|
| | 01-LX-066143056-7 |

| EFFECTIVE DATE | EXPIRATION DATE | |
|---|---|---|
| 04/15/2019 | 04/15/2020 | ☐ CONTINUED UNTIL TERMINATED IF CHECKED |

**THIS REPLACES PRIOR EVIDENCE DATED:**

## PROPERTY INFORMATION

**LOCATION/DESCRIPTION**

Lot 2B, Block 1, King Salmon, AK 99613

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS EVIDENCE OF PROPERTY INSURANCE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES.  LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

## COVERAGE INFORMATION

| COVERAGE/PERILS/FORMS | AMOUNT OF INSURANCE | DEDUCTIBLE |
|---|---|---|
| Building | $2,241,947 | $1,000 |
| Business Personal Property | $500,000 | $1,000 |
| Business Personal Property - EDP | $250,000 | $1,000 |

## REMARKS (Including Special Conditions)

Regarding:  Purchase Agreement and Assignment of Lease / State of Alaska, Department of Transportation Ground Lease Agreement No. ADA-04250

## CANCELLATION

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL  10  DAYS WRITTEN NOTICE TO THE ADDITIONAL INTEREST NAMED BELOW, BUT FAILURE TO MAIL SUCH NOTICE SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES.

## ADDITIONAL INTEREST

| NAME AND ADDRESS | | |
|---|---|---|
| AKN Leasing, LLC<br>PO Box 777<br>King Salmon, AK 99613 | ☐ MORTGAGEE<br>☐ LOSS PAYEE | ☑ ADDITIONAL INSURED |
| | LOAN # | |

**AUTHORIZED REPRESENTATIVE**
Bradley A. Meinhardt, National Producer #2730043

**ACORD 27 (2006/07)**

© ACORD CORPORATION 1993-2006.  All rights reserved.
The ACORD name and logo are registered marks of ACORD

® **EVIDENCE OF PROPERTY INSURANCE**

| | DATE (MM/DD/YYYY) |
|---|---|
| | 04/15/2020 |

THIS EVIDENCE OF PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST NAMED BELOW.  THIS EVIDENCE OF PROPERTY INSURANCE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

| AGENCY | COMPANY |
|---|---|
| **PHONE (A/C, No, Ext):** 702-647-2333 | |
| Arthur J. Gallagher Risk Management Services, Inc.<br>9515 Hillwood Drive<br>Las Vegas, NV 89134 | New Hampshire Insurance Company<br>through Preferred Aviation Underwriter |
| **FAX (A/C, No):** 702-647-5433  **E-MAIL ADDRESS:** | |
| **CODE:**                **SUB CODE:** | |
| **AGENCY CUSTOMER ID #:** | |

| INSURED | LOAN NUMBER | POLICY NUMBER |
|---|---|---|
| Ravn Air Group Holdings, LLC, Peninsula Aviation Services, Inc. dba PenAir, et al<br>4700 Old International Airport Road<br>Anchorage, AK 99502 | 118544593 | 01-LX-066143056-7 |

| EFFECTIVE DATE | EXPIRATION DATE | |
|---|---|---|
| 04/15/2019 | 05/31/2020 | ☐ CONTINUED UNTIL TERMINATED IF CHECKED |

THIS REPLACES PRIOR EVIDENCE DATED:

**PROPERTY INFORMATION**

LOCATION/DESCRIPTION

See Attached

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS EVIDENCE OF PROPERTY INSURANCE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES.  LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

**COVERAGE INFORMATION**

| COVERAGE/PERILS/FORMS | AMOUNT OF INSURANCE | DEDUCTIBLE |
|---|---|---|
| See Attached | | |

**REMARKS (Including Special Conditions)**

**CANCELLATION**

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL  10   DAYS WRITTEN NOTICE TO THE ADDITIONAL INTEREST NAMED BELOW, BUT FAILURE TO MAIL SUCH NOTICE SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES.

**ADDITIONAL INTEREST**

| NAME AND ADDRESS | | |
|---|---|---|
| BNP Paribas, as Administrative Agent, together with its successors and assigns<br>787 Seventh Avenue<br>New York, NY 10019 | ☐ MORTGAGEE          ☐ ADDITIONAL INSURED<br>☑ LOSS PAYEE<br>LOAN # | |
| | **AUTHORIZED REPRESENTATIVE**<br>Bradley A. Meinhardt, National Producer #2730043 | |

ACORD 27 (2006/07)

© ACORD CORPORATION 1993-2006.  All rights reserved.<br>The ACORD name and logo are registered marks of ACORD

Ravn Air & PenAir Property Coverage
April 15, 2020 to April 15, 2021

| Location | Coverage | | Building Value | PPO Value | YBPP Value | YBPP - EDP Value |
|---|---|---|---|---|---|---|
| Aniak Airport, Lot 9A, Block 10* | Storage Building | Building | $ 95,179 | | | |
| | | PPO | | $ 20,000 | | |
| | | YBPP | | | $ 20,000 | |
| Aniak Airport, Lot 9A, Block 10* | Terminal/Freight Holding | Building | $ 750,000 | | | |
| | | YBPP | | | $ 40,000 | |
| Anchorage Int'l Airport, 4700 Old Int'l Airport Rd. | Office/Hangar | YBPP | | | $ 250,000 | |
| | | YBPP | | | $ 987,000 | |
| Anchorage Int'l Airport, 4700 Old Int'l Airport Rd. | Airport Terminal | YBPP | | | $ 80,000 | |
| Anchorage Int'l Airport, 4500 W. 50th Ave. | Office/Training Facitlity | Building | $ 693,375 | | | |
| | | PPO | | $ 20,000 | | |
| | | YBPP | | | $ 40,000 | |
| Wiley Post Airport, Lot 5, Block 300 | Psgr & Cargo Terminal/ Hangar | Building | $ 692,699 | | | |
| | | PPO | | $ 20,000 | | |
| | | YBPP | | | $ 7,500 | |
| Wiley Post Airport, Lot 2, Block 100 | Hangar/Office | Building | $ 1,500,000 | | | |
| | | PPO | | $ 20,000 | | |
| | | YBPP | | | $ 100,000 | |
| Wiley Post Airport, Lot 4A, Block 100 | Freight Building/Cold Storage | Building | $ 150,246 | | | |
| | | YBPP | | | $ 20,000 | |
| Will Rogers Memorial Airport, Lot 4A, Block 100 | Shell Hangar | Building | $ 4,500,000 | | | |
| Wiley Post Airport, Lot 4, Block 300 | Terminal | Building | $ 1,500,000 | | | |
| | | PPO | | $ 20,000 | | |
| | | YBPP | | | $ 100,000 | |
| Wiley Post Airport, 6008 Boxer St. | Duplex - Pilot Housing | Building | $ 393,267 | | | |
| Wiley Post Airport, 2063 Ahkovak St. | Pilot Housing | Building | $ 230,000 | | | |
| | | YBPP | | | $ 20,000 | |
| Wiley Post Airport, Lot 7, Block 100 | Hangar/Terminal/Storage | Building | $ 1,200,000 | | | |
| | | PPO | | $ 20,000 | | |
| | | YBPP | | | $ 175,000 | |
| Bethel Airport, Lot 5 & 6A, Block 7* | Hangar | Building | $ 1,000,000 | | | |
| | | PPO | | $ 20,000 | | |
| | | YBPP | | | $ 50,000 | |
| Bethel Airport, Lot 7A & 7B, Block 7* | Hanger/Maint/Psgr/Cargo/ | Building | $ 1,500,000 | | | |

| Location | Description | Type | Building | PPO | YBPP | |
|---|---|---|---|---|---|---|
| | Mail | PPO | | $ 20,000 | | |
| | | YBPP | | | $ 90,000 | |
| Bethel Airport, Lot 5, Block 7* | New Hangar/Building | Building | $ 1,900,000 | | | |
| | | YBPP | | | $ 40,000 | |
| Bethel Airport, Lot 6, Block 1 | Pilot Housing | Building | $ 426,000 | | | |
| | | YBPP | | | $ 20,000 | |
| Bethel Airport, Lot 11E, Block 4* | | Building | $ 3,720,470 | | | |
| | | PPO | | $ 20,000 | | |
| | | YBPP | | | $ 40,000 | |
| Bethel Inn, 454 Ptarmigan | Pilot Housing | Building | $ 600,000 | | | |
| Bethel, 616 Ptarmigan | Duplex - Pilot Housing | Building | $ 400,000 | | | |
| Bethel, Larson House, 4401 Mikengayak Rd. | Duplex - Pilot Housing | Building | $ 400,000 | | | |
| Fairbanks Airport, 6302 Old Airport Road | Psgr Holding & Check In | YBPP | | | $ 40,000 | |
| Fairbanks Airport, 5245 Airport Ind Rd., Lot 8A | Hangar | Building | $ 3,759,990 | | | |
| | | PPO | | $ 20,000 | | |
| | | YBPP | | | $ 800,000 | |
| Fairbanks Airport, 5245 Airport Ind Rd., Lot 8A | Hangar/Freight | Building | $ 500,000 | | | |
| | | YBPP | | | | $ 120,000 |
| Fairbanks Airport, 5246 Airport Ind Rd., Lot 8A | Parts Warehouse | Building | $ 200,000 | | | |
| Edward G. Pitka Sr. Airport, Lot 1, Block 12 | Storage Hangar | Building | $ 100,000 | | | |
| Homer Airport, 3720 FAA Rd., Lot 5A, Block 800 | Airport Terminal/Office | YBPP | | | $ 40,000 | |
| Kenai Municipal Airport, 403 N. Willow #3 | Airport Terminal/Office | YBPP | | | $ 40,000 | |
| Kenai Municipal Airport, 403 N. Willow #3 | Storage/Warehouse | YBPP | | | $ 40,000 | |
| Kodiak State Airport, Lot 1A, Block 1600 | Storage/Warehouse | YBPP | | | $ 10,000 | |
| Kodiak State Airport, Lot 1A, Block 1601 | Airport Terminal/Ticket | YBPP | | | $ 40,000 | |
| Nome Airport, Lot 9, Block 11 | Hangar/Maint/Psgr Terminal | Building | $ 1,500,000 | | | |
| | | PPO | | $ 20,000 | | |
| | | YBPP | | | $ 40,000 | |
| Nome Airport, Lot 4A, Block 11 | Mail/Freight Storage | Building | $ 233,819 | | | |
| Nome Airport, Lot 4A, Block 11 | Pilot Housing | Building | $ 837,539 | | | |
| | | YBPP | | | $ 20,000 | |
| Nome Airport, Lot 9, Block 11 | Hangar | Building | $ 712,915 | | | |
| | | YBPP | | | $ 20,000 | |
| Palmer Municipal Airport, 801 E. Cope Industrial* | Hangar/Offices | Building | $ 2,000,000 | | | |
| | | PPO | | $ 20,000 | | |
| | | YBPP | | | $ 40,000 | |
| St. Mary's Airport, Lot 4, Block 200 | Hangar/Maint/Psgr Terminal | Building | $ 900,000 | | | |
| | | PPO | | $ 20,000 | | |
| | | YBPP | | | $ 20,000 | |

| Property | Description | Type | Building | PPO | YBPP |
|---|---|---|---|---|---|
| City of St. Mary's, Lot 10, Block 6 | Dwelling | Building | $ 375,000 | | |
| St. Mary's Airport, Lot 3A, Block 900 | Storage/Aircraft | Building | $ 640,000 | | |
| Unalakleet Airport, Block 4* | Hangar/Psgr Terminal/Offices | Building | $ 750,000 | | |
| | | PPO | | $ 20,000 | |
| | | YBPP | | | $ 50,000 |
| Valdez Pioneer Field, 300 Airport Rd. | Termina/Ticket Counter | YBPP | | | $ 40,000 |
| Galena Airport, Lot 7 & 8, Block 10* | Psgr Terminal/Warehouse | Building | $ 750,000 | | |
| | | PPO | | $ 20,000 | |
| | | YBPP | | | $ 50,000 |
| Ralph Wien Memorial Airport, Lot 5, Block 3* | Terminal/Hangar/Office | Building | $ 2,250,000 | | |
| | | PPO | | $ 20,000 | |
| | | YBPP | | | $ 50,000 |
| Deadhorse Airport, Lot 13 & 14, Block 900 | Terminal/Hangar/Office | Building | $ 2,250,000 | | |
| | | PPO | | $ 20,000 | |
| | | YBPP | | | $ 50,000 |
| Palmer Municipal Airport, 801 E. Cope Industrial* | Offices/Storage | Building | $ 800,000 | | |
| | | PPO | | $ 20,000 | |
| | | YBPP | | | $ 50,000 |
| Anchorage Int'l Airport, 6000 Boeing Avenue | Hangar | Building | $ 4,300,000 | | |
| | | YBPP - EDP | | | $ 400,000 |
| | | YBPP | | | $ 75,000 |
| Anchorage Int'l Airport, 6100 Boeing Avenue | Hangar/Office | Building | $ 6,200,000 | | |
| | | YBPP | | | $ 1,000,000 |
| Cold Bay Airport, Lot 3B, Block 3 | Hangar/Office/Apartments | Building | $ 1,087,461 | | |
| | | YBPP | | | $ 40,000 |
| Cold Bay Airport, Lot 3B, Block 3 | Warehouse/Freight | Building | $ 512,000 | | |
| | | YBPP | | | $ 10,000 |
| Cold Bay Airport, Parcel 4 & 5 | Dwelling | Building | $ 610,000 | | |
| | | YBPP | | | $ 15,000 |
| Cold Bay Airport, Parcel 5 & 6 | Dwelling | Building | $ 610,000 | | |
| | | YBPP | | | $ 15,000 |
| Cold Bay Airport, Parcel 7 | Dwelling | Building | $ 335,000 | | |
| | | YBPP | | | $ 25,000 |
| Cold Bay Airport, Lot 1A, Block 23 | Terminal | YBPP | | | $ 50,000 |
| King Salmon Airport, Lot 1A, Block 1 | Hangar/Office/Gift Shop | Building | $ 1,500,000 | | |
| | | YBPP | | | $ 150,000 |
| King Salmon Airport, Lot 1A, Block 1 | Hangar/Storage | Building | $ 750,000 | | |
| | | YBPP | | | $ 25,000 |
| King Salmon Airport, Lot 2B, Block 1 | Terminal/Storage | Building | $ 2,241,947 | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | YBPP | | | $ 500,000 | |
| | | YBPP - EDP | | | | $ 250,000 |
| Dillingham Airport, Lot 4B, Block 500 | Terminal/Hangar | Building | $ 820,000 | | | |
| | | YBPP | | | $ 50,000 | |
| Sand Point Airport, Lot 5 Block 100 | Terminal | Building | $ 800,000 | | | |
| | | YBPP | | | $ 15,000 | |
| Boston Logan Int'l Airport, Terminal B Gates* | Terminal/Gates | YBPP | | | $ 25,000 | |
| St. Paul Airport | Terminal | YBPP | | | $ 10,000 | |
| Unalaska Airport Terminal | Terminal | YBPP | | | $ 10,000 | |
| Anchorage Int'l Airport, 5000 W Int'l Road | Terminal | YBPP | | | $ 40,000 | |
| | | | $ 59,976,907 | $ 360,000 | $ 5,574,500 | $ 770,000 |

| | |
|---|---|
| Total Buildings & Personal Property; subject to a $1,000 Deductible | $ 68,786,228 |
| Business Income/Extra Expense | $ 4,105,000 |
| Flood  (* Certain builidngs not covered); subject to a $250,000 Deductible | $ 5,000,000 |
| Terrorism Coverage | Included |
| Scheduled Equipment & Unscheduled Equipment ($100,000 Limit) | Included |

* Excluded from Flood coverage:  Boston Airport, Aniak, Bethel, Palmer, Unalakleet, Galena & Kotzebue

 ACORD®

# EVIDENCE OF PROPERTY INSURANCE

**DATE (MM/DD/YYYY)**
04/15/2020

THIS EVIDENCE OF PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST NAMED BELOW. THIS EVIDENCE OF PROPERTY INSURANCE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

| AGENCY | PHONE (A/C, No, Ext): 702-647-2333 | COMPANY |
|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc.<br>9515 Hillwood Drive<br>Las Vegas, NV 89134 | | New Hampshire Insurance Company<br>through Preferred Aviation Underwriter |

| FAX (A/C, No): 702-647-5433 | E-MAIL ADDRESS: | |
|---|---|---|
| CODE: | SUB CODE: | |
| AGENCY CUSTOMER ID #: | | |

| INSURED | LOAN NUMBER | POLICY NUMBER |
|---|---|---|
| Ravn Air Group Holdings, LLC, Peninsula Aviation Services, Inc. dba PenAir, et al<br>4700 Old International Airport Road<br>Anchorage, AK 99502 | 118544593 | 01-LX-066143056-7 |

| EFFECTIVE DATE | EXPIRATION DATE | |
|---|---|---|
| 04/15/2019 | 05/31/2020 | ☐ CONTINUED UNTIL TERMINATED IF CHECKED |
| THIS REPLACES PRIOR EVIDENCE DATED: | | |

## PROPERTY INFORMATION

**LOCATION/DESCRIPTION**

6000 Boeing Avenue, Anchorage, AK and 6100 Boeing Avenue, Anchorage, AK

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS EVIDENCE OF PROPERTY INSURANCE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

## COVERAGE INFORMATION

| COVERAGE/PERILS/FORMS | AMOUNT OF INSURANCE | DEDUCTIBLE |
|---|---|---|
| Building @ 6000 Boeing Avenue | $4,300,000 | $5,000 |
| Building @ 6100 Boeing Avenue | $6,200,000 | $5,000 |

## REMARKS (Including Special Conditions)

## CANCELLATION

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL 10 DAYS WRITTEN NOTICE TO THE ADDITIONAL INTEREST NAMED BELOW, BUT FAILURE TO MAIL SUCH NOTICE SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES.

## ADDITIONAL INTEREST

| NAME AND ADDRESS | | |
|---|---|---|
| First National Bank of Alaska ISAOA<br>PO Box 2070<br>Everett, WA 98213 | ☐ MORTGAGEE<br>☑ LOSS PAYEE | ☐ ADDITIONAL INSURED |
| | LOAN #<br>118544593 | |
| | AUTHORIZED REPRESENTATIVE<br>Bradley A. Meinhardt, National Producer #2730043 | |

**ACORD 27 (2006/07)**

© ACORD CORPORATION 1993-2006. All rights reserved.
The ACORD name and logo are registered marks of ACORD



# EVIDENCE OF PROPERTY INSURANCE

**DATE (MM/DD/YYYY)**
04/26/2019

THIS EVIDENCE OF PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST NAMED BELOW. THIS EVIDENCE OF PROPERTY INSURANCE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

| AGENCY | COMPANY |
|---|---|
| **PHONE (A/C, No, Ext):** 702-647-2333 | |
| Arthur J. Gallagher Risk Management Services, Inc.<br>9515 Hillwood Drive<br>Las Vegas, NV 89134 | New Hampshire Insurance Company<br>through Preferred Aviation Underwriter |
| **FAX (A/C, No):** 702-647-5433   **E-MAIL ADDRESS:** | |
| **CODE:**          **SUB CODE:** | |
| **AGENCY CUSTOMER ID #:** | |

| INSURED | | |
|---|---|---|
| Ravn Air Group Holdings, LLC, Peninsula Aviation Services, Inc. dba PenAir, et al<br>4700 Old International Airport Road<br>Anchorage, AK 99502 | **LOAN NUMBER**<br>118544593 | **POLICY NUMBER**<br>01-LX-066143056-7 |
| | **EFFECTIVE DATE**<br>04/15/2019 | **EXPIRATION DATE**<br>04/15/2020 |  CONTINUED UNTIL TERMINATED IF CHECKED |
| | **THIS REPLACES PRIOR EVIDENCE DATED:** | |

## PROPERTY INFORMATION

**LOCATION/DESCRIPTION**

6000 Boeing Avenue, Anchorage, AK and 6100 Boeing Avenue, Anchorage, AK

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS EVIDENCE OF PROPERTY INSURANCE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

## COVERAGE INFORMATION

| COVERAGE/PERILS/FORMS | AMOUNT OF INSURANCE | DEDUCTIBLE |
|---|---|---|
| Building @ 6000 Boeing Avenue | $4,300,000 | $5,000 |
| Building @ 6100 Boeing Avenue | $6,200,000 | $5,000 |

**REMARKS (Including Special Conditions)**

## CANCELLATION

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL  10  DAYS WRITTEN NOTICE TO THE ADDITIONAL INTEREST NAMED BELOW, BUT FAILURE TO MAIL SUCH NOTICE SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES.

## ADDITIONAL INTEREST

| NAME AND ADDRESS | | |
|---|---|---|
| First National Bank of Alaska ISAOA<br>PO Box 2070<br>Everett, WA 98213 | MORTGAGEE<br>✓ LOSS PAYEE | ADDITIONAL INSURED |
| | **LOAN #**<br>118544593 | |
| | **AUTHORIZED REPRESENTATIVE**<br>Bradley A. Meinhardt, National Producer #2730043 | |

**ACORD 27 (2006/07)**

© ACORD CORPORATION 1993-2006. All rights reserved.<br>The ACORD name and logo are registered marks of ACORD



# EVIDENCE OF PROPERTY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 04/15/2020 |

THIS EVIDENCE OF PROPERTY INSURANCE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE ADDITIONAL INTEREST NAMED BELOW. THIS EVIDENCE OF PROPERTY INSURANCE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

| AGENCY | COMPANY |
|---|---|
| **PHONE (A/C, No, Ext):** 702-647-2333 | |
| Arthur J. Gallagher Risk Management Services, Inc.<br>9515 Hillwood Drive<br>Las Vegas, NV 89134 | New Hampshire Insurance Company<br>through Preferred Aviation Underwriter |
| **FAX (A/C, No):** 702-647-5433    **E-MAIL ADDRESS:** | |
| **CODE:**    **SUB CODE:** | |
| **AGENCY CUSTOMER ID #:** | |

| INSURED | | | |
|---|---|---|---|
| Ravn Air Group Holdings, LLC, Peninsula Aviation Services, Inc.<br>dba PenAir, et al<br>4700 Old International Airport Road<br>Anchorage, AK 99502 | **LOAN NUMBER**<br>118544593 | **POLICY NUMBER**<br>01-LX-066143056-7 | |
| | **EFFECTIVE DATE**<br>04/15/2019 | **EXPIRATION DATE**<br>05/31/2020 | ☐ CONTINUED UNTIL TERMINATED IF CHECKED |
| | **THIS REPLACES PRIOR EVIDENCE DATED:** | | |

## PROPERTY INFORMATION

**LOCATION/DESCRIPTION**

See Attached

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS EVIDENCE OF PROPERTY INSURANCE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

## COVERAGE INFORMATION

| COVERAGE/PERILS/FORMS | AMOUNT OF INSURANCE | DEDUCTIBLE |
|---|---|---|
| See Attached | | |

**REMARKS (Including Special Conditions)**

## CANCELLATION

SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL  10  DAYS WRITTEN NOTICE TO THE ADDITIONAL INTEREST NAMED BELOW, BUT FAILURE TO MAIL SUCH NOTICE SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES.

## ADDITIONAL INTEREST

| NAME AND ADDRESS | | |
|---|---|---|
| US Bank, National Association, as Security Trustee, together<br>with its successors and assigns<br>214 North Tryon Street, 26th Floor<br>Charlotte, NC 28202 | ☐ MORTGAGEE<br>☑ LOSS PAYEE<br>**LOAN #** | ☐ ADDITIONAL INSURED |
| | **AUTHORIZED REPRESENTATIVE**<br>Bradley A. Meinhardt, National Producer #2730043 | |

**ACORD 27 (2006/07)**

© ACORD CORPORATION 1993-2006. All rights reserved.<br>The ACORD name and logo are registered marks of ACORD

Ravn Air & PenAir Property Coverage
April 15, 2020 to April 15, 2021

| Location | Coverage | | Building Value | PPO Value | YBPP Value | YBPP - EDP Value |
|---|---|---|---|---|---|---|
| Aniak Airport, Lot 9A, Block 10* | Storage Building | Building | $ 95,179 | | | |
| | | PPO | | $ 20,000 | | |
| | | YBPP | | | $ 20,000 | |
| Aniak Airport, Lot 9A, Block 10* | Terminal/Freight Holding | Building | $ 750,000 | | | |
| | | YBPP | | | $ 40,000 | |
| Anchorage Int'l Airport, 4700 Old Int'l Airport Rd. | Office/Hangar | YBPP | | | $ 250,000 | |
| | | YBPP | | | $ 987,000 | |
| Anchorage Int'l Airport, 4700 Old Int'l Airport Rd. | Airport Terminal | YBPP | | | $ 80,000 | |
| Anchorage Int'l Airport, 4500 W. 50th Ave. | Office/Training Facitlity | Building | $ 693,375 | | | |
| | | PPO | | $ 20,000 | | |
| | | YBPP | | | $ 40,000 | |
| Wiley Post Airport, Lot 5, Block 300 | Psgr & Cargo Terminal/ Hangar | Building | $ 692,699 | | | |
| | | PPO | | $ 20,000 | | |
| | | YBPP | | | $ 7,500 | |
| Wiley Post Airport, Lot 2, Block 100 | Hangar/Office | Building | $ 1,500,000 | | | |
| | | PPO | | $ 20,000 | | |
| | | YBPP | | | $ 100,000 | |
| Wiley Post Airport, Lot 4A, Block 100 | Freight Building/Cold Storage | Building | $ 150,246 | | | |
| | | YBPP | | | $ 20,000 | |
| Will Rogers Memorial Airport, Lot 4A, Block 100 | Shell Hangar | Building | $ 4,500,000 | | | |
| Wiley Post Airport, Lot 4, Block 300 | Terminal | Building | $ 1,500,000 | | | |
| | | PPO | | $ 20,000 | | |
| | | YBPP | | | $ 100,000 | |
| Wiley Post Airport, 6008 Boxer St. | Duplex - Pilot Housing | Building | $ 393,267 | | | |
| Wiley Post Airport, 2063 Ahkovak St. | Pilot Housing | Building | $ 230,000 | | | |
| | | YBPP | | | $ 20,000 | |
| Wiley Post Airport, Lot 7, Block 100 | Hangar/Terminal/Storage | Building | $ 1,200,000 | | | |
| | | PPO | | $ 20,000 | | |
| | | YBPP | | | $ 175,000 | |
| Bethel Airport, Lot 5 & 6A, Block 7* | Hangar | Building | $ 1,000,000 | | | |
| | | PPO | | $ 20,000 | | |
| | | YBPP | | | $ 50,000 | |
| Bethel Airport, Lot 7A & 7B, Block 7* | Hanger/Maint/Psgr/Cargo/ | Building | $ 1,500,000 | | | |

| Location | Description | Type | Building | PPO | YBPP | |
|---|---|---|---|---|---|---|
| | Mail | PPO | | $ 20,000 | | |
| | | YBPP | | | $ 90,000 | |
| Bethel Airport, Lot 5, Block 7* | New Hangar/Building | Building | $ 1,900,000 | | | |
| | | YBPP | | | $ 40,000 | |
| Bethel Airport, Lot 6, Block 1 | Pilot Housing | Building | $ 426,000 | | | |
| | | YBPP | | | $ 20,000 | |
| Bethel Airport, Lot 11E, Block 4* | | Building | $ 3,720,470 | | | |
| | | PPO | | $ 20,000 | | |
| | | YBPP | | | $ 40,000 | |
| Bethel Inn, 454 Ptarmigan | Pilot Housing | Building | $ 600,000 | | | |
| Bethel, 616 Ptarmigan | Duplex - Pilot Housing | Building | $ 400,000 | | | |
| Bethel, Larson House, 4401 Mikengayak Rd. | Duplex - Pilot Housing | Building | $ 400,000 | | | |
| Fairbanks Airport, 6302 Old Airport Road | Psgr Holding & Check In | YBPP | | | $ 40,000 | |
| Fairbanks Airport, 5245 Airport Ind Rd., Lot 8A | Hangar | Building | $ 3,759,990 | | | |
| | | PPO | | $ 20,000 | | |
| | | YBPP | | | $ 800,000 | |
| Fairbanks Airport, 5245 Airport Ind Rd., Lot 8A | Hangar/Freight | Building | $ 500,000 | | | |
| | | YBPP | | | | $ 120,000 |
| Fairbanks Airport, 5246 Airport Ind Rd., Lot 8A | Parts Warehouse | Building | $ 200,000 | | | |
| Edward G. Pitka Sr. Airport, Lot 1, Block 12 | Storage Hangar | Building | $ 100,000 | | | |
| Homer Airport, 3720 FAA Rd., Lot 5A, Block 800 | Airport Terminal/Office | YBPP | | | $ 40,000 | |
| Kenai Municipal Airport, 403 N. Willow #3 | Airport Terminal/Office | YBPP | | | $ 40,000 | |
| Kenai Municipal Airport, 403 N. Willow #3 | Storage/Warehouse | YBPP | | | $ 40,000 | |
| Kodiak State Airport, Lot 1A, Block 1600 | Storage/Warehouse | YBPP | | | $ 10,000 | |
| Kodiak State Airport, Lot 1A, Block 1601 | Airport Terminal/Ticket | YBPP | | | $ 40,000 | |
| Nome Airport, Lot 9, Block 11 | Hangar/Maint/Psgr Terminal | Building | $ 1,500,000 | | | |
| | | PPO | | $ 20,000 | | |
| | | YBPP | | | $ 40,000 | |
| Nome Airport, Lot 4A, Block 11 | Mail/Freight Storage | Building | $ 233,819 | | | |
| Nome Airport, Lot 4A, Block 11 | Pilot Housing | Building | $ 837,539 | | | |
| | | YBPP | | | $ 20,000 | |
| Nome Airport, Lot 9, Block 11 | Hangar | Building | $ 712,915 | | | |
| | | YBPP | | | $ 20,000 | |
| Palmer Municipal Airport, 801 E. Cope Industrial* | Hangar/Offices | Building | $ 2,000,000 | | | |
| | | PPO | | $ 20,000 | | |
| | | YBPP | | | $ 40,000 | |
| St. Mary's Airport, Lot 4, Block 200 | Hangar/Maint/Psgr Terminal | Building | $ 900,000 | | | |
| | | PPO | | $ 20,000 | | |
| | | YBPP | | | $ 20,000 | |

| | | | | | |
|---|---|---|---|---|---|
| City of St. Mary's, Lot 10, Block 6 | Dwelling | Building | $ 375,000 | | |
| St. Mary's Airport, Lot 3A, Block 900 | Storage/Aircraft | Building | $ 640,000 | | |
| Unalakleet Airport, Block 4* | Hangar/Psgr Terminal/Offices | Building | $ 750,000 | | |
| | | PPO | | $ 20,000 | |
| | | YBPP | | | $ 50,000 |
| Valdez Pioneer Field, 300 Airport Rd. | Termina/Ticket Counter | YBPP | | | $ 40,000 |
| Galena Airport, Lot 7 & 8, Block 10* | Psgr Terminal/Warehouse | Building | $ 750,000 | | |
| | | PPO | | $ 20,000 | |
| | | YBPP | | | $ 50,000 |
| Ralph Wien Memorial Airport, Lot 5, Block 3* | Terminal/Hangar/Office | Building | $ 2,250,000 | | |
| | | PPO | | $ 20,000 | |
| | | YBPP | | | $ 50,000 |
| Deadhorse Airport, Lot 13 & 14, Block 900 | Terminal/Hangar/Office | Building | $ 2,250,000 | | |
| | | PPO | | $ 20,000 | |
| | | YBPP | | | $ 50,000 |
| Palmer Municipal Airport, 801 E. Cope Industrial* | Offices/Storage | Building | $ 800,000 | | |
| | | PPO | | $ 20,000 | |
| | | YBPP | | | $ 50,000 |
| Anchorage Int'l Airport, 6000 Boeing Avenue | Hangar | Building | $ 4,300,000 | | |
| | | YBPP - EDP | | | $ 400,000 |
| | | YBPP | | | $ 75,000 |
| Anchorage Int'l Airport, 6100 Boeing Avenue | Hangar/Office | Building | $ 6,200,000 | | |
| | | YBPP | | | $ 1,000,000 |
| Cold Bay Airport, Lot 3B, Block 3 | Hangar/Office/Apartments | Building | $ 1,087,461 | | |
| | | YBPP | | | $ 40,000 |
| Cold Bay Airport, Lot 3B, Block 3 | Warehouse/Freight | Building | $ 512,000 | | |
| | | YBPP | | | $ 10,000 |
| Cold Bay Airport, Parcel 4 & 5 | Dwelling | Building | $ 610,000 | | |
| | | YBPP | | | $ 15,000 |
| Cold Bay Airport, Parcel 5 & 6 | Dwelling | Building | $ 610,000 | | |
| | | YBPP | | | $ 15,000 |
| Cold Bay Airport, Parcel 7 | Dwelling | Building | $ 335,000 | | |
| | | YBPP | | | $ 25,000 |
| Cold Bay Airport, Lot 1A, Block 23 | Terminal | YBPP | | | $ 50,000 |
| King Salmon Airport, Lot 1A, Block 1 | Hangar/Office/Gift Shop | Building | $ 1,500,000 | | |
| | | YBPP | | | $ 150,000 |
| King Salmon Airport, Lot 1A, Block 1 | Hangar/Storage | Building | $ 750,000 | | |
| | | YBPP | | | $ 25,000 |
| King Salmon Airport, Lot 2B, Block 1 | Terminal/Storage | Building | $ 2,241,947 | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | YBPP | | | | $ 500,000 | |
| | | YBPP - EDP | | | | | $ 250,000 |
| Dillingham Airport, Lot 4B, Block 500 | Terminal/Hangar | Building | $ 820,000 | | | | |
| | | YBPP | | | | $ 50,000 | |
| Sand Point Airport, Lot 5 Block 100 | Terminal | Building | $ 800,000 | | | | |
| | | YBPP | | | | $ 15,000 | |
| Boston Logan Int'l Airport, Terminal B Gates* | Terminal/Gates | YBPP | | | | $ 25,000 | |
| St. Paul Airport | Terminal | YBPP | | | | $ 10,000 | |
| Unalaska Airport Terminal | Terminal | YBPP | | | | $ 10,000 | |
| Anchorage Int'l Airport, 5000 W Int'l Road | Terminal | YBPP | | | | $ 40,000 | |
| | | | $ 59,976,907 | $ 360,000 | $ 5,574,500 | $ 770,000 | |

| | |
|---|---|
| Total Buildings & Personal Property; subject to a $1,000 Deductible | $ 68,786,228 |
| Business Income/Extra Expense | $ 4,105,000 |
| Flood  (* Certain builidngs not covered); subject to a $250,000 Deductible | $ 5,000,000 |
| Terrorism Coverage | Included |
| Scheduled Equipment & Unscheduled Equipment ($100,000 Limit) | Included |

* Excluded from Flood coverage:  Boston Airport, Aniak, Bethel, Palmer, Unalakleet, Galena & Kotzebue



# CERTIFICATE OF LIABILITY INSURANCE

| DATE (MM/DD/YYYY) |
|---|
| 12/15/2019 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Gayla L. Guest, Area Vice President | | |
|---|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | | FAX (A/C, No): 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | | |
| 9515 Hillwood Dr. | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| Las Vegas                      NV  89134 | INSURER A : Starr Specialty Insurance Company | | |
| INSURED | INSURER B : | | |
| HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation | INSURER C : | | |
| Services, Inc. and Corvus Airlines, Inc. | INSURER D : | | |
| 4700 Old International Airport Rd. | INSURER E : | | |
| Anchorage                       AK  99502 | INSURER F : | | |

| COVERAGES | CERTIFICATE NUMBER: | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **COMMERCIAL GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE  ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY  ☐ PRO-JECT  ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ OTHER: | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY  ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY  ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ **UMBRELLA LIAB**  ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ **EXCESS LIAB**  ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED  ☐ RETENTION $ | | | | | | | $ |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y/N  ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? **(Mandatory in NH)** If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | WC 077711075/11076 | 12/15/2019 | 12/15/2020 | ☑ PER STATUTE  ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Re: Burning Man Event

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| Advantage Flight Solutions | |
| | AUTHORIZED REPRESENTATIVE |
| 9590 Prototype Court, Suite 300 | |
| Reno                          NV  89521 | Bradley A. Meinhardt, Area Executive VP, National Producer #2730043 |

© 1988-2015 ACORD CORPORATION.  All rights reserved.

