(a) comprehensive aircraft public liability insurance including, without limitation, (i) contractual liability to cover Lessee's obligations under Section 13, (ii) contractual, passenger, bodily injury, and property damage liability, (iii) aircraft third party, passenger, baggage, cargo and mail liability and (iv) aviation general third party liability (including premises, hangarkeeper's and products liability) and (b) war and hijacking insurance, if and to the extent war risk and hijacking insurance is maintained by Lessee with respect to other similar aircraft operated by Lessee on the same or similar routes. Such insurance shall be (A) of the same type and covering the same such risks as those applicable to similar aircraft and engines owned or leased and operated by Lessee (and in any event equal to or greater than the insurance carried by similarly situated airlines), and (B) in amounts not less than the greater of the aircraft liability insurance applicable to similar aircraft and engines owned or leased and operated by Lessee and One Hundred Fifty Million United States Dollars (US$150,000,000.00) and hangarkeepers' limit of Ten Million United States Dollars (US$10,000,000.00) per occurrence limit, extended to include (and subject to the limits of) war and allied perils under Extended Coverage Endorsement as per AVN 52E.

12.2    <u>Insurance Against Loss or Damage</u>. Lessee, at its own cost and expense, will carry and maintain in effect with Approved Insurers "all-risk" ground and flight aircraft hull insurance with respect to the Aircraft (including, without limitation, fire, theft, burglary, crash, collision, and bodily injury) and fire, transit and extended and "all-risk" coverage insurance with respect to Engines and Parts while not installed on the Aircraft or an aircraft, in each case of the same type and covering the same such risks as those applicable to similar aircraft and engines owned or leased and operated by Lessee. Such insurance shall be for an amount not less than the Casualty Value per Aircraft), subject to a deductible approved by Lessor. Lessee will further, at its own cost and expense, procure hull war risk insurance covering the Aircraft to the fullest extent available against those perils excluded by War, Hijacking and Other Perils Exclusion Clause under London Form AVN 48B or any modification or substitution thereof. Lessee will further, at its own cost and expense, procure and maintain with respect to the Engines insurance against foreign object damage and damage or loss to the Engine resulting from ingestion, operator induced failure or other negligence, except to the extent such risks are excluded from coverage under the Lessee's insurance policies.

12.3    <u>Required Policy Designations and Provisions</u>. Each policy of insurance obtained and maintained pursuant to this Section, and each policy obtained in substitution or replacement for any such policies, shall:

12.3.1 designate Lessor as owner of the Aircraft covered thereby, and designate the Indemnitees as additional insureds, and with respect to hull insurance, Lessor as sole loss payee for the account of all interests, but without imposing upon any Indemnitee any obligation imposed upon the insured, including, without limitation, the liability to pay any premiums for any such policies;

12.3.2 expressly provide that, in respect of the interests of each Indemnitee in such policies, the insurance shall not be invalidated by any action or inaction of Lessee or any other Person (other than such Indemnitee), and shall insure such Indemnitee regardless of any breach or violation of any warranty, declaration or condition contained in such policies by Lessee or any other Person (other than such Indemnitee);

12.3.3 provide that if such insurance is canceled by the Approved Insurers for any reason whatsoever, or is adversely changed in any way with respect to the interests of any Indemnitee or if such insurance is allowed to lapse for nonpayment of premium, such cancellation, adverse change or lapse shall not be effective as to any Indemnitee for thirty

(30) days (seven (7) days in the case of any war risks or allied perils coverage or such lesser period of time as may be customarily applicable, and ten (10) days for non-payment of premium) after receipt by such Indemnitee of written notice of such prospective cancellation, change or lapse;

12.3.4 include coverage for the territorial limits of any country in which the Aircraft may at any time be operated in accordance with the Lessee's Operations Specifications;

12.3.5 provide that, as against the Indemnitees, the insurer waives any rights of set-off, counterclaim or any other deduction, whether by attachment or otherwise, and waives the rights it may have to be subrogated to any right of any insured against the Indemnitees with respect to the Aircraft;

12.3.6 as to hull insurance, provide that in the event of any damage or loss, whether or not a Casualty Occurrence hereunder, that results in a payment in excess of One-Hundred Thousand US Dollars ($100,000), such payment shall be payable directly to Lessor as the loss payee, for the account of all interests;

12.3.6 provide that such insurance is primary without right of contribution from any other insurance that may be carried by the Indemnitees; and

12.3.7 as to liability insurance, expressly provide that all of the provisions thereof, except the limits of liability, shall operate in the same manner as if there were a separate policy covering each insured.

12.4    Additional Insurance.  The Indemnitees shall have the right to carry additional and separate insurance for their own benefit at their own expense without thereby limiting Lessee's obligations under this Section 12.

12.5    Application of Insurance Proceeds for a Casualty Occurrence.  It is agreed that insurance payments which arise from insurance obtained hereunder and received as the result of the occurrence of a Casualty Occurrence shall be applied in accordance with Section 11.3.

12.6    Application of Insurance Proceeds for Other than a Casualty Occurrence.  The insurance payments in excess of One-Hundred Thousand US Dollars ($100,000) for any property damage loss (a) to the Airframe or any Engine or Propeller not constituting a Casualty Occurrence or (b) to any Part, shall be paid to Lessor and thereafter be applied by Lessor (but only to the extent actually received by Lessor), so long as no Lessee Event of Default shall have occurred and be continuing, in payment for repairs Lessee is required to perform or for replacement property Lessee is required to obtain in accordance with the terms of Section 9 or Section 11, or, if such repair or replacement has already been paid for by Lessee, to reimburse Lessee for such repairs or replacements, and any balance remaining after compliance with such sections with respect to such loss shall be applied, in the sole discretion of Lessor, towards any amounts due and owing to Lessor hereunder by Lessee and the balance, if any, remaining shall be paid over to Lessee.

12.7    Application in Default.  Any amount referred to in Section 11.3, Section 12.5 or Section 12.6 which is otherwise payable to Lessee shall not be paid to Lessee, or, if it has been previously paid to Lessee, shall be immediately delivered by Lessee to Lessor, if at the time of such payment, a Lessee Event of Default shall have occurred and be continuing. In either case, all such amounts shall be held by Lessor as security for the obligations of Lessee, or, at the option of Lessor, applied by Lessor toward payment of any of Lessee's obligations at the time due hereunder.

12.8    Certificates of Insurance.  On or before the Commencement Date, and thereafter at least thirty (30) days prior to the expiration of the insurance required hereby, Lessee will furnish to Lessor and any Lessor Lender a certificate and a letter of undertaking executed and delivered by an Approved Insurance Broker who is authorized by an Approved Insurer and appointed by Lessee, describing in reasonable detail the insurance then carried on the Aircraft and certifying that such insurance complies with the terms of this Lease. Lessee will cause such Approved Insurance Broker who is authorized by an Approved Insurer to agree to advise Lessor and any Lessor Lender in writing thirty (30) days' (seven (7) days in the case of any war risks or allied perils coverage or such lesser period of time as may be customarily applicable, and ten (10) days for non-payment of premium) prior notice of any change, termination or lapse in any policy for any reason.

12.9    Reinsurance.  In the event that the insurances required hereunder are reinsured, such reinsurance shall contain a "cut-through" clause reasonably satisfactory to Lessor and any Lessor Lender, and Lessee will furnish to Lessor a certificate and a letter of undertaking executed and delivered by an Approved Insurance Broker who is authorized by an Approved Insurer appointed by Lessee, describing in reasonable detail the reinsurance carried on the Aircraft and certifying that the reinsurance then maintained on the Aircraft complies with the terms of this Lease.

## SECTION 13.          INDEMNIFICATION

13.1    Lessee Indemnification.  Except as specifically provided in this Lease, Lessee hereby agrees and undertakes to indemnify, reimburse and hold harmless each Indemnitee from and against any and all claims, damages, losses, liabilities, demands, suits, judgments, settlements, causes of action, legal proceedings (whether civil or criminal), penalties, fines, other actions, and any attorneys' fees and all other costs and expenses in connection therewith, of whatsoever kind or nature, including any of the foregoing arising or imposed with or without any such Indemnitee's fault or negligence or under the doctrine of strict liability or any other theory of liability (any and all of which are hereafter referred to as "Claims") which in any way may result from, pertain to, or arise in any manner out of, or are in any manner related to: (i) any breach or failure on the part of Lessee, or its employees, agents, officers, directors, shareholders, or other representatives in respect of the transactions contemplated hereby, or the enforcement of any of the terms hereof, including, without limitation, the breach of any representation, warranty, covenant, obligation or duty of Lessee hereunder or any other document or agreement executed and delivered in connection herewith or with respect to any Indemnitee; or (ii) the condition, manufacture, delivery, lease, acceptance, possession, repossession, return, disposition pursuant to the exercise of remedies under Section 18, airworthiness, use, maintenance, storage, repair or operation of the Aircraft, the Airframe, any Engine or Part either in the air or on the ground; or (iii) any defect in the Aircraft (whether or not discovered or discoverable by Lessee or Lessor) arising from any material or articles or Parts used therein or from the design, testing, or use thereof or from any maintenance, repair, modification, alteration, service, repair, overhaul, or testing of the Aircraft, whether or not the Aircraft is in the possession of Lessee, and regardless of where the Aircraft may then be located; or (iv) any transaction, approval, or document contemplated by this Lease or given or entered into in connection with this Lease; or (v) the death of or injury to any observer or any employee of Lessor participating in any inspection of the Aircraft or the Demonstration Flight. In the event Lessee is required to indemnify any Indemnitee hereunder, Lessee shall pay to such Indemnitee an amount which, after deduction of all Taxes and like charges required to be paid by such Indemnitee in respect of such payment, and taking into account any credits received by such Indemnitee by reason of having made such

payments, is equal to the amount of the indemnification required.   All of the provisions of Section 10.3 shall apply to such payment.

13.2    Lessee Waiver.   Lessee hereby waives as against each Indemnitee, and releases each Indemnitee from, any Claims (whether now existing or hereafter arising) specified in Section 13.1.

13.3    Survival of Indemnities.   The indemnities contained in this Section 13 shall survive the execution and delivery of this Lease and shall continue in full force and effect notwithstanding the expiration or other termination of this Lease and are expressly made for the benefit of and shall be enforceable by each Indemnitee.

13.4    Exclusions.

13.4.1 The indemnity provided for under this Section 13 shall not extend to Claims arising out of or resulting from, or which would not have occurred but for, any of the following:

1.    the gross negligence or willful misconduct of such Indemnitee;

2.    the inaccuracy or breach of any representation or warranty made by Lessor or the failure of Lessor to perform its obligations under the Lease;

3.    acts or events which occur after the expiration of the Term and the return of possession of the Aircraft to Lessor in accordance with the terms of this Lease

4.    Claims which relate to a Lessor Lien;

5.    any Taxes, it being understood that Lessee's liability for Taxes shall be exclusively as set forth in Section 10.

6.    costs or expenses which under the terms of this Lease are required to be paid by Lessor or its assignees; or

7.    the failure of any Indemnitee to comply with any covenant, or the breach of any covenant made by an Indemnitee.

13.4.2 Lessee shall be subrogated to an Indemnitee's rights in any matter with respect to which Lessee has actually reimbursed such Indemnitee for amounts expended by it or has actually paid such amounts directly pursuant to this Section 13.

