# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| RAVN AIR GROUP, INC. *et al*.,[1] | Case No. 20-10755 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Re: Dkt. Nos. 136 & 137** |

**DECLARATION OF JOHN MANNION IN SUPPORT
OF THE APPLICATIONS OF RAVN AIR GROUP, INC., *ET AL*,
FOR ORDERS AUTHORIZING THE DEBTORS TO RETAIN AND
EMPLOY KELLER BENVENUTTI KIM LLP AS LEAD BANKRUPTCY
COUNSEL AND RETAIN AND EMPLOY BLANK ROME LLP AS
CO-COUNSEL EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE**

I, John Mannion, Chief Financial Officer ("CFO") of Ravn Air Group, Inc. ("RAG") and the CFO of all the other above-captioned debtors and debtors in possession (collectively with RAG, the "Debtors"), being duly sworn, state the following under penalty of perjury:

1.    In my capacity as CFO of the Debtors, I am familiar with the Debtors' day-to-day operations, business, financial affairs, and books and records.  I am directly involved in supervising outside counsel and monitoring and controlling legal costs.

2.    I submit this declaration (the "Declaration") pursuant to paragraph D.2 of the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 By Attorneys in Larger Chapter 11 Cases, effective November 1, 2013* (the "UST Guidelines"), in support of the Applications to Retain and Employ Keller Benvenutti Kim LLP ("Keller Benvenutti Kim") as Lead Bankruptcy Counsel and Blank Rome LLP

---

[1]  The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows:  Ravn Air Group, Inc. (3047), Ravn Air Group Holdings, LLC (5356), JJM, Inc. (4858), HoTH, Inc. (9957), Peninsula Aviation Services, Inc. (6859), Corvus Airlines, Inc. (7666), Frontier Flying Service, Inc. (8091), and Hageland Aviation Services, Inc. (2754).  The notice address for all of the Debtors is 4700 Old International Airport Road, Anchorage, AK 99502.

("Blank Rome") as Co-Counsel Effective *Nunc Pro Tunc* to the Petition Date filed on April 29, 2020 [Dkt. Nos. 136 & 137]. Except as otherwise noted, all facts in this Declaration are based on my personal knowledge of the matters set forth herein, information gathered from my review of relevant documents and information supplied to me by other members of the Debtors' management and the Debtors' advisors.

## STATEMENT REGARDING UST GUIDELINES

3.     I represent that these chapter 11 cases qualify as larger chapter 11 cases with $50 million or more in assets and $50 million or more in liabilities, on an aggregated basis for these jointly administered chapter 11 cases. The assets and liabilities of the Debtors are described in the schedules filed on May 11 and 12, 2020. [Dkt. Nos. 181, 183, 185, 187, 189, 191, 193, and 195].

4.     The Debtors recognize that a comprehensive review process is necessary when selecting and managing chapter 11 counsel to ensure that their bankruptcy professionals are subject to the same client-driven market forces and accountability as professionals in non-bankruptcy engagements. To that end, the review process utilized by the Debtors assessed potential counsel based on their expertise in the relevant legal issues and in similar proceedings.

5.     Since March 2020, Keller Benvenutti Kim and Blank Rome have advised the Debtors regarding the financial challenges facing them and the legal implications related thereto. Prior to March 2020, Keller Benvenutti Kim and Blank Rome had each represented the Debtors in other matters, as further described in their respective retention applications.

6.     As a result of their prepetition representation of the Debtors, Keller Benvenutti Kim and Blank Rome had each acquired an in-depth knowledge of the Debtors' capital structure and liability profile and have gained insight into the Debtors' business operations. Accordingly,

2

Keller Benvenutti Kim and Blank Rome each possess the necessary background to address the legal issues and related matters that may arise in the administration of the Debtors' Chapter 11 Cases.

**Keller Benvenutti Kim**

7.    Keller Benvenutti Kim has confirmed to me that it does not vary its billing rates or the material terms of an engagement depending on whether such engagement is a bankruptcy or a non-bankruptcy engagement.  Keller Benvenutti Kim has advised me that its current customary U.S. hourly rates are $850 to $650 for partners and counsel, $450 for associates, and $150 for paraprofessionals.  It is my understanding that Keller Benvenutti Kim reviews and adjusts its billing rates annually, and were last adjusted on February 1, 2020.  Keller Benvenutti Kim has advised me that it will inform the Debtors of any adjustment to its existing rate structure.

