**IN THE UNITED STATES BANKRUPTCY CUORT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| RAVN AIR GROUP, INC., *et al.*,[1] | Case No. 20-10755 (BLS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. 175** |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO THE APPLICATION FOR AN ORDER AUTHORIZING DEBTORS TO RETAIN AND EMPLOY SAGE-POPOVICH, INC. AS LIQUIDATION ADVISOR EFFECTIVE AS OF APRIL 14, 2020**

The Official Committee of Unsecured Creditors (the "**Committee**") appointed in the above-captioned chapter 11 cases of Ravn Air Group, Inc. and the affiliated debtors (collectively, the "**Debtors**"), by and through its proposed undersigned counsel, hereby submits this objection (the "**Objection**") to the Debtors' *Application for an Order Authorizing Debtors to Retain and Employ Sage-Popovich, Inc. as Liquidation Advisor Effective as of April 14, 2020* [Docket No. 175] (the "**SPI Application**"). In support of this Objection, the Committee respectfully states as follows:

**PRELIMINARY STATEMENT**

It has been clear since before the Petition Date that the Debtors, at the direction of the secured lenders, are dead set on liquidating their assets as quickly as possible and solely for the benefit of the secured lenders. The Committee's paramount goal in these cases is to safeguard the

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: Ravn Air Group, Inc. (3047), Ravn Air Group Holdings, LLC (5356), JJM, Inc. (4858), HoTH, Inc. (9957), Peninsula Aviation Services, Inc. (6859), Corvus Airlines, Inc. (7666), Frontier Flying Services, Inc. (8091), and Hageland Aviation Services, Inc. (2754). The notice address for all of the Debtors is 4700 Old International Airport Road, Anchorage, AK 99502.

73618850.6

rights of the unsecured creditors and ensure a fair process towards maximizing the value of all of the Debtors' assets, not solely for the secured lenders, but for all creditor constituents. The Committee does not believe that a forced liquidation, and the accompanying retention of Sage-Popovich, Inc. ("**SPI**"), being dictated by the secured lenders at this early stage of the case, is in the best interest of all parties.

The Debtors continue to message to the Committee that they are aspiring to reorganize through a going concern sale of all of their assets and have recently announced that they have been conditionally approved for a government payroll grant that would pave the way for that process. The Committee is fully committed to continuing to work with the Debtors and their advisors to achieve these goals. While the Committee does not dispute the qualifications of SPI when it comes to a forced liquidation process, SPI is not qualified to evaluate going concern offers and sale processes. Accordingly, SPI's proposed retention is not only premature at this stage and not needed until a final decision is made regarding the direction of and the trajectory of these cases but more importantly, the Debtors' estates and unsecured creditors would suffer severe harm if SPI is permitted to evaluate going concern bidders and sale processes.

## BACKGROUND

1.  On April 5, 2020 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of Delaware (the "**Court**"), commencing the above-captioned chapter 11 cases (the "**Cases**"). The Debtors have continued in possession of their property and have continued to operate and maintain their business as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Cases.

2. On April 20, 2020, the Office of the United States Trustee appointed the Committee [Docket No. 84]. The Committee has retained Brown Rudnick LLP as lead counsel and Polsinelli PC as co-counsel.

3. On April 27, 2020, the Debtors filed their proposed Disclosure Statement and Chapter 11 Plan of Liquidation [Docket Nos. 112 and 113]. On the same day, the Debtors sought shortened notice for the hearing on the corresponding *Motion for an Order (I) Approving Proposed Disclosure Statement and the Form and Manner of the Notice of the Disclosure Statement Hearing, (II) Establishing Solicitation and Voting Procedures, (III) Scheduling a Confirmation Hearing, and (IV) Establishing Notice and Objection Procedures for Confirmation of Debtors' Plan of Liquidation* [Docket No. 114] (the "**Solicitation Motion**"). The Court granted the shortened notice and the Solicitation Motion is scheduled for hearing on May 27, 2020.

