# **EXHIBIT C**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re:<br><br>RAVN AIR GROUP, INC., *et al.*,<br><br>     Debtors.[1] | Chapter 11<br><br>Case No. 20-10755 (BLS)<br>(Jointly Administered)<br><br>**Hearing Date: May 27, 2020** |

**JOINT STIPULATION OF FACTS BY DEBTORS AND COMMITTEE**

Debtors in the above-captioned chapter 11 cases ("Debtors") and the Official Committee of Unsecured Creditors appointed in the above-captioned chapter 11 cases (the "Committee") hereby stipulate to the following facts.[2]

1.      Debtors' informal process to market or otherwise sell Debtors' assets as a going concern in a 363 sale or otherwise has been run primarily through an outreach by the Debtors' independent directors, executives, and their advisors to external investors, industry investors, and possible investors from the state of Alaska, and by fielding inbound inquiries from various parties that Debtors have received on an ad hoc basis after filing for bankruptcy.

2.      Outreach was based on names members of the Special Restructuring Committee knew or were given of entities that appear to potentially have an interest in purchasing Debtors' business as a going concern. To date, Debtors initiated outreach with respect to nineteen parties

---

[1]    The Debtors in these Chapter 11 Cases and the last four digits of each Debtor's U.S. tax identification number are as follows: Ravn Air Group, Inc. (3047), Ravn Air Group Holdings, LLC (5356), JJM, Inc. (4858), HoTH, Inc. (9957), Peninsula Aviation Services, Inc. (6859), Corvus Airlines, Inc. (7666), Frontier Flying Service, Inc. (8091), and Hageland Aviation Services, Inc. (2754). The notice address for all of the Debtors is 4700 Old International Airport Road, Anchorage, AK 99502.

[2]    Capitalized terms used in this Objection but not otherwise defined shall have the meaning ascribed to them in the Motion or the *[Proposed] Chapter 11 Plan of Liquidation of RAVN Air Group, Inc. and its Affiliated Debtors* [D.I. 112] (the "Plan"), as applicable.

concerning the potential purchase of Debtors' business as a going concern. Seven indicated they were not interested and four ultimately signed an NDA. In addition, one of the non-interested parties connected Debtors with another party who also has signed an NDA. In total, between outreach initiated by Debtors and inbound inquires from parties aware of RavnAir's status, six parties have signed NDAs in connection with potential interest in a purchase of Debtors' business as a going concern.

3.     Debtors did not retain an investment banker or engage in a formal plan to market or otherwise attempt to sell Debtors as a going concern in a 363 sale or otherwise. Lenders made clear to Debtors at the outset that Lenders wanted to proceed with a liquidation of assets as soon as possible and did not want Debtors to divert time or resources in connection with a potential sale of Debtors' business as a going concern. Debtors believed that Lenders would not approve a budget sufficient to allow for hiring an investment banker, and Debtors did not have any subsequent discussions with Lenders concerning hiring an investment banker.

4.     Debtors also were not able to run a formal process to market or otherwise attempt to sell Debtors as a going concern in a 363 sale or otherwise prior to the filing of the *Debtors' Motion for Orders (I)(A) Authorizing and Approving the Bidding Procedures, (B) Approving Procedures Related to the Assumption of Certain Executory Contracts and Unexpired Leases; (C) Approving the Notice Procedures, (D) Authorizing Entry Into One or More Stalking Horse Agreements, and (E) Setting a Date for the Sale Hearing; and (II) Authorizing and Approving (A) the Sale of Certain Assets Free and Clear of All Liens, Claims, Encumbrances and Interests, (B) the Assumption and Assignment of Certain Contracts, and (C) Payment of Bid Protections, If Applicable* [Dkt. No. 197] (the "Bidding Procedures Motion"). Since the filing of the Bidding Procedures Motion, Debtors have begun advertising the proposed sale of the Debtors' assets and

2

business as a going concern in certain publications, including the *Anchorage Daily News* and *The Wall Street Journal.*

5.      Debtors did not compile or reach out to an extensive list of potential aviation or airline investors or other airline owners for purposes of marketing or otherwise attempting to sell Debtors as a going concern in a 363 sale or otherwise.

6.      Debtors did not create a typical detailed and extensive "pitch book" or other similar marketing materials specifically designed for potential buyers in order to assist in the marketing of Debtors for a potential sale as a going concern in a 363 sale or otherwise.  Instead, Debtors provided interested parties with an updated and revised company overview presentation originally prepared for discussions on March 28th with the U.S. Treasury Department regarding CARES Act Grants and Loans, as well as asset valuations, audited and unaudited financials from 2015-2019, 2020 budget forecast, a presentation on market opportunities in Alaska, "base case" and "downside case" financial projections for restarting the airline, an overview of the corporate organization, a list of Top 30 unsecured creditors, and information from the U.S. Treasury on CARES Act Grants and Loans.  This information is available in a buyer's data room, and a copy of the company overview presentation (without financial projections) is also available on Debtors' www.flyravn.com website.

7.      Debtors have not conducted a valuation of Debtors' business as a going concern.

8.      Subsequent to filing a petition for Chapter 11, Debtors engaged sage-popovich, inc. ("SPI"), at the request of the Lenders, who introduced Debtors to SPI, in order to prepare for and advise Debtors on a potential liquidation of Debtors' assets.

9.      SPI conducted an appraisal of Debtors' assets for purposes of a potential liquidation, but has not done any valuation of Debtors as a going concern.

10.     SPI has been, is, and will be involved in Debtors' assessment of any offers received by the Debtors, including offers to purchase Debtors as a going concern, in addition to the Debtors' other advisors, including their financial advisors, Conway Mackenzie, and the members of the Special Restructuring Committee.

Dated: May 21, 2020

**POLSINELLI PC**

_____
Christopher A. Ward (Del. Bar No. 3877)
Shanti M. Katona (Del Bar No. 5352)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
cward@polsinelli.com
skatona@polsnielli.com

-and-

**BROWN RUDNICK LLP**
Robert J. Stark (pro hac vice)
Oksana P. Lashko(pro hac vice)
Max D. Schlan (pro hac vice)
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
rstark@brownrudnick.com
olashko@brownrudnick.com
mschlan@brownrudnick.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*

**BLANK ROME LLP**

_____

Victoria A. Guilfoyle (No. 5183)
Stanley B. Tarr (No. 5535)
Jose F. Bibiloni (No. 6261)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464
Email: guilfoyle@blankrome.com
tarr@blankrome.com
jbibiloni@blankrome.com

-and-

**KELLER BENVENUTTI KIM LLP**
Tobias S. Keller (pro hac vice)
Jane Kim (pro hac vice)
Thomas B. Rupp (pro hac vice)
650 California Street, Suite 1900
San Francisco, California 94108
Tel: (415) 496-6723
Fax: (650) 636-9251
Email: tkeller@kbkllp.com
jkim@kbkllp.com
trupp@kbkllp.com
Proposed Attorneys for Debtors
and Debtors-in-Possession