**ACORD 25 (2016/03)**          The ACORD name and logo are registered marks of ACORD

**AGENCY CUSTOMER ID:** _____

**LOC #:** _____

**ACORD®**

# ADDITIONAL REMARKS SCHEDULE

**Page** 2 **of** 2

| AGENCY | NAMED INSURED |
|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation Services, Inc., and Corvus Airlines, Inc. |

**POLICY NUMBER**
WC 077711075/11076

| CARRIER | NAIC CODE | |
|---|---|---|
| Starr Specialty Insurance Company | | **EFFECTIVE DATE:** December 15, 2019 |

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**

**FORM NUMBER:** 25     **FORM TITLE:** Certificate of Insurance

The company waives its rights of subrogation against the Certificate Holder to the extent required under the agreement  This waiver shall not affect any of the Insured's own rights under the agreement.

Should the described policy be cancelled before the expiration date hereof, the issuing company will endeavor to give 30 days (10 days for non-payment) notice to the certificate holder named herein. However, failure to mail such notice shall not impose any obligation nor any liability of any kind upon the Company, its representatives or agents.

© 2008 ACORD CORPORATION.  All rights reserved.
The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 12/15/2019 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Gayla L. Guest, Area Vice President | | |
|---|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | | FAX (A/C, No): 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | | |
| 9515 Hillwood Dr. | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| Las Vegas NV 89134 | INSURER A: Starr Specialty Insurance Company | | |
| INSURED | INSURER B: | | |
| HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation | INSURER C: | | |
| Services, Inc. and Corvus Airlines, Inc. | INSURER D: | | |
| 4700 Old International Airport Rd. | INSURER E: | | |
| Anchorage AK 99502 | INSURER F: | | |

## COVERAGES     CERTIFICATE NUMBER:     REVISION NUMBER:   024

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **COMMERCIAL GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ OTHER: | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ **UMBRELLA LIAB** ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ **EXCESS LIAB** ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? ☐ **(Mandatory in NH)** If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | Y | WC 077711075/11076 | 12/15/2019 | 12/15/2020 | ☑ PER STATUTE ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Re: ADA-32008
PW#-105052

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| State of Alaska, Department of Transportation & Public Facilities Ted Stevens Anchorage International Airport, Airport Leasing PO Box 196960 | |
| | AUTHORIZED REPRESENTATIVE |
| Anchorage AK 99519-6960 | Bradley A. Meinhardt, Area Executive VP, National Producer #2730043 |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)     The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 12/15/2019 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Gayla L. Guest, Area Vice President | | |
|---|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | | FAX (A/C, No): 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | | |
| 9515 Hillwood Dr. | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| Las Vegas NV 89134 | INSURER A: Starr Specialty Insurance Company | | |
| INSURED | INSURER B: | | |
| HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation | INSURER C: | | |
| Services, Inc. and Corvus Airlines, Inc. | INSURER D: | | |
| 4700 Old International Airport Rd. | INSURER E: | | |
| Anchorage AK 99502 | INSURER F: | | |

## COVERAGES CERTIFICATE NUMBER: REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | COMMERCIAL GENERAL LIABILITY | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | OTHER: | | | | | | | $ |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| A | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y / N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | | N/A | 100 0003997 | 12/15/2019 | 12/15/2020 | ☑ PER STATUTE ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Re: 2010-9900-9510

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| Department of Alaska Department of Administration, Division of General Services PO Box 110210 Juneau AK 99811-0210 | AUTHORIZED REPRESENTATIVE Bradley A. Meinhardt, Area President, National Producer #2730043 |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03) The ACORD name and logo are registered marks of ACORD

**AGENCY CUSTOMER ID:** _____

**LOC #:** _____

**ACORD**®

# ADDITIONAL REMARKS SCHEDULE

**Page** 2 **of** 2

| | |
|---|---|
| **AGENCY**<br>Arthur J. Gallagher Risk Management Services, Inc. | **NAMED INSURED**<br>HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation Services, Inc., and Corvus Airlines, Inc. |
| **POLICY NUMBER**<br>100 0003997 | |

| | | |
|---|---|---|
| **CARRIER**<br>Starr Specialty Insurance Company | **NAIC CODE** | **EFFECTIVE DATE:** December 15, 2019 |

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**

**FORM NUMBER:** 25       **FORM TITLE:** Certificate of Insurance

The company waives its rights of subrogation against the Certificate Holder to the extent required under the agreement  This waiver shall not affect any of the Insured's own rights under the agreement.

Should the described policy be cancelled before the expiration date hereof, the issuing company will endeavor to give 30 days (10 days for non-payment) notice to the certificate holder named herein. However, failure to mail such notice shall not impose any obligation nor any liability of any kind upon the Company, its representatives or agents.

© 2008 ACORD CORPORATION.  All rights reserved.<br>The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
12/15/2019

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | Gayla L. Guest, Area Vice President | |
|---|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | | FAX (A/C, No): 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | | |
| 9515 Hillwood Dr. | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| Las Vegas                      NV  89134 | INSURER A : Starr Specialty Insurance Company | | |
| INSURED | INSURER B : | | |
| HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation | INSURER C : | | |
| Services, Inc. and Corvus Airlines, Inc. | INSURER D : | | |
| 4700 Old International Airport Rd. | INSURER E : | | |
| Anchorage                      AK  99502 | INSURER F : | | |

| COVERAGES | CERTIFICATE NUMBER: | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **COMMERCIAL GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE  ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ OTHER: | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ **UMBRELLA LIAB** ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ **EXCESS LIAB** ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? ☐ **(Mandatory in NH)** If yes, describe under DESCRIPTION OF OPERATIONS below | | N/A | 100 0003997 | 12/15/2019 | 12/15/2020 | ✓ PER STATUTE  ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Re: Sublease for space on Lot 7, Block 4 of State Lease ADA-00819

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| State of Alaska Department of Transportation & Public Facilities PO Box 196960 Anchorage                      AK  99519 | AUTHORIZED REPRESENTATIVE Bradley A. Meinhardt, Area President, National Producer #2730043 |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)          The ACORD name and logo are registered marks of ACORD

**AGENCY CUSTOMER ID:** _____

**LOC #:** _____

**ACORD**®

# ADDITIONAL REMARKS SCHEDULE

Page 2 of 2

| | |
|---|---|
| **AGENCY**<br>Arthur J. Gallagher Risk Management Services, Inc. | **NAMED INSURED**<br>HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation Services, Inc., and Corvus Airlines, Inc. |
| **POLICY NUMBER**<br>100 0003997 | |

| | | |
|---|---|---|
| **CARRIER**<br>Starr Specialty Insurance Company | **NAIC CODE** | **EFFECTIVE DATE:** December 15, 2019 |

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**

**FORM NUMBER:** 25     **FORM TITLE:** Certificate of Insurance

The company waives its rights of subrogation against the Certificate Holder to the extent required under the agreement  This waiver shall not affect any of the Insured's own rights under the agreement.

Should the described policy be cancelled before the expiration date hereof, the issuing company will endeavor to give 30 days (10 days for non-payment) notice to the certificate holder named herein. However, failure to mail such notice shall not impose any obligation nor any liability of any kind upon the Company, its representatives or agents.

© 2008 ACORD CORPORATION.  All rights reserved.

The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 12/15/2019 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Gayla L. Guest, Area Vice President | |
|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | FAX (A/C, No): 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | |
| 9515 Hillwood Dr. | INSURER(S) AFFORDING COVERAGE | NAIC # |
| Las Vegas NV 89134 | INSURER A : Starr Specialty Insurance Company | |
| INSURED | INSURER B : | |
| HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation | INSURER C : | |
| Services, Inc. and Corvus Airlines, Inc. | INSURER D : | |
| 4700 Old International Airport Rd. | INSURER E : | |
| Anchorage AK 99502 | INSURER F : | |

## COVERAGES  CERTIFICATE NUMBER:  REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **COMMERCIAL GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ OTHER: | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ **UMBRELLA LIAB** ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ **EXCESS LIAB** ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y / N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? ☐ **(Mandatory in NH)** If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | Y | 100 0003997 | 12/15/2019 | 12/15/2020 | ☑ PER STATUTE ☐ OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Re: ADA31879
PW#-103684

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| State of Alaska, Department of Transportation & Public Facilities Ted Stevens Anchorage International Airport, Airport Leasing PO Box 196960 Anchorage AK 99519-6960 | AUTHORIZED REPRESENTATIVE Bradley A. Meinhardt, Area President, National Producer #2730043 |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)  The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 12/15/2019 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | Gayla L. Guest, Area Vice President | | |
|---|---|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | | FAX (A/C, No): | 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | | | |
| 9515 Hillwood Dr. | INSURER(S) AFFORDING COVERAGE | | | NAIC # |
| Las Vegas                               NV   89134 | INSURER A :  Starr Specialty Insurance Company | | | |
| INSURED | INSURER B : | | | |
| HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation | INSURER C : | | | |
| Services, Inc. and Corvus Airlines, Inc. | INSURER D : | | | |
| 4700 Old International Airport Rd. | INSURER E : | | | |
| Anchorage                               AK   99502 | INSURER F : | | | |

| COVERAGES | CERTIFICATE NUMBER: | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **COMMERCIAL GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | OTHER: | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY  ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY  ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ **UMBRELLA LIAB** ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ **EXCESS LIAB** ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION$ | | | | | | | $ |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y / N  ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED?  ☐ **(Mandatory in NH)** If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | Y | 100 0003997 | 12/15/2019 | 12/15/2020 | ✓ PER STATUTE   ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Re: ADA90607A

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| State of Alaska, Department of Transportation & Public Facilities Ted Stevens Anchorage International Airport, Airport Leasing PO Box 196960 Anchorage                               AK   99519-6960 | AUTHORIZED REPRESENTATIVE  Bradley A. Meinhardt, Area President, National Producer #2730043 |

© 1988-2015 ACORD CORPORATION. All rights reserved.

**ACORD 25 (2016/03)**          The ACORD name and logo are registered marks of ACORD

**AGENCY CUSTOMER ID:** _____

**LOC #:** _____

# ADDITIONAL REMARKS SCHEDULE

*ACORD*®

**Page** 2 **of** 2

| | |
|---|---|
| **AGENCY**<br>Arthur J. Gallagher Risk Management Services, Inc. | **NAMED INSURED**<br>HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation Services, Inc., and Corvus Airlines, Inc. |
| **POLICY NUMBER**<br>100 0003997 | |

| | | |
|---|---|---|
| **CARRIER**<br>Starr Specialty Insurance Company | **NAIC CODE** | **EFFECTIVE DATE:** December 15, 2019 |

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**

**FORM NUMBER:** 25        **FORM TITLE:** Certificate of Insurance

The company waives its rights of subrogation against the Certificate Holder to the extent required under the agreement  This waiver shall not affect any of the Insured's own rights under the agreement.

Should the described policy be cancelled before the expiration date hereof, the issuing company will endeavor to give 30 days (10 days for non-payment) notice to the certificate holder named herein. However, failure to mail such notice shall not impose any obligation nor any liability of any kind upon the Company, its representatives or agents.

© 2008 ACORD CORPORATION.  All rights reserved.

The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
12/15/2019

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Gayla L. Guest, Area Vice President | | |
|---|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | | FAX (A/C, No): 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | | |
| 9515 Hillwood Dr. | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| Las Vegas                          NV  89134 | INSURER A : Starr Specialty Insurance Company | | |
| INSURED | INSURER B : | | |
| HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation | INSURER C : | | |
| Services, Inc. and Corvus Airlines, Inc. | INSURER D : | | |
| 4700 Old International Airport Rd. | INSURER E : | | |
| Anchorage                          AK  99502 | INSURER F : | | |

| COVERAGES | CERTIFICATE NUMBER: | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **COMMERCIAL GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ OTHER: | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ **UMBRELLA LIAB** ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ **EXCESS LIAB** ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**  Y / N  ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? ☐ (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N / A | Y | 100 0003997 | 12/15/2019 | 12/15/2020 | ☑ PER STATUTE  ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| State of Alaska Department of Natural Resources 550 W. 7th Avenue, Suite 1230 Anchorage                          AK  99501 | AUTHORIZED REPRESENTATIVE  Bradley A. Meinhardt, Area President, National Producer #2730043 |

© 1988-2015 ACORD CORPORATION. All rights reserved.

**ACORD 25 (2016/03)**          The ACORD name and logo are registered marks of ACORD

**AGENCY CUSTOMER ID:** _____

**LOC #:** _____

# ACORD® ADDITIONAL REMARKS SCHEDULE

Page 2 of 2

| | |
|---|---|
| **AGENCY**<br>Arthur J. Gallagher Risk Management Services, Inc. | **NAMED INSURED**<br>HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation Services, Inc., and Corvus Airlines, Inc. |
| **POLICY NUMBER**<br>100 0003997 | |

| **CARRIER**<br>Starr Specialty Insurance Company | **NAIC CODE** | **EFFECTIVE DATE:** December 15, 2019 |
|---|---|---|

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**

**FORM NUMBER:** 25    **FORM TITLE:** Certificate of Insurance

The company waives its rights of subrogation against the Certificate Holder to the extent required under the agreement  This waiver shall not affect any of the Insured's own rights under the agreement.

Should the described policy be cancelled before the expiration date hereof, the issuing company will endeavor to give 30 days (10 days for non-payment) notice to the certificate holder named herein. However, failure to mail such notice shall not impose any obligation nor any liability of any kind upon the Company, its representatives or agents.

© 2008 ACORD CORPORATION.  All rights reserved.

The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 12/15/2019 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT:  If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed.  If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Gayla L. Guest, Area Vice President | | |
|---|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | | FAX (A/C, No): 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | | |
| 9515 Hillwood Dr. | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| Las Vegas                               NV  89134 | INSURER A : Starr Specialty Insurance Company | | |
| **INSURED** | INSURER B : | | |
| HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation | INSURER C : | | |
| Services, Inc. and Corvus Airlines, Inc. | INSURER D : | | |
| 4700 Old International Airport Rd. | INSURER E : | | |
| Anchorage                               AK  99502 | INSURER F : | | |

| COVERAGES | CERTIFICATE NUMBER: | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **COMMERCIAL GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE   ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY  ☐ PRO-JECT  ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ OTHER: | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY  ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY  ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ **UMBRELLA LIAB**  ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ **EXCESS LIAB**  ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED  ☐ RETENTION $ | | | | | | | $ |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**  Y / N  ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? ☐  **(Mandatory in NH)**  If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | Y | 100 0003997 | 12/15/2019 | 12/15/2020 | ☑ PER STATUTE  ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES  (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| State of Alaska | |
| Department of Corrections | **AUTHORIZED REPRESENTATIVE** |
| 550 W. 7th Avenue, Suite 601 | |
| Anchorage                               AK  99501 | Bradley A. Meinhardt, Area President, National Producer #2730043 |

© 1988-2015 ACORD CORPORATION.  All rights reserved.

ACORD 25 (2016/03)                    The ACORD name and logo are registered marks of ACORD

**AGENCY CUSTOMER ID:** _____

**LOC #:** _____

ACORD®

## ADDITIONAL REMARKS SCHEDULE

Page 2 of 2

| **AGENCY**<br>Arthur J. Gallagher Risk Management Services, Inc. | **NAMED INSURED**<br>HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation Services, Inc., and Corvus Airlines, Inc. | |
|---|---|---|
| **POLICY NUMBER**<br>100 0003997 | | |
| **CARRIER**<br>Starr Specialty Insurance Company | **NAIC CODE** | |
| | **EFFECTIVE DATE:** December 15, 2019 | |

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**

**FORM NUMBER:** 25    **FORM TITLE:** Certificate of Insurance

The company waives its rights of subrogation against the Certificate Holder to the extent required under the agreement  This waiver shall not affect any of the Insured's own rights under the agreement.

Should the described policy be cancelled before the expiration date hereof, the issuing company will endeavor to give 30 days (10 days for non-payment) notice to the certificate holder named herein. However, failure to mail such notice shall not impose any obligation nor any liability of any kind upon the Company, its representatives or agents.

© 2008 ACORD CORPORATION.  All rights reserved.

The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 12/15/2019 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Gayla L. Guest, Area Vice President | | |
|---|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | | FAX (A/C, No): 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | | |
| 9515 Hillwood Dr. | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| Las Vegas                          NV  89134 | INSURER A : Starr Specialty Insurance Company | | |
| INSURED | INSURER B : | | |
| HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation | INSURER C : | | |
| Services, Inc. and Corvus Airlines, Inc. | INSURER D : | | |
| 4700 Old International Airport Rd. | INSURER E : | | |
| Anchorage                           AK  99502 | INSURER F : | | |

## COVERAGES          CERTIFICATE NUMBER:                REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **COMMERCIAL GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE  ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY  ☐ PRO-JECT  ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ OTHER: | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY  ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY  ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ **UMBRELLA LIAB**  ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ **EXCESS LIAB**  ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED  ☐ RETENTION $ | | | | | | | $ |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**  Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? ☐ (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | Y | 100 0003997 | 12/15/2019 | 12/15/2020 | ☑ PER STATUTE  ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Re: ADA31879
PW#-103684

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| AmeriGas | |
| 6951 E. Blue Lupine Drive | AUTHORIZED REPRESENTATIVE |
| Palmer                              AK  99645-8446 | Bradley A. Meinhardt, Area President, National Producer #2730043 |

© 1988-2015 ACORD CORPORATION. All rights reserved.

**ACORD 25 (2016/03)**          The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

| | |
|---|---|
| | **DATE (MM/DD/YYYY)** 12/15/2019 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

**IMPORTANT:  If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).**

| PRODUCER | CONTACT NAME: Gayla L. Guest, Area Vice President | |
|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | FAX (A/C, No): 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | |
| 9515 Hillwood Dr. | **INSURER(S) AFFORDING COVERAGE** | NAIC # |
| Las Vegas                              NV  89134 | INSURER A :  Starr Specialty Insurance Company | |
| **INSURED** | INSURER B : | |
| HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation | INSURER C : | |
| Services, Inc. and Corvus Airlines, Inc. | INSURER D : | |
| 4700 Old International Airport Rd. | INSURER E : | |
| Anchorage                              AK  99502 | INSURER F : | |

| COVERAGES | CERTIFICATE NUMBER: | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **COMMERCIAL GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE  ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY  ☐ PRO-JECT  ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | OTHER: | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY  ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY  ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ **UMBRELLA LIAB**  ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ **EXCESS LIAB**  ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED  ☐ RETENTION $ | | | | | | | $ |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**  Y / N  ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED?  **(Mandatory in NH)**  If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | 100 0003997 | 12/15/2019 | 12/15/2020 | ☑ PER STATUTE  ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES  (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)**

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| Arctic Slope Region Corporation Attn:  Lori K. Wing, Risk Management Dept. 3900 C Street, Suite 201 Anchorage                              AK  99503 | **AUTHORIZED REPRESENTATIVE** Bradley A. Meinhardt, Area President, National Producer #2730043 |

© 1988-2015 ACORD CORPORATION.  All rights reserved.

ACORD 25 (2016/03)                    The ACORD name and logo are registered marks of ACORD

*ACORD®*

# ADDITIONAL REMARKS SCHEDULE

Page 2 of 2

| AGENCY | NAMED INSURED |
|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation Services, Inc., and Corvus Airlines, Inc. |
| **POLICY NUMBER**<br>100 0003997 | |
| **CARRIER**<br>Starr Specialty Insurance Company | **NAIC CODE** |
| | **EFFECTIVE DATE:** December 15, 2019 |

**ADDITIONAL REMARKS**

THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,

FORM NUMBER: 25     FORM TITLE: Certificate of Insurance

The company waives its rights of subrogation against the Certificate Holder to the extent required under the agreement  This waiver shall not affect any of the Insured's own rights under the agreement.

Should the described policy be cancelled before the expiration date hereof, the issuing company will endeavor to give 30 days (10 days for non-payment) notice to the certificate holder named herein. However, failure to mail such notice shall not impose any obligation nor any liability of any kind upon the Company, its representatives or agents.

© 2008 ACORD CORPORATION.  All rights reserved.

The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
12/15/2019

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Gayla L. Guest, Area Vice President | | |
|---|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | | FAX (A/C, No): 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | | |
| 9515 Hillwood Dr. | **INSURER(S) AFFORDING COVERAGE** | | NAIC # |
| Las Vegas NV 89134 | INSURER A : Starr Specialty Insurance Company | | |
| INSURED | INSURER B : | | |
| HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation | INSURER C : | | |
| Services, Inc. and Corvus Airlines, Inc. | INSURER D : | | |
| 4700 Old International Airport Rd. | INSURER E : | | |
| Anchorage AK 99502 | INSURER F : | | |

| COVERAGES | CERTIFICATE NUMBER: | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **COMMERCIAL GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ OTHER: | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ **UMBRELLA LIAB** ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ **EXCESS LIAB** ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y / N | N / A | | 100 0003997 | 12/15/2019 | 12/15/2020 | ☑ PER STATUTE ☐ OTHER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? **(Mandatory in NH)** | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)**

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| BNP Paribas, as Collateral Agent | **AUTHORIZED REPRESENTATIVE** |
| 787 Seventh Avenue New York NY 10019 | Bradley A. Meinhardt, Area President, National Producer #2730043 |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)     The ACORD name and logo are registered marks of ACORD

**AGENCY CUSTOMER ID:** _____

**LOC #:** _____

# ADDITIONAL REMARKS SCHEDULE

ACORD®

Page 2 of 2

**AGENCY**
Arthur J. Gallagher Risk Management Services, Inc.

**POLICY NUMBER**
100 0003997

**CARRIER**
Starr Specialty Insurance Company

**NAIC CODE**

**NAMED INSURED**
HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation Services, Inc., and Corvus Airlines, Inc.

**EFFECTIVE DATE:** December 15, 2019

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**

**FORM NUMBER:** 25     **FORM TITLE:** Certificate of Insurance

The company waives its rights of subrogation against the Certificate Holder to the extent required under the agreement  This waiver shall not affect any of the Insured's own rights under the agreement.

Should the described policy be cancelled before the expiration date hereof, the issuing company will endeavor to give 30 days (10 days for non-payment) notice to the certificate holder named herein. However, failure to mail such notice shall not impose any obligation nor any liability of any kind upon the Company, its representatives or agents.

ACORD 101 (2008/01)

© 2008 ACORD CORPORATION.  All rights reserved.

The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 12/15/2019 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | Gayla L. Guest, Area Vice President | | |
|---|---|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | | FAX (A/C, No): | 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | | | |
| 9515 Hillwood Dr. | INSURER(S) AFFORDING COVERAGE | | | NAIC # |
| Las Vegas                    NV  89134 | INSURER A: Starr Specialty Insurance Company | | | |
| INSURED | INSURER B: | | | |
| HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation | INSURER C: | | | |
| Services, Inc. and Corvus Airlines, Inc. | INSURER D: | | | |
| 4700 Old International Airport Rd. | INSURER E: | | | |
| Anchorage                    AK  99502 | INSURER F: | | | |

## COVERAGES          CERTIFICATE NUMBER:                    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **COMMERCIAL GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ OTHER: | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ **UMBRELLA LIAB** ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ **EXCESS LIAB** ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? ☐ (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | | N/A | 100 0003997 | 12/15/2019 | 12/15/2020 | ✓ PER STATUTE ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

## CERTIFICATE HOLDER                    CANCELLATION

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| ConocoPhillips Beluga, Inc. 700 G Street PO Box 100360 Anchorage                    AK  99510-0360 | AUTHORIZED REPRESENTATIVE Bradley A. Meinhardt, Area President, National Producer #2730043 |

© 1988-2015 ACORD CORPORATION. All rights reserved.

**ACORD 25 (2016/03)**          The ACORD name and logo are registered marks of ACORD

**AGENCY CUSTOMER ID:** _____

**LOC #:** _____

# ACORD® ADDITIONAL REMARKS SCHEDULE

Page 2 of 2

| | |
|---|---|
| **AGENCY**<br>Arthur J. Gallagher Risk Management Services, Inc. | **NAMED INSURED**<br>HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation Services, Inc., and Corvus Airlines, Inc. |
| **POLICY NUMBER**<br>100 0003997 | |

| | |
|---|---|
| **CARRIER**<br>Starr Specialty Insurance Company | **NAIC CODE** |
| | **EFFECTIVE DATE:** December 15, 2019 |

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**

**FORM NUMBER:** 25     **FORM TITLE:** Certificate of Insurance

The company waives its rights of subrogation against the Certificate Holder to the extent required under the agreement  This waiver shall not affect any of the Insured's own rights under the agreement.

Should the described policy be cancelled before the expiration date hereof, the issuing company will endeavor to give 30 days (10 days for non-payment) notice to the certificate holder named herein. However, failure to mail such notice shall not impose any obligation nor any liability of any kind upon the Company, its representatives or agents.

ACORD 101 (2008/01)                                    © 2008 ACORD CORPORATION.  All rights reserved.

The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
12/15/2019

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Gayla L. Guest, Area Vice President | | |
|---|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | | FAX (A/C, No): 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | | |
| 9515 Hillwood Dr. | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| Las Vegas                NV  89134 | INSURER A : Starr Specialty Insurance Company | | |
| INSURED | INSURER B : | | |
| HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation | INSURER C : | | |
| Services, Inc. and Corvus Airlines, Inc. | INSURER D : | | |
| 4700 Old International Airport Rd. | INSURER E : | | |
| Anchorage                AK  99502 | INSURER F : | | |

| COVERAGES | CERTIFICATE NUMBER: | REVISION NUMBER: 026 |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **COMMERCIAL GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE  ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | OTHER: | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY  ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY  ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ **UMBRELLA LIAB**  ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ **EXCESS LIAB**  ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED  ☐ RETENTION $ | | | | | | | $ |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? ☐ **(Mandatory in NH)** If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | Y | 100 0003997 | 12/15/2019 | 12/15/2020 | ✓ PER STATUTE  ☐ OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)**

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| Crowley Maritime Corporation and all subsidiaries, affiliated companies and joint ventures 9487 Regency Square Blvd. Jacksonville                FL  32225 | **AUTHORIZED REPRESENTATIVE** Bradley A. Meinhardt, Area President, National Producer #2730043 |

© 1988-2015 ACORD CORPORATION. All rights reserved.

**ACORD 25 (2016/03)**          The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 12/15/2019 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Gayla L. Guest, Area Vice President | | |
|---|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | | FAX (A/C, No): 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | | |
| 9515 Hillwood Dr. | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| Las Vegas NV 89134 | INSURER A : Starr Specialty Insurance Company | | |
| INSURED | INSURER B : | | |
| Ravn Air Group Holdings, LLC, Corvus Airlines, Inc., et al | INSURER C : | | |
| | INSURER D : | | |
| 4700 Old International Airport Rd. | INSURER E : | | |
| Anchorage AK 99502 | INSURER F : | | |

| COVERAGES | CERTIFICATE NUMBER: | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | COMMERCIAL GENERAL LIABILITY | | | | | | EACH OCCURRENCE | $ |
| | CLAIMS-MADE ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | OTHER: | | | | | | | $ |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | DED ☐ RETENTION $ | | | | | | | $ |
| A | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y / N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N / A | Y | 100 0003997 | 12/15/2019 | 12/15/2020 | ✓ PER STATUTE ☐ OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Re: Lease Agreement for 2018 Ford Transit 350 HD LXT 15 Passenger Van, VIN#1FBVU4XG6JKA52151

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| Delta Leasing, LLC | AUTHORIZED REPRESENTATIVE |
| 8101 Dimond Hook Dr. Anchorage AK 99507 | Bradley A. Meinhardt, Area President, National Producer #2730043 |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)          The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
12/15/2019

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Gayla L. Guest, Area Vice President |
|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 / FAX (A/C, No): 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com |
| 9515 Hillwood Dr. | **INSURER(S) AFFORDING COVERAGE** — NAIC # |
| Las Vegas NV 89134 | INSURER A : Starr Specialty Insurance Company |
| **INSURED** | INSURER B : |
| HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation | INSURER C : |
| Services, Inc. and Corvus Airlines, Inc. | INSURER D : |
| 4700 Old International Airport Rd. | INSURER E : |
| Anchorage AK 99502 | INSURER F : |

**COVERAGES**    **CERTIFICATE NUMBER:**    **REVISION NUMBER:**

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **COMMERCIAL GENERAL LIABILITY** ☐ CLAIMS-MADE ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: ☐ POLICY ☐ PRO-JECT ☐ LOC ☐ OTHER: | | | | | | GENERAL AGGREGATE | $ |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** ☐ ANY AUTO ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB ☐ OCCUR ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | EACH OCCURRENCE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | AGGREGATE | $ |
| | | | | | | | | $ |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | Y | 100 0003997 | 12/15/2019 | 12/15/2020 | ✓ PER STATUTE ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Re: Air Cargo Charter Services

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| Department of Administration Division of General Services PO Box 110210 Juneau AK 99811-0210 | AUTHORIZED REPRESENTATIVE Bradley A. Meinhardt, Area President, National Producer #2730043 |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)    The ACORD name and logo are registered marks of ACORD

**ACORD**®

## ADDITIONAL REMARKS SCHEDULE

**Page** 2 **of** 2

| AGENCY | NAMED INSURED |
|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation Services, Inc., and Corvus Airlines, Inc. |

| POLICY NUMBER | | |
|---|---|---|
| 100 0003997 | | |

| CARRIER | NAIC CODE | |
|---|---|---|
| Starr Specialty Insurance Company | | **EFFECTIVE DATE:** December 15, 2019 |

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**

**FORM NUMBER:** 25      **FORM TITLE:** Certificate of Insurance

The company waives its rights of subrogation against the Certificate Holder to the extent required under the agreement  This waiver shall not affect any of the Insured's own rights under the agreement.

Should the described policy be cancelled before the expiration date hereof, the issuing company will endeavor to give 30 days (10 days for non-payment) notice to the certificate holder named herein. However, failure to mail such notice shall not impose any obligation nor any liability of any kind upon the Company, its representatives or agents.

ACORD 101 (2008/01)                    © 2008 ACORD CORPORATION.  All rights reserved.

The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 12/15/2019 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Gayla L. Guest, Area Vice President |
|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | FAX (A/C, No): |
| | E-MAIL ADDRESS: gayla_guest@ajg.com |
| 9515 Hillwood Drive | INSURER(S) AFFORDING COVERAGE | NAIC # |
| Las Vegas NV 89134 | INSURER A : Starr Specialty Insurance Company | |
| INSURED | INSURER B : | |
| Peninsula Aviation Services, Inc. dba PenAir | INSURER C : | |
| | INSURER D : | |
| 6100 Boeing Avenue | INSURER E : | |
| Anchorage AK 99502 | INSURER F : | |

| COVERAGES | CERTIFICATE NUMBER: | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | COMMERCIAL GENERAL LIABILITY | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | OTHER: | | | | | | | $ |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | DED ☐ RETENTION $ | | | | | | | $ |
| A | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? ☐ Y/N (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | 100 0003997 | 12/15/2019 | 12/15/2020 | ✓ PER STATUTE ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| Department of Industrial Accidents Office of Investigations 1 Congress Street, Suite 100 Boston MA 02114-2017 | AUTHORIZED REPRESENTATIVE Bradley A. Meinhardt, Area Exec. VP, Nat'l Producer #2730043 |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)       The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 12/15/2019 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Gayla L. Guest, Area Vice President | | |
|---|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | | FAX (A/C, No): 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | | |
| 9515 Hillwood Dr. | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| Las Vegas                    NV  89134 | INSURER A : Starr Specialty Insurance Company | | |
| INSURED | INSURER B : | | |
| HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation | INSURER C : | | |
| Services, Inc. and Corvus Airlines, Inc. | INSURER D : | | |
| 4700 Old International Airport Rd. | INSURER E : | | |
| Anchorage                    AK  99502 | INSURER F : | | |

## COVERAGES          CERTIFICATE NUMBER:          REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | COMMERCIAL GENERAL LIABILITY | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE  ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | OTHER: | | | | | | | $ |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| A | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | Y | 100 0003997 | 12/15/2019 | 12/15/2020 | ☑ PER STATUTE ☐ OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| ExxonMobile Business Support Center, Argentina S.R.L., | AUTHORIZED REPRESENTATIVE |
| Service-provider to ExxonMobile Global Services Company | |
| CM Della Paolera 265, 8th Floor, 812F, Buenos Aires | |
| (C1001ADA)  Argentina | Bradley A. Meinhardt, Area President, National Producer #2730043 |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)          The ACORD name and logo are registered marks of ACORD

**AGENCY CUSTOMER ID:** _____

**LOC #:** _____

<table>
<tr><td>*ACORD*®</td><td colspan="2">**ADDITIONAL REMARKS SCHEDULE**</td><td>Page  2  of  2</td></tr>
</table>

| AGENCY | NAMED INSURED |
|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation Services, Inc., and Corvus Airlines, Inc. |
| **POLICY NUMBER** 100 0003997 | |
| **CARRIER** Starr Specialty Insurance Company   **NAIC CODE** | **EFFECTIVE DATE:** December 15, 2019 |

**ADDITIONAL REMARKS**

THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,

FORM NUMBER: 25      FORM TITLE: Certificate of Insurance

The company waives its rights of subrogation against the Certificate Holder to the extent required under the agreement  This waiver shall not affect any of the Insured's own rights under the agreement.

Should the described policy be cancelled before the expiration date hereof, the issuing company will endeavor to give 30 days (10 days for non-payment) notice to the certificate holder named herein. However, failure to mail such notice shall not impose any obligation nor any liability of any kind upon the Company, its representatives or agents.

© 2008 ACORD CORPORATION.  All rights reserved.
The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 12/15/2019 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Gayla L. Guest, Area Vice President | | |
|---|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | | FAX (A/C, No): 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | | |
| 9515 Hillwood Dr. | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| Las Vegas NV 89134 | INSURER A : Starr Specialty Insurance Company | | |
| INSURED | INSURER B : | | |
| HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation | INSURER C : | | |
| Services, Inc. and Corvus Airlines, Inc. | INSURER D : | | |
| 4700 Old International Airport Rd. | INSURER E : | | |
| Anchorage AK 99502 | INSURER F : | | |

## COVERAGES    CERTIFICATE NUMBER:    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **COMMERCIAL GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ OTHER: | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ **UMBRELLA LIAB** ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ **EXCESS LIAB** ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** ☐ Y / N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | | N / A | 100 0003997 | 12/15/2019 | 12/15/2020 | ☑ PER STATUTE ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| FedEx Ground | |
| | AUTHORIZED REPRESENTATIVE |
| 1000 FedEx Dr. | |
| Moon Township PA 15108 | Bradley A. Meinhardt, Area President, National Producer #2730043 |

© 1988-2015 ACORD CORPORATION. All rights reserved.