13.4.3 In case any action, suit or proceeding is brought against any Indemnitee in connection with any Claim indemnified against hereunder, such Indemnitee will, promptly after receipt of notice of the commencement of such action, suit or proceeding, notify Lessee thereof, enclosing a copy of all papers served upon such Indemnitee; *provided* that the failure to provide such notice shall not release Lessee from any of its obligations to indemnify hereunder, except to the extent that such failure is the sole reason for materially and adversely affecting Lessee's ability to defend or resist such action.   Lessee may, and upon such Indemnitee's request will, at Lessee's expense, resist and defend such action, suit or proceeding, or cause the same to be resisted or defended by counsel selected by Lessee and reasonably satisfactory to such Indemnitee and in the event of any failure by Lessee to do so, Lessee shall pay all costs and expenses (including, without limitation, reasonable legal expenses, including but not limited to attorney's fees and expenses) incurred by such Indemnitee in connection with such action, suit or proceeding.

13.4.4 Indemnitee shall not enter into a settlement or other compromise with respect to any Claim without the prior written consent of Lessee so long as (i)no Event of Default exists and is continuing, (ii) Lessee has agreed in a writing acceptable to such Indemnitee that Lessee is liable to such Indemnitee for such Claim hereunder, and (iii) Lessee has provided such evidence, certifications and assurances as such Indemnitee may reasonably request that Lessee has the ability to pay any such Claim.

13.5    Taxation of Indemnity Payments

13.5.1 If and to the extent that any sums payable to any Indemnitee by Lessee under this Lease by way of indemnity are insufficient, by reason of any Taxes payable in respect of those sums, for such Indemnitee to discharge the corresponding liability to the relevant third party (including any taxation authority), or to reimburse such Indemnitee for the cost incurred by it to a third party (including any taxation authority), Lessee will pay to such Indemnitee such sum as will, after the tax liability has been fully satisfied, leave such Indemnitee with the same amount as it would have been entitled to receive in the absence of that liability, together with interest on the amount of the deficit at the Interest Rate in respect of the period commencing on the date on which the payment of taxation is finally due until payment by Lessee (both before and after judgment).

13.5.2 If and to the extent that any sums constituting (directly or indirectly) an indemnity to any Indemnitee but paid by Lessee to any Person other than such Indemnitee are treated as taxable in the hands of such Indemnitee, then Lessee will pay to such Indemnitee such sum as will, after the tax liability has been fully satisfied, indemnify such Indemnitee to the same extent as it would have been indemnified in the absence of such liability, together with interest on the amount payable by Lessee under this Section 13.5.2 at the Interest Rate in respect of the period commencing on the date on which the payment of taxation is finally due until payment by Lessee (both before and after judgment).

13.5.3 If any Indemnitee shall actually realize a tax savings by reason of any Tax paid or indemnified by Lessee pursuant to this Section 13, and such savings is not otherwise taken into account in determining such payment or indemnity, such Indemnitee shall pay to Lessee an amount equal to the lesser of (i) the amount of such tax savings realized, or (ii) the amount of all payments pursuant to Section 13 by Lessee to such indemnity with respect to such Claims (less any payments previously made by such Indemnitee to Lessee pursuant to this subsection).

## SECTION 14.    LIENS

Lessee shall not directly or indirectly create, incur, assume or suffer or permit to exist any Lien on or with respect to the Aircraft, title thereto or any interest therein, except: (a) the respective rights of Lessor, Lessee as herein provided; (b) Lessor's Liens with respect to the Aircraft; or (c) other Permitted Liens. Lessee will immediately cause the International Registry to discharge the registration of any International Interest, Prospective International Interest or Non-consensual Right or Interest in respect of the Aircraft and/or any Engine, other than the registration of an interest that constitutes a Permitted Lien.

## SECTION 15.    PERFECTION OF TITLE AND FURTHER ASSURANCES

15.1    Recordation of Lease Generally.  Lessee shall, at Lessee's cost and expense (except in furtherance of matters specified herein to be at the cost and expense of Lessor or any other Person), cause this Lease, all exhibits hereto, any amendments or supplements hereto, and any

and all additional instruments which shall be executed pursuant to the terms hereof to be kept, filed and recorded, and to be re-executed, re-filed and re-recorded at all times during the Term with the Aviation Authority and each other Governmental Entity having jurisdiction over the Aircraft, this Lease and the transactions contemplated hereby and thereby to the extent required to perfect and preserve Lessor's and Lessor Lender's interest and title in and to the Aircraft and this Lease to the maximum extent possible under Applicable Law.

15.2    Cape Town Convention Registration.

15.2.1 Registration of the Lease International Interest.  Lessee at its own cost and expense will take such actions as the Cape Town Convention may require so that the International Interest constituted by or pursuant to this Lease, in each case with respect to the Aircraft and each Engine, will be duly registered at the International Registry at the time of Delivery. At Lessor's request from time to time, Lessee shall (i) take such actions as the Cape Town Convention may require so that (A) any International Interest (and any assignment, acquisition, and/or subordination thereof) constituted by or pursuant to this Lease in the Aircraft and/or any Engine may be duly registered (and any such registration may be amended, extended or discharged) at the International Registry, and (B) any Contract of Sale entered into pursuant to this Lease with respect to an Engine may be duly registered at the International Registry, and (ii) obtain from the International Registry all approvals as may be required to duly and timely perform Lessee's obligations under the Lease with respect to the registration of any International Interest (and any assignment, acquisition, subordination, amendment, extension or discharge thereof) and any Contract of Sale.

15.2.2 Lessor Right to Discharge the Lease International Interest.  At any time following the occurrence of a Lessee Event of Default and the termination of this Lease, Lessor may take such action as it deems appropriate to discharge the registration of the International Interest arising under this Lease from the International Registry.  Lessee agrees to take such action at the International Registry and the Aviation Authority as is required of Lessee in order to effect the discharge of such registrations at the International Registry as Lessor may reasonably request.

15.2.3 Cape Town Convention Representations and Warranties. Without limiting any of the other representations and warranties in this Lease, for the purposes of the Cape Town Convention and any other Applicable Law, the Lessee hereby represents and warrants to Lessor that (i) upon the delivery of the Aircraft to Lessee as contemplated herein, Lessee shall be situated in, and Lessee will cause the Aircraft to be duly registered in, the United States of America, (ii) each of the respective parties hereto has power to dispose of the Aircraft and Engines, as contemplated herein, and (iii) this Lease is effective to constitute an International Interest with respect to   the Aircraft and Engines and security assignments of the related associated rights and transfer of the related international interests, as expressly provided for herein,; (iv) the Aircraft will constitute an Aircraft Object and (v) this Lease will constitute an agreement for the registration of the Aircraft and Engines (the parties agree that for purposes of the Cape Town Convention, separate rights may exist with respect to the Airframe and Engines.

15.3    Other Filings.

15.3.1 If at any time any filing or recording is reasonably necessary to protect the interest of Lessor or any Lessor Lender, Lessee, at its own cost and expense (except in

furtherance of matters specified herein to be at the cost and expense of Lessor or any other Person) and upon request by Lessor or any Lessor Lender, shall cause this Lease and any Lessor Lender's security agreement and any and all additional instruments which shall be executed pursuant to the terms hereof or thereof, to be kept, filed and recorded and to be re-executed, re-filed and re-recorded in the appropriate office pursuant to Applicable Law to perfect, protect and preserve the rights and interests of Lessor and any Lessor Lender hereunder and in the Aircraft.  At the reasonable request of Lessor or any Lessor Lender, Lessee shall furnish to Lessor and such Lessor Lender opinions of counsel or other evidence satisfactory to Lessor and such Lessor Lender of each such filing or re-filing and re-perfection or re-recordation.

15.3.2 In addition, Lessee shall, at the expense of Lessee (except in furtherance of matters specified herein to be at the cost and expense of Lessor or any other Person), promptly and duly execute and deliver to Lessor such further documents and assurances and take such further actions as Lessor may from time to time reasonably request in order to more effectively carry out the intent and purpose of this Lease and to establish, protect and perfect the rights and remedies created or intended to be created in favor of Lessor and any Lessor Lender hereunder, including, without limitation, the execution and delivery of supplements or amendments hereto or to any Lessor Lender's security agreement in recordable form subjecting to this Lease and the Lien of any Lessor Lender's security agreement any Substitute Engine and the recording or filing of counterparts thereof in accordance with the laws of any appropriate jurisdiction.

15.4    Granting Clause.  In order to secure the prompt and full payment and performance as and when due of the Lease Obligations, Lessee hereby collaterally assigns, grants, pledges and conveys to Lessor for the benefit of the Lessor a security interest, and security assignment in and Lien on all of Lessee's right, title and interest in, to and under all of the following (collectively, the "Collateral"):  (i) this Lease and the Airframe, each Engine and all of the other property constituting the Aircraft; (ii) any and all present and future subleases relating to the Aircraft or any part thereof and all rent, reimbursements and other disbursements, remittances or other amounts payable with respect to the Lease, including, without limitation, all rent and other amounts constituting associated rights secured by or associated with the Airframe and Engines, and any related international interests; (iii) (in the event that contrary to the intentions of Lessee and Lessor, a court determines that this Lease is not a "true" lease under the UCC) the Aircraft, including, without limitation, the Airframe and each Engine, and all present and future parts, accessories, accessions, associated rights and attachments thereto, and all present and future replacements, substitutions and exchanges for such goods; and (iv) any and all proceeds of the foregoing, including all related goods, accounts, associated rights, chattel paper, documents, instruments, general intangibles, letters of credit, letter of credit rights, investment property, deposit accounts, supporting obligations, insurance proceeds, warranty and requisition payments, and all other casualty amounts and other amounts constituting proceeds, and all present and future books and records relating to any of the foregoing and/or the Aircraft (including, without limitation, all tapes, cards, computer programs, computer runs and computer data in the possession or control of Lessee, any computer service bureau, or other third party).  The collateral assignment, security interest and lien granted herein shall survive the termination, cancellation or expiration of this Lease until such time as Lessee's obligations under this Lease are fully and indefeasibly discharged.

15.5    Expenses.  Lessee will pay to Lessor on demand all reasonable expenses (including all legal fees and expenses and the fees and expenses of other professional advisers) that Lessor

suffers or incurs in connection with any of the filings and recordings specified in this Section 15, including, without limitation, the registration of any interest constituted by or pursuant to this Lease in the Aircraft and/or any Engine with the International Registry, in each case including any filing or registration fees in connection therewith.

## SECTION 16.    RETURN OF AIRCRAFT AND RECORDS

16.1    Location and Condition.  On the Return Occasion, Lessee, at its own expense, shall return the Aircraft to Lessor at the Return Location, in the condition specified in **Exhibit F**, in good working order, fully equipped and with all Aircraft systems fully functional and all required Parts and Engines duly installed thereon and otherwise in the same condition as at Delivery, normal wear and tear excepted.

16.2    Legal Status Upon Return.  On the Return Occasion, the Aircraft: shall (a) be free and clear of all Liens, except for Lessor's Liens; (b) have a current, valid certificate of airworthiness from the Aviation Authority; (c) be fully qualified for Part 121 commercial operations in the United States without any deferred maintenance or exception; and (d) be in full compliance with the Manufacturer's Maintenance Program and all Airworthiness Directives (as contemplated by Section 9.3), and other regulations of the Aviation Authority requiring compliance on or before the Return Occasion.

16.3    Records.  On the Return Occasion, Lessee shall deliver to Lessor such Lessee's Maintenance Program data and task cards as required to transition the Aircraft to another operator's maintenance program and all Aircraft Documents, in each case current with the latest entries and revisions posted therein.