8.    I am informed by Keller Benvenutti Kim that its attorneys' billing rates are aligned each year to ensure that its rates are comparable to the billing rates of its peer firms.  To the extent that there is any disparity in such rates, however, I nevertheless believe that Keller Benvenutti Kim's retention by the Debtors is warranted in these cases for the reasons set forth in its Application.

**Blank Rome**

9.    Blank Rome has confirmed to me that it does not vary its billing rates or the material terms of an engagement depending on whether such engagement is a bankruptcy or a non-bankruptcy engagement.  Blank Rome has advised me that its current customary U.S. hourly rates are $510 to $1,550 for partners, from $455 to $1285 for counsels, from $350 to $850 for associates, $195 to $580 for paralegals, clerks and librarians, and $175 to $530 for members of its E-Discovery, Analysis and Technology Assistance staff.  It is my understanding that Blank Rome reviews and adjusts its billing rates semi-annually, typically on January 1 and June 1 of

3

each year.  Blank Rome has advised me that it will inform the Debtors of any adjustment to its existing rate structure.

10.     I am informed by Bank Rome that its attorneys' billing rates are aligned each year to ensure that its rates are comparable to the billing rates of its peer firms.  To the extent that there is any disparity in such rates, however, I nevertheless believe that Blank Rome's retention by the Debtors is warranted in these cases for the reasons set forth in its Application.

### Review of Fees and Expenses

11.     I understand that the fees and expenses of Keller Benvenutti Kim and Blank Rome will be subject to periodic review on a monthly, interim, and final basis during the pendency of these Chapter 11 Cases by, among other parties, a fee examiner or fee committee (if appointed), the Office of the United States Trustee and the Debtors, and in accordance with the terms of the Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and any orders of the Court governing the procedures for approval of interim compensation of professionals retained in these Chapter 11 Cases.

12.     As Chief Financial Officer, I supervise and manage legal fees and expenses incurred by the Debtors' outside counsel.  I review the Debtors' outside counsel invoices and authorize all legal fees and expenses prior to the payment of such fees to outside counsel.  In so doing, I assure that all requested fees and expenses are reasonable and correspond with necessary or beneficial services rendered on behalf of the Debtors and their estates.  The aforementioned review and approval processes do not differ when the Debtors employ outside counsel for non-bankruptcy matters.  Moreover, Keller Benvenutti Kim and Blank Rome have each informed me that the Debtors will be provided with the opportunity to review all invoices and request adjustments to such invoices to the extent that the Debtors determine that such adjustments are necessary and appropriate, which requests will be carefully considered by Keller Benvenutti Kim and Blank Rome, respectively.

13.     The Debtors have negotiated and approved an overall budget for Keller Benvenutti Kim's and Blank Rome's fees and expenses with the DIP Lenders as part of the

budget prepared in connection with the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507, and Bankruptcy Rules 2002, 4001, and 6004 (I) Authorizing the Debtors to Obtain Postpetition Senior Secured Superpriority Financing, (II) Authorizing the Debtors' Limited Use of Cash Collateral, (III) Granting Adequate Protection to the Prepetition Secured Parties, and (IV) Granting Related Relief* [Dkt. No. 148] (the "DIP Budget"). Specifically, the Debtors, with the consent of their DIP Lenders, have agreed to pay the estates' professionals approximately $5,050,000.00, in the aggregate, from the Petition Date through confirmation of the Debtors' chapter 11 plan, as set forth on the DIP Budget. The total amount of $5,050,000.00 is broken down into smaller amounts over the course of the eleven weeks. And the professionals will be paid those budgeted amounts in accordance with the interim compensation procedures that are set to be approved by the Court this week.

14.    The Debtors are also aware of those professionals from Keller Benvenutti Kim and Blank Rome who have been assigned to work on these chapter 11 cases on a regular basis. A formal staffing plan will be prepared in the near term. I understand that both Keller Benvenutti Kim and Blank Rome will draw upon the knowledge and skills of other firm attorneys and paraprofessionals to provide services to the Debtors as the need arises in these chapter 11 cases.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on this 18th day of May, 2020
Anchorage, Alaska

*/s/ John Mannion*
_____
John Mannion

5