4. On May 6, 2020, the Debtors filed the SPI Application, seeking to retain a liquidation advisor to prepare for the full liquidation of the Debtors' assets. It is the Committee's understanding that no assets will actually be liquidated until the Plan is confirmed and a liquidating trust is formed. The SPI retention seeks to prepare for such forced liquidation.

5. On May 14, 2020, the Debtors filed the *Debtors' Motion for Orders (I)(A) Authorizing and Approving the Bidding Procedures, (B) Approving Procedures Related to the Assumption of Certain Executory Contracts and Unexpired Leases, (C) Approving the Notice Procedures, (D) Authorizing Entry Into One or More Stalking Horse Agreements, and (E) Setting a Date for the Sale Hearing; and (II) Authorizing and Approving (A) the Sale of Certain Assets Free and Clear of All Liens, Claims, Encumbrances and Interests, (B) the Assumption and Assignment of Certain Contracts, and (C) Payment of Bid Protections, if Applicable* [Docket No.

197] (the "**Bid Procedures Motion**"), seeking to establish various procedures to govern a truncated and unvetted sale process.

6. As will be set forth in greater detail in an objection the Committee intends to file to the Bid Procedures Motion, the process the Debtors propose to run is ill-equipped and lacks the necessary, minimal requirements to maximize value of the Debtors' assets. Nevertheless, several unsolicited indications of interest, including potential going concern offers, for the Debtors assets have been received by the Debtors. Because the Debtors have not (and cannot have at the direction of their secured creditors) hired proper professionals to market and evaluate offers for the Debtors' assets, the Committee was advised that the Debtors have been using SPI to assess and evaluate any incoming offers, including offers for, and all other aspects of, a going concern sale. [SPI Application, para. 11(f)]. Nowhere in the SPI Application or Mr. Popovich's declaration in support of the SPI Application does it state or provide any background or level of expertise SPI has in evaluating the value and offers with respect to the Debtors' assets as a going concern.

7. The Debtors also continue their reorganization efforts. In the weeks leading up to their chapter 11 cases, the Debtors sought financing from their existing lenders and investors and applied for loans and grants under the Coronavirus Aid, Relief, and Economic Security Act (the "**CARES Act**"). However, prior to the Petition Date, the Debtors were unsuccessful in their efforts to procure federal or state financing in amounts needed to continue operation of the business.

8. Since the Petition Date, the Debtors have disclosed that they have had continuing discussions with representatives of and advisors to the Department of Treasury in anticipation that, if a purchaser emerges that is willing and able to purchase the Debtors' assets and business as a going concern, up to $30 million of CARES Act funding may be available as a Payroll Support Program Assistance grant, as well as $5 million in the form of a loan under the CARES Act.

9. The Debtors have recently announced that they have been conditionally approved by the Department of Treasury to move forward and seek payroll grants under the CARES Act.

## OBJECTION

10. The Court should deny the Debtors' proposed retention of SPI. The Committee reiterates that a forced liquidation being dictated by the secured lenders at this early stage of the Cases and in light of recent developments is not in the best interest of all parties. While the Committee may not have an objection to the retention of a qualified liquidation advisor to assist the Debtors in a liquidation of the assets *at the right time*, the current circumstances of the Cases do not justify the proposed retention. As noted above, the Debtors are currently considering a dual track strategy in these Cases — both a liquidating plan process as well as a going concern sale. The Debtors have also recently obtained conditional approval for government payroll funding through the CARES Act, which should facilitate a meaningful sale process or a possible reorganization. As such, the expense of a liquidation advisory firm at this juncture is premature and will be detrimental to any possible recovery to the Debtors' unsecured creditors. Moreover, it is the Committee's understanding that SPI does not intend to actually liquidate any assets during these Cases. Rather, SPI will prepare to liquidate at the Debtors' expense, which only cuts further into any recovery for unsecured creditors and is in direct conflict with the Debtors' going concern efforts. In addition, SPI's connection to the prepetition lenders creates conflicts of interest and precludes SPI from satisfying the "disinterestedness" requirements of Section 327(a).