**ACORD 25 (2016/03)**        The ACORD name and logo are registered marks of ACORD

**AGENCY CUSTOMER ID:** _____

**LOC #:** _____

# ACORD® ADDITIONAL REMARKS SCHEDULE

Page 2 of 2

| AGENCY | NAMED INSURED |
|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation Services, Inc., and Corvus Airlines, Inc. |

**POLICY NUMBER**
100 0003997

| CARRIER | NAIC CODE | |
|---|---|---|
| Starr Specialty Insurance Company | | **EFFECTIVE DATE:** December 15, 2019 |

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**

**FORM NUMBER:** 25     **FORM TITLE:** Certificate of Insurance

The company waives its rights of subrogation against the Certificate Holder to the extent required under the agreement  This waiver shall not affect any of the Insured's own rights under the agreement.

Should the described policy be cancelled before the expiration date hereof, the issuing company will endeavor to give 30 days (10 days for non-payment) notice to the certificate holder named herein. However, failure to mail such notice shall not impose any obligation nor any liability of any kind upon the Company, its representatives or agents.

© 2008 ACORD CORPORATION.  All rights reserved.

The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 12/15/2019 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Gayla L. Guest, Area Vice President | | |
|---|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | | FAX (A/C, No): 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | | |
| 9515 Hillwood Dr. | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| Las Vegas                         NV  89134 | INSURER A : Starr Specialty Insurance Company | | |
| INSURED | INSURER B : | | |
| HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation | INSURER C : | | |
| Services, Inc. and Corvus Airlines, Inc. | INSURER D : | | |
| 4700 Old International Airport Rd. | INSURER E : | | |
| Anchorage                         AK  99502 | INSURER F : | | |

COVERAGES            CERTIFICATE NUMBER:                    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | COMMERCIAL GENERAL LIABILITY | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | OTHER: | | | | | | | $ |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| A | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY  Y / N | | N / A | 100 0003997 | 12/15/2019 | 12/15/2020 | ✓ PER STATUTE ☐ OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? ☐ (Mandatory in NH) | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | If yes, describe under | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| City of Homer Attn: City Manager | AUTHORIZED REPRESENTATIVE |
| 491 East Pioneer Avenue Homer                         AK  99603-7645 | Bradley A. Meinhardt, Area President, National Producer #2730043 |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)            The ACORD name and logo are registered marks of ACORD

**ACORD**®

# ADDITIONAL REMARKS SCHEDULE

Page __2__ of __2__

| | |
|---|---|
| **AGENCY**<br>Arthur J. Gallagher Risk Management Services, Inc. | **NAMED INSURED**<br>HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation Services, Inc., and Corvus Airlines, Inc. |
| **POLICY NUMBER**<br>100 0003997 | |
| **CARRIER**<br>Starr Specialty Insurance Company    **NAIC CODE** | **EFFECTIVE DATE:** December 15, 2019 |

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**

**FORM NUMBER:** 25      **FORM TITLE:** Certificate of Insurance

The company waives its rights of subrogation against the Certificate Holder to the extent required under the agreement  This waiver shall not affect any of the Insured's own rights under the agreement.

Should the described policy be cancelled before the expiration date hereof, the issuing company will endeavor to give 30 days (10 days for non-payment) notice to the certificate holder named herein. However, failure to mail such notice shall not impose any obligation nor any liability of any kind upon the Company, its representatives or agents.

 © 2008 ACORD CORPORATION.  All rights reserved.

The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 12/15/2019 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | Gayla L. Guest, Area Vice President | |
|---|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | | FAX (A/C, No): 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | | |
| 9515 Hillwood Dr. | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| Las Vegas                        NV  89134 | INSURER A : Starr Specialty Insurance Company | | |
| INSURED | INSURER B : | | |
| HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation | INSURER C : | | |
| Services, Inc. and Corvus Airlines, Inc. | INSURER D : | | |
| 4700 Old International Airport Rd. | INSURER E : | | |
| Anchorage                        AK  99502 | INSURER F : | | |

| COVERAGES | CERTIFICATE NUMBER: | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **COMMERCIAL GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ OTHER: | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ **UMBRELLA LIAB** ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ **EXCESS LIAB** ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y / N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? **(Mandatory in NH)** If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | 100 0003997 | 12/15/2019 | 12/15/2020 | ✓ PER STATUTE ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| City of Kenai, its Council Members, Directors, Officers, Agents & Employees          Attn:  Mr. Rick R. Koch, City Manager | AUTHORIZED REPRESENTATIVE |
| 210 Fidalgo Avenue | |
| Kenai                              AK  99611-7794 | Bradley A. Meinhardt, Area President, National Producer #2730043 |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)          The ACORD name and logo are registered marks of ACORD

**AGENCY CUSTOMER ID:** _____

**LOC #:** _____

# ADDITIONAL REMARKS SCHEDULE

Page 2 of 2

**AGENCY**
Arthur J. Gallagher Risk Management Services, Inc.

**POLICY NUMBER**
100 0003997

**CARRIER**
Starr Specialty Insurance Company

**NAIC CODE**

**NAMED INSURED**
HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation Services, Inc., and Corvus Airlines, Inc.

**EFFECTIVE DATE:** December 15, 2019

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**

**FORM NUMBER:** 25      **FORM TITLE:** Certificate of Insurance

The company waives its rights of subrogation against the Certificate Holder to the extent required under the agreement  This waiver shall not affect any of the Insured's own rights under the agreement.

Should the described policy be cancelled before the expiration date hereof, the issuing company will endeavor to give 30 days (10 days for non-payment) notice to the certificate holder named herein. However, failure to mail such notice shall not impose any obligation nor any liability of any kind upon the Company, its representatives or agents.

© 2008 ACORD CORPORATION.  All rights reserved.
The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 12/15/2019 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Gayla L. Guest, Area Vice President | | |
|---|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | | FAX (A/C, No): 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | | |
| 9515 Hillwood Dr. | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| Las Vegas NV 89134 | INSURER A : Starr Specialty Insurance Company | | |
| INSURED | INSURER B : | | |
| HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation | INSURER C : | | |
| Services, Inc. and Corvus Airlines, Inc. | INSURER D : | | |
| 4700 Old International Airport Rd. | INSURER E : | | |
| Anchorage AK 99502 | INSURER F : | | |

## COVERAGES   CERTIFICATE NUMBER:   REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **COMMERCIAL GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | OTHER: | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | **UMBRELLA LIAB** ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | **EXCESS LIAB** ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? **(Mandatory in NH)** If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | 100 0003997 | 12/15/2019 | 12/15/2020 | ☑ PER STATUTE ☐ OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Re: Office/Ticket Space #32-22 + 34/35

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| City Manager, City of Kenai<br>Kenai Municipal Airport<br>210 Fidalgo Avenue<br>Kenai AK 99611-7794 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE<br><br>Bradley A. Meinhardt, Area President, National Producer #2730043 |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)   The ACORD name and logo are registered marks of ACORD

**AGENCY CUSTOMER ID:** _____

**LOC #:** _____

# ADDITIONAL REMARKS SCHEDULE

ACORD®

Page 2 of 2

| AGENCY | NAMED INSURED |
|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation Services, Inc., and Corvus Airlines, Inc. |

**POLICY NUMBER**
100 0003997

| CARRIER | NAIC CODE | |
|---|---|---|
| Starr Specialty Insurance Company | | **EFFECTIVE DATE:** December 15, 2019 |

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**

**FORM NUMBER:** 25       **FORM TITLE:** Certificate of Insurance

The company waives its rights of subrogation against the Certificate Holder to the extent required under the agreement  This waiver shall not affect any of the Insured's own rights under the agreement.

Should the described policy be cancelled before the expiration date hereof, the issuing company will endeavor to give 30 days (10 days for non-payment) notice to the certificate holder named herein. However, failure to mail such notice shall not impose any obligation nor any liability of any kind upon the Company, its representatives or agents.

© 2008 ACORD CORPORATION.  All rights reserved.

The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
12/15/2019

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Gayla L. Guest, Area Vice President | | |
|---|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | | FAX (A/C, No): 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | | |
| 9515 Hillwood Dr. | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| Las Vegas NV 89134 | INSURER A : Starr Specialty Insurance Company | | |
| INSURED | INSURER B : | | |
| HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation | INSURER C : | | |
| Services, Inc. and Corvus Airlines, Inc. | INSURER D : | | |
| 4700 Old International Airport Rd. | INSURER E : | | |
| Anchorage AK 99502 | INSURER F : | | |

## COVERAGES CERTIFICATE NUMBER: REVISION NUMBER: 025A

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | COMMERCIAL GENERAL LIABILITY | | | | | | EACH OCCURRENCE | $ |
| | CLAIMS-MADE ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | OTHER: | | | | | | | $ |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | DED ☐ RETENTION $ | | | | | | | $ |
| A | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | Y | 100 0003997 | 12/15/2019 | 12/15/2020 | ✓ PER STATUTE ☐ OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| Northern Air Cargo, Inc. and TOTE Services, Inc. | |
| 3900 Old International Airport Road | AUTHORIZED REPRESENTATIVE |
| Anchorage AK 99502 | Bradley A. Meinhardt, Area President, National Producer #2730043 |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)     The ACORD name and logo are registered marks of ACORD

**ACORD**®

# ADDITIONAL REMARKS SCHEDULE

Page _____ of _____

| AGENCY | NAMED INSURED |
|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation Services, Inc., and Corvus Airlines, Inc. |

| POLICY NUMBER | |
|---|---|
| 100 0003997 | |

| CARRIER | NAIC CODE |
|---|---|
| Starr Specialty Insurance Company | |

EFFECTIVE DATE: 12/15/2019

**ADDITIONAL REMARKS**

THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,

FORM NUMBER: 25        FORM TITLE: Certificate of Insurance

Waiver of Subrogation is provided for any entity in which the Insured is required to provide a waiver under a written contract.  WC 00 03 13

Should the described policy be cancelled before its expiration date hereof, the issuing company will endeavor to give 30 days Notice (10 days for non-payment of premium) to the Certificate Holder.  However, failure to mail such notice shall not impose any obligation nor any liability of any kind upon the Company or its representatives or agents.  WC 54 06 02

ACORD 101 (2008/01)

© 2008 ACORD CORPORATION.  All rights reserved.

The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
12/15/2019

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | Gayla L. Guest, Area Vice President | | |
|---|---|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | | FAX (A/C, No): 702-647-5433 | |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | | | |
| 9515 Hillwood Dr. | INSURER(S) AFFORDING COVERAGE | | | NAIC # |
| Las Vegas                NV  89134 | INSURER A : Starr Specialty Insurance Company | | | |
| INSURED | INSURER B : | | | |
| HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation | INSURER C : | | | |
| Services, Inc. and Corvus Airlines, Inc. | INSURER D : | | | |
| 4700 Old International Airport Rd. | INSURER E : | | | |
| Anchorage                AK  99502 | INSURER F : | | | |

## COVERAGES          CERTIFICATE NUMBER:          REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **COMMERCIAL GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE  ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | OTHER: | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ **UMBRELLA LIAB** ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ **EXCESS LIAB** ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y / N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? ☐ (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N / A | | 100 0003997 | 12/15/2019 | 12/15/2020 | ☑ PER STATUTE  ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| Northern Air Cargo | |
| 3900 Old International Airport  Road | **AUTHORIZED REPRESENTATIVE** |
| Anchorage                AK  99502 | Bradley A. Meinhardt, Area President, National Producer #2730043 |

© 1988-2015 ACORD CORPORATION.  All rights reserved.

**ACORD 25 (2016/03)**          The ACORD name and logo are registered marks of ACORD

**AGENCY CUSTOMER ID:** _____

**LOC #:** _____

| ACORD® | **ADDITIONAL REMARKS SCHEDULE** | Page 2 of 2 |
|---|---|---|

**AGENCY**
Arthur J. Gallagher Risk Management Services, Inc.

**NAMED INSURED**
HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation Services, Inc., and Corvus Airlines, Inc.

**POLICY NUMBER**
100 0003997

**CARRIER**
Starr Specialty Insurance Company

**NAIC CODE**

**EFFECTIVE DATE:** December 15, 2019

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**

**FORM NUMBER:** 25   **FORM TITLE:** Certificate of Insurance

The company waives its rights of subrogation against the Certificate Holder to the extent required under the agreement  This waiver shall not affect any of the Insured's own rights under the agreement.

Should the described policy be cancelled before the expiration date hereof, the issuing company will endeavor to give 30 days (10 days for non-payment) notice to the certificate holder named herein. However, failure to mail such notice shall not impose any obligation nor any liability of any kind upon the Company, its representatives or agents.

© 2008 ACORD CORPORATION.  All rights reserved.
The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
12/15/2019

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

**IMPORTANT:** If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Gayla L. Guest, Area Vice President | | |
|---|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | | FAX (A/C, No): 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | | |
| 9515 Hillwood Dr. | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| Las Vegas NV 89134 | INSURER A : Starr Specialty Insurance Company | | |
| **INSURED** | INSURER B : | | |
| HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation | INSURER C : | | |
| Services, Inc. and Corvus Airlines, Inc. | INSURER D : | | |
| 4700 Old International Airport Rd. | INSURER E : | | |
| Anchorage AK 99502 | INSURER F : | | |

## COVERAGES

**CERTIFICATE NUMBER:** **REVISION NUMBER:** 026

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **COMMERCIAL GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ OTHER: | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ **UMBRELLA LIAB** ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ **EXCESS LIAB** ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? **(Mandatory in NH)** If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | 100 0003997 | 12/15/2019 | 12/15/2020 | ✓ PER STATUTE ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)**

Contract: OSA00000

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| Oil Search (Alaska) LLC 510 L Street Suite 310 | **AUTHORIZED REPRESENTATIVE** |
| Anchorage Ak 99501 | Bradley A. Meinhardt, Area President, National Producer #2730043 |

© 1988-2015 ACORD CORPORATION. All rights reserved.

**ACORD 25 (2016/03)** The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
12/15/2019

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Gayla L. Guest, Area Vice President | | |
|---|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | | FAX (A/C, No): 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | | |
| 9515 Hillwood Dr. | **INSURER(S) AFFORDING COVERAGE** | | NAIC # |
| Las Vegas NV 89134 | INSURER A : Starr Specialty Insurance Company | | |
| **INSURED** | INSURER B : | | |
| HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation | INSURER C : | | |
| Services, Inc. and Corvus Airlines, Inc. | INSURER D : | | |
| 4700 Old International Airport Rd. | INSURER E : | | |
| Anchorage AK 99502 | INSURER F : | | |

| COVERAGES | CERTIFICATE NUMBER: | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **COMMERCIAL GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | OTHER: | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| A | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? Y/N (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | | N/A | 100 0003997 | 12/15/2019 | 12/15/2020 | ✓ PER STATUTE ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| Pioneer Natural Resources USA, Inc., Pioneer Natural Resources Alaska, Inc. Attn: Michelle Bennett 5205 O'Connor Blvd., Suite 1400 Irving TX 75039 | **AUTHORIZED REPRESENTATIVE** Bradley A. Meinhardt, Area President, National Producer #2730043 |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)          The ACORD name and logo are registered marks of ACORD

**AGENCY CUSTOMER ID:** _____

**LOC #:** _____

**ACORD**®

# ADDITIONAL REMARKS SCHEDULE

Page 2 of 2

| AGENCY | NAMED INSURED |
|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation Services, Inc., and Corvus Airlines, Inc. |

**POLICY NUMBER**
100 0003997

| CARRIER | NAIC CODE | |
|---|---|---|
| Starr Specialty Insurance Company | | **EFFECTIVE DATE:** December 15, 2019 |

**ADDITIONAL REMARKS**

THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,

FORM NUMBER: 25       FORM TITLE: Certificate of Insurance

The company waives its rights of subrogation against the Certificate Holder to the extent required under the agreement  This waiver shall not affect any of the Insured's own rights under the agreement.

Should the described policy be cancelled before the expiration date hereof, the issuing company will endeavor to give 30 days (10 days for non-payment) notice to the certificate holder named herein. However, failure to mail such notice shall not impose any obligation nor any liability of any kind upon the Company, its representatives or agents.

© 2008 ACORD CORPORATION.  All rights reserved.

The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 12/15/2019 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Gayla L. Guest, Area Vice President | |
|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | FAX (A/C, No): 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | |
| 9515 Hillwood Dr. | INSURER(S) AFFORDING COVERAGE | NAIC # |
| Las Vegas                          NV  89134 | INSURER A : Starr Specialty Insurance Company | |
| INSURED | INSURER B : | |
| HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation | INSURER C : | |
| Services, Inc. and Corvus Airlines, Inc. | INSURER D : | |
| 4700 Old International Airport Rd. | INSURER E : | |
| Anchorage                          AK  99502 | INSURER F : | |

| COVERAGES | CERTIFICATE NUMBER: | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | COMMERCIAL GENERAL LIABILITY | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ OTHER: | | | | | | | $ |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| A | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY     Y / N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N / A | Y | 100 0003997 | 12/15/2019 | 12/15/2020 | ☑ PER STATUTE ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

RFQ#: ACO 17-005

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| Purchasing Department Department of Corrections 550 W. 7th, Suite 1800 Anchorage                          AK  99510 | AUTHORIZED REPRESENTATIVE Bradley A. Meinhardt, Area President, National Producer #2730043 |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)          The ACORD name and logo are registered marks of ACORD

**AGENCY CUSTOMER ID:** _____

**LOC #:** _____

ACORD®

# ADDITIONAL REMARKS SCHEDULE

Page 2 of 2

| AGENCY | NAMED INSURED |
|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | HoTH, Inc., Frontier Flying Service, Inc., Hageland |
| **POLICY NUMBER** | Aviation Services, Inc., and Corvus Airlines, Inc. |
| 100 0003997 | |

| CARRIER | NAIC CODE | |
|---|---|---|
| Starr Specialty Insurance Company | | **EFFECTIVE DATE:** December 15, 2019 |

**ADDITIONAL REMARKS**

THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,

FORM NUMBER: 25        FORM TITLE: Certificate of Insurance

The company waives its rights of subrogation against the Certificate Holder to the extent required under the agreement  This waiver shall not affect any of the Insured's own rights under the agreement.

Should the described policy be cancelled before the expiration date hereof, the issuing company will endeavor to give 30 days (10 days for non-payment) notice to the certificate holder named herein. However, failure to mail such notice shall not impose any obligation nor any liability of any kind upon the Company, its representatives or agents.

© 2008 ACORD CORPORATION.  All rights reserved.

The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
12/15/2019

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Gayla L. Guest, Area Vice President | | |
|---|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | | FAX (A/C, No): 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | | |
| 9515 Hillwood Dr. | **INSURER(S) AFFORDING COVERAGE** | | NAIC # |
| Las Vegas                          NV  89134 | INSURER A : Starr Specialty Insurance Company | | |
| **INSURED** | INSURER B : | | |
| HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation | INSURER C : | | |
| Services, Inc. and Corvus Airlines, Inc. | INSURER D : | | |
| 4700 Old International Airport Rd. | INSURER E : | | |
| Anchorage                          AK  99502 | INSURER F : | | |

| COVERAGES | CERTIFICATE NUMBER: | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **COMMERCIAL GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | OTHER: | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | 100 0003997 | 12/15/2019 | 12/15/2020 | ☑ PER STATUTE ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Shell Offshore, Inc. | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| 150 North Dairy Ashford Road | **AUTHORIZED REPRESENTATIVE** |
| Houston                          TX  77079 | Bradley A. Meinhardt, Area President, National Producer #2730043 |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)          The ACORD name and logo are registered marks of ACORD

**AGENCY CUSTOMER ID:** _____

**LOC #:** _____

*ACORD*®

# ADDITIONAL REMARKS SCHEDULE

Page 2 of 2

| AGENCY | NAMED INSURED |
|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation Services, Inc., and Corvus Airlines, Inc. |

**POLICY NUMBER**
100 0003997

| CARRIER | | NAIC CODE |
|---|---|---|
| Starr Specialty Insurance Company | | |

**EFFECTIVE DATE:** December 15, 2019

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**

**FORM NUMBER:** 25        **FORM TITLE:** Certificate of Insurance

The company waives its rights of subrogation against the Certificate Holder to the extent required under the agreement  This waiver shall not affect any of the Insured's own rights under the agreement.

Should the described policy be cancelled before the expiration date hereof, the issuing company will endeavor to give 30 days (10 days for non-payment) notice to the certificate holder named herein. However, failure to mail such notice shall not impose any obligation nor any liability of any kind upon the Company, its representatives or agents.

ACORD 101 (2008/01)                                   © 2008 ACORD CORPORATION.  All rights reserved.
The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 12/15/2019 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | Gayla L. Guest, Area Vice President | | |
|---|---|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | | FAX (A/C, No): 702-647-5433 | |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | | | |
| 9515 Hillwood Dr. | INSURER(S) AFFORDING COVERAGE | | | NAIC # |
| Las Vegas                            NV  89134 | INSURER A : Starr Specialty Insurance Company | | | |
| INSURED | INSURER B : | | | |
| HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation | INSURER C : | | | |
| Services, Inc. and Corvus Airlines, Inc. | INSURER D : | | | |
| 4700 Old International Airport Rd. | INSURER E : | | | |
| Anchorage                            AK  99502 | INSURER F : | | | |

## COVERAGES                CERTIFICATE NUMBER:                REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | COMMERCIAL GENERAL LIABILITY | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE  ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ OTHER: | | | | | | | $ |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY  ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY  ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB  ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB  ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED  ☐ RETENTION $ | | | | | | | $ |
| A | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY            Y / N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | | N/A | 100 0003997 | 12/15/2019 | 12/15/2020 | ☑ PER STATUTE  ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Re: Alaska International Airports System Operating Agreement and Passenger Terminal Lease ADA-90744 and ADA-01351 between the State of Alaska acting by and thorough its Department of Transportation and Public Facilities and Frontier Flying Service, Inc.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| State of Alaska Department of Transportation & Public Facilities PO Box 196960 Anchorage                            AK  99519 | AUTHORIZED REPRESENTATIVE |
| | Bradley A. Meinhardt, Area President, National Producer #2730043 |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)          The ACORD name and logo are registered marks of ACORD

**AGENCY CUSTOMER ID:** _____

**LOC #:** _____

**ACORD**®

# ADDITIONAL REMARKS SCHEDULE

**Page** 2 **of** 2

| AGENCY | NAMED INSURED |
|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation Services, Inc., and Corvus Airlines, Inc. |

**POLICY NUMBER**
100 0003997

| CARRIER | NAIC CODE | |
|---|---|---|
| Starr Specialty Insurance Company | | **EFFECTIVE DATE:** December 15, 2019 |

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**

**FORM NUMBER:** 25        **FORM TITLE:** Certificate of Insurance

The company waives its rights of subrogation against the Certificate Holder to the extent required under the agreement  This waiver shall not affect any of the Insured's own rights under the agreement.

Should the described policy be cancelled before the expiration date hereof, the issuing company will endeavor to give 30 days (10 days for non-payment) notice to the certificate holder named herein. However, failure to mail such notice shall not impose any obligation nor any liability of any kind upon the Company, its representatives or agents.

© 2008 ACORD CORPORATION.  All rights reserved.

The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 12/15/2019 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Gayla L. Guest, Area Vice President | | |
|---|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | | FAX (A/C, No): 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | | |
| 9515 Hillwood Dr. | **INSURER(S) AFFORDING COVERAGE** | | NAIC # |
| Las Vegas                          NV  89134 | INSURER A : Starr Specialty Insurance Company | | |
| **INSURED** | INSURER B : | | |
| HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation | INSURER C : | | |
| Services, Inc. and Corvus Airlines, Inc. | INSURER D : | | |
| 4700 Old International Airport Rd. | INSURER E : | | |
| Anchorage                          AK  99502 | INSURER F : | | |

## COVERAGES          CERTIFICATE NUMBER:                    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **COMMERCIAL GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE  ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ OTHER: | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y / N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? **(Mandatory in NH)** If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | 100 0003997 | 12/15/2019 | 12/15/2020 | ☑ PER STATUTE  ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Re: Hangar Lease Agreement (ADA-02847) and Land Use Permit (ADA-31815) between the State of Alaska, Department of Transportation and Public Facilities and Frontier Hangar Group, LLC.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| State of Alaska Department of Transportation & Public Facilities PO Box 196960 Anchorage                          AK  99519 | **AUTHORIZED REPRESENTATIVE** Bradley A. Meinhardt, Area President, National Producer #2730043 |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)          The ACORD name and logo are registered marks of ACORD

**AGENCY CUSTOMER ID:** _____

**LOC #:** _____

# ACORD® ADDITIONAL REMARKS SCHEDULE

**Page** 2 **of** 2

| | |
|---|---|
| **AGENCY**<br>Arthur J. Gallagher Risk Management Services, Inc. | **NAMED INSURED**<br>HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation Services, Inc., and Corvus Airlines, Inc. |
| **POLICY NUMBER**<br>100 0003997 | |
| **CARRIER**<br>Starr Specialty Insurance Company    **NAIC CODE** | **EFFECTIVE DATE:** December 15, 2019 |

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**

**FORM NUMBER:** 25    **FORM TITLE:** Certificate of Insurance

The company waives its rights of subrogation against the Certificate Holder to the extent required under the agreement  This waiver shall not affect any of the Insured's own rights under the agreement.

Should the described policy be cancelled before the expiration date hereof, the issuing company will endeavor to give 30 days (10 days for non-payment) notice to the certificate holder named herein. However, failure to mail such notice shall not impose any obligation nor any liability of any kind upon the Company, its representatives or agents.

© 2008 ACORD CORPORATION.  All rights reserved.<br>The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 12/15/2019 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT:  If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | Gayla L. Guest, Area Vice President | | |
|---|---|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | | FAX (A/C, No): 702-647-5433 | |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | | | |
| 9515 Hillwood Dr. | INSURER(S) AFFORDING COVERAGE | | | NAIC # |
| Las Vegas NV 89134 | INSURER A : Starr Specialty Insurance Company | | | |
| INSURED | INSURER B : | | | |
| HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation | INSURER C : | | | |
| Services, Inc. and Corvus Airlines, Inc. | INSURER D : | | | |
| 4700 Old International Airport Rd. | INSURER E : | | | |
| Anchorage AK 99502 | INSURER F : | | | |

| COVERAGES | CERTIFICATE NUMBER: | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **COMMERCIAL GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | OTHER: | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ **UMBRELLA LIAB** ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ **EXCESS LIAB** ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION$ | | | | | | | $ |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y / N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? **(Mandatory in NH)** If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | 100 0003997 | 12/15/2019 | 12/15/2020 | ☑ PER STATUTE ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES  (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Re:  ADA-31879, PW# 103684

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| State of Alaska Department of Transportation & Public Facilities PO Box 196960 Anchorage AK 99519 | AUTHORIZED REPRESENTATIVE Bradley A. Meinhardt, Area President, National Producer #2730043 |

© 1988-2015 ACORD CORPORATION.  All rights reserved.

ACORD 25 (2016/03)          The ACORD name and logo are registered marks of ACORD

**AGENCY CUSTOMER ID:** _____

**LOC #:** _____

# ACORD®   ADDITIONAL REMARKS SCHEDULE

Page 2 of 2

| AGENCY | NAMED INSURED |
|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation Services, Inc., and Corvus Airlines, Inc. |

**POLICY NUMBER**
100 0003997

| CARRIER | NAIC CODE | |
|---|---|---|
| Starr Specialty Insurance Company | | **EFFECTIVE DATE:** December 15, 2019 |

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**

**FORM NUMBER:** 25     **FORM TITLE:** Certificate of Insurance

The company waives its rights of subrogation against the Certificate Holder to the extent required under the agreement  This waiver shall not affect any of the Insured's own rights under the agreement.

Should the described policy be cancelled before the expiration date hereof, the issuing company will endeavor to give 30 days (10 days for non-payment) notice to the certificate holder named herein. However, failure to mail such notice shall not impose any obligation nor any liability of any kind upon the Company, its representatives or agents.

© 2008 ACORD CORPORATION.  All rights reserved.

The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

| DATE (MM/DD/YYYY) |
|---|
| 12/15/2019 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

**IMPORTANT:** If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Gayla L. Guest, Area Vice President | |
|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | FAX (A/C, No): 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | |
| 9515 Hillwood Dr. | **INSURER(S) AFFORDING COVERAGE** | NAIC # |
| Las Vegas                          NV  89134 | INSURER A : Starr Specialty Insurance Company | |
| **INSURED** | INSURER B : | |
| HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation | INSURER C : | |
| Services, Inc. and Corvus Airlines, Inc. | INSURER D : | |
| 4700 Old International Airport Rd. | INSURER E : | |
| Anchorage                          AK  99502 | INSURER F : | |

| COVERAGES | CERTIFICATE NUMBER: | REVISION NUMBER: |
|---|---|---|

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **COMMERCIAL GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ OTHER: | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ **UMBRELLA LIAB** ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ **EXCESS LIAB** ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION$ | | | | | | | $ |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? **(Mandatory in NH)** If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | 100 0003997 | 12/15/2019 | 12/15/2020 | ✓ PER STATUTE ☐ OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)**

Re: ADA-32008, PW# 105052

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| State of Alaska | |
| Department of Transportation & Public Facilities | **AUTHORIZED REPRESENTATIVE** |
| PO Box 196960 | |
| Anchorage                          AK  99519 | Bradley A. Meinhardt, Area President, National Producer #2730043 |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)                The ACORD name and logo are registered marks of ACORD

**AGENCY CUSTOMER ID:** _____

**LOC #:** _____

**ACORD**®

# ADDITIONAL REMARKS SCHEDULE

Page 2 of 2

| AGENCY | NAMED INSURED |
|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation Services, Inc., and Corvus Airlines, Inc. |

**POLICY NUMBER**
100 0003997

| CARRIER | NAIC CODE | |
|---|---|---|
| Starr Specialty Insurance Company | | **EFFECTIVE DATE:** December 15, 2019 |

**ADDITIONAL REMARKS**

**THIS ADDITIONAL REMARKS FORM IS A SCHEDULE TO ACORD FORM,**

**FORM NUMBER:** 25      **FORM TITLE:** Certificate of Insurance

The company waives its rights of subrogation against the Certificate Holder to the extent required under the agreement  This waiver shall not affect any of the Insured's own rights under the agreement.

Should the described policy be cancelled before the expiration date hereof, the issuing company will endeavor to give 30 days (10 days for non-payment) notice to the certificate holder named herein. However, failure to mail such notice shall not impose any obligation nor any liability of any kind upon the Company, its representatives or agents.

© 2008 ACORD CORPORATION.  All rights reserved.
The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 12/15/2019 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Gayla L. Guest, Area Vice President | | |
|---|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | | FAX (A/C, No): 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | | |
| 9515 Hillwood Dr. | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| Las Vegas                NV  89134 | INSURER A : Starr Specialty Insurance Company | | |
| INSURED | INSURER B : | | |
| HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation | INSURER C : | | |
| Services, Inc. and Corvus Airlines, Inc. | INSURER D : | | |
| 4700 Old International Airport Rd. | INSURER E : | | |
| Anchorage                AK  99502 | INSURER F : | | |

## COVERAGES                CERTIFICATE NUMBER:                REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **COMMERCIAL GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE  ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | OTHER: | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY  ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY  ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ **UMBRELLA LIAB**  ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ **EXCESS LIAB**  ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**  Y/N  ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? ☐ (Mandatory in NH)  If yes, describe under DESCRIPTION OF OPERATIONS below | | N/A | 100 0003997 | 12/15/2019 | 12/15/2020 | ✓ PER STATUTE  ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES  (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| To Whom It May Concern | AUTHORIZED REPRESENTATIVE |
| | Bradley A. Meinhardt, Area President, National Producer #2730043 |

© 1988-2015 ACORD CORPORATION.  All rights reserved.

**ACORD 25 (2016/03)**                The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 12/15/2019 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Gayla L. Guest, Area Vice President | | |
|---|---|---|---|
| Arthur J. Gallagher Risk Management Services, Inc. | PHONE (A/C, No, Ext): 702-647-2333 | | FAX (A/C, No): 702-647-5433 |
| | E-MAIL ADDRESS: gayla_guest@ajg.com | | |
| 9515 Hillwood Dr. | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| Las Vegas                     NV  89134 | INSURER A : Starr Specialty Insurance Company | | |
| INSURED | INSURER B : | | |
| HoTH, Inc., Frontier Flying Service, Inc., Hageland Aviation | INSURER C : | | |
| Services, Inc. and Corvus Airlines, Inc. | INSURER D : | | |
| 4700 Old International Airport Rd. | INSURER E : | | |
| Anchorage                     AK  99502 | INSURER F : | | |

## COVERAGES          CERTIFICATE NUMBER:                    REVISION NUMBER:    026

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **COMMERCIAL GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | ☐ CLAIMS-MADE  ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | ☐ POLICY  ☐ PRO-JECT  ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ OTHER: | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY  ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY  ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ **UMBRELLA LIAB**  ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ **EXCESS LIAB**  ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED  ☐ RETENTION $ | | | | | | | $ |
| A | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY**  Y / N  ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? ☐ **(Mandatory in NH)**  If yes, describe under DESCRIPTION OF OPERATIONS below | | N/A | 100 0003997 | 12/15/2019 | 12/15/2020 | ✔ PER STATUTE  ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| Yukon-Kuskokwim Health Corporation | |
| | AUTHORIZED REPRESENTATIVE |
| PO Box 528 | |
| Bethel                     AK  99559 | Bradley A. Meinhardt, Area President, National Producer #2730043 |

© 1988-2015 ACORD CORPORATION.  All rights reserved.

**ACORD 25 (2016/03)**          The ACORD name and logo are registered marks of ACORD

# ADMINISTRATIVE SERVICE CONTRACT

## BETWEEN

## PREMERA BLUE CROSS BLUE SHIELD OF ALASKA

## AND

## RAVN AIR GROUP

## EFFECTIVE JANUARY 1, 2020 THROUGH DECEMBER 31, 2020
## (THE "CONTRACT PERIOD")

This Contract is effective by and between the group named above (hereinafter referred to as the "Plan Sponsor"), and Premera Blue Cross Blue Shield of Alaska (hereinafter referred to as the "Claims Administrator" or "we," "us," or "our").

WHEREAS, the Plan Sponsor has established an employee benefit plan (hereinafter referred to as the "Plan") which provides for payment of certain welfare benefits to and for certain eligible individuals as defined by its Plan Document, such individuals being hereinafter referred to as "Members"; and,

WHEREAS, the Plan Sponsor has chosen to self-insure the benefit program(s) provided under the Plan; and

WHEREAS, the Plan Sponsor desires to engage the services of the Claims Administrator to provide administrative services for the Plan;

NOW THEREFORE, in consideration of the mutual covenants and conditions as contained herein the parties hereto agree to the provisions in this Contract, including any Attachments and endorsements thereto.  The parties below have signed as duly authorized officers and have hereby executed this Contract.  If this Contract is not signed and returned to the Claims Administrator within sixty (60) days of its delivery to the Plan Sponsor or its agent, the Claims Administrator will assume the Plan Sponsor's concurrence and the Plan Sponsor will be bound by its terms.

IN WITNESS WHEREOF the parties hereto sign their names as duly authorized officers and have executed this Contract.