16.4    Service Bulletin and Modification Kits.  On the Return Occasion, Lessee shall deliver to Lessor, at no cost to Lessor, all service bulletin kits furnished without charge by a manufacturer for installation on the Aircraft, its components or appliances which have not been so installed, together with appropriate instructions for installation.

16.5    Engines.  Lessee may return the Aircraft on the Return Occasion with an engine not owned by Lessor, if (a) such engine conforms in all respects to the requirements set forth in Section 11.2 with respect to a Substitute Engine; (b) such engine conforms to the return condition requirements set forth in this Section 16 (including **Exhibit F**); (c) Lessee, at its own expense and concurrently with such delivery, furnishes Lessor with a warranty bill of sale, in such form as will qualify as a "contract of sale" pursuant to Article V of the Protocol and otherwise in form and substance reasonably satisfactory to Lessor , with respect to such engine and with evidence of Lessee's full and unencumbered title to such engine (including, if requested by Lessor, an opinion of Lessee's counsel to the effect of the opinion required by Section 11.2(d)); (d) Lessee takes such other action as Lessor may reasonably request in order that full legal and beneficial ownership and title to such engine shall be duly and fully vested in Lessor; (e) the time and cycles remaining to the next limiter on such engine is not less than the time and cycles that were remaining to the next limiter on the Engine not being returned; (f) the value, utility, modification status and remaining useful life of such engine is equal to or greater than that of the Engine not being returned; and (g) such engine will qualify for continued enrollment in the Rolls Royce Agreement as evidenced by a qualification letter from Rolls Royce dated as of the Return Occasion.  If such conditions are satisfied, Lessor shall transfer to Lessee, upon redelivery of the Aircraft, on an "As-Is," "Where-Is  basis, full legal and beneficial ownership and title to the Engine not being returned by means of a bill of sale, in such form as will qualify as a "contract of sale" pursuant to Article V of the Protocol and otherwise in form and substance reasonably satisfactory to Lessee without any representation, warranty or recourse

of any kind whatsoever, express or implied, except a warranty that such Engine is free and clear of Lessor Liens.

16.6    Redelivery Procedure.

16.6.1 Inspection of Aircraft Documentation. Lessee shall make available to Lessor for Lessor's review at Lessee's principal maintenance base, at least thirty (30) days prior to the inspection of the Aircraft specified in Section 16.6(b), the Aircraft Documents, together with such other documentation regarding the condition, use, maintenance, operation and history of the Aircraft generated during Lessee's possession of the Aircraft and as Lessor may otherwise reasonably request.

16.6.2 Initial Inspection. Lessor may, at Lessor's sole cost and expense, inspect the Aircraft at its final maintenance check before return in order to verify that the condition of the Aircraft complies with the requirements set forth in Section 16.1. Lessee shall give Lessor not less than ten (10) days' prior written notice of the Aircraft's availability. The period allowed for the inspection shall have such duration as to permit Lessor to do the following:

i. inspect the Airframe, Engines and any uninstalled Parts owned by Lessor in accordance with the Manufacturer's Maintenance Manuals, the Parts maintenance manuals and all Airworthiness Directives, FARs and other regulations of the Aviation Authority;

ii. perform a ground power assurance ("GPA") run on the Engines in accordance with the Rolls Royce AE2100 Maintenance Program and to demonstrate that each Engine and the Aircraft's systems are operating in conformance with the Manufacturer's manual;

iii. observe a demonstration flight (which may be part of the ferry flight to the Return Location) ("Demonstration Flight") undertaken by Lessee. Fuel and Crew cost will be for the account of the Lessee; and

iv. at Lessor's sole cost and expense perform such other tests and inspections as may be requested by Lessor.

16.6.3 Final Inspection. Lessee shall thereafter make the Aircraft available at the Return Location for a further and final inspection by Lessor, at Lessor's sole cost and expense, including, without limitation, an aircraft systems check, general visual inspection, and an aircraft records inventory and confirmation of rectification for all Discrepancies discovered during Lessor's initial inspection. Lessee shall not operate the Aircraft after such final inspection except for any ferry flight pursuant to this Lease.

16.6.4 Correction of Discrepancies. All pilot-reported Discrepancies and all Discrepancies identified by Lessor during the initial and final inspections of the Aircraft shall be corrected by Lessee at its own expense. There shall be no deferred items on the Aircraft. If necessary to verify the correction of such Discrepancies, Lessee shall perform an additional Demonstration Flight in accordance with the provisions of this Section.

16.6.5 Redelivery Receipt. When the Aircraft has been so inspected by Lessor and found to be in the condition required hereunder, Lessor shall issue a redelivery receipt ("Redelivery Receipt") to Lessee confirming the same.

16.7    Failure to Conform to Redelivery Condition.   To the extent that the Aircraft or any Engine fails on the Return Occasion to conform to any requirement imposed by this Lease, Lessor, at its sole option, may continue the Lease, whereupon the Term shall be deemed to have been automatically extended until such time as the Aircraft is brought up to the condition required by this Section 16.  If Lessee fails or refuses to cause the Aircraft to conform to such conditions, Lessor may, in addition to any other remedy available to it hereunder or under Applicable Law, accept the return of the Aircraft and thereafter have any such nonconformance corrected at such time as Lessor may deem appropriate, at commercial rates then charged by the Person selected by Lessor to perform such correction, and Rent shall continue as set forth in this paragraph until completion of such correction. Any and all expense incurred by Lessor for such correction shall accrue interest at the Interest Rate and shall become Supplemental Rent payable by Lessee within five (5) Business Days following the submission of a written statement by Lessor to Lessee, identifying the items corrected and setting forth the expense of such correction. Lessee's obligation to pay such Supplemental Rent shall survive the expiration or other termination of this Lease.

16.8    Return of Security Deposit.   Upon compliance by Lessee with all of the terms and conditions of this Lease on or as of the Return Occasion, and provided no Lessee Event of Default has occurred and is continuing, Lessor shall return the Security Deposit (or that portion of the Security Deposit remaining after application thereof by Lessor in accordance with the terms hereof) to Lessee within five (5) Business Days.

## SECTION 17.    EVENTS OF DEFAULT

17.1    Any one or more of the following occurrences or events shall constitute a Lessee Event of Default and a "default" for purposes of Article 11 of the Cape Town Convention:

(a)    Lessee shall fail to make any payment of Rent or Supplemental Rent to Lessor within five (5) Business Days of when the same shall have become due under this Lease;

(b)    Lessee shall fail to obtain and maintain any insurance required under the provisions of Section 12 or shall let any such insurance coverage lapse or shall operate the Aircraft outside of the scope of the insurance coverage maintained with respect to the Aircraft;

(c)    A Lessee Event of Default shall occur under the Related Leases, and such event of default shall continue beyond any applicable grace or cure periods;

(d)    any representation or warranty made by Lessee herein or in any document or certificate furnished to Lessor in connection herewith or therewith or pursuant hereto is incorrect in any material respect when made;

(e)    Lessee shall fail to perform or observe any other covenant, condition or agreement to be performed or observed by it pursuant to this Lease (not otherwise specifically addressed in this Section 17), and such failure shall continue for a period of thirty (30) days after receipt of written notice thereof is delivered by Lessor to Lessee, unless such failure is not reasonably capable of being corrected within 30 days, in which case Lessee shall not be in default for so long as Lessee diligently commences and continues to diligently to correct such failure, provided that Lessee shall be in default if Lessee does not remedy such failure within 90 days after receipt of such notice; or Lessee shall fail to observe its covenant to keep the Aircraft free and clear of Liens (subject to Section 14), and such failure shall continue for a period of thirty (30) days after the date of imposition of any such Lien unless such failure is not reasonably capable of being

corrected within 30 days, in which case Lessee shall not be in default for so long as Lessee diligently commences and continues to diligently to correct such failure, provided that Lessee shall be in default of Lessee does not remedy such failure within 90 days after receipt of such notice; or Lessee shall fail to redeliver the Aircraft as provided herein and such failure shall continue for a period of thirty (30) days after the date the Aircraft should have been so delivered unless such failure is not reasonably capable of being corrected within 30 days, in which case Lessee shall not be in default for so long as Lessee diligently commences and continues to diligently to correct such failure, provided that Lessee shall be in default of Lessee does not remedy such failure within 90 days after receipt of such notice.

(f)     Lessee consents to the appointment of a receiver, trustee or liquidator of itself or of a substantial part of its property, or Lessee admits in writing its inability to pay its debts generally as they come due, or makes a general assignment for the benefit of creditors; or Lessee files a voluntary petition in bankruptcy or a voluntary petition seeking reorganization in a proceeding under any bankruptcy laws, as now or hereafter in effect, or an answer admitting the material allegations of a petition filed against Lessee in any such proceeding; or Lessee by voluntary petition, answers or consents or seeks relief under the provisions of any bankruptcy, insolvency or other similar law providing for the reorganization or winding up of corporations involving an agreement, composition, extension or adjustment with its creditors;

(g)     an order, judgment or decree is entered by any court, with or without the consent of Lessee, appointing a receiver, trustee or liquidator for Lessee or of all or any substantial part of its property, or all or any substantial part of the property of Lessee is sequestered, and any such order, judgment, decree of appointment or sequestration remains in effect, undismissed, unstayed or unvacated for a period of sixty (60) days after the date of entry thereof;

(h)     a petition against Lessee or of all or any substantial part of its property in a proceeding under bankruptcy, insolvency or other similar laws of any Governmental Entity (as now or hereafter in effect) is filed and is not withdrawn, stayed, vacated or dismissed within sixty (60) days thereafter; or under the provisions of any Applicable Law providing for reorganization or winding up of corporations which may apply to Lessee, any court of competent jurisdiction assumes jurisdiction over, or custody or control of, Lessee or of all or any substantial part of its property, and such jurisdiction, custody or control remains in effect, unrelinquished, unstayed or unterminated for a period of sixty (60) days;

(i)     intentionally not used;

(j)     intentionally not used;

(k)     Lessee suspends or ceases to carry on all or substantially all of its business for a period in excess of ten (10) consecutive calendar days, other than by reason of a Force Majeure; or

(l)     Lessee disposes or threatens to dispose of all or a material part of its assets, whether by one or a series of transactions, related or not.

17.2    Any one or more of the following occurrences or events shall constitute a Lessor Event of Default and a "default":

(a)    Lessor shall fail to make any payment due to Lessee within five (5) Business Days of when the same shall have become due under this Lease;

(b)    A Lessor Event of Default shall occur under the Related Leases, and such Event of Default shall continue beyond any applicable grace or cure periods;

(c)    any representation or warranty made by Lessor herein or in any document or certificate furnished to Lessee in connection herewith or therewith or pursuant hereto is incorrect in any material respect when made;

(d)    Lessor shall fail to perform or observe any other covenant, condition or agreement to be performed or observed by it pursuant to this Lease (not otherwise specifically addressed in this Section 17), and such failure shall continue for a period of thirty (30) days after receipt of written notice thereof is delivered by Lessee to Lessor, unless such failure is not reasonably capable of being corrected within 30 days, in which case Lessor shall not be in default for so long as Lessor diligently commences and continues diligently to correct such failure, provided that Lessor shall be in default of Lessor does not remedy such failure within 90 days after receipt of such notice.