**A.   SPI's Retention During a Going Concern Sale is Inappropriate.**

11. The Debtors assert that they are committed to conducting a public sales process. If conducted appropriately, that process will sufficiently aggregate, communicate, and effectively value the Debtors' assets. Thus, on one hand, the Debtors seek to retain SPI as their liquidation

advisor to essentially marshal and value the assets in order to ensure an orderly liquidation process down the line, while one the other hand, the Debtors seek authority to enter bid procedures which include bid protections.  It is redundant and unnecessary to retain SPI to simultaneously complete parallel tasks when it is uncertain if such liquidation will be necessary.

12. In the description of services to be provided by SPI, the SPI Application states that SPI will "[m]anag[e] all aspects of sales of any operational class of assets as permitted by the Bankruptcy Court, including aircraft, spare parts, grounds support equipment, vehicles, tooling. Assist in preparation and support for sales motions. Prepare monthly sales reports, advertising and general notices. Assist in establishing the de minimis threshold". [SPI Application at ¶ 11(f)]. It is unclear what role SPI is actually serving in these Cases at this time—liquidator, investment banker, or both simultaneously.  If the Debtors are intent on pursuing a going concern sale of all assets, the Debtors need a qualified investment banker, not a liquidation consultant, to properly manage the sale process and market the assets.  The Debtors have already retained Conway MacKenzie ("**Conway**") as their financial advisor in these Cases.  One of Conway's responsibilities is to "[w]ork with the Company, as appropriate, and its retained investment banking professionals, to assess any offer(s) made pursuant to bankruptcy court approved sale procedures."[2]  The Debtors have not yet hired any investment banking professionals despite pursuing a 363 sale process and seem to be relying on SPI to evaluate their going concern offers. The Debtors certainly do not need both Conway and SPI to oversee the sales process nor is SPI qualified to run such a process. To the contrary, in the Popovich Declaration, Mr. Popovich holds SPI out as "a global aviation consulting and asset management provider, with services ranging from pre-purchase inspection and appraisal services through repossession and liquidation on all

---

[2] See Application of the Debtors to Employ and Retain Conway MacKenzie, LLC as Financial Advisor *Nunc Pro Tunc* to the Petition Date [Docket No. 135], ¶ 14(x).

aircraft types and related inventory." [Popovich Declaration at ¶ 2]. While there is no doubt or objection from the Committee that SPI is well qualified to assess value of individual aircraft for liquidation purposes, nowhere does SPI claim to have qualifications in marketing or running going concern sales of existing businesses.

13. What the Debtors need during these Cases is an investment banker with appropriate experience to properly market the assets in pursuit of a going concern sale. The Debtors seem to be unable to do so at the direction of their prepetition lenders and the associated lack of resources. But that does not justify the retention of SPI - a liquidation consultant is not equipped to run a going concern sale process and will only dissuade potential purchasers that may be seeking to buy all or substantially all of the assets of the Debtors from pursuing a potential transaction. Accordingly, SPI should not be retained and continue to be paid when no liquidation is taking place and the Debtors are pursuing their reorganization options.

14. To that end, SPI's compensation effective as of April 14, 2020 is inappropriate. These Cases have already previewed that administrative insolvency is a real possibility and that recovery to unsecured creditors remains tenuous. As such, it is critical that the Debtors take all steps to preserve the estates' resources. Despite the Debtors' assertions in the SPI Application, there is no reason for the Debtors to absorb the fees of a liquidation advisor without letting the 363 sale process play out.

**B.    SPI Does Not Satisfy the "Disinterestedness" Requirements of Section 327(a).**

15. Given that the Debtors are seeking to retain SPI pursuant to section 327(a), SPI must satisfy section 327(a)'s requirements of the Bankruptcy Code. Section 327(a) authorizes the Debtors to retain professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327(a). "[I]f it is plausible that the