**Ravn Air Group**

BY: _____     DATE: _____

_____
Title

ADDRESS: _____

_____

**Premera Blue Cross**

BY: _____     DATE:   January 1, 2020

**Jim Grazko**
**President**

P.O. Box 327
Seattle, WA 98111-0327

ADSERV-ASC (01-2020)

# TABLE OF CONTENTS

1. DEFINITIONS....................................................................................................................1

2. DUTIES AND RESPONSIBILITIES OF THE PLAN SPONSOR ..................................................4

   2.1. Documentation ..........................................................................................................4

   2.2. Administrative Duties.................................................................................................4

   2.3. Taxes, Assessments, And Fees ...................................................................................5

   2.4. Compliance With Law ................................................................................................5

   2.5. Appeals ......................................................................................................................6

   2.6. Funding......................................................................................................................6

3. DUTIES AND RESPONSIBILITIES OF THE CLAIMS ADMINISTRATOR.................................7

   3.1. Administrative Duties.................................................................................................7

   3.2. Appeals ......................................................................................................................8

   3.3. Claims Processing .......................................................................................................8

   3.4. Funding Support..........................................................................................................8

   3.5. Participation In Class Action Suits ..............................................................................9

4. LIMITS OF THE CLAIMS ADMINISTRATOR'S RESPONSIBILITY ........................................9

   4.1. Recoveries ................................................................................................................10

   4.2. Independent Contractor ..........................................................................................10

   4.3. Limits of Liability ......................................................................................................10

5. FEES OF THE CLAIMS ADMINISTRATOR ....................................................................... 10

   5.1. Payment Time Limits................................................................................................10

   5.2. Late Payments .........................................................................................................10

   5.3. Customization Fees ..................................................................................................10

6. AUDIT............................................................................................................................11

7. TERM OF CONTRACT......................................................................................................11

   7.1. Contract Period ........................................................................................................11

   7.2. Changes to Fees .......................................................................................................11

8. TERMINATION ...............................................................................................................12

   8.1. Termination With Notice .........................................................................................12

   8.2. Contract Period Expiration .......................................................................................12

   8.3. Termination Due to Insolvency ................................................................................12

   8.4. Termination Due to Inability to Perform..................................................................12

8.5.  Termination For Nonpayment ................................................................................... 13

8.6.  Plan Sponsor Liability Upon Termination ................................................................ 13

8.7.  Claims Runout ........................................................................................................... 13

**9.  DISCLOSURE** .......................................................................................................... **13**

**10.  OTHER PROVISIONS** ............................................................................................ **13**

10.1.  Choice of Law ........................................................................................................... 13

10.2.  Proprietary Information .......................................................................................... 14

10.3.  Parties To The Contract .......................................................................................... 14

10.4.  Notice ........................................................................................................................ 14

10.5.  Integration ................................................................................................................ 14

10.6.  Assignment ............................................................................................................... 14

10.7.  Survival ..................................................................................................................... 14

10.8.  Independent Contractors ........................................................................................ 15

**11.  ATTACHMENTS TO THE ADMINISTRATIVE SERVICE CONTRACT** ..................... **15**

**ATTACHMENT A – OUT-OF-AREA SERVICES** ............................................................. **16**

**ATTACHMENT B – CENSUS INFORMATION** ............................................................... **19**

**ATTACHMENT C – REPORTING** ................................................................................... **20**

**ATTACHMENT D – FEES OF THE CLAIMS ADMINISTRATOR** ..................................... **21**

**ATTACHMENT E – BUSINESS ASSOCIATE AGREEMENT** ............................................ **24**

**ATTACHMENT F – CARECOMPASS360°** ..................................................................... **25**

Appendix 1 Care Facilitation Services ................................................................... 26

Appendix 2 Personal Health Support Services ...................................................... 27

Appendix 3 BestBeginnings Maternity Program ................................................... 28

Appendix 4 Neonatal Intensive Care Risk Assessment and Case Management ... 29

Appendix 5 Outpatient Rehabilitation Review Program ....................................... 30

**ATTACHMENT G – EXTENDED POST-PAYMENT RECOVERY SERVICES** .................... **31**

**ATTACHMENT H – FUNDING ACCOUNTS** .................................................................. **33**

Appendix 1 Administration and Recordkeeping Services for Health Savings Account ......................... 39

**ATTACHMENT I – FIDUCIARY AUTHORITY** ................................................................ **41**

Plan Sponsor's Fiduciary Authority ....................................................................... 41

Claims Administrator's Fiduciary Authority .......................................................... 41

**ATTACHMENT J – ELECTIVE PROCEDURE TRAVEL SUPPORT** ................................... **42**

**ATTACHMENT K – PREMERA-DESIGNATED CENTERS OF EXCELLENCE** .................. **43**

Medical Services ................................................................................................................... 43

Travel .................................................................................................................................... 43

**ATTACHMENT L – PREMERA VALUE-BASED PROVIDER ARRANGEMENTS ............................................ 44**

# 1. DEFINITIONS

**Administration Fee Guarantee Period**   The multi-year period during which the Claims Administrator's base administration fees will not exceed amounts agreed upon by the Claims Administrator and the Plan Sponsor.  The Administration Fee Guarantee Period is shown in "Attachment D – Fees Of The Claims Administrator."

**Adverse Benefit Determination**   Any of the following: a denial, reduction, or termination of, or a failure to provide or make payment (in whole or in part) for, a benefit, including payment that is based on a determination of the eligibility of a Member to participate in the Plan.  This includes any denials, reductions, or failures to provide or make payment resulting from the application of utilization review or limitations on experimental and investigational services, medical or dental necessity, or appropriateness of care.  It also includes a decision to rescind a Member's coverage unless the rescission is due to nonpayment of subscription charges.

**Affordable Care Act**   The Patient Protection and Affordable Care Act of 2010 (Public Law 111-148) as amended by the Health Care and Education Reconciliation Act of 2010 (Public Law 111-152).

**Allowed Amount**   The Plan provides benefits based on the Allowed Amount for covered services.  The Plan Sponsor's liability for covered services is calculated on the basis of the Allowed Amount.

The Claims Administrator reserves the right to determine the amount allowed for any given service or supply unless specified otherwise in this Contract.  The Allowed Amount is described below.  There are different rules for dialysis due to end-stage renal disease and for emergency services.  These rules are shown below the general rules.

   **a.  General Rules**

   1.  **Providers In Alaska and Washington Who Have Agreements With The Claims Administrator**

   For any given service or supply, the Allowed Amount is the lesser of the following:

   • The provider's billed charge; or

   • The fee that the Claims Administrator has negotiated as a "reasonable allowance" for medically necessary covered services and supplies.

   Providers that have contracts with the Claims Administrator agree to seek payment from the Claims Administrator when they furnish covered services to Members.  Members will be responsible only for any applicable deductibles, copays, coinsurance, charges in excess of the stated benefit maximums and charges for services and supplies not covered under this Plan.

   2.  **Providers Outside Alaska and Washington Who Have Agreements With Other Blue Cross Blue Shield Licensees**

   For covered services and supplies received outside Alaska and Washington or in Clark County, Washington, Allowed Amounts are determined as stated in Attachment A – Out-of-Area Services."

   3.  **Providers In Alaska Who Don't Have Agreements With The Claims Administrator Or Another Blue Cross Blue Shield Licensee**

   The Allowed Amount for providers in the Service Area that don't have a contract with the Claims Administrator is the least of the three (3) amounts shown below.  The Allowed Amount for providers outside the Service Area that don't have a contract with the Claims Administrator or the local Blue Cross and/or Blue Shield Licensee is also the least of the three (3) amounts shown below.

   • An amount that is no less than the lowest amount the Plan pays for the same or similar service from a comparable provider that has a contracting agreement with the Claims Administrator

- 200 percent of the fee schedule determined by the Centers for Medicare and Medicaid Services (Medicare), if available

- The provider's billed charges.  Note:  Non-contracting ambulances are always paid based on billed charges.

If applicable law requires a different Allowed Amount than the least of the three (3) amounts above, this Plan will comply with that law.

3.    **Providers Outside of Alaska Who Don't Have Agreements With The Claims Administrator Or Another Blue Cross Blue Shield Licensee**

The Allowed Amount for providers in the Service Area that don't have a contract with the Claims Administrator is the least of the three (3) amounts shown below.  The Allowed Amount for providers outside the Service Area that don't have a contract with the Claims Administrator or the local Blue Cross and/or Blue Shield Licensee is also the least of the three (3) amounts shown below.

- An amount that is no less than the lowest amount the Plan pays for the same or similar service from a comparable provider that has a contracting agreement with the Claims Administrator

- 125 percent of the fee schedule determined by the Centers for Medicare and Medicaid Services (Medicare), if available

- The provider's billed charges.  Note:  Non-contracting ambulances are always paid based on billed charges.

If applicable law requires a different Allowed Amount than the least of the three (3) amounts above, this Plan will comply with that law.

## b.  Dialysis Due To End Stage Renal Disease

1.    **Providers Who Have Agreements With The Claims Administrator Or Other Blue Cross Blue Shield Licensees**

For any given service or supply, the Allowed Amount is the lesser of the following:

- The provider's billed charge; or

- The fee that the Claims Administrator has negotiated as a "reasonable allowance" for medically necessary covered services and supplies.

Providers that have contracts with the Claims Administrator agree to seek payment from the Claims Administrator when they furnish covered services to Members.  Members will be responsible only for any applicable deductibles, copays, coinsurance, charges in excess of the stated benefit maximums and charges for services and supplies not covered under this Plan.

2.    **Providers In Alaska Who Don't Have Agreements With The Claims Administrator Or Another Blue Cross Blue Shield Licensee**

The amount the Plan allows for dialysis during Medicare's waiting period will be no less than 200 percent of the amount allowed by Medicare and no more than 90 percent of billed charges.

The amount the Plan allows for dialysis after Medicare's waiting period is 200 percent of the Medicare-approved amount, even when a Member who is eligible for Medicare does not enroll in Medicare.

3. **Providers Outside of Alaska Who Don't Have Agreements With The Claims Administrator Or Another Blue Cross Blue Shield Licensee**

The amount the Plan allows for dialysis during Medicare's waiting period will be no less than 125 percent of the amount allowed by Medicare and no more than 90 percent of billed charges.

The amount the Plan allows for dialysis after Medicare's waiting period is 125 percent of the Medicare-approved amount, even when a Member who is eligible for Medicare does not enroll in Medicare.

c. **Emergency Services**

Consistent with the requirements of the Affordable Care Act, the Allowed Amount will be the greatest of the following amounts:

1. The median amount that the In-Network Providers for the Member's benefit package have agreed to accept for the same services

2. The amount Medicare would allow for the same services

3. The amount calculated by the same method the Claims Administrator uses to determine payment to Non-Contracted Providers

Note:  Non-Contracted Ambulances are always paid based on billed charges.

When Members receive services from Non-Contracted Providers, their liability is for any amount above the Allowed Amount, and for their normal share of the Allowed Amount.

**Claims Administrator**  Premera Blue Cross Blue Shield of Alaska.

**Contract Period**   The period shown on the face page of this Contract.  The Contract Period begins at 12:01 a.m. on the starting date shown on the face page and ends at midnight on the ending date shown on the face page.

**Effective Date**   The date this Contract takes effect (the first day of the Contract Period).  The Effective Date is shown on the face page of this Contract.

**Medically Necessary**   Those covered services and supplies that a physician, exercising prudent clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing or treating an illness, injury, disease or its symptoms, and that are:

- In accordance with generally accepted standards of medical practice;
- Clinically appropriate, in terms of type, frequency, extent, site and duration, and considered effective for the patient's illness, injury or disease; and
  - Not primarily for the convenience of the patient, physician, or other health care provider, and not more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that patient's illness, injury or disease.

For these purposes, "generally accepted standards of medical practice" means standards that are based on credible scientific evidence published in peer reviewed medical literature generally recognized by the relevant medical community, physician specialty society recommendations and the views of physicians practicing in relevant clinical areas and any other relevant factors.

**Member**   A Subscriber or dependent who is eligible for coverage as stated in the Plan and who is enrolled as required in the Plan.

**In-Network Provider**  A provider that is in one of the provider networks chosen by the Plan Sponsor for the Plan.

**Non-Contracted Provider**   A provider that does not have a network provider contract with the Claims Administrator or, for out-of-area providers, with the local Blue Cross and/or Blue Shield Licensee.

**Out-Of-Network Provider**  A provider that is not in one of the provider networks chosen by the Plan Sponsor for the Plan.

**Non-Grandfathered Health Plan**  A Plan benefit package that does not meet the requirements to be a grandfathered health plan set forth in the federal Affordable Care Act regulations.  If the Plan consists of more than one (1) benefit package, the federal regulations on non-grandfathered plan status apply separately to each benefit package.

**PEPM**  "Per employee per month."

**Plan**  The employee benefit plan established and maintained by the Plan Sponsor that is being administered under this Contract.  The Plan may consist of one (1) or more benefit packages.

**Plan Sponsor**  Ravn Air Group.

**Service Area**  The area in which the Claims administrator directly operates a provider network. This area is made up of the states of Alaska and Washington (except Clark County, Washington)

**Subscriber**  A person who is eligible for coverage under the Plan by virtue of an employee-employer relationship or other relationship between the person and the Plan Sponsor, and who is enrolled as required in the Plan.

## 2. DUTIES AND RESPONSIBILITIES OF THE PLAN SPONSOR

### 2.1. Documentation

The Plan Sponsor shall provide the Claims Administrator with a copy of any documents describing the benefit program(s) that the Claims Administrator needs to rely upon in performing its responsibilities under this Contract.

### 2.2. Administrative Duties

Unless specifically delegated to the Claims Administrator by this Contract, the Plan Sponsor shall be responsible for the proper administration of the Plan including the following:

a.  The Plan Sponsor shall provide the Claims Administrator a complete and accurate list of all individuals eligible for benefits under the benefit program(s) and to update those lists monthly.  The Claims Administrator shall be entitled to rely on the most recent list until it receives documentation of any change thereto.

   Retroactive enrollments shall be effective on the most recent of two (2) dates:

   - The date the Member's coverage would have been validly in force
   - The first day of the fifth full calendar month preceding the month in which the Claims Administrator receives the request for retroactive enrollment.

   Retroactive terminations of coverage shall be effective on the most recent of two (2) dates:

   - The date the Member's coverage would have been terminated, had notification been timely
   - The first day of the fifth full calendar month preceding the month in which the Claims Administrator receives the request for retroactive termination.

b.  The Plan Sponsor shall distribute to all Members all appropriate and necessary materials and documents, including but not limited to benefit program booklets, summary plan descriptions, material modifications, enrollment applications and notices required by law or that are necessary for the operation of the Plan.

c.  The Plan Sponsor shall provide the Claims Administrator with any additional information necessary to perform its functions under this Contract as may be requested by the Claims Administrator from time to time.

d.  If the Plan Sponsor writes or revises its benefit booklet, the Claims Administrator must review and approve in advance the draft of the benefit booklet that is printed and distributed to Members.

The Plan Sponsor must also include BlueCard disclosure language approved by the Blue Cross Blue Shield Association in its booklet.

e.  In order to place calls to Members, the Claims Administrator may receive Member phone numbers provided by the Plan Sponsor or by a third party (such as a producer) on the Plan Sponsor's behalf.  For the Claims Administrator and its affiliates to contact Members in accordance with telecommunication-related laws and regulations, the Plan Sponsor confirms the following with respect to Member phone numbers that the Plan Sponsor has provided or will provide to the Claims Administrator:

- The Member provided his or her phone number on his or her Plan application, or otherwise provided or updated his or her phone number with the Plan Sponsor with the expectation that it will be provided to the Claims Administrator in connection with the Member's coverage under the Plan.

- The Plan Sponsor only obtains phone numbers directly from the Member and not through a lookup service or other third party.

- The Plan Sponsor retains contact information and will furnish that information to the Claims Administrator upon request in a timely manner.

## 2.3.  Taxes, Assessments, And Fees

The Plan Sponsor shall be responsible for all taxes, assessments and fees levied by any local, state or federal authority in connection with the Claims Administrator's duties pursuant to this Contract.

## 2.4.  Compliance With Law

- The Plan Sponsor shall be responsible for the Plan's continuing compliance with all applicable federal, state and local laws and regulations, as currently amended.  These include but are not limited to:

  - The Internal Revenue Code of 1986, as amended, including but not limited to sections 105 and 213(d), and all relevant regulations and rulings thereunder

  - The Affordable Care Act.

  - The Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA)

  - The Health Insurance Portability and Accountability Act of 1996 (HIPAA)

  - The Employee Retirement Income Security Act of 1974 (ERISA)

  - The Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA)

  - Law and regulations governing the treatment and benefits of Members covered by Medicare. These include, but are not limited to, the Medicare Secondary Payer law and regulations, the Medicare Prescription Improvement and Modernization Act of 2004 (MMA), and the Medicare, Medicaid, and SCHIP Extension Act of 2007 (MMSEA).

    As required by MMSEA, the Plan Sponsor agrees to provide us the following information:

    - Employer Tax Identification Number (TIN/EIN);

- Social Security Numbers (SSNs) of all Members (employees and dependents); and

- Medicare Health Insurance Claim Numbers (HICNs) for all Medicare-entitled Members.

To comply with the Medicare Secondary Payer law and regulations, the Plan Sponsor also agrees to notify us promptly if the Plan Sponsor experiences a change in total employee count that would change the order of liability according to federal guidelines.

MMA requires groups that provide prescription drug coverage to Medicare eligible individuals to provide Medicare Part D Creditable Coverage Notices, and report creditable coverage status to the Center for Medicare and Medicaid Services (CMS).

The Plan Sponsor, and not the Claims Administrator, is the "plan administrator" and the "plan sponsor" for purposes of all federal laws that apply to the Plan Sponsor and impose duties or obligations on such entities.  The Plan Sponsor shall be responsible for determining whether it is subject to COBRA and, if so, for notifying Members of their COBRA rights both initially and upon the occurrence of a qualifying event, for calculating and collecting premiums for COBRA continuation of coverage and for promptly notifying the Claims Administrator when an individual is no longer eligible for COBRA continuation of coverage.  If the Plan Sponsor is subject to ERISA, the Plan Sponsor is responsible to prepare and maintain its ERISA plan document.

- The Plan Sponsor shall defend, indemnify and hold harmless Claims Administrator and its directors, officers, employees, and agents from and against any and all costs, liabilities, damages, claims, losses or expenses (including reasonable attorneys' fees) arising out of or connected to the Claims Administrator's administration of any benefit design authorized by the Plan Sponsor.  The Plan Sponsor acknowledges its sole responsibility to test and design benefits compliant with all laws.

- If the Plan Sponsor is a governmental entity that elects to opt out of compliance with certain federal mandates as allowed by federal law, the Plan Sponsor is responsible to file its opt-out with federal regulators for each contract period and to notify Members of the opt-out in accordance with federal law and regulations then in effect.  The Plan Sponsor agrees to hold the Claims Administrator and the Network harmless for any and all consequences arising from the Plan Sponsor's failure to file an opt-out as required by law for a given contract period, errors in the opt-out filing, or failure to notify a Member as required by federal law.

## 2.5.  Appeals

If an adverse decision on a Member appeal results from the Plan's internal appeal process, the Plan shall offer the Member a review by an Independent Review Organization (IRO) as described in subsection 3.2.

IRO review is not available on dental plan appeals.

## 2.6.  Funding

The Plan Sponsor shall be solely liable for all benefits payable to Members under the Plan that are subject to this Contract and for care coordination and support fees payable to the Claims Administrator for the Premera-Designated Centers of Excellence program.  The Plan Sponsor agrees to the following:

a. **Provision Of Funds**   The Plan Sponsor shall maintain adequate funds from which the total cost of all claims and fees described herein for each preceding week will be paid to the Claims Administrator by electronic funds transfer (EFT).  Funds must be provided within two (2) business days of notification by the Claims Administrator to a person designated by the Plan Sponsor.

b. **Late Payments**   If timely payment for the claims is not received by the Claims Administrator, the Plan Sponsor shall pay the Claims Administrator a daily late charge.  This late charge is calculated from the first day following the period of two (2) business days stated above.  This late charge is based on the average monthly prime rate posted by Claims Administrator's designated bank during the Contract Period, plus two (2) percent on the amount of the late payments for the number of days late.  Late charges are due at the end of the Contract Period or, if earlier, upon termination of the Contract.

c. **Notices**   Notices required by this subsection and subsection 3.4 shall be by secure e-mail unless another method is agreed upon in writing by the Plan Sponsor and the Claims Administrator.

## 3.  DUTIES AND RESPONSIBILITIES OF THE CLAIMS ADMINISTRATOR

### 3.1.  Administrative Duties

The Claims Administrator agrees to perform the following administrative services for the Plan Sponsor.  The Claims Administrator shall:

a. assist in the preparation and printing of the benefit program booklets, identification cards, and other materials necessary for the operation of the Plan; and distribute identification cards to Members.

   The Claims Administrator shall be responsible to include approved BlueCard program disclosure language in the booklets it prepares.  If the Plan Sponsor prepares its own booklets, the Claims Administrator shall provide approved language to the Plan Sponsor for inclusion in the booklets;

b. perform reasonable internal audits as stated in section 6 of this Contract;

c. answer inquiries from the Plan Sponsor, Members, and service providers regarding the terms of the Plan, although final authority for construing the terms of the Plan's eligibility and benefit provisions is the Plan Sponsor's;

d. prepare and provide the Plan Sponsor with reports of the operations of the Plan in accordance with "Attachment C – Reporting";

e. coordinate with any stop-loss insurance carrier;

f. when the plan makes use of one (1) or more of the Claims Administrator's provider networks, maintain a network of healthcare facilities and professionals as applicable to the plan design.  Paid claims to such providers will reflect any applicable provider discounts;

g. perform care facilitation services as identified in "Attachment F – Carecompass360°."

h. manage the formulary chosen by the Plan Sponsor.

i. **Pharmacy Benefit Drug Program**   For pharmacy benefit claims, prescription drug rebates are specific amounts per paid brand-name prescription drug claim.  These rebates are estimated at the Plan Sponsor's renewal and are provided as a credit toward the Plan Sponsor's administration fee. The actual prescription drug rebates resulting from Claims Administrator's overall pharmacy benefit utilization may be more or less than the Plan Sponsor's rebate payment.  The Plan Sponsor's rebate payment is made to Plan Sponsor as a credit toward the administrative fees in "Attachment D – Fees Of The Claims Administrator."

   The allowable charge for prescription drugs is higher than the price paid to the pharmacy benefit manager for those prescription drugs.

The parties hereby agree that the difference between the allowable charge for prescription drugs and the price paid to the pharmacy benefit manager, and the prescription drug payments received by Claims Administrator for its pharmacy benefit manager, constitutes Claim Administrator's property, and not a part of the compensation paid to Plan Sponsor under this Contract, and that Claims Administrator is entitled to retain and shall retain such amounts and may apply them to the cost of its operations and the pharmacy benefit.

**Medical Benefit Drug Program**  The medical benefit drug program is separate from the Pharmacy Benefit Program.  It includes claims for drugs delivered as part of medical services.  For medical benefit drug claims, the Claims Administrator may contract with subcontractors that have rebate contracts with various manufacturers.  Rebate subcontractors retain a portion of rebates collected as a rebate administration fee.  If the rebate is $500 or more, the medical benefit drug rebate is provided as a credit toward the Plan Sponsor's administration fees.  If less than $500, the Claims Administrator will retain the medical benefit drug rebate.

j.  The Claims Administrator, at its sole discretion, reserves the right to delegate some or all of its duties and responsibilities under this Contract to a third party.

## 3.2.  Appeals

a.  The Claims Administrator shall review and respond to the initial appeals made by Members of Adverse Benefit Determinations (see section 1) as described in the benefit booklet provided by the Claims Administrator for this Plan.

The Claims Administrator shall also provide a second review of adverse Member appeal decisions made after its initial review.  This review will be conducted as described in the benefit booklet provided by the Claims Administrator for this Plan.

b.  If an adverse decision on a Member's appeal results from the Plan's internal appeal process, the Claims Administrator agrees to facilitate a review of the appeal by an Independent Review Organization (IRO) on behalf of the Plan Sponsor.  The Claims Administrator will submit all required documentation regarding the appeal to the IRO and work with the IRO as needed to complete its review.

The external appeal process for Non-Grandfathered Plans will be offered and administered in accordance with the requirements of the Affordable Care Act.

IRO review is not available on dental plan appeals.

The Claims Administrator shall pay the charges required by the IRO to conduct its review.

## 3.3.  Claims Processing

The Claims Administrator shall process all eligible claims incurred after the Effective Date of this Contract which are properly submitted in accordance with the procedures set forth in the Plan Sponsor's benefit booklet.

The Claims Administrator shall make reasonable efforts to determine that a claim is covered under the terms of the Plan as described in the benefit booklet, to apply the coordination of benefits provisions, and prepare and distribute benefit payments to Members and/or service providers.  The Claims Administrator shall make reasonable efforts to identify and recover overpayments due to claim processing errors that were within its control, retroactive cancellations, or fraudulent billing practices.  "Reasonable" for the purposes of this section shall be determined by the Claims Administrator.

## 3.4.  Funding Support

The Claims Administrator shall follow the steps below to facilitate the Plan Sponsor's funding of its Plan.

a.  Claim payment checks will be issued on the Claims Administrator's check stock.  However, as stated in subsection 2.6 above, the responsibility for funding benefits is the Plan Sponsor's and the Claims Administrator is not acting as an insurer.

b. Each week, the Claims Administrator shall notify the Plan Sponsor of the amount due for the prior week's claims. Notice will be by secure e-mail unless another method is agreed upon in writing by the Claims Administrator and the Plan Sponsor.

## 3.5. Participation In Class Action Suits

The Plan Sponsor hereby delegates to the Claims Administrator the authority to participate on behalf of the Plan Sponsor, and at the Claims Administrator's sole discretion, in class action lawsuits or settlements regarding any services or supplies covered under the terms of the Plan. Examples of such services or supplies include prescription or specialty drugs or medical devices. Such participation shall be limited to those instances in which the Claims Administrator determines that it will submit a claim in the subject suit on behalf of its insured book of business. The Claims Administrator shall have no obligation to participate on behalf of the Plan Sponsor in any other lawsuit or settlement. The Claims Administrator will have no obligation to file claims on behalf of a Plan Sponsor with which the Claims Administrator does not have a contract at the time the claims for recovery are submitted.

The Plan Sponsor will recover the amount it is due under the terms of the settlement in question based upon the data submitted by the Claims Administrator. Any amounts recovered by the Claims Administrator hereunder shall be net of the Claims Administrator's fee as set forth below as well as fees paid to outside counsel in connection with the lawsuit and/or settlement.

For each class action lawsuit or settlement in which the Claims Administrator participates hereunder on the Plan Sponsor's behalf, the Plan Sponsor shall pay the Claims Administrator a fee representing a proportionate share of a fixed amount intending to compensate the Claims Administrator for its work in connection with pursuing recovery in these cases. The fixed amount is shown in "Attachment D – Fees Of The Claims Administrator." This fixed amount is subject to change on an annual basis with at least 60 days' advance notice to the Plan Sponsor. The amount of the Claims Administrator's fee payable by each Plan Sponsor shall be based on the proportion of the total amount recovered by the Claims Administrator on behalf of the Plan Sponsor compared to the amount recovered by Claims Administrator for all lines of business. The fee will be deducted from the amount of any recovery received on behalf of the Plan Sponsor and will in no event exceed the amount of such recovery.

Payment hereunder shall be made within 60 days of the Claims Administrator's receipt of the settlement funds.

The Claims Administrator shall have no obligation to forward settlement funds to any group hereunder if the amount due to the group is less than $5.

The Plan Sponsor may elect to decline to participate in the Claims Administrator's recovery process related to class action lawsuits or settlements regarding any services or supplies covered under the Plan by providing the Claims Administrator written notice. Except as set forth below, in the event the Plan Sponsor opts out, the Claims Administrator shall have no further obligation whatsoever to the Plan Sponsor in connection with the recovery process. The Plan Sponsor may request that the Claims Administrator gather data necessary for the Plan Sponsor to submit its own claim. In any such case, the Plan Sponsor shall pay the amount shown in "Attachment D – Fees Of The Claims Administrator" for the data-gathering services. Additionally, the Plan Sponsor shall make any such request in writing a minimum of 30 days in advance of the claim filing deadline.

# 4. LIMITS OF THE CLAIMS ADMINISTRATOR'S RESPONSIBILITY

It is recognized and understood by the Plan Sponsor that the Claims Administrator is not an insurer and that the Claims Administrator's sole function is to provide claims administration services and the Claims Administrator shall have no liability for the funding of benefits.

The Claims Administrator is empowered to act on behalf of the Plan Sponsor in connection with the Plan only as expressly stated in this Contract or as mutually agreed to in writing by the Claims Administrator and the Plan Sponsor.

This Contract is between the Claims Administrator and the Plan Sponsor and does not create any legal relationship between the Claims Administrator and any Member or any other individual.

### 4.1. Recoveries

If, during the course of an audit performed internally by the Claims Administrator as described in subsection 3.1.b. above or by the Plan Sponsor pursuant to section 6 below, any error is discovered, the Claims Administrator shall use reasonable efforts to recover any loss resulting from such error.

### 4.2. Independent Contractor

The Claims Administrator is an independent contractor with respect to the services being performed pursuant to this Contract and shall not for any purpose be deemed an employee of the Plan Sponsor.

### 4.3. Limits of Liability

It is recognized by the parties that errors may occur, and it is agreed that the Claims Administrator will not be held liable to the Plan Sponsor for such errors unless they resulted from its gross negligence or willful misconduct.

## 5. FEES OF THE CLAIMS ADMINISTRATOR

### 5.1. Payment Time Limits

By the first of each month, The Plan Sponsor shall pay the Claims Administrator in accordance with the fee schedule set forth in "Attachment D – Fees Of The Claims Administrator."

### 5.2. Late Payments

a. If, for any reason whatsoever, the Plan Sponsor fails to make a timely payment required under this Contract by the thirtieth day of the month in which payment is due, the Claims Administrator may suspend performance of services to the Plan Sponsor, including processing and payment of claims, until such time as the Plan Sponsor makes the required payment, including interest as set forth in c. below.

b. In the event of late payment, the Claims Administrator may terminate this Contract pursuant to subsection 8.5 below.  Acceptance of late payments by the Claims Administrator shall not constitute a waiver of its right to cancel this Contract due to subsequent delinquent or nonpayment of fees.

c. The Claims Administrator will charge interest to the Plan Sponsor on all payments received after the thirtieth day of the month in which they are due, including amounts paid to reinstate this Contract after termination pursuant to subsection 8.5 below, at the average prime rate posted by Claims Administrator's designated bank during the Contract Period plus two (2) percent on the amount of the late payments for the number of days late.  Interest will be in addition to any other amounts payable under this Contract.

### 5.3. Customization Fees

The Plan Sponsor shall pay the Claims Administrator a "customization fee" when the Plan Sponsor requests either of the following:

a. A plan benefit configuration that the Claims Administrator has not determined to be standard for the plan type.  Customization fees for nonstandard plan benefits assessed at this Contract's Effective Date are listed in "Attachment D – Fees Of The Claims Administrator."

b. An off-anniversary benefit change, regardless of whether the desired benefit is standard for the plan type.  The customization fee for each off-anniversary change shall be $2,000.  Customization fees for off-anniversary changes shall be invoiced separately to the Plan Sponsor.

For purposes of customization fees, "benefits" include eligibility, termination, continuation, and benefit payment provisions, benefit terms, limitations, and exclusions, funding arrangement changes, and any

other standard provisions of the Plan.  Fees are computed based on current administrative costs to implement and administer the benefit.

Customization fees for custom benefits that take effect on the Effective Date shown on the face page of this Contract are due and payable prior to that Effective Date.  Customization fees for off-anniversary benefit changes are due and payable prior to the effective date of the change.

# 6.  AUDIT

Within thirty (30) days of written notice from the Plan Sponsor, the Claims Administrator shall allow an authorized agent of the Plan Sponsor to inspect or audit all records and files maintained by the Claims Administrator which are directly pertinent to the administration of the Plan and which relate to a random, statistically valid number of claims for the current or most recently ended contract period.  Such documents shall be made available at the administrative office of the Claims Administrator during normal business hours.  The Plan Sponsor shall be liable for any and all fees charged by the auditor.  All audits shall be subject to the Claims Administrator's audit policies and procedures then in effect.  Audits will be requested no more than once in every 12 consecutive months, unless the parties agree that the additional audit is needed to address a specific issue or is required by law.  To the extent that the Plan Sponsor requests data and reports that are beyond the scope of the Claim Administrator's audit policies and procedures, the Plan Sponsor shall reimburse the Claims Administrator for the additional administrative costs incurred in producing such data and reports.

Any agent or auditor who has access to the records and files maintained by the Claims Administrator shall agree not to disclose any proprietary or confidential information used in the business of the Claims Administrator.

# 7.  TERM OF CONTRACT

## 7.1.  Contract Period

The term of this Contract shall be the Contract Period shown on the face page of this Contract.  If the Plan Sponsor and the Claim Administrator agree to extend the Contract for another contract period by means of an amendment, the term of this Contract shall be the Contract Period shown on the amendment.

Except as stated otherwise in this section and in subsection 7.2 below, the terms and conditions of this Contract and the fee schedule set forth in "Attachment D – Fees Of The Claims Administrator" are established for the Contract Period.  Midyear benefit or administrative changes (other than those in 8.2.a.6.) require thirty (30) days advance written notice and the advance approval of the Claims Administrator.

The Claims Administrator reserves the right to amend this Contract at any time if needed to comply with applicable law or regulation.

## 7.2.  Changes to Fees

The Plan Sponsor acknowledges that the fee schedule set forth in "Attachment D – Fees Of The Claims Administrator" and the services provided for in this Contract are based upon the terms of the Plan and the enrollment as they exist on the Effective Date of this Contract.

a.  Any substantial changes, whether required by law or otherwise, in the terms and provisions of the Plan or in enrollment may require that the Claims Administrator incur additional expenses.  The parties agree that any substantial change, as determined by the Claims Administrator after consultation with the Plan Sponsor, shall result in the alteration of the fee schedule, even if the alteration is during the Contract Period.  The phrase "any substantial change" shall include, but not be limited to:

1.  a fluctuation of ten (10) percent or more in the number of Members as set forth on the census information included in "Attachment B – Census Information" which is herein incorporated by reference and made a part of this Contract;

2. the addition of benefit program(s) or any change in the terms of the Plan's eligibility rules, benefit provisions or record keeping rules that would increase administration costs by more than $2,000;

3. any change in claims administrative services, benefits or eligibility required by law;

4. any change in administrative procedures from those in force at the inception of this Contract that is agreed upon by the parties;

5. any additional services which the Claims Administrator undertakes to perform at the request of the Plan Sponsor which are not specified in this Contract such as the handling of mailings or preparation of statistical reports and surveys not specified in the Claims Administrator's standard Employer Group Reporting set.

6. A change in the third-party administrator, if any, used by the Plan Sponsor with respect to the benefits provided under this Contract.  The Plan Sponsor will provide the Claims Administrator no less than 120 days' advance written notice of any such change.

b. The Claims Administrator may also adjust the fees during the Contract Period by giving thirty (30) days advance written notice to the Plan Sponsor or its agent, if the Plan Sponsor agrees with the Claims Administrator that the fees are based in whole or in part upon a mistake that materially impacts such fees.