(e)    prior to Delivery of the Aircraft, Lessor consents to the appointment of a receiver, trustee or liquidator of itself or of a substantial part of its property, or Lessor admits in writing its inability to pay its debts generally as they come due, or makes a general assignment for the benefit of creditors; or Lessor files a voluntary petition in bankruptcy or a voluntary petition seeking reorganization in a proceeding under any bankruptcy laws, as now or hereafter in effect, or an answer admitting the material allegations of a petition filed against Lessor in any such proceeding; or Lessor by voluntary petition, answers or consents or seeks relief under the provisions of any bankruptcy, insolvency or other similar law providing for the reorganization or winding up of corporations involving an agreement, composition, extension or adjustment with its creditors;

(f)    prior to Delivery of the Aircraft, an order, judgment or decree is entered by any court, with or without the consent of Lessee, appointing a receiver, trustee or liquidator for Lessor or of all or any substantial part of its property, or all or any substantial part of the property of Lessor is sequestered, and any such order, judgment, decree of appointment or sequestration remains in effect, undismissed, unstayed or unvacated for a period of sixty (60) days after the date of entry thereof;

(g)    prior to Delivery of the Aircraft, a petition against Lessor or of all or any substantial part of its property in a proceeding under bankruptcy, insolvency or other similar laws of any Governmental Entity (as now or hereafter in effect) is filed and is not withdrawn, stayed, vacated or dismissed within sixty (60) days thereafter; or under the provisions of any Applicable Law providing for reorganization or winding up of corporations which may apply to Lessor, any court of competent jurisdiction assumes jurisdiction over, or custody or control of, Lessor or of all or any substantial part of its property, and such jurisdiction, custody or control remains in effect, unrelinquished, unstayed or unterminated for a period of sixty (60) days;

## SECTION 18.          REMEDIES

18.1    Upon the occurrence of any Lessor Event of Default and any time thereafter so long as the same shall be continuing, Lessee may, at its option declare this Lease to be in default by written notice to Lessee provided that this Lease shall be deemed to be declared in default without the necessity of written notice upon the occurrence of any Event of Default under Section 17.2 (e), (f), (g); and, at any time thereafter and without prejudice to any of its other rights under this Agreement or that may arise by operation of Applicable Law, Lessee may exercise one or more of the following remedies as Lessee in its sole discretion shall elect:

18.1.1 terminate this Lease by written notice to Lessor and immediately be repaid the Security Deposit and any remaining Maintenance Reserves; and

18.1.2 exercise any other remedies available under Applicable Law or in equity.

18.2    Upon the occurrence of any Lessee Event of Default and any time thereafter so long as the same shall be continuing, Lessor may, at its option declare this Lease to be in default by written notice to Lessee; provided that this Lease shall be deemed to be declared in default without the necessity of written notice upon the occurrence of any Event of Default under Section 17.1 (b), (f), (g), (h), and, at any time thereafter and without prejudice to any of its other rights under this Agreement or that may arise by operation of Applicable Law, Lessor may exercise one or more of the following remedies as Lessor in its sole discretion shall elect:

18.2.1 demand that Lessee, and Lessee shall upon such demand of Lessor and at Lessee's expense, immediately return the Aircraft to Lessor at such location in the United States as may be directed by Lessor, in the manner specified in such notice, and such return shall not be delayed for purposes of complying with the return conditions specified in Section 16 (none of which conditions shall be deemed to affect Lessor's possession of the Aircraft) or delayed for any other reason.  Notwithstanding the foregoing, at Lessor's option, Lessee shall be required thereafter to take such actions, at Lessee's expense, as would be required by the provisions of this Lease if the Aircraft were being returned at the end of the Term hereof.  In addition, Lessor, at its option and to the extent permitted by Applicable Law, may enter upon the premises where all or any part of the Aircraft is located and take immediate possession of and, at Lessor's sole option, remove the same (and/or any engine which is not an Engine but which is installed on the Airframe, subject to the rights of the owner, lessor or secured party thereof) by summary proceedings or otherwise, all without liability accruing to Lessor for or by reason of such entry or taking of possession whether for the restoration of damage to property, or otherwise, caused by such entry or taking, except damage caused by gross negligence or willful misconduct of Lessor or its agents;

18.2.2 sell at private or public sale, as Lessor may determine, or hold, use, operate or lease to others the Aircraft as Lessor in its sole discretion may determine, all free and clear of any rights of Lessee;

18.2.3 proceed by appropriate court action or actions, either at law or in equity, to enforce performance by Lessee of the applicable covenants of this Lease and to recover damages for the breach thereof as hereinafter set forth and as otherwise available under law and to rescind this Lease;

18.2.4 retain and/or liquidate the Security Deposit and any remaining Maintenance Reserves;

18.2.5 terminate this Lease by written notice to Lessee and/or repossess the Aircraft; and

18.2.6 exercise any other remedies available under Applicable Law.

In addition to the foregoing, Lessee shall be liable for any and all unpaid Rent during or after the exercise of any of the aforementioned remedies and until satisfaction of all of Lessee's obligations to Lessor hereunder, and for all legal fees and other costs and out of pocket expenses incurred by Lessor by reason of the occurrence of any Event of Default or the exercise of Lessor's remedies with respect thereto, including all costs and expenses incurred in connection with the return of the Aircraft in accordance with the terms of Section 16 or in placing the Aircraft in the condition and with airworthiness certification as required by such Section. Further, upon the occurrence of any of the events specified in paragraphs (e), (f), or (g), of Section 17, this Lease shall immediately terminate and Lessee shall forthwith, or shall require and instruct any such receiver or trustee to, return the Aircraft to Lessor in the condition required by and otherwise in accordance with Section 16.

18.3    Default Payments.  If a Lessee Event of Default occurs, Lessee will indemnify and pay to Lessor on demand against any loss, damage, expense, cost or liability that Lessor may sustain or incur directly or indirectly as a result, including:

18.3.1 all unpaid Rent and Supplemental Rent payable hereunder (provided however that if Lessee pays all the unpaid Rent, the Supplemental Rent, including the Casualty Value, Lessor shall transfer (without representation, recourse or warranty whatsoever other than the absence of Lessor Liens) the Aircraft to Lessee or as Lessee may direct and Lessor shall execute and deliver such documents evidencing such transfer and take such action as Lessee shall reasonably request to effect such transfer;

18.3.2 any loss of profit (calculated on an after-tax basis) suffered by Lessor as this Agreement would have been but for such Lessee Event of Default because of Lessor's inability to place the Aircraft on lease with another lessee on terms as favorable to Lessor as this Agreement or because whatever use, if any, to which Lessor is able to put the Aircraft upon its return to Lessor, or the funds arising upon a sale or other disposal of the Aircraft, is not as profitable (calculated on an after-tax basis) to Lessor as this Agreement would have been but for such Event of Default;

18.3.3 in the event that the Aircraft is sold prior to Lessor entering into a replacement lease, the amount (if any) by which (i) the aggregate of (1) the net sale proceeds (calculated by deducting the costs of sale together with the cost of preparing the Aircraft for sale and the repayment of any outstanding indebtedness in relation to the financing of the Aircraft) plus (2) the present value of the anticipated after-tax net income to be derived from such net sale proceeds up to the Expiration Date, discounted on a monthly basis using 3.0% per annum as the discount rate, are less than (ii) the aggregate of (1) the anticipated net sale proceeds (computed on the same basis as the net sale proceeds referred to in  (i)(1) above), assuming that the Aircraft would have been sold as soon as reasonably practicable following the Expiration Date plus (2) the present value of the income that would have been derived from the future Rent payable until the Expiration Date, discounted on a monthly basis using 3.0% per annum as the discount rate;

18.3.4 any amount of principal, interest, fees or other sums whatsoever paid or payable on account of funds borrowed in order to carry any amount unpaid by Lessee; and

18.3.5 any loss, cost, expense or liability sustained or incurred by Lessor owing to Lessee's failure to redeliver the Aircraft on the date, at the place and in the condition required by this Lease.

18.4    Waiver of Certain Article 2A Rights.  To the fullest extent permitted by Applicable Law, each of Lessor and Lessee hereby agrees that no rights or remedies referred to in Article 2A of the Uniform Commercial Code as enacted in the State of New York shall be conferred upon either Lessor or Lessee unless otherwise expressly granted in this Lease.

18.5    In effecting any repossession upon the occurrence of a Lessee Event of Default, Lessor, its representatives and agents, to the extent permitted by Applicable Law, shall: (a) have the right to enter upon any premises where it reasonably believes the Aircraft, the Airframe, an Engine or Part to be located; (b) not be liable, in conversion or otherwise, for the taking of any personal property of Lessee which is in or attached to the Aircraft, the Airframe, an Engine or Part which is repossessed; (c) not be liable or responsible, in any manner, for any inadvertent damage or injury to any of Lessee's property in repossessing and holding the Aircraft, the Airframe, an Engine or Part, except for that caused by or in connection with Lessor's or its agent's gross negligence or willful misconduct; (d) have the right to maintain possession of and dispose of the Aircraft, the Airframe, any Engine or Part on any premises owned by Lessee or under Lessee's control.

18.6    Upon the occurrence of a Lessee Event of Default, if demanded by Lessor, Lessee, at its sole expense, shall assemble and make the Aircraft, the Airframe, any Engines or Parts available at such location in the United States as may be directed by Lessor.  Lessee hereby agrees that, in the event of the return to or repossession by Lessor of the Aircraft, the Airframe, any Engines or Parts, any rights in any warranty (express or implied) heretofore assigned to Lessee or otherwise held by Lessee shall without further act, notice or writing be assigned or reassigned to Lessor, as applicable.  Lessee shall be liable to Lessor for all out of pocket expenses, disbursements, costs and fees incurred: (a) in repossessing, storing, preserving, maintaining, repairing and refurbishing the Aircraft, the Airframe, an Engine or Part to the condition required by Section 16; and, (b) in the event of a repossession by Lessor under this Section 18, in preparing the Aircraft, the Airframe, an Engine or Part for sale or lease, advertising the sale or lease of the Aircraft, the Airframe, an Engine or Part and selling or releasing the Aircraft, the Airframe, an Engine or Part.  Lessor is hereby authorized and instructed, at its option, to make expenditures which Lessor, in its sole discretion, considers advisable to repair and restore the Aircraft, the Airframe, an Engine or Part to the condition required by Section 16, all at Lessee's sole expense.

18.7    Whether or not Lessor has exercised, or shall thereafter at any time exercise, any of its rights hereunder with respect to the Aircraft or Lessee upon the occurrence of a Lessee Event of Default, Lessee and Lessor hereby stipulate that Lessor shall be entitled to sequester the Aircraft, and Lessee hereby agrees to deliver the Aircraft into the custody of Lessor or its designated agents for such purpose, at Lessee's expense, upon receipt of a written demand from Lessor with respect thereto.

18.8    No remedy referred to in this Section 18 is intended to be exclusive, but, to the extent permissible hereunder or under Applicable Law, each shall be cumulative and in addition to any other remedy referred to above or otherwise available to Lessor under the Cape Town Convention or otherwise at law or in equity, including, without limitation, Article 15 and Article 20 of the Cape Town Convention; and the exercise or beginning of exercise by Lessor of any one or more of such remedies shall not preclude the simultaneous or later exercise by Lessor of any or all of such other remedies.  No express or implied waiver by Lessor of any Default or

Event of Default shall in any way be, or be construed to be, a waiver of any future or subsequent Default or Event of Default.