representation of another interest may cause the debtor's [advisors] to act any differently than they would without that other representation, then they have a conflict and an interest adverse to the estate." *In re Leslie Fay Cos.*, 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994); *In re Consol. Bancshares, Inc.*, 785 F.2d 1249, 1256 (5th Cir. 1986) ("The purpose of the rule is to prevent even the emergence of a conflict irrespective of the integrity of the person under consideration."). An adverse interest is generally defined to mean "any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a claimant." *In re eToys, Inc.* 331 B.R. 176, 189 (Bankr. D. Del. 2005) (quoting *TWI Int'l v. Vanguard Oils Serv. Co.*, 162 B.R. 672, 675 (S.D.N.Y. 1994)). Third Circuit precedent dictates a "*per se* bar to the appointment of [an estate professional] with an actual conflict, [but] gives the [Bankruptcy Court] wide discretion in deciding whether to approve the appointment of an [estate professional] with a potential conflict." *In re Jade Mgm't Servs.*, 386 Fed. Appx. 145, 148 (3d Cir. 2010). *See generally U.S. Trustee v. Price Waterhouse*, 19 F.3d 138, 141-42 (3d Cir. 1994) (discussing the disinterestedness inquiry under section 327(a)).

16.     The Debtors have advised the Committee that it was the prepetition lenders who requested that the Debtors retain SPI to prepare for a liquidation given SPI's specialty in repossession and liquidation of aircraft fleets. As advertised on SPI's website, SPI specializes in repossession and has been performing repossessions of aviation assets worldwide since 1979. SPI has "performed in excess of 1,800 repossessions of aircraft . . . including numerous large-scale liquidation of aircraft fleets and parts inventory" and "maintain[s] a 42,000 square foot temperature-controlled warehouse for storage and liquidation of client-owned aviation related assets."[3] Accordingly, retention of SPI is driven solely by the lenders' liquidation plan and by

---

[3] See https://www.sage-popovich.com/repossession.html.

definition, cannot satisfy the "disinterestedness" requirement and the requirement of not being adverse to the Debtors' estates.

17. The Debtors are seeking this retention under section 327(a) standards for a "professional", the hallmarks of which are judged by "the amount of independence and discretion afforded to [it] in its relationship with the debtor and the nexus between the services to be provided and the debtor's reorganization." *In re Brookstone Holdings Corp.*, 592 B.R. 27 (Bankr. D. Del. 2018) (citing *In re First Merchants Acceptance Corp.*, 1997 WL 873551 (D. Del. Dec. 15, 1997)). Given that SPI has been tasked with supervising and running the going concern sale process, as described in its engagement, in substitution of the Debtors' business judgment, it must be "disinterested" and not "hold or represent an interest adverse to the estate." SPI, however, does not satisfy any of those requirements given its role as the *de facto* representative of the lenders, who are seeking to foreclose on their collateral at the expense of all other constituents in these Cases.

18. Accordingly, the Committee requests that the SPI Application be denied, and at a minimum, should not be considered at this time until after the 363 sale process is completed.

WHEREFORE, the Committee respectfully requests that the Court (a) deny the SPI Application, and (b) grant such other and further relief as is just and proper.

| | |
|---|---|
| Dated: May 22, 2020<br>Wilmington, Delaware | Respectfully submitted,<br><br>**POLSINELLI PC**<br><br>*/s/ Christopher A. Ward*<br>Christopher A. Ward (Del. Bar No. 3877)<br>Shanti M. Katona (Del. Bar No. 5352)<br>Brenna A. Dolphin (Del. Bar No. 5604)<br>222 Delaware Avenue, Suite 1101<br>Wilmington, Delaware 19801<br>Telephone: (302) 252-0920<br>Facsimile: (302) 252-0921<br>cward@polsinelli.com<br>skatona@polsnielli.com<br>bdolphin@polsinelli.com<br><br>-and-<br><br>**BROWN RUDNICK LLP**<br>Robert J. Stark (*pro hac vice*)<br>Oksana P. Lashko (*pro hac vice*)<br>Max D. Schlan (*pro hac vice*)<br>Seven Times Square<br>New York, New York 10036<br>Telephone: (212) 209-4800<br>Facsimile: (212) 209-4801<br>rstark@brownrudnick.com<br>olashko@brownrudnick.com<br>mschlan@brownrudnick.com<br><br>*Proposed Counsel to the Official Committee of Unsecured Creditors* |

73618850.6