# 8. TERMINATION

## 8.1. Termination With Notice

The Plan Sponsor may terminate this Contract at any time by giving the Claims Administrator thirty (30) days written notice.

## 8.2. Contract Period Expiration

This Contract will terminate on the last day of the Contract Period or the last day of any extension of the Contract Period granted by the Plan Sponsor.

## 8.3. Termination Due to Insolvency

Either party may terminate this Contract effective immediately by giving written notice to the other if a party becomes insolvent, makes a general assignment for the benefit of creditors, files a voluntary petition of bankruptcy, suffers or permits the appointment of a receiver for its business or assets, or becomes subject to any proceeding under any bankruptcy or insolvency law, whether foreign or domestic.  A party is insolvent if it has ceased to pay its debts in the ordinary course of business; cannot pay its debts as they become due; or the sum of its debts is greater than the value of its property at a fair valuation.

## 8.4. Termination Due to Inability to Perform

If loss of services is caused by, or either party is unable to perform any of its obligations under this Contract, or to enjoy any of its benefits because of natural disaster, action or decrees of governmental bodies or communication failure not the fault of the affected party, such loss or inability to perform shall not be deemed a breach.  The party who has been so affected shall immediately give notice to the other party and shall do everything possible to resume performance.  Upon receipt of such notice, all obligations under this Contract shall be immediately suspended.  If the period of nonperformance exceeds thirty (30) days from the receipt of such notice, the party whose performance has not been so affected may, as its sole remedy, terminate this Contract by written notice to the other party effective immediately.  In the event of such termination, the Plan Sponsor shall remain liable to the Claims Administrator for all payments due, together with interest thereon as provided for in subsection 5.2.c. above.

### 8.5. Termination For Nonpayment

The Claims Administrator may, at its sole discretion, terminate this Contract effective as of a missed payment due date in the event that the Plan Sponsor fails to make a timely payment required under this Contract.

### 8.6. Plan Sponsor Liability Upon Termination

In the event this Contract is terminated prior to the end of the administration fee guarantee period shown in "Attachment D – Fees Of The Claims Administrator," the Plan Sponsor shall remain liable to the Claims Administrator for all delinquent sums together with interest thereon as provided for in subsection 5.2.c. above. Furthermore, the Claims Administrator will have incurred fixed costs which, but for the termination, would have been recouped over the course of the administration fee guarantee period.  Therefore, in the event that the Contract terminates pursuant to subsections 8.1 or 8.5 above, the Plan Sponsor shall also pay the Claims Administrator as liquidated damages, and not as a penalty, an amount equal to two (2) months administration fees.  This monthly fee shall be determined by multiplying the rate set forth in "Attachment D – Fees Of The Claims Administrator" by the average number of Subscribers covered by the Plan for the immediately preceding six (6) month period or such shorter period if this Contract has not been in effect for a period of six (6) months. The liquidated damages amount shall then be reduced on a pro rata basis for the number of months of the administration fee guarantee period that the Contract was in force.  The Plan Sponsor shall remain liable for claims incurred during the Contract Period but not paid during the Contract Period and for the claims runout processing fee set forth in the "Fees Of The Claims Administrator" attachment.

At the expense of the Plan Sponsor, the Claims Administrator shall make available a record of deductibles and coinsurance levels for each Member and deliver this information to the Plan Sponsor or its authorized agent.

### 8.7. Claims Runout

The Plan Sponsor continues to be solely liable for claims received by the Claims Administrator after the Contract terminates.  For the fifteen (15)-month period following termination of this Contract, the Claims Administrator shall continue to process eligible claims incurred prior to termination, or adjustments to claims incurred prior to termination, that the Claims Administrator receives no more than twelve (12) months after the date of termination at the claims runout processing fee rate set forth in "Attachment D – Fees Of The Claims Administrator."

The runout processing charge will be due in full with the first request for claims reimbursement made during the runout period.

If the Claims Administrator receives claims for Plan benefits more than twelve (12) months after the date this Contract terminates, Claims Administrator shall deny those claims.  If the Plan Sponsor wants to negotiate a different arrangement, the Plan Sponsor must contact the Claims Administrator no later than the start of the fourteenth month after the date this Contract terminates.

This "Claims Runout" provision shall survive termination of this Contract.

## 9.  DISCLOSURE

It is recognized and understood by the Plan Sponsor that the Claims Administrator is subject to all laws and regulations applicable to Claims Administrators and hospital and medical service plans.

It is also recognized and understood by the Plan Sponsor that the Claims Administrator is not acting as an insurer and also is not providing stop-loss insurance.

## 10.  OTHER PROVISIONS

### 10.1.  Choice of Law

The validity, interpretation, and performance of this Contract shall be controlled by and construed under the laws of the state of Alaska, unless federal law applies.  Any and all disputes concerning this Contract shall be resolved in the state of Alaska or federal court as appropriate.

## 10.2.  Proprietary Information

The Claims Administrator reserves the right to, the control of, and the use of the words "Premera Blue Cross Blue Shield of Alaska" and all symbols, trademarks and service marks existing or hereafter established.  The Plan Sponsor shall not use such words, symbols, trademarks or service marks in advertising, promotional materials, materials supplied to Members or otherwise without the Claims Administrator's prior written consent which shall not be unreasonably withheld.

The Claims Administrator's provider reimbursement information is proprietary and confidential to the Claims Administrator and will not be disclosed to the Plan Sponsor unless and until a separate Confidentiality Agreement is executed by the parties.  For the purposes of this section, "provider reimbursement information" means data containing, directly or indirectly (a) diagnostic, procedures or other code sets; and (b) billed amount, allowed amount, paid amount or any other financial information for In-Network  and Out-Of-Network hospitals, clinics, physicians, other health care professionals, pharmacies and any other type of facility.  Such data may or may not specifically identify providers.  No other provision of this Contract or any other agreement or understanding between the parties shall supersede this provision.

## 10.3.  Parties To The Contract

The Plan Sponsor hereby expressly acknowledges, on behalf of itself and all of its Members, its understanding that this Administrative Service Contract constitutes a Contract solely between the Plan Sponsor and the Claims Administrator, that the Claims Administrator is an independent corporation operating under a license with the Blue Cross and Blue Shield Association, an association of independent Blue Cross and Blue Shield Plans (the "Association") permitting the Claims Administrator to use the Blue Cross Service Mark in the States of Washington and Alaska, and that the Claims Administrator is not contracting as the agent of the Association.

The Plan Sponsor further acknowledges and agrees that it has not entered into this Administrative Service Contract based upon representations by any person other than the Claims Administrator, and that no person, entity or organization other than the Claims Administrator shall be held accountable or liable to the Plan Sponsor for any of the Claims Administrator's obligations to the Plan Sponsor created under this Administrative Service Contract.  This provision shall not create any additional obligations whatsoever on the Claims Administrator's part other than those obligations created under other provisions of this Administrative Service Contract.

## 10.4.  Notice

Except for the notice given pursuant to the "Funding" subsection of Section 2, any notice required or permitted to be given by this Contract shall be in writing and shall be deemed delivered three (3) days after deposit in the United States mail, postage fully prepaid, return receipt requested, and addressed to the other party at the address as shown on the face page of this Contract or such other address provided in writing by the parties.

## 10.5.  Integration

This Contract, including any appendices, amendments or attachments incorporated herein by reference, embodies the entire Contract and understanding of the parties and supersedes all prior oral and written communications between them.  Only a writing signed by both parties hereto hereof may modify the terms.

## 10.6.  Assignment

Neither party shall assign this Contract or any of its duties or responsibilities hereunder without the prior written approval of the other.

## 10.7.  Survival

The following provisions shall survive the termination of this Contract:

a.  The funding of claims incurred prior to termination and processed during the runout period described in .  The funding provisions are described in subsections 2.6 and 3.4, and the payment of runout processing fees is described in subsection 8.7.

b.  The liability, hold harmless and indemnification provisions of subsection 4.3

c.  The Effect on Termination section in the Business Associate Agreement

d.   The provisions of subsection 8.6

e.   The liability, hold harmless and indemnification provisions in Attachment H – Funding Accounts

**10.8.  Independent Contractors**

All health care providers who provide services and supplies to a Member do so as independent contractors. None of the provisions of the plan or this Contract are intended to create, nor shall they be deemed or construed to create, any employment or agency relationship between the Claims Administrator and the provider of service other than that of independent contractors.

# 11.  ATTACHMENTS TO THE ADMINISTRATIVE SERVICE CONTRACT

The following attach to and become part of the body of this Contract and they are herein incorporated by reference.

ATTACHMENT A – OUT-OF-AREA SERVICES

ATTACHMENT B – CENSUS INFORMATION

ATTACHMENT C – REPORTING

ATTACHMENT D – FEES OF THE CLAIMS ADMINISTRATOR

ATTACHMENT E – BUSINESS ASSOCIATE AGREEMENT

ATTACHMENT F – CARECOMPASS360°

ATTACHMENT G – EXTENDED POST-PAYMENT RECOVERY SERVICES

ATTACHMENT H – FUNDING ACCOUNTS

ATTACHMENT I – FIDUCIARY AUTHORITY

ATTACHMENT J – ELECTIVE PROCEDURE TRAVEL SUPPORT

ATTACHMENT K – PREMERA-DESIGNATED CENTERS OF EXCELLENCE

ATTACHMENT L – PREMERA VALUE-BASED PROVIDER ARRANGEMENTS

# ATTACHMENT A – OUT-OF-AREA SERVICES

As a Licensee of the Blue Cross and Blue Shield Association (BCBSA), the Claims Administrator has arrangements with other Blue Cross and/or Blue Shield Licensees ("Host Blues") for Members care outside the Service Area. These arrangements are called "Inter-Plan Arrangements." The Claims Administrator is required by BCBSA to disclose the information below about these Inter-Plan Arrangements to groups with which the Claims Administrator does business. The Plan Sponsor has consented to this disclosure to permit the Claims Administrator to satisfy its contractual obligations to BCBSA. This provision defines or modifies the rights and obligations of the parties under this Contract only for the processing of claims for care outside the Service Area.

The Inter-Plan Arrangements follow rules and procedures set by BCBSA. The Claims Administrator remains responsible to the Plan Sponsor for fulfilling its obligations under this Contract.

A Member's receiving services through these Inter-Plan Arrangements does not change covered benefits, benefit levels, or any eligibility requirements of the Plan.

The BlueCard® Program is the Inter-Plan Arrangement that applies to most claims from Host Blues' In-Network Providers. The Host Blue is responsible for contracting and handling all interactions with its In-Network Providers. Other Inter-Plan Arrangements apply to providers that are not in the Host Blues' networks (Non-Contracted Providers). This Attachment explains how the Plan pays both types of providers.

Note: The Claims Administrator processes claims for the Prescription Drugs benefit directly, not through an Inter-Plan Arrangement.

## BlueCard Program

Except for copays, the Claims Administrator will base the amount Members must pay for claims from Host Blues' In-Network Providers on the lower of the provider's billed charge for the covered services or the Allowed Amount that the Host Blue made available to the Claims Administrator.

Most often, the Plan Sponsor's liability for those claims is calculated based on the same amount on which the Member's liability is calculated. However, sometimes the Host Blue's Allowed Amount may be greater than the billed charges if the Host Blue has negotiated with an In-Network Provider an exclusive allowance (such as a per-case or per-day amount) for specific services. This excess amount may be needed to secure (a) the provider's participation in the Host Blue's network and/or (b) the overall discount negotiated by the Host Blue. Because the Member never has to pay more than the billed charge, the Plan Sponsor may be liable for the amount above the provider's billed charge even when the Member's deductible, if any, has not been satisfied.

Host Blues determine Allowed Amounts for covered services, which are reflected in the terms of their In-Network Provider contracts. The Allowed Amount can be one of the following:

- An actual price. An actual price is a negotiated amount passed to the Claims Administrator without any other increases or decreases.

- An estimated price. An estimated price is a negotiated price that is reduced or increased to take into account certain payments negotiated with the provider and other claim- and non-claim-related transactions. Such transactions may include, but are not limited to, anti-fraud and abuse recoveries, provider refunds not applied on a claim-specific basis, retrospective settlements, and performance-related bonuses or incentives.

- An average price. An average price is a percentage of billed charges for the covered services representing the aggregate payments that the Host Blue negotiated with all of its In-Network Providers or its In-Network Providers in the same or similar class. It may also include the same types of claim- and non-claim-related transactions as an estimated price.

The use of estimated or average pricing may result in a difference between the amount the Plan Sponsor pays on a specific claim and the actual amount the Host Blue pays to the provider. However, the BlueCard Program

requires that the Host Blue's Allowed Amount for a claim is final for that claim. No future estimated or average price adjustment will change the pricing of past claims.

Any positive or negative differences in estimated or average pricing on a claim are accounted for through variance accounts maintained by the Host Blue and are incorporated into future claim prices. As a result, the amounts to be charged to the Plan Sponsor will be adjusted in a following year, as necessary, to account for over- or underestimation of past years' prices. The Host Blue will not receive compensation from how the estimated or average price methods, described above, are calculated. Because all amounts paid are final, neither variance account funds held to be paid in the following year, nor the funds expected to be received in the following year, are due to or from the Plan Sponsor. If this Contract terminates, the Plan Sponsor will not receive a refund or charge from the variance account.

Variance account balances are small amounts compared to overall claims amounts and will be drawn down over time. Some Host Blues may retain interest earned, if any, on funds held in variance accounts.

**Clark County Providers**  Services in Clark County, Washington are processed through BlueCard. However, some providers in Clark County do have contracts with the Claims Administrator. These providers will submit claims directly to the Claims Administrator and benefits will be based on the Claims Administrator's Allowed Amount for the covered service or supply.

**Value-Based Programs**  Members might receive covered services from providers that participate in a Host Blue's value-based program (VBP). Value-based programs focus on meeting standards for treatment outcomes, cost and quality, and coordinating care when the Member is seeing multiple providers. Some of these programs are similar to those the Claims Administrator has in Washington. Types of value-based programs are accountable care organizations, global payment/total cost of care arrangements, patient-centered medical homes and shared savings arrangements.

The Host Blue may pay VBP providers for meeting standards for treatment outcomes, cost and quality, and coordinating care over a period of time called a measurement period. The Claims Administrator then passes these payments through to the Plan Sponsor. Sometimes, VBP payments are made before the end of the measurement period.

The Host Blue may bill VBP payments for Members in one of two ways:

- **In the Allowed Amount**  Host Blues may adjust the Allowed Amount for VBP provider claims to include VBP payments. The actual dollar amount or a small percentage increase may be included.

  If the VBP pays a fee to the provider for coordinating the Member's care with other providers, the Host Blues may also bill these fees with claims. They will use a separate procedure code for care coordination fees.

  Members will have to pay a share of VBP payments when Host Blues include VBP charges in claims and a deductible or coinsurance applies to the claim. Members will not be billed for any VBP care coordination fees.

- **Billed Separately**  Instead of adjusting claims, some Host Blues bill VBP payments as a "per Member per month" (PMPM) charge for each Member who participates in the Value Based Program. The Claims Administrator passes these PMPM amounts on to the Plan Sponsor.

Some Host Blues' claims adjustments or PMPM amounts used for VBP payments may be estimates. As a result, these Host Blues hold part of the amounts paid by the Plan Sponsor and Member in a variance account. The Host Blues will use these funds to adjust future VBP payments as explained under "BlueCard Program" above.

## Taxes, Surcharges And Fees

In some cases, a law or regulation may require that a surcharge, tax, or other fee be applied to claims under this Plan. When this occurs, the Claims Administrator will disclose that surcharge, tax or other fee to the Plan Sponsor as part of its liability.

## Non-Contracted Providers

When covered services are provided outside the Claims Administrator's Service Area by Non-Contracted providers, the Allowed Amount will generally be based on either the Claims Administrator's Allowed Amount for these providers or the pricing requirements under applicable law.  Members are responsible for the difference between the amount that the Non-Contracted Provider bills and this Plan's payment for the covered services. Please see the definition of "Allowed Amount" in Section 1 in this Contract for details on Allowed Amounts.

### Return of Overpayments

Recoveries of overpayments can arise in several ways.  Examples are anti-fraud and abuse recoveries, provider/hospital bill audits, credit balance audits, utilization review refunds, and unsolicited refunds. Recovery amounts will generally be applied on either a claim-by-claim or prospective basis.  In some cases, the Host Blue will engage a third party to assist in identification or collection of recovery amounts.  The fees of such a third party may be charged to the Plan Sponsor separately.  The fee is usually a percentage of the amount recovered.

Unless otherwise agreed to by the Host Blue, the Claims Administrator may request adjustments from the Host Blue for full refunds from providers due to the retroactive cancellation of Members, but never more than one year after the date of the Inter-Plan financial settlement process for the original claim.  In some cases, recovery of claim payments associated with retroactive cancellations may not be possible if, as an example, the recovery conflicts with the Host Blue's state law or its provider contracts or would jeopardize its relationship with its providers.

## Blue Cross Blue Shield Global® Core

If Members are outside the United States, the Commonwealth of Puerto Rico, and the U.S. Virgin Islands (the "BlueCard service area"), they may be able to take advantage of Blue Cross Blue Shield Global Core.  Blue Cross Blue Shield Global Core is unlike the BlueCard Program available in the BlueCard service area in certain ways. For instance, although Blue Cross Blue Shield Global Core helps Members access a provider network, they will typically have to pay the provider and submit the claims themselves to get reimbursement for covered services. However, if Members need hospital inpatient care, the Service Center can often direct them to hospitals that will not require them to pay in full at the time of service.  These hospitals will also submit the Member's claims to Blue Cross Blue Shield Global Core.

### Fees and Compensation

**In-Network Providers**  The Plan Sponsor understands and agrees to reimburse the Claims Administrator for certain fees and compensation which the Claims Administrator is obligated under applicable Inter-Plan Programs requirements to pay to the Host Blues, to BCBSA, and/or to Inter-Plan Programs vendors, as described below. The fees may be revised in accordance with Inter-Plan Programs standard procedures, which do not provide for prior approval by any plan sponsor.  Such revisions typically are made on January 1, but may occur at any time. Revisions do not necessarily coincide with the Plan Sponsor's benefit period under this Contract.

Only the "access fee" can be charged separately each time a claim is processed.  The access fee is charged by the Host Blue to the Claims Administrator for making its applicable provider network available to Members.  The access fee will only apply to In-Network Providers' claims.  If such a fee is charged, it will be a percentage of the discount/differential the Claims Administrator receives from the Host Blue.  The access fee will not exceed $2,000 for any claim.

All other Inter-Plan Programs-related fees are covered by the Claims Administrator's general administration fee. See "Attachment D – Fees of the Claims Administrator."

**Non-Contracted Providers**  All fees related to Non-Contracted Provider claims are covered by the Claims Administrator's general administration fee.

# ATTACHMENT B – CENSUS INFORMATION

Administration Fees, effective January 1, 2020, are based on the following:

**Number of Active Members:**

|           | Employee | Dependents |
|-----------|----------|------------|
| Med/Rx/Vis | 544      | 411        |
| Dental    | 540      | 181        |

**Number of COBRA Members:**

|           | Employee | Dependents |
|-----------|----------|------------|
| Med/Rx/Vis | 5        | 12         |
| Dental    | 5        | 5          |

**Other Carriers Offered:**          **None**

## ATTACHMENT C – REPORTING

A standard package of reports covering the Contract Period will be provided to the Plan Sponsor within the fees set forth in "Attachment D – Fees Of The Claims Administrator."  The reports will cover:

- Funding revenue

- Paid claims

- Census data

- Claims summaries by:

  - Provider type

  - Service type

  - Coverage type

Please note that reports, format, and content may be modified from time to time as needed.

If the Plan Sponsor requests a report that includes information not provided in our standard package of reports or a custom format for standard data, we reserve the right to charge additional fees as needed for that report.

**ATTACHMENT D**
**to the Administrative Service Contract**
**between**

**PREMERA BLUE CROSS BLUE SHIELD OF ALASKA**
**and**
**Ravn Air Group**
**Group Number: 4012875**
**Effective: 1/1/2020 through 12/31/2020**

Pursuant to the Administrative Service Contract, the Plan Sponsor shall pay the Claims Administrator the fees, as set forth below, for administrative services.

**Administration Fees:**

$34.66        per employee per month

**Administration Fee Breakdown:**

| | |
|---|---|
| Administration Fee (Medical/Rx) | $23.91 |
| Administrative Fee (Vision) | $1.57 |
| Administrative Fee (Dental) | $3.01 |
| Electronic EOB Credit | -$1.00 |
| Fiduciary Fees | $1.95 |
| Network Management Fee | $5.22 |
| Total | $34.66 |

| | |
|---|---|
| Elective Procedure Travel | $500 per case |
| Premera Designated Centers of Excellence | 25% Per Case Savings |
| OP Rehab Management (Billed per case) | $19 Per Episode of Care |

**Administration Fee Guarantee:**

The base administration fee, not including other charges such as producer fees, is guaranteed as shown below during the period from 1/1/2020 through 12/31/2022.  This period shall be known as the "administration fee guarantee period."

| Year | Amount | Contract Period Begins | Contract Period Ends |
|---|---|---|---|
| Year 1 | $32.71 | 1/1/2020 | 12/31/2020 |
| Year 2 | $33.36 | 1/1/2021 | 12/31/2021 |
| Year 3 | $33.86 | 1/1/2022 | 12/31/2022 |

**Claims Runout Processing Fee:**

The charge for processing runout claims is an amount equal to the active administration fee at the time of termination, times the average number of subscribers for the 3-month period preceding the termination date, times two.

**BlueCard Fee Amount:**

BlueCard Fees are tracked and billed monthly in addition to claims expense.

## Value-Based Program Payments

Provider groups enter into agreements with Premera or other Blue Cross and/or Blue Shield Licensees (Host Blues) for value-based programs.  Such programs include the Blue Distinction Total Care program, Global Outcomes Contracts, accountable care organizations, patient-centered medical homes, shared savings arrangements, and global payment/total cost of care arrangements.  Premera and the Host Blues may pay value-based program providers for meeting the programs' standards for treatment outcomes, cost, quality, and care coordination.  The Plan Sponsor shall pay the Claims Administrator a per-member-per month (PMPM) amount established for each value-based program provider group.  The PMPM amount will be multiplied by the number of the Plan Sponsor's Members that are attributed to each provider group.  The PMPM amounts differ between the provider groups, and may change during the Contract Period.

## Fee For Class Action Recoveries

The Plan Sponsor shall pay the Claims Administrator a fee for its work in pursuing class action recoveries on behalf of the Plan Sponsor as described in Subsection 3.5.  The fee shall be a proportionate share of $10,000, based on the proportion of the amount recovered on behalf of the Plan Sponsor compared to the total amount recovered by the Claims Administrator for all lines of business.

## Premera-Designated Centers of Excellence

In addition to claims for the medical services, Plan Sponsor shall pay Claims Administrator a care coordination and support fee of 25 percent of per case savings, which shall be calculated by comparing bundled service fees with the Alaska average for applicable services.  No member cost-share applies to these fees.

See Attachment K – Premera-Designated Centers Of Excellence for more information.

## CareCompass360°

See "Attachment F – Carecompass360°" for an overview of services provided.  Services are included in the Claims Administrator's Administration Fee except where stated below.

| Personal Health Support (See Appendix 2) | Not included in Administration Fee.  $245 per actively engaged Member per month of active engagement. | |
|---|---|---|
| BestBeginnings Maternity (See Appendix 3) | Engagement fee: | $50 one-time fee per Member when the Member registers for the program and downloads the mobile application |
| | High Risk Maternity Case Management | $350 additional one-time fee for Members engaged in high-risk case management |
| Neonatal Intensive Care Risk Assessment & Case Management (See Appendix 4) | Fee waived | |
| Outpatient Rehabilitation Evaluation (See Appendix 5) Physical, occupational, and massage therapy | $19 per episode of care | |

**Extended Post-Payment Recovery Services:**

Claims Administrator will perform the services listed below on a pay-for-performance, contingent fee ("Contingent Fee") basis, which shall be calculated as a percentage of the gross amount recovered with respect to any particular claim.  See "Attachment G – Extended Post-Payment Recovery Services" for an overview of services provided.

| Post Payment Recovery Category | Contingent Fee |
|---|---|
| Coordination of Benefits | 25 percent |
| Subrogation | 25 percent unless Claims Administrator, in its sole option or discretion, engages outside counsel, in which case the Contingent Fee amount shall be 35 percent, whether or not the case involves litigation or other dispute resolution process. 25 percent if, after Claims Administrator has worked a subrogation case, the Plan Sponsor takes over responsibility for the case and settles directly. In all cases, Plan Sponsor is also responsible for payment of any court costs, such as filing fees, witness fees or court reporter fees. |
| Provider Billing Errors | 25 percent |
| Credit Balance | 25 percent |
| Hospital Billing and Chart Review | 35 percent |

**Funding Account Fees**

Per Participating Employee Per Month (PPEPM) Fees:

| | |
|---|---|
| Monthly admin fee per Participant with HSA Account (PPEPM) | $2.95 |
| Trust services (HSA only) | Included |
| Non-discrimination testing, per testing cycle | $250 per Internal Revenue Code §125 plan |
| Custom file/interface programming, marketing or other requests (if approved) | $120 per hour |
| Healthcare debit card services (if offered) | Included |
| Charge to Participant for each additional/replacement debit card, if offered (initial card included) | No charge |
| Extra debit cards for family members | No charge |
| Charge to Plan Sponsor for each returned check/Automated Clearinghouse (ACH) | $25 per occurrence |
| Charge to Claims Administrator for Merchant Dispute resolution fees | As incurred |

## ATTACHMENT E – BUSINESS ASSOCIATE AGREEMENT

The Plan Sponsor should keep its signed business associate agreement and any signed amendments behind this page.

## ATTACHMENT F – CARECOMPASS360°

Claims Administrator agrees to make available to the Plan Sponsor certain components of the CareCompass360° program, which are more particularly described in the appendices attached hereto and incorporated herein. Claims Administrator, in its sole and absolute discretion, may upgrade, change Program Managers or otherwise modify these services.  Fees for these services are shown in "Attachment D – Fees Of The Claims Administrator."

**General Provisions**

- The parties understand, acknowledge and agree that the services provided to the Plan Sponsor hereunder are designed only for availability to the population of Plan Sponsor Members eligible for such services and not for application to each and every Member.

- **Severability.**  In the event that any provision hereof is found invalid or unenforceable pursuant to judicial decree or decision, the remainder of this Attachment shall remain valid and enforceable according to its terms.

Appendix 1
**Care Facilitation Services**

Claims Administrator agrees to provide the following care facilitation services.

| Service | Description |
|---|---|
| **Care Management** | |
| Clinical review | Prospective and retrospective review for medical necessity, appropriate application of benefits. |
| Quality Programs | Includes provision of evidence-based clinical practice and preventive care guidelines to Members and providers, chart tools, and quality of care program activities. |
| Inpatient pre-certification | Includes concurrent review of medical necessity of ongoing inpatient care, and discharge planning to reduce occurrences of readmission. |
| **NurseLine** | Round-the-clock access for Members to registered nurses to answer questions about their health care. |
| **Pharmacy** | |
| Prescription drug formulary promotion | Development of formulary and access to providers and Members on-line |
| Physician-based pharmacy management | Physician education on cost-effective prescribing |
| ePocrates | Software to provide physicians with up-to-date drug and plan formulary information. |
| Polypharmacy | Education for Members using multiple drugs to review prescriptions with their providers to decrease incidences of adverse drug interactions |
| Point-of-sale Pharmacy | Follow-up with Members and physicians to minimize inappropriate or excessive drug therapies identified when drugs are dispensed. |
| **Virtual Care – On Demand** | The Claims Administrator has contracted with one or more vendors to provide virtual care services using secure chat, text, voice or audio messaging and video chat.<br><br>The virtual care services do not include real-time visits between Members and their doctors via online and telephonic methods (telemedicine). |

Appendix 2

**Personal Health Support Services**

Services of the Personal Health Support program may include:

- Telephonic personal health support, including a clinician designated as the participant's single point of contact for personal health support.

- Engagement team triage

- Periodic reporting on program enrollment and activities

## Eligible Health Conditions

Members eligible for services include those who are classified by Claims Administrator, in its sole discretion, using its own methodology or criteria, as high-risk and/or have two (2) or more of the chronic conditions designated by Claims Administrator for the program. Claims Administrator may change the methodology for determining eligibility or terms of or criteria for eligibility, at its sole discretion, from time to time.

## Active Engagement

The separate monthly program fee is charged only for Members who are actively engaged in personal health support services during the month. "Active engagement" means that a Member or their authorized designee (such as the parent of a minor child or an individual with power of attorney) has at least one (1) two-way conversation with their personal health support clinician in which health goals are discussed. The initial outreach contact to the Member does not count. No charges are made for a month in which there is no active engagement.

Appendix 3
## BestBeginnings Maternity Program

The BestBeginnings Maternity program offers education and support services to pregnant Members and case management for pregnant Members identified as high risk.  Member participation is voluntary.  The program helps educate Members about normal symptoms of pregnancy, as well as risks and problems, including warning signs.

**BestBeginnings Program Description**

The BestBeginnings program has two components:

- A mobile application for the Member's smartphone or tablet. Members can download this mobile application from the Internet after they register for the BestBeginnings program.  There is no charge to the Member.  The application covers important health issues in pregnancy.  It provides surveys to help identify high-risk pregnancies and post-partum depression.  It also offers information, tools, milestones, alerts on pregnancy-related issues, and reminders.  Content is updated quarterly as needed.

- The Claims Administrator will provide outreach to Members identified as having the potential for a high risk pregnancy.  These Members can click in the mobile application to call one of the Claims Administrator's maternity specialists.  These specialists are the Claims Administrator's personal health support clinicians who have specific maternity training.  Maternity specialists are available from 6:00 a.m. to 8:00 p.m. on Monday through Friday and 9:00 a.m. to 1:00 p.m. on Saturday, Pacific time.

Appendix 4

**Neonatal Intensive Care Risk Assessment and Case Management**

The Neonatal Intensive Care Unit (NICU) Program provides case management for babies admitted to the NICU. The program is administered by the Claims Administrator's designated program manager (the "Program Manager").  The Claims Administrator and/or the hospital refers Members who are admitted the NICU or a specialty care nursery to the Program Manager.  The Program Manager then contacts the parents to get consent for the newborn Member to participate in the NICU Program.  Member participation is voluntary.

Services include:

- Coordination of care for newborns throughout their stays in the NICU

- Assistance with management of the baby's care from discharge to the baby's transition home

- Comprehensive booklet that educates parents about the NICU and the needs of the child in the NICU

- Measures health outcomes

- Recommends appropriate levels of care to the Claims Administrator

Appendix 5
## Outpatient Rehabilitation Review Program

The Outpatient Rehabilitative Review Program provides a medical necessity review of outpatient physical, occupational, and massage therapy.  The program does not extend to spinal manipulations, cardiac/stroke rehabilitation, cognitive rehabilitation, speech therapy or neurological occupational or physical therapy.  The program is administered by the Claims Administrator's designated program manager (the "Program Manager").

The initial visit to the therapist and the next six (6) visits per episode of care are not subject to the Program Manger's review.  An "episode of care" is treatment of a new or recurrent condition for which the member is not currently being treat or has not been treated within the previous 90 days.  Before any subsequent visits, the therapist must first submit the treatment plan and other documentation to the Program Manager for review.  There is no penalty to the Member if the provider does not submit the documentation before providing the service.  If the provider does not submit the required documentation to the Program Manager before the second therapy visit, the claim will be pended while the provider submits the documentation and the Program Manager reviews it.

The Program Manager's determination will include how many therapy visits are medically necessary to treat the patient.  If additional visits are deemed necessary by the provider, at the end of the visits that had been approved, the provider must submit new documentation to the Program Manager with a request for additional visits to be covered.

If the Program Manager deems that an In-Network Provider's services are not medically necessary, the In-Network Provider cannot bill the Member for that service.

The denial of coverage for services that are not medically necessary can be appealed by the In-Network Provider or the Member.  The Program Manager will assist the Claims Administrator in conducting provider appeals.

# ATTACHMENT G – EXTENDED POST-PAYMENT RECOVERY SERVICES

Claims Administrator, through its affiliate, Calypso, shall provide a set of Extended Post Payment Recovery Services to the Plan Sponsor as described below.  Claims Administrator will perform these services on a pay-for-performance, contingent fee ("Contingent Fee") basis, which shall be calculated as a percentage of the gross amount recovered with respect to any particular claim.  Contingent Fees are shown in "Attachment D – Fees Of The Claims Administrator."

| Post Payment Recovery Category | Explanation of Services |
|---|---|
| **Coordination of Benefits** | Claims Administrator's investigators and auditors will work to identify and pursue overpayments due to Member's missing or inaccurate COB information.  Claims Administrator utilizes questionnaires and interviews with providers, employers and Members to determine if Plan Sponsor's Plan is primary or secondary. |
| **Subrogation** | Claims Administrator's investigators, auditors and attorneys identify and pursue overpayments due to Subrogation opportunities.  Claims Administrator's research to obtain accurate subrogation information and determine group's subrogation rights include questionnaires and interviews with providers, employers and Members.  As Claims Administrator deems necessary, Claims Administrator manages attorney and Member notification, coordinates case documentation, coordinates with potentially responsible parties and provides representation for hearings.<br><br>Claims Administrator will notify Plan Sponsor in the event that Claims Administrator recommends that the Plan Sponsor file suit.  Plan Sponsor retains the right to authorize or deny any legal action.<br><br>Claims Administrator will not initiate legal action to enforce the plan's subrogation provision without prior approval from the Plan Sponsor.<br>If Plan Sponsor brings any legal action on its own, Plan Sponsor will be solely responsible for the case, and (1) The Claims Administrator will cooperate with the Plan Sponsor; (2) Any court costs and attorneys' fees incurred in pursuing such subrogation claims shall be the responsibility of the Plan Sponsor; and (3) If Claims Administrator had already opened a subrogation case, Plan Sponsor shall pay Claims Administrator its subrogation fee set forth in "Attachment D – Fees Of The Claims Administrator."  (If Claims Administrator had not already opened a subrogation case, no fees shall be due the Claims Administrator.) |
| **Provider Billing Errors** | Claims Administrator's post-payment editing programs and investigators and auditors perform additional screens and tests where billing information is inconsistent with age/services rendered or where there appears to be up-coding or unbundling of services.  A recovery process is then employed to request and recover verified overpayments. |

| Post Payment Recovery Category | Explanation of Services |
|---|---|
| **Credit Balance** | This service requires an on-site review of the provider's financial records and discussions with their staff.  Credit balances are verified as owed to Plan Sponsor and the source of the credit is determined.  The credit is reviewed with the provider and approved for payment back to Claims Administrator or the Plan Sponsor. |
| **Hospital Billing and Chart Review** | This service requires an on-site review of the Member's medical charts and interviews with provider staff by registered nurses.  Calypso out-sources the on-site review work to an independent vendor who ensures that:<br><br>• Service is consistent with diagnosis and billing is consistent with services.<br><br>• There has been no unbundling of services, diagnosis up-coding or billing maximization.<br><br>• Services rendered were prescribed by the physician and the doctor's notes were signed.<br><br>• Standardized billing and payment policies were used.<br><br>Calypso provides support for this vendor's efforts as well as processes all recoveries. |

# ATTACHMENT H – FUNDING ACCOUNTS

The Plan includes the following funding accounts, collectively referred to as "the Program" in this Attachment:

- a Health Savings Account ("HSA") described in Code § 223

Claims Administrator agrees to provide those services described in the Appendices to this Attachment.  Except as expressly stated in this Attachment, all other terms and conditions as set forth in the Contract shall remain in full force and effect, and shall continue to be binding on the parties hereto.