## SECTION 19.          ALIENATION

Lessor shall have the right, at its sole cost and expense, to assign, sell or encumber any interest of Lessor in the Aircraft or this Lease and/or the proceeds hereof subject to the condition that any such assignment, sale or encumbrance be expressly made subject to the rights of Lessee under the provisions of this Lease, *provided* that any such transfer (A) shall not violate any provision of the Federal Aviation Act or prevent the continued United States registration of the Aircraft, or prevent the continued registration of the Aircraft under the Cape Town Convention, (B) shall not result in any liability, obligation or compliance requirements being imposed on Lessee under the Securities Act of 1933 or the Securities Exchange Act of 1934, or any other Federal or state securities laws, and (C) the transferee agrees to be bound by the terms of this Lease to the extent of such transfer.  Lessee shall be under no obligation to any assignee except upon written notice of such assignment, sale or encumbrance from Lessor.   To effect or facilitate any such assignment, sale or encumbrance, Lessee agrees to provide, at Lessor's cost and expense, such agreements, consents, conveyances or documents as may be reasonably requested by Lessor, which may include, without limitation, any request pursuant to Section 15 to register, establish or protect the interests (including any International Interest), rights and remedies assigned, created or intended to be created in favor of the transferee and an unrestricted release of Lessor from its obligations under this Lease. For purposes of Article XV of the Protocol, Lessee hereby acknowledges that it has given advance consent to, and shall be bound by, any assignment, sale or encumbrance made by Lessor in accordance with this Section 19.  The agreements, covenants, obligations and liabilities contained herein, including, without limitation, all obligations to pay Rent and to insure and to indemnify each Indemnitee, are made for the benefit of each Indemnitee and their respective successors and assigns. Upon any such assignment, Lessor shall have no further obligations under this Lease, but shall continue to be entitled to the benefit of each indemnity under this Lease.

If Lessor receives an offer from a third party to purchase the Aircraft, which offer Lessor intends to accept or negotiate, Lessor shall comply with the provisions of Section 22.

## SECTION 20.          MISCELLANEOUS

20.1    Severability, Amendment and Construction.   Any provision of this Lease which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof; and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent permitted by Applicable Law, Lessee hereby waives any provisions of Applicable Law which renders any provisions hereof prohibited or unenforceable in any respect. This Lease supersedes any prior or contemporaneous agreements, whether oral or in writing, of the parties hereto and shall constitute the entire agreement of the parties hereto. No term or provision of this Lease may be changed, waived, discharged or terminated orally, but only by an instrument in writing expressed to be a supplement to this Lease signed by an officer of the party against which the enforcement of the change, waiver, discharge or termination is sought. This Lease shall constitute an agreement of lease, and, except as provided in Section 9.1 with respect to replaced Parts, nothing herein shall be construed as conveying to Lessee any right, title or interest in the Aircraft or any Engine or Part except as a lessee only, and subject in all events to the terms and conditions hereof.  The headings in this Lease are for convenience of reference only and shall not define or

limit any terms of the provisions hereof. Whenever required by the context hereof, the singular shall include the plural and vice versa. All Exhibits and Schedules attached hereto are incorporated herein by reference and are deemed to be a part hereof. References to Sections, Exhibits and Schedules are to Sections, Exhibits and Schedules of this Lease, unless otherwise specifically indicated.

20.2    Governing Law; Jurisdiction.

20.2.1  This Lease shall in all respects be governed by, and construed in accordance with, the laws of the State of New York, including all matters of construction, validity and performance and including all claims under the Cape Town Convention, without regard to or application of conflict of laws rules. Lessor and Lessee hereby expressly submit to the nonexclusive jurisdiction of the state or federal courts located in New York County, New York for any disputes arising out of or in any way related to this Lease. Lessee further agrees that any legal action or proceeding against it or any of its assets may be brought in the state or federal courts situated in New York County, New York or in any jurisdiction where Lessee or any of its assets may be found. Lessee hereby irrevocably waives, to the fullest extent permitted by Applicable Law, any objection which Lessee may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Lease brought in New York County, New York or the courts of any country or place where Lessee or any of its assets may be found, and hereby further irrevocably waives any claim that any such suit, action or proceeding brought in New York has been brought in an inconvenient forum. EACH OF THE LESSOR AND LESSEE IRREVOCABLY WAIVES AS AGAINST THE OTHER ANY RIGHTS IT MAY HAVE TO A JURY TRIAL IN THE UNITED STATES OF AMERICA IN RESPECT OF ANY CIVIL ACTION ARISING UNDER THIS LEASE, ANY DOCUMENTS RELATED THERETO AS THEY MAY BE AMENDED FROM TIME TO TIME, ANY DEALINGS BETWEEN OR AMONT THE LESSEE, THE LESSOR AND THE LESSOR LENDER RELATING TO THE SUBJECT MATTER OF THIS TRANSACTION, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN THE LESSEE AND THE LESSOR.

20.2.2  The foregoing, however, shall not limit the rights of Lessor or Lessee to serve process in any other manner permitted by Applicable Law or to bring any legal action or proceeding or to obtain execution of judgment or to recover the Aircraft in any jurisdiction. Lessee and Lessor further agree that final judgment against the other in any action or proceeding in connection with this Lease shall be conclusive and may be enforced in any other jurisdiction within or outside of New York by suit on the judgment, a certified or exemplified copy of which shall be conclusive evidence of the fact and the amount of Lessee's or Lessor's, as the case may be, indebtedness.

20.3    Notices.  All notices required under the terms and provisions hereof shall be in writing, shall be sent to Lessor or Lessee at their respective addresses or facsimile numbers set forth in **Exhibit C** (or such other addresses or facsimile numbers as the parties may designate from time to time by notice pursuant to this Section 20.3) by facsimile transmission, email, U.S. mail or recognized courier. Any such notice shall become effective upon actual receipt, unless receipt is rejected, in which case notice shall become effective upon rejection.

20.4    Lessor's Right to Perform for Lessee.  If Lessee fails to make any payment of Supplemental Rent required to be made by it hereunder or fails to perform or comply with any covenant, agreement or obligation contained herein within the applicable grace period, Lessor

shall have the right but not the obligation to make such payment or conform or comply with such agreement, covenant or obligation, and the amount of such payment and the amount of the reasonable expenses of Lessor (including, without limitation, attorneys' fees and costs) incurred in connection with such payment or the performance thereof or compliance therewith, shall be payable by Lessee to Lessor as Supplemental Rent upon written demand. Lessor agrees to notify Lessee in writing prior to making any payment under this Section 20.4, unless the Aircraft will be in danger of loss, sale, confiscation, forfeiture or seizure should such payment not be made. The taking of any such action by Lessor pursuant to this Section 20.4 shall not constitute a waiver or release of any obligation of Lessee under the Lease, nor a waiver of any Event of Default which may arise out of Lessee's nonperformance of such obligation, nor an election or waiver by Lessor of any remedy or right available to Lessor under or in relation to this Lease.

20.5    Counterparts.  To the extent that this Lease constitutes chattel paper (as such term is defined in the Uniform Commercial Code as in effect in the State of New York), no security interest in this Lease may be created through the transfer or possession of any counterpart other than the original counterpart marked "Chattel Paper Counterpart" on the signature page of this Lease.  Subject to the preceding sentence, this Lease and the Lease Supplement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

20.6    Covenant of Quiet Enjoyment.  Lessor covenants and agrees that, so long as no Lessee Event of Default has occurred and is continuing, Lessor will not, nor will Lessor permit another Person claiming by, under or through Lessor, to interfere with Lessee's right to quiet enjoyment and continuing possession, use and operation of the Aircraft during the Term of this Lease, and this Lease shall not be terminated by Lessor except as expressly provided for herein.

20.7    Brokers.  Lessor and Lessee each represent for the benefit of one another that neither has engaged the services of a broker or similar representative agent for purposes of this Lease. Notwithstanding the foregoing, each party further agrees to indemnify and hold the other harmless from and against any and all claims, suits, damages, costs and expenses (including, without limitation, reasonable attorneys' fees) asserted by any agent, broker or other third party for any commission or compensation of any nature whatsoever based upon the lease of the Aircraft, if such claim, damage, cost or expense arises out of any action or alleged action by the indemnifying party, its employees or agents.

20.8    Confidential Treatment.  Each of the parties agrees not to disclose to any third party (other than their auditors, lenders, prospective buyers, affiliates, and respective professional advisors, and except as otherwise required by Applicable Law) any non public, proprietary information provided by and concerning the other party which the other party specifies as being of a sensitive and confidential nature, including, without limitation, the amount of Basic Rent due and owing hereunder; provided, however, that either party may disclose such information to the extent required (a) pursuant to an order of any court of competent jurisdiction, (b) to enforce its rights under this Lease, (c) pursuant to any procedure for discovery of documents in any legal proceeding, or (d) pursuant to a lawful requirement of any Governmental Authority with whose requirements that either party is legally obligated to comply.

20.9    USA Patriot Act.  Lessee hereby represents and warrants to Lessor that (a) all of the written information that Lessee has provided in connection with this Lease was true, correct and complete at the time it was given; (b) Lessee is entering into this Lease and the transaction contemplated hereby solely for its own account, risk and beneficial interest and not for the account or beneficial interest of any third party; (c) Lessee is not, and is not affiliated in any way

with, an individual, entity or organization identified on (i) any Office of Foreign Assets Control ("OFAC") "watch list", including, without limitation, OFAC's list of Specially Designated Nationals and Blocked Persons, or (ii) any Federal Bureau of Investigation "watch list" or (iii) any Bureau of Industry and Security list of unverified persons or denied persons; (d) Lessee does not have a shell bank or offshore bank; and (e) Lessee is not a person resident in, or whose funds are transferred from or through, or has operations in, a jurisdiction identified as non-cooperative by the Financial Action Task Force or sanctioned by OFAC.

20.10   Export Controls.  Lessee acknowledges that it is subject to the laws and regulations of the United States of America, and that it may be subject to United Nations regulations or sanctions and European Community Council regulations or sanctions, which prohibit or restrict the export and/or use of the Aircraft, the Airframe or any Engine ("Export Laws").  Lessee warrants and agrees that it will not export, re-export, transfer, or divert the Aircraft, the Airframe or any Engine in any way in violation of any Export Laws.

## SECTION 21.      Option to Renew

21.1    Renewal Option.  Either party may give the other an offer to renew or extend, including the proposed lease rate and length of lease term, no later than nine (9) months prior to the scheduled end of the lease term for each aircraft. The receiving party shall have thirty (30) days from the date of receipt of the offer to renew or extend to respond with either an acceptance of the offered terms or a counter-offer, in which case the parties would agree to negotiate and reach an agreement on new lease terms no later than six (6) months before the end of the lease term. If both parties have not reached agreement on extension terms by six months prior to the end of the lease term, there is no extension and Jetstream is free to market the aircraft for lease to third parties.

## SECTION 22.      Lessee's Right of First Offer

Lessee shall have a pre-market option using a procedure whereby at any time during the lease term, should Lessor consider selling the aircraft, Lessor would offer the aircraft to Lessee by giving notice to Lessee of no less than sixty (60) days, including the offered purchase price. If Lessee is unable to accept that offer and commit to the purchase terms within that period, Lessee shall be  deemed to have waived the pre-market offer and Lessor can offer the aircraft for sale to third parties, subject to the continued rights of the Lessee under this Lease, without having to again offer the aircraft for sale to Lessee.

[SIGNATURE PAGE FOLLOWS]

DocuSign Envelope ID: FB8B7E83-19D2-4D61-9909-542559C6E6B1

IN WITNESS WHEREOF, Lessor and Lessee, each pursuant to due authority, have each caused this Amended and Restated Lease Agreement 020 (2018) to be executed by their duly authorized officers as of the day and year first above written.