## SERVICES

### Administrative Services Only

Plan Sponsor understands and agrees that Claims Administrator's sole function under this Attachment is to provide administrative services in accordance with the terms of this Attachment.  Under the terms of this Attachment, Claims Administrator does not render investment advice, is not an "administrator" as defined in § 3(16) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and is not a trustee or a fiduciary, as these terms or other analogous terms may be defined under applicable state, local, or federal law, and does not provide consulting, legal, tax or accounting advice with respect to the creation, adoption or operation of the Program or any portion thereof.

### Discontinuance of Services Inconsistent with Role

If, based on changes in the regulations governing the Program or the interpretation of the regulations, there is a reasonable likelihood that any service being, or to be, provided under this Attachment by Claims Administrator could constitute a discretionary function and thereby subject Claims Administrator to classification as a "fiduciary" under applicable state, local, or federal law with respect to the Program, and such service could not be restructured in a manner that would not subject Claims Administrator to classification as a "fiduciary" under applicable state, local, or federal law, then Claims Administrator, upon reasonable notice to Plan Sponsor may decline to thereafter provide that service.  The failure to provide any such service shall not constitute a breach of Claims Administrator's obligations under this Attachment.

### Compliance Responsibility

Plan Sponsor is solely responsible for all plan documents and for ensuring that the Program complies with all applicable provisions of the Internal Revenue Code and ERISA and any applicable state and local laws governing the Program.

### Debit Card Substantiation

Plan Sponsor agrees that, in connection with any account offering that includes a debit card made available to its employees, the following personal or health data may be shared with Claims Administrator's vendors for purposes of debit card substantiation:  Participant ID, Prescription Number, Service Start Date, Amount Paid, Partner Routing ID, Provider Name and Sender ID.

### Reliance Upon Data

All services provided by Claims Administrator hereunder shall be based on information supplied by Plan Sponsor or designee or agent of Plan Sponsor (as designated by Plan Sponsor).  Plan Sponsor acknowledges that the timely provision of accurate, consistent and complete Program Data in the format specified by Claims Administrator is essential to its delivery of services, and Plan Sponsor is responsible for ensuring such timely and accurate data is delivered to Claims Administrator in Claims Administrator's approved format.  For these purposes, "Program Data" means all data and records supplied to Claims Administrator, obtained by Claims Administrator or produced by Claims Administrator (based on data or records supplied to, or obtained by, Claims Administrator) in connection with performing the services pursuant to this Attachment.  Program Data includes, but is not limited to, current Participant names, addresses, status, and contribution amounts.

**Data in Electronic Format**

Plan Sponsor agrees that administrative, contribution and recordkeeping data shall be provided by the Plan Sponsor in an electronic format acceptable to Claims Administrator and will be updated by the Plan Sponsor as Claims Administrator requires for proper processing.  If the data is not submitted in an electronic format or if the format of the data requires additional translation, formatting or cleansing, Claims Administrator reserves the right to approve or refuse such submission and to charge additional data-handling fees as required.

**Reliance Upon Persons Designated by Plan Sponsor**

Plan Sponsor will provide names and other contact information to identify persons authorized by Plan Sponsor to take actions for, or provide information with respect to, the Program.  Until notified of a change, Claims Administrator may reasonably rely upon this information and may act upon instructions received from and/or on information provided by these named persons.  Claims Administrator has the right to assume that those persons continue to be authorized until notified otherwise.

**Customer Service**

Customer service representatives will be available at a toll-free telephone number to assist Plan Sponsor and Participants.

Claims Administrator will provide access to the Claims Administrator Web site as described in "Benefit Information Portals" below to allow Participants and Plan Sponsor to access certain account information and for Participants to file claims.

Participants will have access to their accounts through Claims Administrator's Web site as described below in this Attachment.

**Benefit Information Portals**

**Participant Portal**

Claims Administrator will provide Participants with access to Claims Administrator's portal system.  This system will allow online claim filing.  Participants will also have online access to the following:

- Real-time history of claim submission and payment processing;

- Account management with transaction history and account balance; and

- Contribution data.

**Employer Portal**

Claims Administrator will provide Plan Sponsor and Plan Sponsor's designated administrator with access to Claims Administrator's employer portal system.  The Plan Sponsor portal system provides Plan Sponsor with the ability to upload contributions data, generate reports, and perform other administrative functions with respect to the Program.

## COMPENSATION

 In consideration for its services provided hereunder, Plan Sponsor shall pay Claims Administrator or its designee in accordance with the Fee Schedule provided in Appendix A.  Claims Administrator may amend the schedule for services not yet rendered upon giving notice in writing under the same conditions specified in "Termination For Cause" below in this Attachment.  Fees are invoiced and payable monthly.  The monthly invoice will include:

- Fees related to the initial setup or periodic renewal of the Program, as soon as practicable after the setup or renewal date.

- Administration fees, based on the number of Participants in the Program (depending on the components of the Program in which they participate) as of the first day of the month.  Eligibility is based on information provided by Plan Sponsor to Claims Administrator, and must be received by Claims Administrator by the first business day of the month.

- Additional optional services agreed upon by Plan Sponsor and Claims Administrator.

- Miscellaneous direct costs that Claims Administrator will pass through to Employees.

Invoices will be sent on or about the 20th day of each month.  Monthly charges are based on participation as of the first day of the month and will not be adjusted for any Employees who terminate during the month.  After the month in which termination of employment occurs, the Plan Sponsor is no longer responsible to pay fees for employees who terminate from employment.

All fees are due at the time they are invoiced and Plan Sponsor agrees to pay all fees due within 30 days after the invoice date ("Grace Period").  As set forth in "Duration; Termination; Successor Recordkeeper" below in this Attachment, late payment may result in termination of the Attachment.

## USE OF AGENTS OR SUBCONTRACTORS

Claims Administrator may perform any of the services described in this Attachment through agents and subcontractors selected by Claims Administrator.  Claims Administrator shall reasonably supervise any such agent or subcontractor, and the retention of agents or subcontractors shall not relieve Claims Administrator of its duties hereunder.

## CLAIMS ADMINISTRATOR NOT LEGAL COUNSEL

Plan Sponsor understands and agrees that it shall review with its legal and/or tax counsel all documents provided to it by Claims Administrator and that Plan Sponsor should consult such counsel on any questions concerning Plan Sponsor responsibilities under this Attachment, the Program documents, and the legal sufficiency of any documents provided by Claims Administrator.  Plan Sponsor understands that neither Claims Administrator nor any of Claims Administrator's affiliates, agents, or subcontractors are permitted to provide Plan Sponsor with legal or tax advice.  Plan Sponsor acknowledges that it will not rely on any information provided as if it were legal or tax advice.

## NOTICE OF ERRORS

All information supplied to Plan Sponsor or Participant will be deemed correct if notice of transactional errors is not given to Claims Administrator by the Participant or Plan Sponsor within 90 days of issuance of any payment, confirmation, or other information.  If Claims Administrator receives timely notice, Claims Administrator will use reasonable efforts to correct transactional errors.  Claims Administrator will not be liable for damages of any kind resulting from such errors.

## INDEMNIFICATION

### Indemnification of Claims Administrator

Plan Sponsor shall hold harmless and indemnify Claims Administrator and its employees, directors, officers, agents, and subcontractors (collectively, "Claims Administrator Indemnitees") from and against any loss, damage, liability, claims, costs and expenses, including reasonable attorneys' fees, to which the Claims Administrator Indemnitees may become subject, which result from:

- Any misrepresentation or nonfulfillment of any terms of this Attachment by Plan Sponsor, a Participant, or any other individual including, but not limited to, liabilities resulting from the provision of inaccurate, untimely, or incomplete information to Claims Administrator or the failure to provide Claims Administrator with clear instructions as to distributions;

- Any failure of the Plan Sponsor to provide timely and accurate Program Data;

- Any failure by Plan Sponsor, a Participant, or any other individual to comply with the terms of the Program;

- Any violation by Plan Sponsor, a Participant, or any other individual of the requirements of applicable state, local and/or federal laws;

- The making by Claims Administrator of any payment based upon instructions that Claims Administrator reasonably believes to be authorized; and

- Any action, conduct, or activity taken by Claims Administrator, or any inaction by Claims Administrator, at the direction of Plan Sponsor, provided that Claims Administrator reasonably believes the direction to be valid and is not negligent in the execution of such directions.

**Indemnification of Plan Sponsor**

Claims Administrator shall hold harmless and indemnify Plan Sponsor and its employees, officers, and directors from and against any loss, damage, liability, claims, costs and expenses, including reasonable attorneys' fees, to which Plan Sponsor may become subject, which are caused directly by the gross negligence or willful misconduct by Claims Administrator.  The liability of Claims Administrator (and its affiliates, agents and subcontractors) hereunder, regardless of the theory or form of action, shall not exceed the aggregate of the total amount of fees paid by Plan Sponsor hereunder.

**General Conditions of Indemnification**

As a condition to receiving indemnification, the party seeking indemnification shall:

- Give written notice to the indemnifying party of any indemnified claim, demand or action within 15 days after it has knowledge thereof;

- Permit the indemnifying party at its option to assume control of the defense of such claim, demand or action;

- Give full cooperation in the investigation and defense on request;

- Use its best efforts to mitigate the damages; and

- Not compromise or settle such claim, demand or action without the indemnifying party's written consent.

## DURATION, TERMINATION, AND SUCCESSOR RECORDKEEPER

**Duration**

This Attachment will automatically terminate one (1) year from the Effective Date, unless terminated earlier by the Parties.

**Termination for Cause**

Claims Administrator may terminate this Attachment and discontinue services immediately upon notice to Plan Sponsor if:

- Plan Sponsor fails to transfer funds for the Program on the terms set forth in the Appendixes;

- Plan Sponsor fails to pay any invoice prior to the expiration of the Grace Period;

- Plan Sponsor's agreement with Claims Administrator to provide or administer the health coverage is terminated or discontinued for any reason;

- Plan Sponsor offers Participants any other funding account in conjunction with the Program or health plans being administered by Claims Administrator without prior written agreement between the Parties as provided for in "Representations and Warranties" below in this Attachment; or

Plan Sponsor may terminate this Attachment upon thirty (30) days' notice in the event that Plan Sponsor agreement with Claims Administrator to provide or administer health coverage is materially changed and services under this Attachment are no longer required.

**Runout Period**

If the Attachment is terminated, Claims Administrator will, for the 90-day period immediately following the date of termination ("Runout Period"), continue to administer claims for expenses incurred prior to the date of termination in the manner described in this Attachment.  Administrative fees during the Runout Period shall be as indicated on Appendix A.  Upon expiration of the Runout Period, all obligations of Claims Administrator to administer claims or perform any other services under this Attachment shall cease.

**Successor Recordkeeper**

Upon termination, the parties agree that Claims Administrator shall have no further duty or responsibility to Plan Sponsor under this Attachment except as provided by the Runout Period described above in this Attachment.  However, Claims Administrator will use reasonable efforts to transfer all relevant non-proprietary information concerning the Program that Claims Administrator deems necessary for future operations, in Claims Administrator's standard format, to Plan Sponsor or to a successor service provider.  Any unforeseeable costs or expenses incurred by Claims Administrator in effecting this transfer shall be paid by Plan Sponsor unless waived in writing by Claims Administrator.  Plan Sponsor agrees that Claims Administrator may charge reasonable fees for the provision of requested records or reports that Claims Administrator previously provided.

**Survival of Indemnification**

Plan Sponsor acknowledges and agrees that the indemnification provisions of this Attachment shall survive the termination of this Attachment.

**Representations and Warranties**

Claims Administrator makes no statutory, express, or implied representations or warranties of any kind with respect to the services or Claims Administrator's performance of services under the Attachment, including, without limitation, those of merchantability and fitness for a particular purpose, which, without limiting the foregoing, are disclaimed by Claims Administrator.  No descriptions or specifications, whether or not incorporated into the Attachment, no provision of marketing or sales materials, and no statement made by any sales representative in connection with the services shall constitute representations or warranties of any kind.

Plan Sponsor warrants that it  will not use any other funding account in conjunction with the Program or health plans being administered by Claims Administrator unless otherwise agreed to in advance by the Parties in writing.

**Writing and Signature; Electronic Transactions**

Unless otherwise explicitly required by law:

- Any requirement for a writing under this Attachment may be rendered in any form that can reliably reproduce an accurate physical record of the communication and authenticate the source, including but not limited to facsimile transmission, electronic mail, or Internet transmission.

- Any requirement of a signature under this Attachment may be rendered in any form clearly indicated by the signatory to be a signature or which complies with instructions directly given to the signatory as to the proper form of indicating a signature in an electronic or voice response environment.  Appropriate forms include, but are not limited to, personal identification numbers rendered over the Internet, and facsimile transmissions.

- Notwithstanding the above, the recipient of any writing or signature under this Attachment may require the confirmation of any writing or signature in physical form (such as hand or typewritten or the equivalent) with a manual signature.

- Plan Sponsor represents that the Program document(s) will allow for transactions to be made by electronic means.  Under the Program document(s) and this Attachment together, notices, consents and other actions by or on behalf of, or with respect to, the Program, its Participants and their respective

beneficiaries ("Program Transactions") may be affected, in whole or in part, by electronic means.  Any Program Transactions relating to services provided under this Attachment may be initiated or effected by Plan Sponsor, the Program, a Participant or a beneficiary by use of Claims Administrator authorized electronic means, Internet access system (including Claims Administrator web site) or telephone service line.  Use of electronic means for Program Transactions is subject to the terms and conditions established by Claims Administrator and disclosed to Plan Sponsor and Participants, and electronic transactions shall be binding on the parties if Claims Administrator, acting in good faith, believes that such transactions are authorized by Plan Sponsor, a Participant, or beneficiary, as applicable.

## Appendix 1

## Administration and Recordkeeping Services for Health Savings Account

If Plan Sponsor has elected to offer an HSA to Plan Sponsor's employees, then the terms of this Appendix shall apply to the administrative services that Claims Administrator provides in connection with the HSA.

1. Plan Sponsor agrees:

   a) The HSA is funded by a related trust, which is intended to satisfy the requirements of Code § 223 and for which UMB Bank, n.a serves as trustee ("Trustee").

   b) Claims Administrator is not a financial institution and does not hold the HSA.

   c) Claims Administrator does not act as a trustee for the HSA.

   d) Plan Sponsor will offer the HSA to its employees and operate the HSA in such a manner that it will not constitute an "employee welfare benefit plan" within the meaning of ERISA § 3(1) or an "employee pension benefit plan" within the meaning of ERISA § 3(2), and acknowledges that any services provided by Claims Administrator with respect to the HSA need not comply with ERISA requirements.

   e) Upon mutual agreement of the parties, a new trustee may be substituted for the existing Trustee.  Such substitution shall not alter the obligations of the Claims Administrator or Plan Sponsor under this Agreement.

2. Claims Administrator will provide the following administrative services related to the HSA:

   a) Enrollment and Communications:  Plan Sponsor's employees may elect to enroll in an HSA under the terms set forth in the HSA enrollment form and agreements.  Claims Administrator will provide, to Plan Sponsor's employees, a standard enrollment kit with standard forms and notices necessary for the employees to establish and maintain an HSA account.  The enrollment kit will include the HSA enrollment form, agreement, and terms and conditions, all in electronic format, necessary to implement the administration with the Trustee.

   b) HSA Administration and Recordkeeping:

      i. Participant Accounts with the Trustee - Each employee participating in the HSA must establish his or her own HSA account with the Trustee.  The Trustee will establish and maintain a participant HSA account for each employee for whom it receives complete enrollment information.  Claims Administrator is not responsible for determining if employees are eligible for HSA Accounts, but relies on data provided by Plan Sponsor.

      ii. Participant Files - Claims Administrator maintains physical or electronic files for all participants for whom HSA accounts have been established.  These files include enrollment forms and all other written correspondence and documents concerning each participant's account, and if applicable, records of any such actions conducted through the Internet or electronic means.

      iii. Transfer of HSA funds - Plan Sponsor agrees to establish a payroll deduction for the HSA, if applicable.  After each contribution cycle is processed, Claims Administrator will notify Plan Sponsor of the cumulative HSA funds processed for that cycle.  Plan Sponsor will allow Claims Administrator to initiate transfer via Automated Clearing House (ACH) Electronic Funds Transfer (EFT) from Plan

Sponsor's designated bank account the cumulative HSA funds processed for that cycle.  Claims Administrator will remit the funds to the Trustee for deposit into each employee's HSA.

iv.  Reports - Claims Administrator will provide Plan Sponsor with the ability to produce program-level reports utilizing the information maintained on its recordkeeping system.  Standard reports will summarize all transactions that occurred for each participant and report new enrollees.

c)  HSA Documents:  All HSA account documents, including but not limited to, records of all deposits and withdrawals and other account statements will be provided by the Trustee to Plan Sponsor's employees in accordance with Trustee's standard policies and procedures and applicable law.  Claims Administrator does not maintain, and shall not be responsible for maintaining or providing, such HSA documentation.

d)  Claims Administrator VISA® Payment Card:  The Trustee will issue to each employee with an HSA account a VISA® payment card integrated with the employee's HSA account.  The payment card will allow the HSA account balance to automatically transfer to the payment card.  The payment card can be used at any eligible healthcare merchant provided the merchant has properly configured the VISA® merchant code to identify itself correctly.  The use of the payment card is subject to the terms and conditions described in the employee's VISA® cardholder agreement with Trustee, which will be provided with the payment card.

e)  Claims Processing:

i.  Payment of Claims - Claims Administrator will process claims within five (5) business days of the date Claims Administrator receives a claim request from a participant.  Checks, if applicable, will be issued within two (2) scheduled weekly check payment cycles, upon receipt of claims in good order.  Claims are in "good order" when the reimbursement request contains all pertinent information, including information required to substantiate the claim.

Claims Administrator will not reimburse a participant's claim unless the participant has sufficient funds in his/her Program account(s) at the time the claim is submitted.  If the participant does not have sufficient funds in his/her Program account(s) at the time the claim is submitted, the reimbursement request will be held by Claims Administrator and processed in accordance with the time frame described in paragraph above starting with the date that such funds are available.

ii.  Reports - Claims Administrator will provide Plan Sponsor with the ability to produce Program-level reports utilizing the information maintained on its recordkeeping system.  Standard reports will summarize all transactions that occurred for each participant and report new participants within the specified time period.

# ATTACHMENT I – FIDUCIARY AUTHORITY

## Plan Sponsor's Fiduciary Authority

The Plan Sponsor retains complete authority and responsibility for the Plan, its operation, and the benefits provided hereunder.  The Claims Administrator is empowered to act on behalf of the Plan Sponsor in connection with the Plan only to the extent expressly stated in this Attachment.  Except as stated in this Attachment, the Plan Sponsor shall retain final discretionary authority to determine the benefit provisions and the amount to be paid by the Plan, and to construe and interpret the terms of the Plan.

The Plan Sponsor has the sole and complete authority and responsibility to determine eligibility of persons to participate in the Plan.

## Claims Administrator's Fiduciary Authority

The Plan Sponsor and the Claims Administrator agree that, with respect to the Employee Retirement Income Security Act of 1974, the Claims Administrator will be a named fiduciary for the purpose of the administration, processing, and determination of claims for Plan benefits.  In exercising such responsibility, the Claims Administrator will have the discretionary authority to determine entitlement to Plan benefits as determined by the Plan documents for each claim received and to construe the terms of the Plan.  It is agreed that the Claims Administrator has no other ERISA fiduciary responsibility under the Plan.

Claims Administrator is not a fiduciary with respect to rebate administration or the prescription drug benefit design. Ravn Air Group has final authority and responsibility to select its pharmacy benefit design and formulary from available options.  Current formularies are available on the Claims Administrator's website.

a.  In the event of a legal, administrative or other action arising out of the administration, processing, or determination of a claim for Plan benefits, the Claims Administrator shall undertake the defense of such action at the Claims Administrator's expense and settle such action when, in its reasonable judgment, it appears expedient to do so.

b.  If the Plan Sponsor is also named as a party to a legal, administrative or other action, the Claims Administrator will defend the Plan Sponsor only if the action relates solely and directly to actions or failure to act by the Claims Administrator.  In the event that the action relates in part to actions or failure to act of the Plan Sponsor, the Plan Sponsor shall be responsible for its own defense.

c.  If the legal, administrative or other action relates solely to the action or failure to act of the Plan Sponsor, the Plan Sponsor shall undertake sole defense of the action and shall defend the Claims Administrator.  This includes any actions that arise from the Plan Sponsor's failure to fund claims determined to be payable under the Plan by the Claims Administrator.

d.  For all actions, the Plan Sponsor agrees to pay the full amount of Plan benefits and any other damages or awards in any judgment or settlement in such action, except to the extent any judgment or settlement is based upon Claims Administrator's gross negligence or willful misconduct.

## ATTACHMENT J – ELECTIVE PROCEDURE TRAVEL SUPPORT

The Plan's Elective Procedure Travel benefit provides Members the option to travel from Alaska to another state for certain elective procedures.  This program assists Members who are using the benefit as follows:

- Premera has a dedicated Customer Support phone line for calls related to elective procedure travel.

- A dedicated Customer Service unit is available to provide:

  - Eligibility determinations and pre-approval for the elective procedure travel

  - Help to find high-value travel providers

  - Information on travel options and costs

- Case management also provided, including coordination of the medical care the Member needs:

  - Determine the appropriate medical provider for the covered service

  - Transfer of the Member's medical records as required

  - Help with appointment scheduling

- Premera will make the Member's travel arrangements and will provide pre-payment for some travel costs, such as airfare, on behalf of the Plan.  Pre-paid amounts will be passed back to the Plan Sponsor as part of the regular request for claims payment.

## ATTACHMENT K – PREMERA-DESIGNATED CENTERS OF EXCELLENCE

The Claims Administrator has partnered with provider groups called designated centers of excellence to provide bundled pricing for certain services to Members.  All Members are eligible to participate in the program, but participation is not required.  The program is administered by the Claims Administrator; however, the Claims Administrator's travel partner will manage the travel benefits.

### Medical Services

The bundled pricing applies to the following procedures:

- Total knee replacements

- Total hip replacements

- Spinal surgeries, such as cervical spinal fusions

- Gynecological surgeries: vaginal hysterectomy, uterine and adnexa procedures with or without complications

Services included in the bundled price for the procedure are:

- Services provided before the procedure:  Pre-surgical consultation with the professional team, X-ray, EKG if needed, and basic laboratory procedures.  For joint and spinal surgeries, one physical therapy evaluation and therapy visit.  For gynecological procedures, a urinary muscle study or cystometrogram if needed.

- Surgery, inpatient facility charges, and professional services provided during the inpatient stay.

- Post-discharge visit with the professional team, X-ray, and walker or cane, that are furnished prior to the patient being cleared to travel.

### Travel

Travel between the Member's home and a designated center of excellence in Washington state is covered under the plan's Medical Access Travel benefit and Elective Procedure Travel benefit.  See Attachment J – Elective Procedure Travel Support for concierge services provided in connection with this benefit.

## ATTACHMENT L – PREMERA VALUE-BASED PROVIDER ARRANGEMENTS

The Claims Administrator provides access for Members to provider groups that participate in Claims Administrator's value-based programs (VBPs).  VBPs focus on improving treatment outcomes, cost and quality, and coordinating care when the Member is seeing multiple providers.

The Claims Administrator pays VBP providers for meeting standards for treatment outcomes, cost and quality, and coordinating care over a period of time called a measurement period.  The Claims Administrator will then pass these VBP payments through to the Plan Sponsor.

## AMENDMENT NO. 02

To be attached to and made part of Policy AK 201347 issued to Ravn Air Group as Policyholder.

Effective January 1, 2020, it is hereby agreed the Policy shall be amended as follows:

Stop Loss Policy No. AK 201347-9999 is hereby amended by terminating the policy issued January 1, 2018 and issuing the attached Stop Loss Policy No. AK 201347.

The Policy Number has been changed from AK 201347-9999 to AK 201347.

Section 1, Declarations includes the terms of the January 2020 renewal.

All other terms and conditions of the contract remain unchanged.

**LifeWise Assurance Company**

*Michael L. Krutt*

**Michael L. Krutt**
**President**
**LifeWise Assurance Company**

---

1. Retain copy with Your Policy.

PSL-500 AK AM (9-18)                                                                 Amendment

**LifeWise Assurance Company**
**7001 – 220th St S.W.**
**Mountlake Terrace, WA 98043-2124**



## STOP LOSS INSURANCE POLICY

LifeWise Assurance Company (herein "We", "Our", and "Us") agrees to pay the policyholder (herein "You" and "Your"), benefits provided by this Policy, in accordance with the provisions of this Policy.

| | |
|---|---|
| **POLICY NUMBER** | AK 201347 |
| **POLICYHOLDER** | Ravn Air Group |
| **INITIAL EFFECTIVE DATE** | January 1, 2018 |
| **INITIAL POLICY TERM** | January 1, 2018 through December 31, 2018 |
| **GOVERNING JURISDICTION** | The policy is issued, delivered and governed by the laws of the state of Alaska. |

The consideration for this Policy is Your Application and the payment of premiums as provided herein.

This Policy provides benefits to You when Eligible Losses exceed levels defined in this Policy. The benefits of this Policy and the terms and conditions that apply to this Policy are explained herein.

This Policy begins at 12:01 AM Local Time on the first day of the Initial Policy Term and ends at 11:59 PM Local Time on the last day of the Initial Policy Term and may be renewed for subsequent Policy Terms. If this Policy is renewed, the terms and conditions of this coverage may be revised.

All provisions on this and the following pages are a part of this Policy. Defined terms are printed with an initial capital letter, and the definitions apply whenever the terms appear capitalized within this Policy.

LifeWise Assurance Company

by

*Michael L. Krutt*

Michael L. Krutt
President
LifeWise Assurance Company

This is a Non-Participating Plan of Coverage
**Stop Loss Policy**

## TABLE OF CONTENTS
### Effective January 1, 2020

Section 1.   Declarations .................................................................................................................... 1

Section 2.   Definitions ....................................................................................................................... 4

Section 3.   Benefits ............................................................................................................................ 7

Section 4.   Exclusions and Limitations.............................................................................................. 8

Section 5.   Claim Administrator......................................................................................................... 8

Section 6.   Claim Provisions .............................................................................................................. 8

Section 7.   Material Changes ............................................................................................................. 9

Section 8.   Termination and Renewal................................................................................................ 9

Section 9.   Premiums........................................................................................................................ 10

Section 10.  General Provisions......................................................................................................... 11

Section 11.  Records and Reports ...................................................................................................... 12

Section 12.  Liability and Indemnification ........................................................................................ 13

Section 13.  Entire Contract, Changes............................................................................................... 13

Section 14.  Incontestable Clause ...................................................................................................... 13

Section 15.  Legal Actions.................................................................................................................. 13

Section 16.  Insolvency ...................................................................................................................... 13

Section 17.  Assignment ..................................................................................................................... 13

Specific Advance Funding Rider....................................................................................................... 14

This Declarations for Policy Number AK 201347 apply to the Policy Term January 1, 2020 through December 31, 2020 in its entirety.

## SECTION 1 – DECLARATIONS

### A. POLICY INFORMATION

| | | |
|---|---|---|
| 1. | Policy Number | AK 201347 |
| 2. | Policyholder | Ravn Air Group |
| 3. | Policy Term | January 1, 2020 through December 31, 2020 |
| 4. | Covered Underlying Plan | Ravn Air Group's Health Plan |
| 5. | Claim Administrator | Premera Blue Cross Blue Shield of Alaska |

### B. SPECIFIC BENEFIT SCHEDULE

For all Eligible Losses except those to which a Special Risk Limitation applies:

1. Covered Loss Basis

   Covered Services Incurred from January 1, 2018 through December 31, 2020 and Paid from January 1, 2020 through December 31, 2020.

   If an Eligible Claim Expense is denied by the Covered Underlying Plan and that denial is subsequently reversed by an Independent Review Organization (IRO), the date such Eligible Claim Expense was originally denied by the Covered Underlying Plan will be considered the "Paid" date under the above referenced Policy.

2. Covered Services include

   Medical
   Prescription Drug

3. Number of Covered Units

   | | |
   |---|---|
   | Composite | 602 |

4. Specific Deductible per Participant — $100,000

5. Specific Payable Percentage (in excess of Specific Deductible) — 100%

6. Maximum Specific Benefit in excess of the Specific Deductible

   | | |
   |---|---|
   | Per Policy Term | Unlimited |
   | Per Lifetime | Unlimited |

## C. AGGREGATE BENEFIT SCHEDULE

For all Eligible Losses except those to which a Special Risk Limitation applies:

1. Covered Loss Basis

   Covered Services Incurred from January 1, 2018 through December 31, 2020 and Paid from January 1, 2020 through December 31, 2020.

   If an Eligible Claim Expense is denied by the Covered Underlying Plan and that denial is subsequently reversed by an Independent Review Organization (IRO), the date such Eligible Claim Expense was originally denied by the Covered Underlying Plan will be considered the "Paid" date under the above referenced Policy.

2. Covered Services include

   Medical
   Prescription Drug

3. Number of Covered Units

   | | |
   |---|---|
   | Composite | 602 |

4. Aggregate Payable Percentage in excess of Deductible — 100%

5. Aggregate Corridor — 125%

6. Minimum Aggregate Deductible

   The greater of:
   A. $6,714,202; or
   B. The sum of Aggregate Monthly Factors, multiplied by the corresponding number of Covered Units used to calculate premium in the first month of the Policy Term, multiplied by the number of months in the Policy Term, multiplied by 95%.

7. Annual Aggregate Deductible

   Is equal to the greater of A or B, where:
   A = The sum of the Monthly Aggregate Deductible Amounts applicable to each Policy Month in the Policy Term
   B = The Minimum Aggregate Deductible

8. Aggregate Monthly Factor per Covered Unit

   | | |
   |---|---|
   | Composite | $929.43 |

9. Maximum Aggregate Eligible Loss per Participant — $100,000

10. Maximum Aggregate Benefit per Policy Term — $1,000,000

**D. PREMIUM**

Specific Monthly Premium Rate

| | |
|---|---|
| Composite | $133.41 |
| Specific Rate Guarantee Period | 12 Months |

Aggregate Monthly Premium Rate Per Covered Unit

| | |
|---|---|
| Composite | $5.32 |
| Aggregate Rate Guarantee Period | 12 Months |

The Specific Monthly Premium Rate and the Aggregate Monthly Premium Rate apply only to this Policy Term.

**E. SPECIAL RISK LIMITATIONS**

| | |
|---|---|
| Disabled / hospital confined, actively at work, activity of daily living, cognitively impaired, or similar requirements waived | Yes |
| Retirees Included | No |
| Other: | None |

**F. AFFILIATE**

| Name | Covered Underlying Plan |
|---|---|
| None | |

## SECTION 2 – DEFINITIONS

Any term defined below includes both the singular and plural version of the term.

**AFFILIATE** means a company that is a subsidiary of, affiliated with, or controlled by You or an employer in Multiple Employer Welfare Arrangement. Eligible Affiliates are shown in the Declarations. Additions and terminations may only be made by amendment to this Policy. Termination of an Affiliate terminates coverage for that company only.

**AGENT** means Your representative, including but not limited to, the agent/broker, producer of record, or Claim Administrator.

**AGGREGATE CORRIDOR** the ratio of the expected Annual Aggregate Deductible divided by the expected Eligible Losses (up to the Maximum Aggregate Eligible Loss) for all Covered Units. The Aggregate Corridor for the Policy Term is expressed as a percentage. It will never be less than 110% of expected claims. The Aggregate Corridor is shown in the Declarations.

**AGGREGATE BENEFIT** means a benefit that is provided by Us when Eligible Losses, up to the Maximum Aggregate Eligible Loss for all Covered Units, exceed the Annual Aggregate Deductible shown in the Declarations.

**AGGREGATE MONTHLY FACTOR** means the amount shown in the Declarations.

**AGGREGATE PAYABLE PERCENTAGE** means the percent of Eligible Losses in excess of the Annual Aggregate Deductible that are payable to You. The Aggregate Payable Percentage is shown in the Declarations.

**ANNUAL AGGREGATE DEDUCTIBLE** means the amount You must satisfy during the Policy Term for all Covered Units before an Aggregate Benefit is due.

This amount cannot be finalized until the Policy Term ends and is based on the formula shown in the Declarations.

**APPLICATION** means the written request from Your authorized representative(s) for insurance. Such request must be provided on a form acceptable to Us.

**ATTACHMENT POINT** means the amount You must satisfy before any benefit is due under this Policy.

**CLAIM ADMINISTRATOR** means the party designated by You and approved by Us to pay Plan benefits. The Claim Administrator is shown in the Declarations.

**COVERED LOSS BASIS** means the time period shown in the Declarations during which a Covered Service must be Incurred and the time period during which a Covered Service must be Paid by You in the Policy Term.

**COVERED SERVICE** means a service, supply or treatment incurred by a Participant for which benefits are payable through the Covered Underlying Plan.

**COVERED UNDERLYING PLAN** means Your employee benefit plan for Your or Your Affiliates' employees, associates or members and their dependents. This term does not include any employee benefit plan not identified as a Covered Underlying Plan in this Policy and does not include items excluded under Special Risk Limitations.

**COVERED UNIT** means a group of one or more Participants composed of one or more of the following types of Covered Units:

> Employee Only
> Employee plus Spouse
> Employee plus Child(ren)
> Employee plus Spouse and Child(ren)
> Composite

The number of Covered Units is used to calculate the premium due each month. The estimated number and type of Covered Units for the first Policy Month of the Policy Term is shown under Number of Covered Units in the Declarations.

**DEDUCTIBLE** means the Attachment Point for each of the following: Specific Deductible, Aggregating Specific Deductible, if applicable and Annual Aggregate Deductible, as shown in Declarations. Each of these terms is defined separately under this Policy

**ELIGIBLE LOSS** means an expense for a Covered Service that is Incurred and Paid within the Covered Loss Basis of this Policy. Eligible Loss does not include expenses:
1. Not specifically included under the Covered Underlying Plan;
2. Excluded under the Covered Underlying Plan; or
3. Excluded under the Policy.

Eligible Loss may include applicable surcharges assessed by state and/or federal rules, laws, or regulations as approved by Us.

**EXCLUDED LOSS** means expenses for services, supplies and treatment related to any injury or sickness described in Special Risk Limitations or the Exclusions and Limitations of the Policy.

**INCURRED** means the date a Participant receives a Covered Service. In the case of an inpatient confinement at an inpatient facility, the Incurred date is the original admission date and all Covered Services performed during that admission including a subsequent transfer and receipt of Covered Services at another institution revert back to the original admission date for the purposes of determining the Incurred date under this Policy.

**INDEPENDENT REVIEW ORGANIZATION (IRO)** means the organization for external review as required under the external review process of the Patient Protection and Affordable Care Act.