LESSOR

**JAH2015AN680PA, LLC**

LESSEE

**PENINSULA AVIATION SERVICES, INC.**

By: _____

Name:  Konrad E. Tree

Title:   Manager

By: _____

Name:  W. Stephen Jackson

Title:    Chief Financial Officer

DocuSign Envelope ID: 5401C6FD-97EE-4D53-B1B3-C85399DF15C7

IN WITNESS WHEREOF, Lessor and Lessee, each pursuant to due authority, have each caused this Amended and Restated Lease Agreement 020 (2018) to be executed by their duly authorized officers as of the day and year first above written.

LESSOR

**JAH2015AN680PA, LLC**

By: _____

Name: Konrad E. Tree

Title:  Manager

LESSEE

**PENINSULA AVIATION SERVICES, INC.**

By: *W. Stephen Jackson* _____
    3D6C829A71F14B7...

Name: W. Stephen Jackson

Title:   Chief Financial Officer

## EXHIBIT A
## AIRCRAFT SPECIFICATIONS

That certain Saab 2000 aircraft bearing manufacturer's serial no. 2000-020 and current FAA registration marking N680PA, along with those certain Rolls Royce AE2100A turboprop engines bearing manufacturer's serial nos. CAE-510055 and CAE-510070 *, respectively, and those certain Dowty Rotol model R381/6-123-F/5 propellers bearing manufacturer's serial nos. DAP0063 and DAP0058 **, respectively, together with all avionics, appliances, parts, instruments, accessions, accessories, furnishings or other equipment in Lessor's possession and installed on the Aircraft.

\* each of which is capable of producing 550 or more rated takeoff horsepower or its equivalent
\*\* each of which is capable of absorbing 750 or more rated takeoff shaft horsepower

**EXHIBIT B**
**AIRCRAFT DOCUMENT SUMMARY**

The following documentation (as applicable) shall be provided to Lessee upon Delivery and shall be returned upon the Return Occasion by Lessee to Lessor, with all amendments, updates, supplements and other documents as are generated during the Term pursuant to the Maintenance Program and as are otherwise required under Applicable Law. The documentation shall be in English, and shall be current and include all up to date revisions. Bulk storage media (microfilm, CD, DVD) shall be in an industry standard format, requiring no proprietary or "fee added" software to access.

If any manuals (such as the Aircraft Maintenance Manual, the Illustrated Parts Catalogue (IPC) etc.) are incorporated into Lessee's customized document set at Aircraft delivery or subsequently during the Term, then Lessee shall ensure that they are de-customized at its cost on the Return Occasion.

A full list of documentation shall be recorded at the Delivery Date under the Certificate of Technical Acceptance attached as Attachment A to Exhibit D - Lease Supplement No. 1.

A.      Certificates

B.      Manuals

C.      Airworthiness Directives Documentation

D.      Engineering Documentation

E.      Aircraft Maintenance Status Summaries

F.      Aircraft Maintenance Records

G.      Configuration Status

H.      Aircraft Historical Records

I.      Engine and Propeller Records

J.      APU Records

K.      Component Records

L.      Landing Gear Records

# EXHIBIT C
## CERTAIN DEFINITIONS, VALUES AND CONTRACTUAL PROCEDURES

**EXHIBIT D**
**LEASE SUPPLEMENT NO. 1**

LEASE SUPPLEMENT NO. 1, dated December 21, 2018, between JAH2015AN680, LLC ("Lessor"), and Peninsula Aviation Services, Inc. ("Lessee").

WITNESSETH

WHEREAS, Lessor and Lessee have previously entered into that certain Amended and Restated Lease Agreement 020 dated as of December 21, 2018 (herein called the "Lease" and the defined terms therein being hereinafter used with the same meaning);

WHEREAS, the Lease provides for the execution and delivery of a lease supplement substantially in the form hereof for the purpose of leasing the Aircraft described below under the Lease as and when delivered by Lessor to Lessee in accordance with the terms thereof; and

WHEREAS, Lessee now seeks to accept delivery of the Aircraft under and pursuant to the Lease;

NOW THEREFORE, for and in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Lessor and Lessee hereby agree as follows.

1.      Lessor hereby delivers and leases to Lessee under the Lease, and Lessee hereby accepts and leases from Lessor under the Lease, that certain Saab 2000 aircraft bearing manufacturer's serial no. 2000-020 and current FAA registration marking N680PA, along with those certain Rolls Royce AE2100A turboprop engines bearing manufacturer's serial nos. CAE 510055 and CAE 510070 *, respectively, and those certain Dowty Rotol model R381/6-123-F/5 propellers bearing manufacturer's serial nos. DAP0063 and DAP0058 **, respectively, more specifically described and in the condition specified on Attachment A hereto (the "Aircraft"). *[handwritten: –Scania]*

2.      The Commencement Date for the lease of the Aircraft is the date of this Lease Supplement set forth in the opening paragraph hereof.

3.      The Term shall commence on the Commencement Date and shall end on the Expiration Date, which shall be sixty (60) months after the Basic Rent Payment Date, unless extended in accordance with the Lease.

4.      Lessee hereby confirms to Lessor that, (i) in accordance with the terms of Section 6 of the Lease, the Lease Identification has been placed in the cockpit of the Aircraft and the Airframe and each Engine installed thereon or belonging thereto have been duly marked, (ii) Lessee accepts the Aircraft, including the Aircraft Documents, for all purposes hereof and pursuant to Section 3.4 of the Lease, and.

5.      (Initials of Lessee: _N/a_ ) LESSEE HEREBY REPRESENTS TO LESSOR THAT LESSEE HAS INSPECTED THE AIRCRAFT AND THAT THE AIRCRAFT (i) IS AIRWORTHY AND IN THE CONDITION SPECIFIED ON ATTACHMENT A HERETO, (ii) IS SUITABLE FOR OPERATION IN LESSEE'S BUSINESS AND (iii) COMPLIES WITH THE REQUIREMENTS OF THE LEASE IN ALL RESPECTS AND ALL APPLICABLE LAWS AND IS HEREBY ACCEPTED FOR ALL PURPOSES OF THE LEASE.

6.      All of the terms and provisions of the Lease are incorporated herein by reference to the same extent as if fully set forth herein.

 *[handwritten: *, ** see Attachment a]*

7.      This Lease Supplement may be executed in any number of counterparts, each of which counterparts, except as provided in Section 20.5 of the Lease, shall for all purposes be deemed to be an original, and all such counterparts shall together constitute but one and the same Lease Supplement.

IN WITNESS WHEREOF, Lessor and Lessee have caused this Lease Supplement No. 1 to be duly executed as of the day and year first above written.

LESSOR                                          Lessee

**JAH2015AN680PA, LLC**                          **PENINSULA AVIATION SERVICES, INC.**


By:    _____        By:    _____
Name:  _____        Name:  _____
Title: _____        Title: _____

Attachment A to
Lease Supplement

## CERTIFICATE OF TECHNICAL ACCEPTANCE
## FOR AIRCRAFT BEING OFFERED
## BY LESSOR TO LESSEE

**LESSOR:**  JAH2015AN680PA, LLC

**LESSEE:**  PENINSULA AVIATION SERVICES, INC.

**DATE OF ACCEPTANCE OF AIRCRAFT:**  _____

This Certificate of Technical Acceptance as Attachment A of Lease Supplement No. 1 is executed on and as of the date set forth below pursuant to the Amended and Restated Aircraft Lease Agreement 020 (2018) dated as of the _____ day of _____ 2018 between the Lessor and the Lessee.

**(1)  DETAILS OF ACCEPTANCE**

The Lessee hereby indicates and confirms to the lessor, its successors and assigns, that at _____ o'clock on the _____ of _____, 2018 at _____ Airport the Lessor has proffered for technical acceptance and the Lessee has technically accepted the following equipment and records.

| a) | Airplane Model | MSN | Registration | TTSN | TCSN |
|---|---|---|---|---|---|
| | Saab- Srania 2000 | 2000-020 | N680PA | | |

| b) | Major Airframe Checks | Date Last Accomplished | TT at last accomplishment | TC at last accomplishment | Check Interval |
|---|---|---|---|---|---|
| | C Check/4,000 FH Inspection | | | | 4,000 FH |
| | 8-Year Corrosion Inspection | | | | 96 Months |
| | 20K / 12K Cycle Fatigue Inspection | | | | 12,000 FC |

| c) | Engine Model: | TTSN | TCSN | TSLSV | CSLSV | LLP Limiter | Overhaul Interval |
|---|---|---|---|---|---|---|---|
| | Rolls Royce AE2100A ESN CAE-510070* | | | | | | |
| | Date of last Engine Overhaul: | | | | | | |
| | Rolls Royce AE2100A ESN CAE-510055* | | | | | | |
| | Date of last Engine Overhaul: | | | | | | |

Note:    TSLSV – time since last Engine major restoration shop visit
CSLSV – cycles since last Engine major restoration shop visit

\* EACH OF WHICH IS CAPABLE OF PRODUCING 550 OR MORE RATED TAKEOFF HORSEPOWER OR ITS EQUIVALENT

| d) | Propeller Model: | TTSN | TCSN | TSO | CSO | Overhaul Interval |
|---|---|---|---|---|---|---|
|   | Dowty Rotol R381/6-123-F/5 SN DAP0063✗✗ |   |   |   |   | 7,500 FH |
|   | Date of last Propeller Overhaul: | | | | | |
|   | Dowty Rotol R381/6-123-F/5 SN DAP0058✗✗ |   |   |   |   | 7,500 FH |
|   | Date of last Propeller Overhaul: | | | | | |

Note:    TSO – time since last Propeller Overhaul
         CSO – cycles since last Propeller Overhaul

| e) | APU Model: | TTSN | TCSN | TSO | CSO | LLP Limiter |
|---|---|---|---|---|---|---|
|   | 4500090D S/N |   |   |   |   |   |
|   | Date of last APU Overhaul: | | | | | |

Note:    TSO – time since last APU Overhaul
         CSO – cycles since last APU Overhaul

| f) | LH MLG | | TTSN | TCSN | TSO | CSO |
|---|---|---|---|---|---|---|
|   | Shock Strut P/N: | Shock Strut S/N: |   |   |   |   |
|   | Drag Brace P/N: | Drag Brace S/N: |   |   |   |   |
|   | Date of last LH MLG Overhaul: | | | | | |

| | RH MLG | | TTSN | TCSN | TSO | CSO |
|---|---|---|---|---|---|---|
|   | Shock Strut P/N: | Shock Strut S/N: |   |   |   |   |
|   | Drag Brace P/N: | Drag Brace S/N: |   |   |   |   |
|   | Date of last RH MLG Overhaul: | | | | | |

| | NLG | | TTSN | TCSN | TSO | CSO |
|---|---|---|---|---|---|---|
|   | Shock Strut P/N: |   |   |   |   |   |
|   | Drag Brace P/N: | Drag Brace S/N: |   |   |   |   |
|   | Date of last NLG Overhaul: | | | | | |

g) The Lessee has carried out a review of the aircraft and equipment and all relevant records, data and logs and manuals listed in the Lease as supplied by Lessor and accepts that all records and data supplied are correct and at current AD status at the date of signing of this Certificate of Acceptance.