**LOCAL TIME** means the time of day at Your headquarters.

**MATERIAL CHANGE** means an action that may have an economic impact on Our liability under this Policy. Material Changes include, but are not limited to, the following:
1. Changes in:
   a. The information submitted by You upon which Our assessment of risk was based;
   b. The Covered Underlying Plan;
   c. The provider network(s) or medical management vendor(s) utilized by Your plan; or
   d. The Claim Administrator.
2. An increase or decrease in Covered Units of more than 10% from the Initial Effective Date of this Policy or the date of the last Policy Anniversary;
3. A merger, acquisition, divestiture or similar transaction involving You;
4. A bankruptcy proceeding involving You or an Affiliate;
5. Any other change in factors bearing on the risk assumed by Us, including but not limited to, the age, sex, geographic location and occupation of a Participant;
6. A change in law or legislation that changes the nature of the risk We assume under this Policy;
7. A change in taxes or assessments that increase Our costs under this Policy; or
8. Any change in the Covered Underlying Plan required by state or federal law.

**MAXIMUM AGGREGATE BENEFIT** means the maximum amount We will pay for the Aggregate Benefit in the Policy Term. The Maximum Aggregate Benefit is shown in the Declarations.

**MAXIMUM AGGREGATE ELIGIBLE LOSSES** means the maximum amount of Eligible Losses from any Participant that may be used in determining the Aggregate Benefit. In no event will Maximum Aggregate Eligible Losses exceed the Specific Deductible. Maximum Aggregate Eligible Loss is shown in the Declarations.

**MAXIMUM SPECIFIC BENEFIT** means the maximum amount We will pay per Participant for the Specific Benefit. The Maximum Specific Benefit is shown in the Declarations.

**MINIMUM AGGREGATE DEDUCTIBLE** means the minimum amount You must satisfy before Aggregate Benefits become payable. The Minimum Aggregate Deductible is shown in the Declarations.

**MONTHLY AGGREGATE DEDUCTIBLE AMOUNT** means the amount You must satisfy before Aggregate Benefit become payable. The Monthly Aggregate Deductible Amount is based on the Monthly Factors shown in the Declarations and the number of Covered Units reported on the first day of each Policy Month.

**PAID** means Covered Services that have been adjudicated and approved by You or the Claim Administrator during the Policy Term; provided, however that
1. A check, draft or credit transaction has been issued by You or the Claim Administrator and deposited in the U.S. Mail (or other similar conveyance), or is otherwise delivered to the payee electronically or in person; and
2. Sufficient funds are on deposit when the check or draft is actually issued to permit the check or draft to be honored; or a sufficient line of credit actually exists to honor the check, draft or transaction.

A Covered Service will not be considered Paid until all of these conditions are satisfied. A draft or check returned to You or the Claim Administrator for any reason, or any credit transaction not honored by the payee for any reason, will not be considered Paid. For purposes of this definition, "payee" means a Participant that received the Covered Service or the healthcare provider that delivered the Covered Service to the Participant.

**PARTICIPANT** means Your employee, associate or member, or the dependents of such persons participating under the Covered Underlying Plan.

**POLICY** means this Stop Loss contract between You and Us.

**POLICY ANNIVERSARY** means each anniversary of the Initial Effective Date, unless changed by agreement between You and Us.

**POLICY MONTH** means periods of time beginning on the Initial Effective Date of this Policy and continuing until the same date of each subsequent month. If there is no such day in any applicable month, then the last day of the month will be used.

**POLICY TERM** means the period of time shown in the Declarations and is the period of time from the Initial Effective Date of the policy to the date of the first Policy Anniversary or any subsequent renewal period after the first Policy Anniversary.

**POLICYHOLDER** means You, as shown on the cover page of this Policy.

**PREMIUM DUE DATE** means the Initial Effective Date of this Policy and the fifteenth day of each subsequent Policy Month.

**SPECIAL RISK LIMITATION** means any modification of the terms or conditions of this Policy.

**SPECIFIC BENEFIT** means a benefit that is provided by Us when Eligible Losses for a Participant exceed the Specific Deductible shown in the Declarations.

**SPECIFIC DEDUCTIBLE** means the amount You must satisfy before any Specific Benefit is due. The Specific Deductible is shown in the Declarations.

**SPECIFIC PAYABLE PERCENTAGE** means the percent of Eligible Losses in excess of the Specific Deductible that are payable to You. The Specific Payable Percentage is shown in the Declarations.

**STOP LOSS INSURANCE** means the coverage defined by this Policy.

## SECTION 3 – BENEFITS

Benefits under this Policy will only be paid by Us based on Eligible Losses which exceed Policy Deductibles. The Specific Benefit Schedule, Aggregate Benefit Schedule and Policy Term are shown in the Declarations.

### A. SPECIFIC BENEFIT

We will pay Specific Benefits in accordance with the terms of settlement mutually agreed upon by You and Us based on the terms of this Policy.

The Specific Benefit payable will equal the Eligible Losses for any Participant less A, less B, where:

A = The Specific Deductible

B = Amounts later recovered or recoverable under any provision of this Policy or the Covered Underlying Plan,

Multiplied by the Specific Payable Percentage.

We will pay Specific Benefits as they become due, subject to terms and conditions of this Policy.

In no event will the Specific Benefit exceed the Maximum Specific Benefit.

### B. AGGREGATE BENEFIT

We will pay Aggregate Benefits in accordance with the terms of settlement mutually agreed upon by You and Us based on the terms of this Policy.

The Aggregate Benefit payable will equal Eligible Losses less A, less B, less C, where:

A = The Annual Aggregate Deductible for the Policy Term

B = Amounts in excess of the Maximum Aggregate Eligible Loss per Participant

C = Amounts later recovered or recoverable under any provision of this Policy or the Covered Underlying Plan,

Multiplied by the Aggregate Payable Percentage.

We will pay Aggregate Benefits at the end of the Policy Term, subject to the terms and conditions of this Policy.

In no event will Aggregate Benefits exceed the Maximum Aggregate Benefit for the Policy Term as shown in the Declarations.

## SECTION 4 – EXCLUSIONS AND LIMITATIONS

No Deductible of this Policy will be satisfied and no benefit of this Policy will be paid for:

1. COVERED UNDERLYING PLAN: Any expense Incurred:
   a. When the Covered Underlying Plan is not in effect;
   b. By a person who is not a Participant when the expense is Incurred;
   c. That You are not required to pay under the terms of the Covered Underlying Plan; or
   d. Prior to the beginning Incurred date of the Covered Loss Basis as shown in the Declarations.

2. OTHER COVERAGE: Any expenses:
   a. For Participants with coverage under any other plan which, when benefits under the Covered Underlying Plan are combined with benefits payable under any other plan, exceed 100% of the Participant's actual expenses.
   b. That are eligible losses under any other Stop Loss policy.

3. ADMINISTRATIVE COSTS: Any expenses related to;
   a. Administrative costs, including but not limited to, administrative costs for payments, PPO access fees, prescription drug administration fees, and case management fees in excess of the usual and customary charge;
   b. Capitation fees;
   c. Litigation; or
   d. Extra contractual damages, compensatory damages, or punitive damages.

4. MILITARY AND WAR RELATED CONDITIONS: Any amount Paid by the Policyholder for Eligible Claims Expenses which arise out of or are caused by
   a. War or an act of war, whether declared or undeclared including acts of armed invasion.
   b. Service in the armed forces of any country, including the air force, army, coast guard, marines, national guard, navy, or civilian forces or units auxiliary thereto.
   c. This exclusion does not include acts of terrorism.

## SECTION 5 – CLAIM ADMINISTRATOR

You must retain a Claim Administrator at all times.  All Claim Administrators must be approved by Us.

We will only reimburse You for Eligible Losses Paid by an approved Claim Administrator.

We will not be responsible for any compensation due the Claim Administrator for functions performed by the Claim Administrator for You.

This Policy will not be deemed to make Us a party to any agreement between You and any administrator.

## SECTION 6 – CLAIM PROVISIONS

A. NOTICE OF CLAIM

You or the Claim Administrator must notify Us within 30 days of the date You or the Claim Administrator is notified that a Participant has Incurred Eligible Losses:
1. in excess of 50% of the Specific Deductible;
2. in excess of $100,000.

B. PROOF OF LOSS

Upon presentation of satisfactory proof of loss, You represent that all monies necessary to pay for services and supplies have been Paid to the Participant or respective providers of medical services or supplies.

C. DISPUTED DENIALS
Provided You or the Claim Administrator notifies Us within 30 days following the date a Participant appeals a plan's denial to an accredited Independent Review Organization (IRO) and provided the IRO overturns that denial, the date of denial (rather than the actual Paid date) will be used to determine whether such Loss is an Eligible Loss under this Policy.

## SECTION 7 – MATERIAL CHANGES
We reserve the right to approve any Material Change. You or the Claim Administrator must notify Us of any Material Change in writing prior to the date such Material Change becomes effective.

Upon receiving notice of a Material Change, We reserve the right to:
1. Accept the Material Change without revising the Premium Rates and/or other terms and conditions of this Policy;
2. Accept the Material Change and revise the Premium Rates and/or other terms and conditions of this Policy; or
3. Not accept the Material Change and pay benefits under this Policy as if the Material Change had not occurred.

If We accept the Material Change, our written acceptance will state the date Our approval becomes effective

Payment of any benefits under this Policy based on a Material Change is subject to Your written acceptance of any necessary adjustment to the Stop Loss premium or other terms and conditions.

## SECTION 8 – TERMINATION AND RENEWAL
A. TERMINATION
This Policy and all coverage under this Policy will terminate at 11:59 PM Local Time on the earliest of the following dates:
1. The end of the last period for which premiums were paid;
2. The Premium Due Date next following receipt by Us of written notice from You that this Policy is to be terminated;
3. The end of any Policy Term following 45 days prior written notice to You of termination;
4. The Premium Due Date following 45 days prior written notice to You that We are planning to terminate this Policy because:
   a. there are fewer than 50 Covered Units;
   b. the number of Covered Units has changed by 10%;
5. The date the Covered Underlying Plan ends;
6. The date of cancellation of the administrative agreement between You and the Claim Administrator, unless You have selected another administrator prior to such cancellation and We have consented to Your selection in writing; or
7. On any date mutually agreed to by You and Us.

If the Policy terminates prior to the end of the Policy Term, the Covered Loss Basis of this Policy will be limited to Covered Services Incurred and Paid prior to 11:59 PM Local Time on the day this Policy terminates. However, if this Policy terminates prior to the end of the Policy Term, the Aggregate Benefit, if any, will not be payable.

B. RENEWAL
Unless terminated during or prior to the end of the Policy Term, this Policy may be renewed at the end of the Policy Term. At renewal, We reserve the right to revise the terms and conditions including rates and Deductibles via written notice to You. We will give You 45 days prior written notice of any change in any rate or benefit.

Renewal is subject to Your written acceptance of the terms and conditions that apply to the renewal prior to the beginning of the subsequent Policy Term.

## SECTION 9 – PREMIUMS

A. AMOUNT OF PREMIUMS

Premium is calculated based upon the number of Covered Units reported in any given Policy Month. The number of Covered Units for each Policy Month will be determined in accordance with the definition of Covered Unit. The estimated number of Covered Units for the first Policy Month shown in the Declarations is based on the estimated initial enrollment.

B. CHANGES IN PREMIUM RATES

We reserve the right to change any rate used in determining the monthly premium. The change may occur on one of the following dates:

1. On any Premium Due Date, if the number of Covered Units changes by more than 10% of the number reported on the later of:
   a. the Initial Effective Date of this Policy; or
   b. the most recent Policy Anniversary;
2. Retroactively to the beginning of the Policy Term, if payments for Covered Services are not being made in accordance with the terms and conditions of the Covered Underlying Plan;
3. On the date of any Material Change approved by Us;
4. The date of an administrative agreement between You and a new administrator is effective provided We provide written consent to Your selection;
5. On any Policy Anniversary; or
6. At the end of any Policy Term.

We will give You 60 days prior written notice of any change in any rate used in determining the monthly premium.

C. PAYMENT OF PREMIUMS

All premiums are due on the applicable Premium Due Date. Each premium is payable to Us by You on or before the Premium Due Date. The payment of each premium as it becomes due will maintain this Policy in force through the date immediately preceding the next Premium Due Date.

D. GRACE PERIOD

A Grace Period of 31 days will be allowed for the payment of each premium after the first premium. If a premium otherwise due is not paid during the Grace Period, this Policy will automatically terminate at 11:59 PM Local Time on the last day of the Policy Month for which premiums were last paid, without further notice to You. Our liability will be limited to Covered Services that are Paid by You prior to 11:59 PM Local Time on last day of the Policy Month for which premiums were last paid.

E. PREMIUM ADJUSTMENTS

1. Policy Termination

Any retrospective request by You for a premium adjustment due to a misstatement of Covered Units must be made within 2 months following the termination of the Policy. Such requests must be in writing and accompanied by evidence that an adjustment should be made. Any premium adjustment is limited to the number of Policy Months in the prior Policy Term.

2. Policy Renewal

Any retrospective request by You for a premium adjustment due to a misstatement of Covered Units must be made within 12 months following the termination of the Policy Term. Such requests must be in writing and accompanied by evidence that an adjustment should be made. Any premium adjustment is limited to the number of Policy Months in the last Policy Term.

## SECTION 10 - GENERAL PROVISIONS

### A. HOLD HARMLESS

1. You agree to hold Us harmless from any legal expenses incurred or judgments awarded arising out of any dispute involving a current or former Participant, to the extent such legal expenses or judgments were not incurred as a result of Our intentional negligence or intentional wrongful acts.

   If We are notified that We have been named, or are likely to be named, as a defendant in any action involving a current or former Participant. We will give You written notice of the dispute within a reasonable time. We will provide probative material to You upon Your written request. We will cooperate with You in matters pertaining to the dispute. However, such cooperation will not waive Our right to solely defend or settle any such action in any manner We deem prudent.

2. We agree to hold You harmless from any legal expenses incurred or judgments awarded or arising out of any breach of this Policy by Us arising out of Our negligence or wrongful acts to the extent such legal expenses or judgments(s) were not incurred as a result of Your intentional negligence or intentional wrongful acts.

   If You are notified that You have been named or are likely to be named as a defendant in any action involving a current or former Participant, You will give Us written notice of the dispute within a reasonable time and will make all probative material available to Us upon Our written request. You will cooperate with Us in matters pertaining to the dispute. However, such cooperation will not waive Your right to solely defend or settle any such action in any manner You deem prudent.

### B. TAXES

You agree to hold Us harmless from any state premium taxes incurred with respect to funds paid to or by You through the Covered Underlying Plan. If any state premium tax is assessed against Us with respect to such funds, You must reimburse Us for the amount of the state premium tax liability including any interest, penalty and costs incurred by Us as a result of the assessment. Taxes incurred with respect to premiums paid for this Policy will be Our responsibility.

### C. NOTICE OF OBJECTION

Any objection, notice of legal action, or complaint received for a Covered Service processed by You or the Claim Administrator for which a benefit appears payable under this Policy must be brought to the immediate attention of Our claims department.

### D. POLICY NON-PARTICIPATING

This Policy is non-participating and does not share Our surplus earnings.

### E. OFFSET

We have the right to offset any benefits payable to You under this Policy against premiums due and unpaid by You, but this right will not prevent the termination of this Policy for non-payment of premium.

### F. RECOVERY

You must prosecute any and all valid claims that You may have against third parties arising out of any occurrence resulting in a payment for Eligible Losses and must account to Us any amounts recovered.

If You do not prosecute any and all valid claims that You may have against third parties arising out of any payment for Eligible Losses within a reasonable period of time, We will subrogate the recovery of such claims and/or require You to assign Us the right to prosecute on behalf of You.

G. REIMBURSEMENT

Any amounts that You recover from a third party for which benefits were paid by Us under this Policy must be repaid to Us. The full amount of any and all such funds recovered must be returned to Us first before any Deductible under this Policy will be satisfied. No part of any Covered Services which are Paid by You and for which You have been reimbursed by a third party, or which You have used to satisfy any deductible under another policy, will be considered Eligible Expenses under this Policy. This provision will survive the termination of this Policy.

H. WAIVER

Our failure to insist upon You or Your or Claim Administrator's strict compliance with any requirement or condition of this Policy at any time or under any circumstance shall not constitute a waiver of any such requirement or condition by Us at any time under the same or different circumstances.

I. ARBITRATION

In the event of a dispute between the parties to this Policy as to whether coverage is provided under this Policy for a claim made by or against You, both parties may, by mutual consent, agree in writing to arbitration of the disagreement.

If both parties agree to arbitrate, each party will select an arbitrator. The two arbitrators will select a third arbitrator. If they cannot agree within 30 days upon a third arbitrator, both parties must request that selection of a third arbitrator be made by a judge of a court having jurisdiction.

Arbitration will take place in Policyholder's last known address in the State of Alaska, unless the parties mutually agree otherwise.

Local rules of law as to procedure and evidence will apply.

Each party will:
1. Pay the expenses it incurs; and
2. Bear the expenses of the third arbitrator equally.


## SECTION 11 – RECORDS AND REPORTS

A. CLERICAL ERROR

Clerical error, whether by You or by Us, will not invalidate coverage otherwise validly in force nor continue coverage otherwise validly terminated.

B. AUDITS

We reserve the right to inspect and audit all of Your and Claim Administrator's records and procedures that pertain to this Policy prior to or after processing a claim for benefits. We also reserve the right to require proof that payment of Eligible Losses has been made to the Participant or the provider of services that are the basis for any claim by You under this Policy.

C. UNDERWRITING INFORMATION

We rely on the underwriting information provided:
1. To issue this Policy;
2. To accept a person as a Participant, and
3. To renew this Policy.

Should additional information become known after one of these events that affect the rates, deductibles, or the terms and conditions of this Policy, We reserve the right to revise the rates, deductibles, and the terms and conditions of this Policy retroactive to the Initial Effective Date or Policy Anniversary Date of the Policy Term by providing written notice to You.

**SECTION 12 – LIABILITY AND INDEMNIFICATION**

A.  LIABILITY

We will have neither the right nor the obligation under this Policy to directly pay any Participant or provider of Covered Services for any benefit that You have agreed to provide through the terms of the Covered Underlying Plan.  Our sole liability under this Policy is to You.

B.  INDEMNIFICATION

To the extent We suffer any liability, loss or expense due to a misstatement or failure to provide any requested information, or failure to provide any additional information requested by Us on a Participant or a person for whom We have requested, You agree to indemnify Us up to the amount of such liability, loss or expense, and all costs associated with such liability, loss or expense.

To the extent You suffer any liability, loss or expense due to Our breach of this Policy or due to Our negligence or wrongful acts, We agree to indemnify You up to the amount of such liability, loss or expense, and all costs associated with such liability, loss or expense.

## SECTION 13 – ENTIRE CONTRACT, CHANGES

The entire contract consists of:

1.  The pages of this Policy including any amendments, endorsements or riders;
2.  The Application;
3.  Submitted loss information; and
4.  Attached documents necessary for the administration of this Policy.

This Policy or coverage under this Policy may be amended at any time by mutual consent between the parties.  No change in this Policy will be valid unless it is approved in writing by one of Our executive officers and delivered to You for attachment to this Policy.  This approval must be shown in or attached to this Policy.  No Agent or Claim Administrator has authority to change this Policy or to waive any of its provisions.

## SECTION 14 – INCONTESTABLE CLAUSE

In the absence of fraud, any statement made by You is a representation and not a warranty.  No statement made by You affecting this Policy will be used to deny a claim or to deny the validity of this Policy unless contained in a written instrument signed by You with a copy of the written instrument having been given to You.

## SECTION 15 – LEGAL ACTIONS

No action at law or in equity may be brought to recover under this Policy until 60 days after written proof of loss has been furnished to Us.  No such action may be brought more than three years after the time within which proof of loss is required to be furnished.

## SECTION 16 – INSOLVENCY

The insolvency, bankruptcy, financial impairment, receivership, voluntary plan of arrangement with creditors, or dissolution for You will not impose upon Us any liability other than the liability defined in this Policy.

## SECTION 17 – ASSIGNMENT

Your rights and benefits under this Policy cannot be assigned.

**SPECIFIC ADVANCE FUNDING RIDER**

To be attached to and made part of Policy AK 201347 issued to Ravn Air Group as Policyholder.

Effective January 1, 2020 it is hereby agreed:

Only those Covered Services exceeding the Specific Deductible are eligible for Specific Advance Funding.

Specific Advance Funding is available if all of the following conditions have been met:
1. The Specific Deductible has been satisfied.
2. Covered Services submitted for an advance must be fully processed by the Claim Administrator and ready for payment according to the terms of the Covered Underlying Plan.
3. Covered Services must be Incurred during the Policy Term and Paid by the Administrator within 30 days but no later than the Specific Covered Loss Basis stated on the Declarations. Any request received after that date is not eligible for Advanced Funding.
4. The Administrator must bill Us monthly for the Covered Services for which funds were advanced but no later than 30 days after Specific Covered Loss Basis stated on the Declarations.
5. We will remit payment for approved claims to the Administrator within 30 days of receipt of the Advanced Funding request.

All other terms and provisions of the Policy will apply.

LifeWise Assurance Company

by

Michael L. Krutt
President
LifeWise Assurance Company

LifeWise Assurance Company
PO Box 2272
Seattle, WA 98111-2272

Case 20-10755-BLS   Doc 87   Filed 04/20/20   Page 148 of 187

LifeWise
Assurance Company

## APPLICATION FOR STOP LOSS INSURANCE

Correct Legal Name of Applicant: Ravn Air Group

Address: 4700 OLD INTERNATIONAL AIRPORT RD     ANCHORAGE     AK     99502
(Street)     (City)     (State)   (ZIP)

applies to the LifeWise Assurance Company for the coverage(s) indicated in Section I.

| SECTION I – Coverage |
|---|
| ☒  Specific Stop Loss Insurance |
| ☒  Aggregate Stop Loss Insurance* |

*required in WA

| SECTION II – Claim Administrator |
|---|

Full Legal Name of Claim Administrator: Premera Blue Cross

Address: 7001 220th Street SW     Mountlake Terrace     WA     98043
(Street)     (City)     (State)   (ZIP)

| SECTION III – Proposed Effective Date |
|---|

Proposed Policy Effective Date:   AM 02 – Effective January 1, 2020, (subject to LifeWise Assurance Company approval)

Deposit of $_____ is submitted to apply to the first premium due under the policy if issued.
(Minimum 80% of the first month's premium). If a policy is not issued, the premium deposit will be refunded in full.

| SECTION IV – State Requirements |
|---|

**State of Alaska**
The minimum attachment point for large employers (51 + lives) is 110% of expected claims.
The permissible specific deductible cannot be less than $10,000 per covered person.

**State of Oregon**
The minimum aggregate attachment point (or deductible) may not be less than 120% of anticipated claims.
The minimum specific attachment point (or deductible) is $10,000 per covered person (or unit).

**State of Washington**
The aggregate attachment point may not be less than 120% of expected claims.
The individual attaching point or retention may not be less than 5% of the expected claims or $100,000, whichever is less.

If LifeWise Assurance Company approves this application, a policy will be issued. No insurance will be in force until approved by LifeWise Assurance Company. The undersigned represents that the statements contained in this application are true and complete to the best of his or her knowledge and belief, and understands that they form the basis for LifeWise Assurance Company's approval of the requested stop loss insurance.

Signature of Witness, if required:               Signature of Officer (Applicant):

                                                Signature on file on original application

Agency: _____             Name of Officer: _____
              Please Print                                    Please Print
Producer's Name: _____             Title: _____
              Please Print                                    Please Print
Date: _____                         Date: _____

**SECTION V – Fraud Statements**

Alaska and Oregon:  Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance may be guilty of a crime and may be subject to civil fines and criminal penalties.

Washington:  It is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines, and denial of insurance benefits.

**Exhibit C: Evidence of Debtor in Possession Bank Accounts**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| RAVN AIR GROUP, INC. et al.,[1] | Case No. 20-10755(___) |
| Debtors. | (Joint Administration Requested) |

**MOTION OF THE DEBTORS FOR INTERIM AND FINAL ORDERS (I) APPROVING CONTINUED USE OF THE DEBTORS' CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, AND BUSINESS FORMS; (II) GRANTING THE DEBTORS AUTHORITY TO OPEN AND CLOSE BANK ACCOUNTS; AND (III) AUTHORIZING BANKS TO HONOR CERTAIN PREPETITION TRANSFERS**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") move this Court pursuant to sections 345, 363, and 503(b)(1) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") for the entry of interim and final orders, in substantially the forms attached hereto as Exhibit B and Exhibit C, respectively, (i) approving the continued use of the current cash management system (the "Cash Management System"), existing bank accounts (collectively the "Bank Accounts" and individually, a "Bank Account"), and business forms; (ii) authorizing, but not directing, the Debtors to open and close bank accounts; and (iii) authorizing, but not directing, all banks ("Banks") participating in the current Cash Management System to honor certain prepetition transfers. In support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: Ravn Air Group, Inc. (3047), Ravn Air Group Holdings, LLC (5356), JJM, Inc. (4858), HoTH, Inc. (9957), Peninsula Aviation Services, Inc. (6859), Corvus Airlines, Inc. (7666), Frontier Flying Service, Inc. (8091), and Hageland Aviation Services, Inc. (2754). The notice address for all of the Debtors is 4700 Old International Airport Road, Anchorage, AK 99502.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. sections

157 and 1334 and the *Amended Standing Order of Reference* of the United States District Court

for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28

U.S.C. section 157(b).  The Debtors confirm their consent pursuant to Local Rule 9013-1(f) to the

entry of a final order by the Court in connection with this Motion to the extent that it is later

determined that the Court, absent consent of the parties, cannot enter final orders or judgments in

connection herewith consistent with Article III of the United States Constitution.

2.     Venue for this matter is proper in this district pursuant to 28 U.S.C. sections 1408

and 1409.

3.     The  bases  for  the  relief  requested  herein  are  sections  105(a),  345,  363,  and

503(b)(1) of the Bankruptcy Code, Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules")

6003 and 6004, and Local Rule 9013-1(m).

## BACKGROUND[2]

### *General Background*

4.     On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions for

relief under chapter 11 of the Bankruptcy Code.

5.     The Debtors continue to operate their businesses and manage their properties as

debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee,

examiner, or official committee of unsecured creditors has been appointed in the Debtors' cases.

---

[2]     The facts and circumstances supporting this Motion are set forth in the *Declaration of John Mannion in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith and incorporated by reference herein.  Capitalized terms used but not defined herein have the meanings ascribed to them in the First Day Declaration.

2

6.      Simultaneously with the filing of this Motion, the Debtors have sought an order of joint administration pursuant to Bankruptcy Rule 1015(b) that would provide for the joint administration of these cases and for consolidation for procedural purposes only.

7.      Additional information regarding the Debtors' businesses and the circumstances leading to the commencement of the Chapter 11 Cases is set forth in the First Day Declaration.

***The Debtors' Current Cash Management System***

8.      As of the Petition Date, the Debtors maintain a cash management and disbursement system in the ordinary course of their operations (the "Cash Management System").

9.      Attached hereto as Exhibit A is a schedule of the Debtors' Bank Accounts in existence as of the Petition Date.  A description of the Debtors' Bank Accounts, with the last four digits of each account number in parentheses, is set forth below.

A.      First National Bank of Alaska

10.     The Debtors currently have thirteen (13) open Bank Accounts with the First National Bank of Alaska ("FNBA"), of which five (5) are inactive.

11.     The Debtors' main holding Bank Account, held in the name of Debtor Corvus Airlines, Inc. ("Corvus") (9216), is the Bank Account into which most of the other Bank Accounts are swept on a daily basis.

12.     The Debtors have two payroll Bank Accounts at FNBA: one Bank Account in the name of Corvus (5870), which processes the payroll for Corvus, and one Bank Account in the name of Debtor Hageland Aviation Services, Inc. ("Hageland") (1044), which processes the payroll for Hageland.

13.     The Debtors have four other Bank Accounts at FNBA in the name of Corvus.  The first Bank Account (6513) is used for collecting all non-credit card deposits.  The second Bank

Account (9126) is for credit card deposits, except for a small amount of credit card deposits collected through a Wells Fargo Bank Account described below.  The third Bank Account (2343) is used for processing debit card payments.  The fourth Bank Account (3002) is used for processing accounts payable and miscellaneous payments for the Debtors.

14.     The Debtors have one other Bank Account at FBNA, in the name of Debtor HoTH, Inc. ("HoTH") (6133), where PASI mail deposits are posted.

15.     Five Bank Accounts at FNBA are inactive, although two of these Bank Accounts carry minimal balances: (i) two Bank Accounts in the name of Hageland (9213 and 2457), with a combined balance of less than $3,000; (ii) one Bank Account in the name of Debtor JJM, Inc. ("JJM") (7297), which had been used for processing accounts payable, with no balance; (iii) one Bank Account in the name of Ravn Air Group (8213), which had been used for payments to BNP Paribas, as Prepetition Administrative Agent, with no balance; and (iv) one Bank Account in the name of PASI (9617), which had been used for PASI payroll, with no balance.

B.     Wells Fargo

16.     The Debtors maintain two Bank Accounts at Wells Fargo Bank, N.A. ("Wells Fargo"), both in the name of HoTH, Inc.  One Bank Account (4725) is used to collect some amounts from credit card processing as well as funding Wells Fargo Invoice Manager, through which the Debtors' accounts payable are processed.

17.     The second Bank Account (3665) at Wells Fargo is used to fund a separate payroll for the Debtors' executives.

C.    US Bank

18.    The Debtors maintain two Bank Accounts at US Bank, N.A. ("U.S. Bank").  The first Bank Account (7782), in the name of Corvus, is used as the Airline Clearing House account for Corvus and Hageland.

19.    The second Bank Account (2945) at US Bank, in the name of Debtor Peninsula Aviation Services, Inc. ("PASI"), is used as the Airline Clearing House account for PASI.

D.    Postpetition Rationalization

20.    Because the Debtors have suspended their operations in connection with the COVID-19-related disruptions, they anticipate that it may become necessary and appropriate to consolidate and close most of the Bank Accounts in the coming weeks.  However, doing so prematurely would cause receipts to be denied or deferred, payments (including those payments that the Debtors seek authorization to make by the First Day Motions) would be rendered untimely because of administrative delays, and the efficiency and efficacy of the Debtors' efforts would be affected.  Accordingly, while the Debtors will be rationalizing their cash management system, requiring them to do so immediately will cause unnecessary burden on the estate and put at risk the timely collection of cash and the timely payment of important obligations, including employee payrolls.

E.    DIP Account

21.    The DIP Credit Agreement and the Prepetition Secured Lenders require that cash collateral and proceeds from the DIP Facility (as such term is defined in the Financing Motion) be held in Bank Accounts subject to a deposit account control agreement ("DACA").  The Debtors and the Prepetition Secured Lenders have a DACA in place with certain Bank Accounts at FNBA, and the DIP Lenders (as such term is defined in the Financing Motion) and Prepetition Secured

Lenders have required that the Debtors use the FNBA Bank Accounts to hold proceeds from the DIP Facility. The Debtors understand, however, that FNBA is not an authorized depository in the District of Delaware and Region 3 of the United States Trustee Program.

22.     Although Wells Fargo is an authorized depository, and the Debtors have Bank Accounts at Wells Fargo, those Bank Accounts are not currently DACA accounts. Because the negotiations of the DIP Financing continued until the eve of the filing of these Chapter 11 Cases and the DIP Credit Agreement was not executed until after bank hours, the Debtors did not have sufficient time prior to the filing of these Chapter 11 Cases to negotiate a DACA with Wells Fargo. It is the Debtors' intention to negotiate a DACA with Wells Fargo or another authorized depository before the final hearing on this Motion. By this Motion, the Debtors seek an Interim Order permitting the Debtors to continue to use their Bank Accounts at FNBA until they are able to negotiate a DACA with an authorized depository in the District of Delaware and Region 3 of the United States Trustee Program.

F.      Cash Management System Fees

23.     From time to time, and in the ordinary course of business, the Debtors incur obligations for the maintenance of the Cash Management System. These obligations primarily consist of (a) amounts owed to FNBA, Wells Fargo and US Bank for the maintenance of and services related to the Bank Accounts ("Bank Fees"), together with other fees and obligations relating to the maintenance of the Cash Management System, including the Debtors' invoice processing system provided by Wells Fargo (together with the Bank Fees, the "Cash Management Fees"). The Cash Management Fees average approximately $17,411 per month. The Debtors estimate that there are no accrued, unpaid, and undisputed prepetition amounts outstanding as of

the date hereof on account of the Cash Management Fees ("Cash Management Claims"), but the Debtors seek authorization to pay any Cash Management Claims up to $17,411.

G.    Business Forms

24.    The Debtors use various business forms, such as checks, invoices, letterhead, and other business and marketing materials in the ordinary course of their business ("Business Forms").  Because the Business Forms were used prepetition, they do not reference the Debtors' current status as debtors in possession.  Requiring the Debtors to change existing Business Forms would unnecessarily distract the Debtors from their restructuring efforts and impose needless expenses on the estate.  Thus, the Debtors request that they be authorized to use their existing Business Forms without placing a "Debtor-In-Possession" legend on each.

**RELIEF REQUESTED**

25.    Through this Motion, the Debtors hereby seek entry of Interim and Final Orders, substantially in the forms attached hereto as Exhibit B and Exhibit C, (i) approving the Debtors' use of their current Cash Management System (as described above), existing bank accounts, and business forms and waiving certain requirements set forth in the operating guidelines for debtors in possession to facilitate the administration of chapter 11 case established by the United States Trustee (the "UST Guidelines"); (ii) authorizing, but not directing, the Debtors to open and close bank accounts; (iii) authorizing, but not directing, all Banks to honor certain prepetition transfers; and (iv) authorizing, but not directing, the Debtors to use their Bank Accounts at FNBA to hold all proceeds from the DIP Facility until such time as either (a) FNBA has met the requirements of the Office of the United States Trustee to be an authorized depository, or (b) the Debtors and DIP Lenders have negotiated a DACA with Wells Fargo so that Cash Collateral and the proceeds from the DIP Facility may be held in Bank Accounts at Wells Fargo.

**BASIS FOR RELIEF**

26.     The Debtors' ability to continue to use their Cash Management System in the ordinary course of business is essential to their operations.  If forced to abandon or modify their Cash Management System, the Debtors would have to significantly alter their business operations. The Cash Management System benefits the Debtors by enabling them to: (a) control and monitor corporate funds; (b) ensure cash availability; and (c) reduce costs and administrative expenses by facilitating the movement of funds.  For the reasons set forth herein, the Debtor submit that it is appropriate for the Court to grant the relief requested by this Motion.

A.     The Debtors' Proposed Modifications to their Cash Management System Should be Approved

27.     The Debtors submit the relief requested herein is fully appropriate and supported by ample authority in this and other courts.   Indeed, a debtor's continued use of its cash management system has been recognized as fully consistent with section 363(c)(1) of the Bankruptcy Code, which allows a debtor in possession to use property of the estate in the ordinary course of business.  *See Charter Co. v Prudential Ins. Co. of Am. (In re Charter Co.)*, 778 F.2d 617, 620-21 (11th Cir. 1985) (affirming district court's dismissal of lender's attempted interlocutory appeal of an order in which the bankruptcy court authorized debtor to "continue to consolidate the management of their cash as has been usual and customary in the past, and to transfer monies from affiliated entity to entity, including operating entities that are not debtors herein") (citation omitted).

28.     The purpose of section 363(c)(1) is to provide flexibility to a debtor in possession to engage in the ordinary transactions necessary to operate its business without unneeded oversight by its creditors or the Court.  *See e.g. In re Roth Am., Inc.,* 975 F.2d 949, 952 (3d Cir. 1992) ("[t]he framework of section 363 is designed to allow a trustee (or debtor in possession) the flexibility to

8

engage in ordinary transactions without unnecessary creditor and bankruptcy court oversight, while protecting creditors by giving them an opportunity to be heard when transactions are not ordinary"); *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 796 (Bankr. D. Del. 2007).