(2)  Outstanding Items:
     The conditions listed below are currently outstanding and although the Aircraft described above is deemed to have been technically accepted by the Lessee, the following remaining items must be initiated and/or remedied, as the case may be, no later than the dates specified below.

| Item | Details / Action to be taken | Date |
|---|---|---|
|   | See Appendix A |   |
|   |   |   |
|   |   |   |

**(3) Fuel Remaining on Board:**

| LH TANK (KG/LB) | CENTER TANK (KG/LB) | RH TANK (KG/LB) |
|---|---|---|
|  |  |  |

TOTAL (KG/LB) _____ TOTAL (liters/gallons) _____(@.80 SG)

**(4)** In WITNESS WHEREOF, the Lessor and the Lessee have caused this Certificate of Technical Acceptance to be executed in their names, by their duly authorized officers or representatives, as of the date set forth in paragraph 1 above.

**(5)** This Certificate of Technical Acceptance shall be construed as acceptance by the Lessee that the Aircraft is delivered in accordance with Section 3 of the Lease - Delivery and Acceptance.

| ON BEHALF OF LESSOR | ON BEHALF OF LESSEE |
|---|---|
| SIGNED | SIGNED |
| PRINT NAME | PRINT NAME |
| TITLE | TITLE |
| DATE | DATE |

## CTA Appendices:

(A) Outstanding Items if applicable (item 2)☐

## EXHIBIT E

## DELIVERY CONDITIONS

Lessor shall deliver the Aircraft at the Delivery Location in as-is/where-is condition with a valid Certificate of Airworthiness.

Lessor shall provide the hardware and documents necessary to satisfy the FAA ADS-B requirements at Lessor's sole cost.  The installation and all costs related to same shall be borne by Lessee.

## EXHIBIT F
## RETURN CONDITIONS

At the expiration of the Lease Term all payments due under the Lease Agreement shall have been paid in full. Lessee shall return the Aircraft and their accompanying technical records at its sole expense to Lessor to a location in the United States as designated by Lessor.

Upon such return, the Aircraft shall be in a configuration and condition suitable for operating in regularly scheduled commercial service under US FAR Part 121 scheduled operations, and shall further satisfy all the following conditions:

a.      Scheduled Maintenance – Airframe.  Lessee will be responsible for ensuring that all airworthiness limitations checks shall be current. Upon return to Lessor each Airframe and its components shall individually have the same time and cycles remaining to the next-due inspections and shall be in the same condition, normal wear and tear excepted, as when delivered to Lessee on the Delivery Date, e.g., "mirror in – mirror out."

b.      Scheduled Maintenance – Landing Gear. Lessee will be responsible for ensuring that all applicable landing gear overhauls and inspections shall be current. Upon return to Lessor all landing gear components shall individually have the same time and cycles remaining to the next-due inspections and shall be in the same condition, normal wear and tear excepted, as when delivered to Lessee on the Delivery Date, e.g., "mirror in – mirror out."

c.      Scheduled Maintenance – Engines and Propellers.  All Engines and propellers installed on the Aircraft will be in compliance with the manufacturer's maintenance program. Lessee will be responsible for ensuring that all applicable Engine, Engine component and propeller overhauls and inspections shall be current. Upon return to Lessor all Engines, propellers and their components shall have the same time and cycles remaining to the next-due inspections and shall be in the same condition, normal wear and tear excepted, as when delivered to Lessee on the Delivery Date, e.g., "mirror in – mirror out."

d.      Scheduled Maintenance - Rotables.  All rotables installed on the Aircraft will be in compliance with the manufacturer's maintenance program. Upon return to Lessor all rotables shall be in the same condition, normal wear and tear excepted, as when delivered to Lessee on the Delivery Date, e.g., "mirror in – mirror out."

e.      Service Bulletins & Airworthiness Directives.  All mandatory service bulletins and airworthiness directives will be complete and the Aircraft shall have all such bulletins or directives due for a minimum of sic (6) months after the return of the Aircraft to Lessor completed.

f.      Deferred Maintenance.  At the time of the Aircraft's return, each Aircraft shall be current on its approved maintenance program, without temporary extensions for convenience. There will be no open, outstanding, or deferred maintenance items, scheduled or unscheduled, against the Aircraft, including those identified in pre-return inspections or test flights.

g.      Corrosion.   Lessee shall have maintained corrosion control through its approved maintenance program as required. There shall be no untreated or uncorrected corrosion remaining on the Aircraft upon its return by Lessee, including within the fuel tanks.

h.      Pre-Return Inspection.  Lessor shall be permitted to perform a minimum of two physical inspections of the Aircraft, exclusive of test flights. One inspection will be performed during the maintenance check which precedes return, and one inspection shall be performed immediately prior to return.

j.      Acceptance Flight.  Lessee shall provide for acceptance flights upon reasonable advance notice from Lessor, to not exceed 60 minutes per flight, exclusive of ground run and taxi time, as necessary to demonstrate the airworthiness of the Aircraft and the normal functioning of all systems and components in conjunction with the return provisions of the Lease Agreement, and subsequent flights, as necessary, to demonstrate correction of any deficiency. Lessee shall provide flight crew to conduct the acceptance flights and Lessor shall be entitled to have up to two observers in addition to flight crew on board for such flights. The cost of the initial acceptance flight and any subsequent flights necessary to demonstrate the correction of deficiencies identified during the initial flight to be the sole responsibility of Lessee.

The Aircraft may be returned in a condition different from that specified herein, in which case, based upon manufacturer's-approved intervals for each affected item, as well as then-current inspection and overhaul costs, the Lessee and Lessor shall calculate the estimated individual economic value of the amount by which each item differs from the return conditions specified in (a) through (h) herein.  These estimates will be netted into an aggregate dollar amount in favor of Lessor, and the appropriate remittance will be made to Lessor by the Lessee (the "Equivalency Settlement"). For the avoidance of ambiguity, the Lessor shall in no event be responsible for economic betterment to the aircraft upon return, excepting Lessor's obligation to reimburse Lessee for a portion of Qualified AD/SB Costs as articulated herein.

Upon return of the Aircraft at the expiration of each Lease Term and there having been (i) no uncured events of default and (ii) verification of the aircraft having met the return conditions articulated herein, any remaining Security Deposits shall be promptly returned to Lessee.

## EXHIBIT G
## MAINTENANCE RECORDING REQUIREMENTS

1.    Lessee shall keep or maintain in the English language the following records

    A.    All the records necessary to maintain the Certificate of Airworthiness for the Aircraft and to register the Aircraft with the Aviation Authority after the end of the Term.

    B.    Aircraft Documents containing the following information:

        (a)    The total time and flight cycles in service of the Airframe.

        (b)    The current status of LLPs of the Airframe, each Engine, rotor, and appliance. The "back-to birth" records for all LLPs.

        (c)    The time since last overhaul of all items installed on the Aircraft which are required to be overhauled on a specified time basis.

        (d)    The identification of the current inspection status of the Aircraft, including the times since the last inspections required by the inspection program under which the Aircraft and its appliances are maintained.

        (e)    The current status of applicable ADs, including the method of compliance.

        (f)    A list of current repairs and alterations to the Airframe, each Engine, Propeller, rotor, and appliance.

2.    The records specified in Paragraph 1.B of this Exhibit shall be retained and transferred with the Aircraft at the time the Aircraft is returned to Lessor.

3.    Lessee shall make all maintenance records required to be kept by this Exhibit available for inspection by Lessor, the Aviation Authority and any authorized representative of the US National Transportation Safety Board (NTSB) in accordance with the Federal Aviation Act.

# EXHIBIT H

## LIFE LIMITED PARTS

## EXHIBIT I

SAAB 2000, S/N 2000-020, N680PA

### Maintenance Reserves

Except if there is a prepaid maintenance plan validly in force in relation to the Airframe, the Engines or a particular component, Maintenance reserves are to be paid to Lessor monthly in arrears on the following schedule (all amounts in USD), but subject to reserves not being payable in relation to the airframe, engine or other component where there is a prepaid maintenance plan validly in force in relation to that component.

(All amounts are in United States Dollars ($ USD)

### Maintenance Reserve Categories

| Intentionally omitted from the FAA filing counterpart | | |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

The above maintenance reserves are determined on the basis of the anticipated Closing Date(s), and shall be increased on the one-year anniversary of the Closing Date of each Aircraft at the lesser of 3% or the consumer price index of the country of aircraft registration or in accordance with the airframe and engine manufacturer's escalations.

## LEASE SUPPLEMENT NO. 1

LEASE SUPPLEMENT NO. 1, dated December 21, 2018, between  JAH2015AN680, LLC ("Lessor"), and Peninsula Aviation Services, Inc. ("Lessee").

### WITNESSETH

WHEREAS, Lessor and Lessee have previously entered into that certain Amended and Restated Lease Agreement 020 dated as of December 21, 2018 (herein called the "Lease" and the defined terms therein being hereinafter used with the same meaning);

WHEREAS, the Lease provides for the execution and delivery of a lease supplement substantially in the form hereof for the purpose of leasing the Aircraft described below under the Lease as and when delivered by Lessor to Lessee in accordance with the terms thereof; and

WHEREAS, Lessee now seeks to accept delivery of the Aircraft under and pursuant to the Lease;

NOW THEREFORE, for and in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Lessor and Lessee hereby agree as follows.

1.      Lessor hereby delivers and leases to Lessee under the Lease, and Lessee hereby accepts and leases from Lessor under the Lease, that certain Saab-Scania 2000 aircraft bearing manufacturer's serial no. 2000-020 and current FAA registration marking N680PA, along with those certain Rolls Royce AE2100A turboprop engines bearing manufacturer's serial nos. CAE 510055 and CAE 510070 *, respectively, and those certain Dowty Rotol model R381/6-123-F/5 propellers bearing manufacturer's serial nos. DAP0063 and DAP0058 **, respectively, more specifically described and in the condition specified on Attachment A hereto (the "Aircraft").

2.      The Commencement Date for the lease of the Aircraft is the date of this Lease Supplement set forth in the opening paragraph hereof.

3.      The Term shall commence on the Commencement Date and shall end on the Expiration Date, which shall be sixty (60) months after the Basic Rent Payment Date, unless extended in accordance with the Lease.

4.      Lessee hereby confirms to Lessor that, (i) in accordance with the terms of Section 6 of the Lease, the Lease Identification has been placed in the cockpit of the Aircraft and the Airframe and each Engine installed thereon or belonging thereto have been duly marked, (ii) Lessee accepts the Aircraft, including the Aircraft Documents, for all purposes hereof and pursuant to Section 3.4 of the Lease, and.

5.      **(Initials of Lessee:** _AJa_  **)** LESSEE HEREBY REPRESENTS TO LESSOR THAT LESSEE HAS INSPECTED THE AIRCRAFT AND THAT THE AIRCRAFT (i) IS AIRWORTHY AND IN THE CONDITION SPECIFIED ON ATTACHMENT A HERETO, (ii) IS SUITABLE FOR OPERATION IN LESSEE'S BUSINESS AND (iii) COMPLIES WITH THE REQUIREMENTS OF THE LEASE IN ALL RESPECTS AND ALL APPLICABLE LAWS AND IS HEREBY ACCEPTED FOR ALL PURPOSES OF THE LEASE.

6.      All of the terms and provisions of the Lease are incorporated herein by reference to the same extent as if fully set forth herein.

*, ** see attached Attachment A

DocuSign Envelope ID: FB8B7E83-19D2-4D61-9909-542559C6E6B1

7.     This Lease Supplement may be executed in any number of counterparts, each of which counterparts, except as provided in Section 20.5 of the Lease, shall for all purposes be deemed to be an original, and all such counterparts shall together constitute but one and the same Lease Supplement.

IN WITNESS WHEREOF, Lessor and Lessee have caused this Lease Supplement No. 1 to be duly executed as of the day and year first above written.