29.     In addition, the requirement to maintain all accounts separately would decentralize the Debtors' Cash Management System.  Courts in this District have noted that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992), *aff'd in part and rev'd in part*, 977 F.2d 1039 (3d Cir. 1993); *see, e.g., In re Malibu Lighting Corp.*, Case No. 15-12080 (KG) (Bankr. D. Del. Nov. 4, 2015); *In re FCC Holdings, Inc.*, Case No. 14-11987 (CSS) (Bankr. D. Del. Sept. 22, 2014).  The Third Circuit has agreed, emphasizing that a requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061; *see also In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) (finding that a cash management system allows the debtor "to administer more efficiently and effectively its financial operations and assets").

30.     Although the Debtors maintain the Bank Accounts as part of an established Cash Management System, the UST Guidelines include certain requirements that, if not waived, would require the Debtors (as debtors in possession) to take certain actions with respect to prepetition Bank Accounts that are designed to draw a clear line of demarcation between prepetition and postpetition transactions and operations, and prevent the inadvertent postpetition payment of prepetition claims.  For the reasons set forth below, the Debtors submit that a waiver of these requirements is warranted.

31.     Under the UST Guidelines, debtors in possession must, among other things, close prepetition bank accounts and open new "debtor in possession" operating, payroll, and tax accounts at an authorized depository.  In addition, the UST Guidelines prohibit disbursements other than by numbered checks, which checks must bear the applicable debtor's case name and case number, a "debtor in possession" designation and an indication of the account type.  Under the circumstances, the Debtors respectfully represent that waiving compliance with the UST Guidelines and authorizing continued use of the Bank Accounts and the Business Forms is appropriate and in the best interests of their estates.

32.     Based on the foregoing, the Debtors submit that the immediate continuation of their Cash Management System is in the best interest of their estates and all parties in interest and is permitted under section 363(c)(1) of the Bankruptcy Code.

B.     The Debtors Should be Authorized to Continue to Use their Existing Business Forms

33.     As described above, in the ordinary course of business, the Debtors use numerous varieties of Business Forms.  Because parties doing business with the Debtors undoubtedly will be aware of the Debtors' status as debtors in possession, changing their Business Forms would be unnecessary and unduly burdensome.  The Debtors, therefore, request authority to use their existing Business Forms pursuant to Local Rule 2015-2(a).

34.     Local Rule 2015-2(a) provides:

> Where the debtor uses pre-printed checks, upon motion of the debtor, the Court may, without notice and hearing, permit the debtor to use its existing checks without the designation "Debtor-in-Possession" and use its existing bank accounts.  However, once the debtor's existing checks have been used, the debtor shall, when reordering checks, require the designation "Debtor-in-Possession" and the corresponding bankruptcy number on all such checks.

> Del. Bankr. L.R. 2015-2(a).

10

35.     To minimize expenses to their estates, the Debtors seek authorization to continue using the Business Forms existing immediately prior to the Petition Date, without reference to the Debtors' status as debtors in possession.   Modifying existing Business Forms would be burdensome and expensive and would confer no corresponding benefit upon those dealing with the Debtors, most of whom, as noted above, will be aware of the commencement of these Chapter 11 Cases, and who will receive formal notice of the same.  This burden is particularly acute where, as here, the Debtors will likely be in bankruptcy for a relatively short period of time.  The Debtors therefore request authorization to use their existing Business Forms without adding a "Debtor-in-Possession" or similar legend.

36.     Similar relief has been granted by this Court in other chapter 11 cases.  *See, e.g.*, *In re Emerge Energy Servs. LP*, Case No. 19-11563 (KBO) [D.I. 187] (Bankr. D. Del. Aug. 13, 2019); *In re THG Holdings LLC*, Case No. 19-11689 (JTD) [D.I. 46] (Bankr. D. Del. July 31, 2019); *In re Insys Therapeutics, Inc.*, Case No. 19-11292 (KG) [D.I. 46] (Bankr. D. Del. June 11, 2019);  *In re Hosp. Acquisition LLC*, Case No. 19-10998 (BLS) [D.I. 43] (Bankr. D. Del. May 8, 2019);  *In re Southcross Energy Partners, L.P.*, Case No. 19-10702 (MFW) [D.I. 58] (Bankr. D. Del. Apr. 2, 2019);  *In re CTI Foods, LLC*, Case No. 19-10497 (CSS) [D.I. 73] (Bankr. D. Del. Mar. 12, 2019); *In re 1515-GEEnergy Holding Co. LLC*, Case No. 19-10303 (KJC) [D.I. 32] (Bankr. D. Del. Feb. 19, 2019); *In re Imerys Talc America, Inc.*, Case No. 19- 10289 (LSS) [D.I. 55] (Bankr. D. Del. Feb. 14, 2019).[3]

---

[3]     The referenced orders are voluminous in nature and are not attached to this Motion. However, in light of the requirements of Local Rule 7007-2(a)(vii), undersigned counsel has retained copies of each order and will make them available to the Court, if requested, or to any party that requests them.

146484.01600/123050704v.4

C.    The Debtors Should be Authorized to Open and Close Any Bank Accounts as They Deem Necessary and Appropriate

35.    To the extent they deem it necessary and appropriate, the Debtors hereby seek authority to close bank accounts or open new debtor in possession accounts following notice to the U.S. Trustee and any committee appointed in these chapter 11 cases.  Similar relief as that requested by the Debtors herein, has been granted to other chapter 11 debtors by courts within this District.  *See*, *e.g. In re Haggen Holdings, LLC*, Case No. 15-11784 (KG) (Bankr. D. Del Sept. 10, 2015); *In re FCC Holdings, Inc.*, Case No. 14-11987 (CSS) (Bankr. D. Del. Sept. 22, 2014); *In re Appleseed's Intermediate Holdings LLC*, Case No. 11-10160 (KG) (Bankr. D. Del. Jan. 20, 2011); *In re Constar Int'l, Inc.*, Case No. 11-10109 (CSS) (Bankr. D. Del. Jan. 13, 2011).

D.    The Court Should Authorize Debtors' Banks to Honor Certain Transfers and Charge Cash Management Fees and Certain Other Amounts

37.    Contemporaneously with the filing of this Motion, the Debtors have filed various motions for authorization to pay certain prepetition obligations.  With respect to some of these obligations, prior to the Petition Date, the Debtors issued checks that have yet to clear the banking system.  With respect to other obligations, the Debtors intend to issue checks postpetition on account of such prepetition debt once the Court enters an order permitting the Debtors to take such action.  The Debtors intend to inform the Banks which prepetition checks the Banks should honor pursuant to orders of the Court authorizing such payment.

38.    As a result, the Debtors request that the Banks be authorized, but not directed, to accept and honor all representations from the Debtors regarding which checks, drafts, wires or ACH transfers (each a "Disbursement") should be honored or dishonored consistent with any order of this Court, whether such Disbursements are dated prior to, on or subsequent to the Petition Date; provided, however, that to the extent the Debtors direct the Banks to dishonor any Disbursements or the banks inadvertently dishonor any Disbursements, the Debtors may issue a replacement

12

Disbursement consistent with the orders of this Court.  Pursuant to the relief requested in this Motion, the Banks will not be liable to any party on account of (a) following the Debtors' instructions or representations as to any order of this Court, (b) honoring any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored or (c) an innocent mistake made despite implementation of reasonable item-handling procedures.  Such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise.

## **REQUEST FOR IMMEDIATE RELIEF AND WAIVER OF STAY**

39.     Pursuant to Bankruptcy Rules 6003(b) and 6004(h), the Debtors seek (i) immediate entry of an order granting the relief sought herein and (ii) a waiver of any stay of the effectiveness of such an order.  Bankruptcy Rule 6003(b) provides, in relevant part, that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding ... a motion to pay all or part of a claim that arose before the filing of the petition."  Accordingly, where the failure to grant any such requested relief would result in immediate and irreparable harm to the Debtors' estates, the Court may allow the Debtors to pay all or part of a claim that arose before the Petition Date prior to the twenty-first day following the Petition Date.  Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

40.     As set forth above, the Cash Management System is a necessary component of the Debtors' operations and preserving the value of the Debtors' assets.  The Debtors submit that ample cause exists to justify (i) the immediate entry of the Interim Order granting the relief sought

herein on an interim basis pursuant to Bankruptcy Rule 6003(b) and (ii) a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h).

## **NOTICE**

41.     Notice of this Motion shall be given to (a) the office of the United States Trustee for the District of Delaware; (b) those creditors holding the 30 largest unsecured claims against the Debtors' estates; (c) BNP Paribas, as administrative agent for the Prepetition Secured Lenders; (d) the DIP Agent; (e) the Banks; (f) the United States Attorney for the District of Delaware; and (g) the offices of the attorneys general for the states in which the Debtors operate.  As this Motion is seeking "first day" relief, within two business days of the hearing on this Motion, the Debtors will serve copies of this Motion and any order entered in respect to this Motion as required by Local Rule 9013-1(m).  The Debtors submit that no other or further notice need be provided.

WHEREFORE, the Debtors respectfully request that the Court enter an enter orders, substantially in the forms attached hereto as Exhibit B and Exhibit C, granting the relief requested herein.

Dated:  April 5, 2020
   Wilmington, Delaware

**BLANK ROME LLP**

By: */s/ Victoria A. Guilfoyle*
Victoria A. Guilfoyle (No. 5183)
Stanley B. Tarr (No. 5535)
Jose F. Bibiloni (No. 6261)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464
Email: guilfoyle@blankrome.com
   tarr@blankrome.com
   jbibiloni@blankrome.com]

-and-

**KELLER BENVENUTTI KIM LLP**
Tobias S. Keller (*pro hac vice* pending)
Jane Kim (*pro hac vice* pending)
Thomas B. Rupp (*pro hac vice* pending)

14

650 California Street, Suite 1900
San Francisco, California 94108
Tel:  (415) 496-6723
Fax:  (650) 636-9251
Email: tkeller@kbkllp.com
        jkim@kbkllp.com
        trupp@kbkllp.com

*Proposed Attorneys for Debtors
and Debtors in Possession*

15

**Exhibit A**

**(Schedule of Bank Accounts)**

| Bank Name | Last 4 Digits | Debtor | Balance |
|---|---|---|---|
| First National Bank of Alaska | 9216 | Corvus Airlines, Inc. | $980,164.01 |
| | 9126 | Corvus Airlines, Inc. | $3,964.76 |
| | 5870 | Corvus Airlines, Inc. | $0.00 |
| | 1044 | Hageland Aviation Services, Inc. | $0.00 |
| | 6513 | Corvus Airlines, Inc. | $64,462.33 |
| | 2343 | Corvus Airlines, Inc. | $7,091.16 |
| | 3002 | Corvus Airlines, Inc. | $0.00 |
| | 6133 | HoTH, Inc. | $0.00 |
| | 9213 | Hageland Aviation Services, Inc. | $137.10 |
| | 2457 | Hageland Aviation Services, Inc. | $0.00 |
| | 7297 | JJM, Inc. | $0.00 |
| | 8213 | Ravn Air Group, Inc. | $0.00 |
| | 9617 | Peninsula Aviation Services, Inc. | $0.00 |
| Wells Fargo | 4725 | HoTH, Inc. | $52,284.21 |
| | 3665 | HoTH, Inc. | $6,267.41 |
| US Bank | 7782 | Corvus Airlines, Inc. | $25,778.58 |
| | 2945 | Peninsula Aviation Services, Inc. | $0.79 |

**Exhibit B**

**(Proposed Interim Order)**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| RAVN AIR GROUP, INC. et al.,[4] | Case No. 20-10755 (____) |
| Debtors. | Jointly Administered |
| | **Re: Docket No. _____** |

## INTERIM ORDER (I) APPROVING CONTINUED USE OF THE DEBTORS' CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, AND BUSINESS FORMS; (II) GRANTING THE DEBTORS AUTHORITY TO OPEN AND CLOSE BANK ACCOUNTS; AND (III) AUTHORIZING BANKS TO HONOR CERTAIN PREPETITION TRANSFERS

Upon consideration of the *Motion of the Debtors for an Order (I) Approving Continued Use of Debtors' Cash Management System, Bank Accounts, and Business Forms; (II) Granting the Debtors' Authority to Open and Close Bank Accounts; and (III) Authorizing Banks to Honor Certain Prepetition Transfers* (the "Motion"),[5] filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"); the Court having reviewed the Motion and the First Day Declaration and having considered the statements of counsel and the evidence adduced with respect to the Motion at a hearing before the Court (the "Hearing"); and the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. sections 157 and 1334; (ii) venue is proper in this district pursuant to 28 U.S.C. sections 1408 and 1409; (iii) this is a core

---

[4]     The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows:  Ravn Air Group, Inc. (3047), Ravn Air Group Holdings, LLC (5356), JJM, Inc. (4858), HoTH, Inc. (9957), Peninsula Aviation Services, Inc. (6859), Corvus Airlines, Inc. (7666), Frontier Flying Service, Inc. (8091), and Hageland Aviation Services, Inc. (2754).  The notice address for all of the Debtors is 4700 Old International Airport Road, Anchorage, AK 99502.

[5]     Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

proceeding pursuant to 28 U.S.C. section 157(b); (iv) notice of the Motion and the Hearing was sufficient under the circumstances; and (v) good cause exists to waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent it is applicable; and after due deliberation the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, and their creditors; and good and sufficient cause having been shown;

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      The Debtors are authorized, but not directed to: (a) modify their Cash Management System in substantially the same form as described in the Motion and (b) open and close bank accounts; provided, however, that the Debtors give notice to the Office of the United States Trustee and any official committees appointed in these chapter 11 cases prior to opening or closing a bank account; provided further that such notice shall not be required with respect to any bank accounts open or closed pursuant to any documents or orders regarding debtor in possession financing.  Any new domestic bank account opened by the Debtors shall be established at an institution acceptable to the debtor in possession credit facility lenders, insured by the FDIC and organized under the laws of the United States or any State therein, or, in the case of accounts that may carry a balance exceeding the insurance limitations set thereby, is a party to a UDA with the U.S. Trustee or is willing to immediately execute such an UDA.

3.      The Debtors are authorized, but not directed, to maintain their current Cash Management System and Bank Accounts without interruption.

4.      The Debtors are authorized, but not directed, to use their Bank Accounts at FNBA to hold all Cash Collateral and proceeds from the DIP Facility until such time as either (i) FNBA has met the requirements of the Office of the United States Trustee to be an authorized depository,

or (ii) the Debtors and DIP Lenders have negotiated a DACA with Wells Fargo or another authorized depository so that all Cash Collateral and proceeds from the DIP Facility may held in Bank Accounts at Wells Fargo or another authorized depository.

5.      The Banks are authorized, but not directed, to continue to service and administer the Bank Accounts as accounts of the Debtors as debtors in possession without interruption, and to receive, process, honor and pay any and all checks, ACH transfers and other instructions for payment, drafts drawn on or electronic transfer requests made on, the Bank Accounts after the Petition Date by the holders or makers thereof or other persons or parties entitled to issue instructions with respect thereto, as the case may be.

6.      All Banks provided with notice of this Order maintaining any of the Bank Accounts shall honor any checks issued against the Bank Accounts prior to the commencement of these chapter 11 cases, except as otherwise authorized by an order of this Court and directed by the Debtors.

7.      The Debtors are not required to (a) close existing bank accounts and open new debtor- in-possession accounts or (b) establish specific bank accounts for tax payments.  The Debtors may transfer funds into, out of, and through the Cash Management System using ordinary transfer methods in accordance with the Debtors' prepetition practice.  The Debtors shall continue to maintain records with respect to all transfers of cash so that all transactions may be readily ascertained, traced, and recorded properly.

8.      The Debtors are authorized, but not directed, to pay and/or reimburse the Banks and their service providers in the ordinary course of business for any Cash Management Fees arising prior to or after the Petition Date and to pay any Cash Management Claims up to $17,411,

subject to the terms of any interim and final orders of this Court approving debtor in possession financing, including, without limitation, the budget approved therein.

9.      The Debtors are authorized, but not directed to, continue to use its existing Business Forms without alteration or change and without the designation "Debtor-in-Possession" imprinted upon them.

10.     The Debtors are authorized, but not directed, to continue using their existing Business Forms.

11.     The Banks are authorized, but not directed, to accept and honor all representations from the Debtors regarding which checks, drafts, wires or ACH transfers should be honored or dishonored consistent with any order of this Court, whether such checks, drafts, wires or ACH transfers are dated prior to, on, or subsequent to the Petition Date; provided, however, that to the extent the Debtors direct the Banks to dishonor any Disbursements or the Banks inadvertently dishonor any Disbursements, the Debtors may issue replacement Disbursements consistent with the orders of this Court.  The Banks shall not be liable to any party on account of:  (i) following the Debtors' instructions or representations as to any order of this Court; (i) honoring any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored; or (iii) an innocent mistake made despite implementation of reasonable item-handling procedures.

12.     Any Banks are further authorized to: (i) honor the Debtors' directions with respect to the opening and closing of any Bank Account and (ii) accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions, provided, in each case, that the Debtors' Banks shall not have any liability to any party for relying on such representations.

13.     For Banks at which the Debtors hold Bank Accounts that are party to an UDA with the U.S. Trustee, within fifteen (15) days of the date of entry of this Order, the Debtors shall (a)

21

contact each Bank, and (b) provide each Debtor's employer identification number for each account held at such Banks by a Debtor.

14.     The requirements of Bankruptcy Rule 6003(b) have been satisfied with respect to the payments authorized by this Order.

15.     This Order shall be immediately effective and enforceable upon its entry.  The fourteen-day stay imposed by Bankruptcy Rule 6004(h) is hereby waived.

16.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

17.     The final hearing on the Motion shall be held on _____, 2020 at __:__ __.m. (ET).  Any objections or responses to entry of the Motion on a final basis shall be filed with the Court and served upon counsel for the Debtors by _____, 2020 at 4:00 p.m. (ET).


Dated:  April __, 2020
        Wilmington, Delaware              _____
                                      United States Bankruptcy Judge

**Exhibit C**

**(Proposed Final Order)**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| RAVN AIR GROUP, INC. <u>et al.</u>,[1] | Case No. 20-10755 (___) |
| Debtors. | Jointly Administered |
| | **Re: Docket No. _____** |

## FINAL ORDER (I) APPROVING CONTINUED USE OF THE DEBTORS' CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, AND BUSINESS FORMS; (II) GRANTING THE DEBTORS AUTHORITY TO OPEN AND CLOSE BANK ACCOUNTS; AND (III) AUTHORIZING <u>BANKS TO HONOR CERTAIN PREPETITION TRANSFERS</u>

Upon consideration of the *Motion of the Debtors for an Order (I) Approving Continued Use of Debtors' Cash Management System, Bank Accounts, and Business Forms; (II) Granting the Debtors' Authority to Open and Close Bank Accounts; and (III) Authorizing Banks to Honor Certain Prepetition Transfers* (the "<u>Motion</u>"),[2] filed by the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"); the Court having reviewed the Motion and the First Day Declaration and having considered the statements of counsel and the evidence adduced with respect to the Motion at a hearing before the Court (the "<u>Hearing</u>"); having entered an interim order on the Motion (the "<u>Interim Order</u>"), the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. sections 157 and 1334; (ii) venue is proper in this district

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows:  Ravn Air Group, Inc. (3047), Ravn Air Group Holdings, LLC (5356), JJM, Inc. (4858), HoTH, Inc. (9957), Peninsula Aviation Services, Inc. (6859), Corvus Airlines, Inc. (7666), Frontier Flying Service, Inc. (8091), and Hageland Aviation Services, Inc. (2754).  The notice address for all of the Debtors is 4700 Old International Airport Road, Anchorage, AK 99502.

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

pursuant to 28 U.S.C. sections 1408 and 1409; (iii) this is a core proceeding pursuant to 28 U.S.C. section 157(b); (iv) notice of the Motion and the Hearing was sufficient under the circumstances; and (v) good cause exists to waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent it is applicable; and after due deliberation the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, and their creditors; and good and sufficient cause having been shown;

## ACCORDINGLY, IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      The Debtors are authorized, but not directed to: (a) modify their Cash Management System in substantially the same form as described in the Motion and (b) open and close bank accounts; provided, however, that the Debtors give notice to the Office of the United States Trustee and any official committees appointed in these chapter 11 cases prior to opening or closing a bank account; provided further that such notice shall not be required with respect to any bank accounts open or closed pursuant to any documents or orders regarding debtor in possession financing. Any new domestic bank account opened by the Debtors shall be established at an institution acceptable to the debtor in possession credit facility lenders, insured by the FDIC and organized under the laws of the United States or any State therein, or, in the case of accounts that may carry a balance exceeding the insurance limitations set thereby, is a party to a UDA with the U.S. Trustee or is willing to immediately execute such an UDA.

3.      The Debtors are authorized, but not directed, to maintain their current Cash Management System and Bank Accounts without interruption.

4.      The Banks are authorized, but not directed, to continue to service and administer the Bank Accounts as accounts of the Debtors as debtors in possession without interruption, and

to receive, process, honor and pay any and all checks, ACH transfers and other instructions for payment, drafts drawn on or electronic transfer requests made on, the Bank Accounts after the Petition Date by the holders or makers thereof or other persons or parties entitled to issue instructions with respect thereto, as the case may be.

5. All Banks provided with notice of this Order maintaining any of the Bank Accounts shall honor any checks issued against the Bank Accounts prior to the commencement of these chapter 11 cases, except as otherwise authorized by an order of this Court and directed by the Debtors.

6. The Debtors are not required to (a) close existing bank accounts and open new debtor- in-possession accounts or (b) establish specific bank accounts for tax payments. The Debtors may transfer funds into, out of, and through the Cash Management System using ordinary transfer methods in accordance with the Debtors' prepetition practice. The Debtors shall continue to maintain records with respect to all transfers of cash so that all transactions may be readily ascertained, traced, and recorded properly.

7. The Debtors are authorized, but not directed, to pay and/or reimburse the Banks and their service providers in the ordinary course of business for any Cash Management Fees arising prior to or after the Petition Date and to pay any Cash Management Claims up to $17,411, subject to the terms of any interim and final orders of this Court approving debtor in possession financing, including, without limitation, the budget approved therein.

8. The Debtors are authorized, but not directed to, continue to use its existing Business Forms without alteration or change and without the designation "Debtor-in-Possession" imprinted upon them.

9. The Debtors are authorized, but not directed, to continue using their existing Business Forms.

3

10. The Banks are authorized, but not directed, to accept and honor all representations from the Debtors regarding which checks, drafts, wires or ACH transfers should be honored or dishonored consistent with any order of this Court, whether such checks, drafts, wires or ACH transfers are dated prior to, on, or subsequent to the Petition Date; provided, however, that to the extent the Debtors direct the Banks to dishonor any Disbursements or the Banks inadvertently dishonor any Disbursements, the Debtors may issue replacement Disbursements consistent with the orders of this Court. The Banks shall not be liable to any party on account of: (i) following the Debtors' instructions or representations as to any order of this Court; (i) honoring any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored; or (iii) an innocent mistake made despite implementation of reasonable item-handling procedures.

11. Any Banks are further authorized to: (i) honor the Debtors' directions with respect to the opening and closing of any Bank Account and (ii) accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions, provided, in each case, that the Debtors' Banks shall not have any liability to any party for relying on such representations.

12. For Banks at which the Debtors hold Bank Accounts that are party to an UDA with the U.S. Trustee, within fifteen (15) days of the date of entry of this Order, the Debtors shall (a) contact each Bank, and (b) provide each Debtor's employer identification number for each account held at such Banks by a Debtor.

13. The requirements of Bankruptcy Rule 6003(b) have been satisfied with respect to the payments authorized by this Order.

14. This Order shall be immediately effective and enforceable upon its entry. The fourteen-day stay imposed by Bankruptcy Rule 6004(h) is hereby waived.

4

15.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.


Dated: _____, 2020
         Wilmington, Delaware                          _____
                                                        United States Bankruptcy Judge

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| RAVN AIR GROUP, INC. et al.,[1] | Case No. 20-10755 (BLS) |
| Debtors. | Jointly Administered |
| | **Re: Docket No. 6** |

## INTERIM ORDER (I) APPROVING CONTINUED USE OF THE DEBTORS' CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, AND BUSINESS FORMS; (II) GRANTING THE DEBTORS AUTHORITY TO OPEN AND CLOSE BANK ACCOUNTS; AND (III) AUTHORIZING BANKS TO HONOR CERTAIN PREPETITION TRANSFERS

Upon consideration of the *Motion of the Debtors for an Order (I) Approving Continued Use of Debtors' Cash Management System, Bank Accounts, and Business Forms; (II) Granting the Debtors' Authority to Open and Close Bank Accounts; and (III) Authorizing Banks to Honor Certain Prepetition Transfers* (the "Motion"),[2] and the Supplement to the Motion (the "Supplement") filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"); the Court having reviewed the Motion, the First Day Declaration, the Supplement, and the *Supplemental Declaration of John Mannion in Support of Chapter 11 Petitions and First Day Motions* (the "Supplemental First Day Declaration"), and having considered the statements of counsel and the evidence adduced with respect to the Motion at a hearing before the Court (the

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows:  Ravn Air Group, Inc. (3047), Ravn Air Group Holdings, LLC (5356), JJM, Inc. (4858), HoTH, Inc. (9957), Peninsula Aviation Services, Inc. (6859), Corvus Airlines, Inc. (7666), Frontier Flying Service, Inc. (8091), and Hageland Aviation Services, Inc. (2754).  The notice address for all of the Debtors is 4700 Old International Airport Road, Anchorage, AK 99502.

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

"Hearing"); and the Court having found that (i) the Court has jurisdiction over this matter pursuant to 28 U.S.C. sections 157 and 1334; (ii) venue is proper in this district pursuant to 28 U.S.C. sections 1408 and 1409; (iii) this is a core proceeding pursuant to 28 U.S.C. section 157(b); (iv) notice of the Motion and the Hearing was sufficient under the circumstances; and (v) good cause exists to waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent it is applicable; and after due deliberation the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, and their creditors; and good and sufficient cause having been shown;

**ACCORDINGLY, IT IS HEREBY ORDERED THAT:**

1.       The Motion is GRANTED on an interim basis as set forth herein.

2.       The Debtors are authorized, but not directed to: (a) modify their Cash Management System in substantially the same form as described in the Motion and (b) open and close bank accounts; provided, however, that the Debtors give notice to the Office of the United States Trustee and any official committees appointed in these chapter 11 cases prior to opening or closing a bank account; provided further that such notice shall not be required with respect to any bank accounts open or closed pursuant to any documents or orders regarding debtor in possession financing.  Any new domestic bank account opened by the Debtors shall be established at an institution acceptable to the debtor in possession credit facility lenders, insured by the FDIC and organized under the laws of the United States or any State therein, or, in the case of accounts that may carry a balance exceeding the insurance limitations set thereby, is a party to a UDA with the Office of the United States Trustee or is willing to immediately execute such an UDA; provided, further, however, that the Debtors shall open any such new Bank Account at banks that have executed a Uniform

2

Depository Agreement with the Office of the United States Trustee for the District of Delaware, or at such banks that are willing to immediately execute such an agreement.

3.     The Debtors are authorized, but not directed, to maintain their current Cash Management System and Bank Accounts without interruption.

4.     The requirements of section 345(b) of the Bankruptcy Code are hereby waived for a period of 30 days from the Petition Date, which time may be further extended by request of the Debtors and approval of the Court, during which period, the Debtors are authorized, but not directed, to use their Bank Accounts at FNBA to hold all Cash Collateral and proceeds from the DIP Facility until such time as either (i) FNBA has met the requirements of the Office of the United States Trustee to be an authorized depository, or (ii) the Debtors and DIP Lenders have negotiated a DACA with Wells Fargo or another authorized depository so that all Cash Collateral and proceeds from the DIP Facility may held in Bank Accounts at Wells Fargo or another authorized depository.

5.     The Banks are authorized, but not directed, to continue to service and administer the Bank Accounts as accounts of the Debtors as debtors in possession without interruption, and to receive, process, honor and pay any and all checks, ACH transfers and other instructions for payment, drafts drawn on or electronic transfer requests made on, the Bank Accounts after the Petition Date by the holders or makers thereof or other persons or parties entitled to issue instructions with respect thereto, as the case may be.

6.     The automatic stay pursuant to section 362 of the Bankruptcy Code is hereby modified solely to the extent necessary to enable the Debtors, other parties to the Clearinghouse Agreement (as such term is defined in the Supplemental First Day Declaration), US Bank, N.A. (as Clearing Bank for Airlines Clearing House, Inc.) and the International Air Transport

Association Clearing House and its participants to continue to participate in routine billings, settlements, setoffs, and adjustments in accordance with the ACH Clearinghouse Agreement.

7.      To enable the Debtors to continue to participate in routine billings, settlements, setoffs, and adjustments in accordance with the ACH Clearinghouse Agreement, including with respect to any revenue management systems used by the Debtors to facilitate such billing process, all applicable Banks and other financial institutions are hereby authorized to receive, process, honor, and pay any and all checks, drafts, wires, check transfer requests or automated clearing house transfers evidencing amounts paid by the Debtors whether presented prior to or after the Petition Date to the extent the Debtors have good funds standing to their credit with such bank or other financial institution.  Such Banks and financial institutions are authorized to rely on the representations of the Debtors as to which checks are issued or authorized to be paid pursuant to this Interim Order without any duty of further inquiry and without liability for following the Debtors' instructions.

8.      All Banks provided with notice of this Order maintaining any of the Bank Accounts shall honor any checks issued against the Bank Accounts prior to the commencement of these chapter 11 cases, except as otherwise authorized by an order of this Court and directed by the Debtors.

9.      The Debtors are not required to (a) close existing bank accounts and open new debtor- in-possession accounts or (b) establish specific bank accounts for tax payments.  The Debtors may transfer funds into, out of, and through the Cash Management System using ordinary transfer methods in accordance with the Debtors' prepetition practice.  The Debtors shall continue to maintain records with respect to all transfers of cash so that all transactions may be readily ascertained, traced, and recorded properly.

10.     The Debtors are authorized, but not directed, to pay and/or reimburse the Banks and their service providers in the ordinary course of business for any Cash Management Fees arising prior to or after the Petition Date and to pay any Cash Management Claims (as such term is defined in the Supplemental First Day Declaration) up to $31,411, including any Interline Billing Fees (as such term is defined in the Supplemental First Day Declaration) of up to $14,000, subject to the terms of any interim and final orders of this Court approving debtor in possession financing, including, without limitation, the budget approved therein.

11.     The Debtors are authorized, but not directed to, continue to use its existing Business Forms without alteration or change and without the designation "Debtor-in-Possession" imprinted upon them; provided that, once the Debtors' existing checks have been used, the Debtors shall, when reordering checks, require the designation "Debtor in Possession" and the corresponding lead chapter 11 case number on all checks; and provided further that, with respect to checks which the Debtors or their agents print themselves, the Debtors shall begin printing the "Debtor in Possession" legend on such items within ten (10) days of the date of entry of this Order..

12.     The Debtors are authorized, but not directed, to continue using their existing Business Forms.

13.     The Banks are authorized, but not directed, to accept and honor all representations from the Debtors regarding which checks, drafts, wires or ACH transfers should be honored or dishonored consistent with any order of this Court, whether such checks, drafts, wires or ACH transfers are dated prior to, on, or subsequent to the Petition Date; provided, however, that to the extent the Debtors direct the Banks to dishonor any Disbursements or the Banks inadvertently dishonor any Disbursements, the Debtors may issue replacement Disbursements consistent with the orders of this Court.  The Banks shall not be liable to any party on account of:  (i) following

5

the Debtors' instructions or representations as to any order of this Court; (i) honoring any prepetition check or item in a good faith belief that the Court has authorized such prepetition check or item to be honored; or (iii) an innocent mistake made despite implementation of reasonable item-handling procedures.

14.     Any Banks are further authorized to:  (i) honor the Debtors' directions with respect to the opening and closing of any Bank Account and (ii) accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions, provided, in each case, that the Debtors' Banks shall not have any liability to any party for relying on such representations.

15.     For Banks at which the Debtors hold Bank Accounts that are party to an UDA with the Office of the United States Trustee, within fifteen (15) days of the date of entry of this Order, the Debtors shall (a) contact each Bank, (b) provide each Debtor's employer identification number for each account held at such Banks by a Debtor, and (c) identify each of their Bank Accounts held at such Banks as being held by a debtor in possession in a bankruptcy case.

16.     For banks at which the Debtors hold accounts that are not party to a Uniform Depository agreement with the Office of the United States Trustee for the District of Delaware, the Debtors shall use their good-faith efforts to cause the banks to execute a Uniform Depository agreement in a form prescribed by the Office of the United States Trustee within thirty (30) days of the date of this Order.  The Office of the United States Trustee's rights to seek further relief from this Court on notice in the event that the aforementioned banks are unwilling to execute a Uniform Depository Agreement in a form prescribed by the Office of the United States Trustee are fully reserved.

17.     Despite the Debtors' use of a consolidated cash management system, the Debtors shall calculate quarterly fees under 28 U.S.C. section 1930(a)(6) based on the disbursements of each Debtor, regardless of which Debtor pays those disbursements.

18.     The requirements of Bankruptcy Rule 6003(b) have been satisfied with respect to the payments authorized by this Order.

19.     This Order shall be immediately effective and enforceable upon its entry.  The fourteen-day stay imposed by Bankruptcy Rule 6004(h) is hereby waived.

20.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

21.     The final hearing on the Motion shall be held on April 29, 2020 at 11:00 a.m. (prevailing Eastern Time).  Any objections or responses to entry of the Motion on a final basis shall be filed with the Court and served upon counsel for the Debtors by April 22, 2020 at 4:00 p.m. (prevailing Eastern Time).


**Dated: April 7th, 2020 Wilmington, Delaware**

**BRENDAN L. SHANNON UNITED STATES BANKRUPTCY JUDGE**

**Exhibit D: Retainers Paid**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

In re: RAVN AIR GROUP, INC., et al.                      Chapter 11
Debtor                                                              **Case No. 20-10755 (BLS)**

**SCHEDULE OF RETAINERS PAID TO PROFESSIONALS**
(This schedule is to include each Professional paid a retainer [1] )

| Payee | Check Date | Wire / Check Number | Name of Payor | Amount | Amount Applied to Date | Balance |
|---|---|---|---|---|---|---|
| Blank Rome, LLP | 3/31/2020 | Wire | Corvus Airlines Inc. | 100,000.00 | 93,560.50 | 6,439.50 |
| Conway MacKenzie, Inc. | 3/30/2020 | Wire | Corvus Airlines Inc. | 150,000.00 | - | 150,000.00 |
| Keller Benvenutti Kim[1] | 3/18/2020 | Wire | Corvus Airlines Inc. | 50,000.00 | 50,000.00 | - |
| Keller Benvenutti Kim[1] | 3/20/2020 | Wire | Corvus Airlines Inc. | 200,000.00 | 143,901.25 | 56,098.75 |
| Keller Benvenutti Kim[1] | 4/2/2020 | Wire | Corvus Airlines Inc. | 100,000.00 | - | 100,000.00 |
| Stretto[2] | 4/3/2020 | Wire | Corvus Airlines Inc. | 10,000.00 | 4,000.00 | 6,000.00 |

1.  Evergreen retainer.
2.  Estimate for prepetition work of $4,000.