LESSOR

**JAH2015AN680PA, LLC**

Lessee

**PENINSULA AVIATION SERVICES, INC.**

By: _____
Name:  Konrad E. Tree
Title:  Manager

By: _____
Name:  W. Stephen Jackson
Title:  Chief Financial Officer

DocuSign Envelope ID: 5401C6FD-97EE-4D53-B1B3-C85399DF15C7

7.    This Lease Supplement may be executed in any number of counterparts, each of which counterparts, except as provided in Section 20.5 of the Lease, shall for all purposes be deemed to be an original, and all such counterparts shall together constitute but one and the same Lease Supplement.

IN WITNESS WHEREOF, Lessor and Lessee have caused this Lease Supplement No. 1 to be duly executed as of the day and year first above written.

LESSOR

**JAH2015AN680PA, LLC**

Lessee

**PENINSULA AVIATION SERVICES, INC.**

By: _____
Name: Konrad E. Tree
Title:   Manager

By: _____
Name:  W. Stephen Jackson
Title:   Chief Financial Officer

Attachment A to
Lease Supplement

## CERTIFICATE OF TECHNICAL ACCEPTANCE
## FOR AIRCRAFT BEING OFFERED
## BY LESSOR TO LESSEE

**LESSOR:**   JAH2015AN680PA, LLC

**LESSEE:**   PENINSULA AVIATION SERVICES, INC.

**DATE OF ACCEPTANCE OF AIRCRAFT:**   _Dec. 21, 2018_

This Certificate of Technical Acceptance as Attachment A of Lease Supplement No. 1 is executed on and as of the date set forth below pursuant to the Amended and Restated Aircraft Lease Agreement 020 (2018) dated as of the _21st_ day of _Dec_ 2018 between the Lessor and the Lessee.

**(1)      DETAILS OF ACCEPTANCE**

The Lessee hereby indicates and confirms to the lessor, its successors and assigns, that at _2:00 pm, CST_ o'clock on the _21st_ of _Dec_ , 2018 at _ANC**_ Airport the Lessor has proffered for technical acceptance and the Lessee has technically accepted the following equipment and records.

| a) | Airplane Model | MSN | Registration | TTSN | TCSN |
|---|---|---|---|---|---|
| | SAAB-SCANIA 2000 | 2000-020 | N680PA | | |

| b) | Major Airframe Checks | Date Last Accomplished | TT at last accomplishment | TC at last accomplishment | Check Interval |
|---|---|---|---|---|---|
| | C Check/4,000 FH Inspection | | | | 4,000 FH |
| | 8-Year Corrosion Inspection | | | | 96 Months |
| | 20K / 12K Cycle Fatigue Inspection | | | | 12,000 FC |

| c) | Engine Model: | TTSN | TCSN | TSLSV | CSLSV | LLP Limiter | Overhaul Interval |
|---|---|---|---|---|---|---|---|
| | _Rolls Royce_ AE2100A ESN CAE-510070* | | | | | | |
| | | Date of last Engine Overhaul: | | | | | |
| | _Rolls Royce_ AE2100A ESN CAE-510055** | | | | | | |
| | | Date of last Engine Overhaul: | | | | | |

Note:    TSLSV – time since last Engine major restoration shop visit
CSLSV – cycles since last Engine major restoration shop visit

** _Anchorage, Alaska_

* each of which is capable of producing 550 or more rated takeoff horsepower or its equivalent

| d) | Propeller Model: | TTSN | TCSN | TSO | CSO | Overhaul Interval |
|---|---|---|---|---|---|---|
| | Dowty Rotol R381 /6-123-F/5 SN DAP0063 ** | | | | | 7,500 FH |
| | Date of last Propeller Overhaul: | | | | | |
| | Dowty Rotol R381 /6-123-F/5 SN DAP0058 ** | | | | | 7,500 FH |
| | Date of last Propeller Overhaul: | | | | | |

Note:   TSO – time since last Propeller Overhaul
CSO – cycles since last Propeller Overhaul

| e) | APU Model: | TTSN | TCSN | TSO | CSO | LLP Limiter |
|---|---|---|---|---|---|---|
| | 4500090D S/N | | | | | |
| | Date of last APU Overhaul: | | | | | |

Note:   TSO – time since last APU Overhaul
CSO – cycles since last APU Overhaul

| f) | LH MLG | | TTSN | TCSN | TSO | CSO |
|---|---|---|---|---|---|---|
| | Shock Strut P/N: | Shock Strut S/N: | | | | |
| | Drag Brace P/N: | Drag Brace S/N: | | | | |
| | | Date of last LH MLG Overhaul: | | | | |

| | RH MLG | | TTSN | TCSN | TSO | CSO |
|---|---|---|---|---|---|---|
| | Shock Strut P/N: | Shock Strut S/N: | | | | |
| | Drag Brace P/N: | Drag Brace S/N: | | | | |
| | | Date of last RH MLG Overhaul: | | | | |

| | NLG | | TTSN | TCSN | TSO | CSO |
|---|---|---|---|---|---|---|
| | Shock Strut P/N: | | | | | |
| | Drag Brace P/N: | Drag Brace S/N: | | | | |
| | | Date of last NLG Overhaul: | | | | |

**g)** The Lessee has carried out a review of the aircraft and equipment and all relevant records, data and logs and manuals listed in the Lease as supplied by Lessor and accepts that all records and data supplied are correct and at current AD status at the date of signing of this Certificate of Acceptance.

**(2)  Outstanding Items:**

The conditions listed below are currently outstanding and although the Aircraft described above is deemed to have been technically accepted by the Lessee, the following remaining items must be initiated and/or remedied, as the case may be, no later than the dates specified below.

| Item | Details / Action to be taken | Date |
|---|---|---|
| | See Appendix A | |
| | | |
| | | |

** each of which is capable of absorbing 750 or more rated takeoff shaft horsepower

**(3) Fuel Remaining on Board:**

| LH TANK (KG/LB) | CENTER TANK (KG/LB) | RH TANK (KG/LB) |
|---|---|---|
|  |  |  |

TOTAL (KG/LB) _____ TOTAL (liters/gallons) _____ (@.80 SG)

**(4)** In WITNESS WHEREOF, the Lessor and the Lessee have caused this Certificate of Technical Acceptance to be executed in their names, by their duly authorized officers or representatives, as of the date set forth in paragraph 1 above.

**(5)** This Certificate of Technical Acceptance shall be construed as acceptance by the Lessee that the Aircraft is delivered in accordance with Section 3 of the Lease - Delivery and Acceptance.

| ON BEHALF OF LESSOR | ON BEHALF OF LESSEE |
|---|---|
| _____ | _____ |
| SIGNED | SIGNED |
| _____ | _____ |
| PRINT NAME | PRINT NAME |
| _____ | _____ |
| TITLE | TITLE |
| _____ | _____ |
| DATE | DATE |
| _____ | _____ |

## CTA Appendices:

(A) Outstanding Items if applicable (item 2)☐

FILED with FAA
AIRCRAFT
REGISTRATION BR
2019 FEB -1 AM 10:39
OKLAHOMA CITY OKLAHOMA

# AMENDMENT NO. 1

## TO

## AMENDED AND RESTATED AIRCRAFT LEASE AGREEMENT 020 (2018)

between

### JAH2015AN680PA, LLC
Lessor,

and

### Peninsula Aviation Services, Inc.
Lessee,

March 24, 2020

### One SAAB-Scania SAAB 2000 Aircraft
Bearing Manufacturer's Serial
Number MSN 2000-020
Registration: N680PA

## AMENDMENT NO. 1

## TO

## AMENDED AND RESTATED AIRCRAFT LEASE AGREEMENT 020 (2018)

### SAAB- Scania SAAB 2000, MSN 2000-020, Registration: N680PA
### (the "Aircraft" as more fully described in Annex A attached hereto)

**WHEREAS, JAH2015AN680PA, LLC** as **Lessor** and **Peninsula Aviation Services, Inc.** as **Lessee** entered into an Amended and Restated Aircraft Lease Agreement 020 (2018) (the "Lease") dated as of December 21, 2018 as more fully described in Annex "A" attached hereto;

**WHEREAS,** Lessee and Jetstream Aviation Capital, LLC ("Jetstream") entered into that certain letter agreement (the "Side Letter") dated as of December 21, 2018; and

**WHEREAS,** Lessor and Lessee desire to enter into this Amendment No. 1 to the Lease (this "Amendment No. 1"), dated as of March 24, 2020 and desire to amend terms of the Lease pursuant to Paragraph 7 of the Side Letter.

**NOW, THEREFORE,** Lessor and Lessee agree to amend the Lease as follows:

### I.

Exhibit "C" Maintenance Reserves shall now include the following sentence:

"Effective as of January 1, 2020 and for the remainder of the Term, Lessee shall no longer have the obligation to pay Maintenance Reserves as supplemental rent to Lessor."

### II.

Lessor and Lessee acknowledge and agree that the existing Maintenance Reserves (per category) will be made available to Lessee as reimbursement for Maintenance Events as described in Exhibit "C" of the Lease.

### III.

Lessor and Lessee agree that all of the other terms and conditions of the Lease remain in full force and effect.

[Signature page to follow]

Execution

IN WITNESS WHEREOF, Lessor and Lessee, each pursuant to due authority, have each caused this Amendment No. 1 to the Amended and Restated Aircraft Lease Agreement 020 (2018) to be executed by their duly authorized officers as of the day and year first above written.

**LESSOR**

**JAH2015AN680PA, LLC**

By: _____

Name: Konrad E. Tree

Title: Authorized Signatory

**LESSEE**

**PENINSULA AVIATION SERVICES, INC.**

By: _____

Name: _____

Title: _____

IN WITNESS WHEREOF, Lessor and Lessee, each pursuant to due authority, have each caused this Amendment No. 1 to the Amended and Restated Aircraft Lease Agreement 020 (2018) to be executed by their duly authorized officers as of the day and year first above written.

**LESSOR**

**JAH2015AN680PA, LLC**


By: _____

Name: _____

Title: _____




**LESSEE**

**PENINSULA AVIATION SERVICES, INC.**


By: _____

Name:   John J. Mannion_____

Title:   Chief Financial Officer_____

## ANNEX A

### Description of Aircraft

Airframe

| Manufacturer | Model | Registration No. | Mfg. Serial No. |
|---|---|---|---|
| Saab | 2000 | N680PA | 2000-020 |

(which can transport at least eight (8) persons (including Crew) or goods in excess of 2750 kilograms)

Engines

| Manufacturer | Model | Mfg. Serial No. |
|---|---|---|
| Rolls Royce | AE2100A | CAE-510055 |
| | | CAE-510070 |

(each of which Engine has 550 or more rated takeoff shaft horsepower or the equivalent of such horsepower)

Propellers

| Manufacturer | Model | Mfg. Serial No. |
|---|---|---|
| Two (2) Dowty Rotol | R381/6-123-F/5 | DAP0063 |
| | | DAP0058 |

(each of which propeller is capable of absorbing 750 or more rated takeoff shaft horsepower or its equivalent)

### Description of Lease

Amended and Restated Aircraft Lease Agreement 020 (2018) dated as of December 21, 2018, between JAH2015AN680PA, LLC as Lessor and Peninsula Aviation Services, Inc. as Lessee, to which was attached Lease Supplement No. 1 dated December 21, 2018 covering the Aircraft which was recorded by the Federal Aviation Administration on March 15, 2019, as Conveyance No. NJ015534, (collectively, the "Lease").