# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>RAVN AIR GROUP, INC. *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10755 (BLS)<br><br>(Jointly Administered)<br><br>Hearing Date: May 27, 2020 at 11:00 a.m. (ET)<br><br>Re: Docket Nos. 114, 236, 242, 256 |

### DEBTORS' REPLY IN SUPPORT OF THE DEBTORS' MOTION FOR AN ORDER (I) APPROVING PROPOSED DISCLOSURE STATEMENT AND THE FORM AND MANNER OF THE NOTICE OF THE DISCLOSURE STATEMENT HEARING, (II) ESTABLISHING SOLICITATION AND VOTING PROCEDURES, (III) SCHEDULING A CONFIRMATION HEARING, AND (IV) ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR CONFIRMATION OF DEBTORS' PLAN OF LIQUIDATION

The above-captioned affiliated debtors and debtors in possession (collectively, the "Debtors") hereby submit this reply (the "Reply") in support of the *Debtors' Motion for An Order (I) Approving Proposed Disclosure Statement and the Form and Manner of the Notice of the Disclosure Statement Hearing, (II) Establishing Solicitation and Voting Procedures, (III) Scheduling a Confirmation Hearing, and (IV) Establishing Notice and Objection Procedures for Confirmation of Debtors' Plan of Liquidation* [Dkt. No. 114] (the "Motion")[2] and in response to the objections (the "Objections") filed by the Official Committee of Unsecured Creditors

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: Ravn Air Group, Inc. (3047), Ravn Air Group Holdings, LLC (5356), JJM, Inc. (4858), HoTH, Inc. (9957), Peninsula Aviation Services, Inc. (6859), Corvus Airlines, Inc. (7666), Frontier Flying Service, Inc. (8091), and Hageland Aviation Services, Inc. (2754). The notice address for all of the Debtors is 4700 Old International Airport Road, Anchorage, AK 99502.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

1

appointed in these Chapter 11 Cases (the "Committee") [Dkt. No. 242] and the United States (the "US") [Dkt. No. 236].  For the reasons discussed below, and in light of the revisions made by the Debtors to the [Proposed] Chapter 11 Plan of Liquidation of Ravn Air Group, Inc. and its Affiliated Debtors (the "Plan") and the proposed disclosure statement thereto (the "Disclosure Statement"), both of which revised versions are being filed contemporaneously herewith, the Debtors respectfully request that the Court overrule the Objections and grant the Motion.

## PRELIMINARY STATEMENT

1. The Court, in approving the DIP Motion, already found the Plan Milestones under the DIP Facility, which necessitated the filing and solicitation of the Plan at this time, appropriate under the circumstances.  The Debtors maintain, as they have from the beginning of these Chapter 11 Cases, that complying with the terms of the DIP Facility, adhering to the Plan Milestones, and pursuing the Plan is in the best interests of the Debtors' creditors and estates. Among other things, pursuant to and with the benefit of the DIP Facility:  (a) the Debtors have been able to pay their pre- and post-petition employee obligations, (b) the Plan provides for payment of all administrative obligations and priority claims, as well as the creation of a Creditors' Fund for general unsecured creditors, and (c) the Debtors have been given precious time to pursue funding opportunities, including CARES Act grants and loans, and to create conditions that might allow for the Debtors' continued operations.

2. Since the filing of the original Plan and Disclosure Statement, there have been a number of developments, which are described in the revised version of the Disclosure Statement. First, the Debtors received conditional approval from the United States Department of Treasury to move forward with its applications for funding through the Payroll Support Program under the CARES Act.  Second, the Debtors filed the *Debtors' Motion for Orders (I)(A) Authorizing and*

*Approving the Bidding Procedures, (B) Approving Procedures Related to the Assumption of Certain Executory Contracts and Unexpired Leases; (C) Approving the Notice Procedures, (D) Authorizing Entry Into One or More Stalking Horse Agreements, and (E) Setting a Date for the Sale Hearing; and (II) Authorizing and Approving (A) the Sale of Certain Assets Free and Clear of All Liens, Claims, Encumbrances and Interests, (B) the Assumption and Assignment of Certain Contracts, and (C) Payment of Bid Protections, If Applicable* [Dkt. No. 197] (the "<u>Bidding Procedures Motion</u>").  By the Bidding Procedures Motion, the Debtors propose a process by which they will offer, among other things, the opportunity to sell all or substantially all of their assets as a going concern under a timeline that conforms with the Plan Milestones.

3. <u>Third</u>, the DIP Lenders (who also represent the large majority of the Prepetition Secured Creditors) agreed that the Creditors' Fund under the Plan would hold $250,000 and that holders of Class 1 claims (Prepetition Secured Creditor) will be deemed to waive their unsecured deficiency claims under the Plan for purposes of participating in the Creditors' Fund established for holders of Class 4 claims (General Unsecured).

4. The two Objections received to the Disclosure Statement are very different in their nature.  The Committee's Objection seeks various disclosures to which it and all creditors are entitled and which have been largely if not completely addressed in the revised Disclosure Statement.  The thrust of the Committee's Objection, however, continues the theme sounded by the Committee at the outset:  It argues that (i) the Debtors should be sold as a going concern and (ii) if the Debtors' funding and concomitant "runway" will not permit for a more comprehensive sale process, the Plan cannot be confirmed.  The implications of these assertions are disputed, of course; more important, however, they are confirmation issues that should be addressed at the confirmation hearing, not at a hearing on the adequacy of the Disclosure Statement.

3

5.  By contrast, the US Objection is focused on narrow questions and concerns, primarily about the scope of the proposed releases and ambiguities contained in the prior draft of the Plan. As indicated therein, the US attempted to engage with the Debtors prior to its deadline to object, but the Debtors were not able to respond prior to the objection deadline. *See* US Objection, ¶ 4. The Debtors believe that the issues raised by the US Objection are substantially addressed in the revised form of Plan filed herewith. To the extent that they are not, the Debtors submit that those issues should also be addressed at confirmation.

6.  No objections have been received to the procedural elements of the Motion.

## ARGUMENT

7.  A hearing on a disclosure statement is intended to assure that it has "adequate information" to allow a hypothetical investor "typical of holders of claims … of the relevant class" to make an informed judgment about the plan. 11 U.S.C. §1125(a), (b). Generally, confirmation objections are not addressed in connection with the hearing on the adequacy of a disclosure statement pursuant to section 1125(b). *In re American Capital Equip., LLC*, 688 F.3d 145, 153-54 (3d Cir. 2012).

8.  As the Objections indicate, there are circumstances in which courts have declined to approve disclosure statements on the basis that a plan is "patently unconfirmable." *Cf. American Capital Equip.,* 688 F.3d at 154-55. Generally, "[a] plan is patently unconfirmable where (1) confirmation defects cannot be overcome by creditor voting results and (2) those defects concern matters upon which all material facts are not in dispute or have been fully developed at the disclosure statement hearing." *Id.* (quotations omitted).

9. The Plan, as revised, is manifestly confirmable. Even if that is disputed, however, none of the issues raised should be addressed in the context of approval of the Disclosure Statement.

<u>The Committee Objection</u>

10. As an initial matter, the Committee's repeated depictions of the Plan as designed solely for the benefit of the Debtors' secured lenders and therefore unconfirmable are wrong.[3] The Committee ignores the fact that the Plan (a) provides for payment in full of all Allowed Administrative Claims and Priority Claims, (b) creates a Creditors' Fund for the benefit of general unsecured creditors, and (c) allows for the Debtors to pursue a sale of all or substantially all of their Assets in connection with confirmation. None of those outcomes would have been possible without the DIP Facility and the Plan. The DIP Facility also enabled the Debtors to pay $6.5 million in prepetition employee obligations that the Debtors would not otherwise have been able to pay, as well as give a short but meaningful runway for the Debtors to pursue a sale as a going concern. That runway, which the Debtors would not have had absent the commencement of these Chapter 11 Cases, allowed the Debtors to continue discussions with representatives of the Department of Treasury, resulting in conditional approval to move forward with their Payroll Support Program grant applications – which is a linchpin to any opportunity the Debtors may have to sell their Assets as a going concern.

---

[3] Indeed, there are various assertions and insinuations contained in the Committee Objection that do not go to issues presented by the Motion and, as a result, are not substantively addressed here. Were it necessary or appropriate, the Debtors would discuss the propriety of doing "ordinary course" short term subleases of unused facilities to allow continuing access to the local communities (Committee Obj., ¶16); the rejection of hangaring facilities for aircraft that had been previously rejected (*id.*); or the Debtors' responsiveness to Committee information requests (Committee Obj., ¶18). Other issues (*e.g.*, bid procedures and sage-popovich) will be addressed by the Debtors in independent filings. The Debtors' focus on issues germane to section 1125 is not intended to be and is not a waiver of the Debtors' right to respond to the Committee's assertions in an appropriate procedural setting.

11. As to the confirmability of the Plan, the Committee raises three core objections: (a) section 1129(a)(1), whether the plan "complies with the applicable provisions" of Title 11; (b) section 1129(a)(3), "good faith", and (c) section 1129(a)(7), the "best interests" test. Committee Objection, ¶¶ 1, 32. None are necessary to resolve at a disclosure statement hearing.

12. The Committee Objection does not materially discuss section 1129(a)(1) or section 1129(a)(3) or explain why the Plan fails to meet these confirmation standards. While the Committee may argue that neither of these standards are met by the Debtors, the Objection's focus on the Debtors' sale process and its alleged shortcomings do not create "patent" confirmation issues that warrant consideration at a disclosure statement hearing.

13. The Debtors did not initially include in their draft disclosure statement a liquidation analysis demonstrating that the Debtors can satisfy the best interests test of section 1129(a)(7). The Debtors' financial advisor has since completed its liquidation analysis, which is attached to the revised form of disclosure statement submitted herewith.[4] At a minimum, that analysis presents a *prima facie* case as to why confirmation of the Plan – including not only a dividend to general unsecured creditors undiluted by the deficiency claims of holders of Prepetition Secured Creditor Claims and payment in full of priority and administrative claimants – is superior to a liquidation in chapter 7, under which the Debtors would be administratively insolvent and unsecured creditors would be entitled to no recovery. Should the Committee disagree, its challenge should be addressed at an evidentiary hearing on the Plan.

14. The Committee raises various issues about releases and releasees. Certain of the technical issues that also are raised in the US Objection are addressed in the section below. More generally, the Committee asserts that the Disclosure Statement cannot be approved because

---

[4] That liquidation analysis is based on the appraisal of the liquidation value of the Debtors' assets performed before the Petition Date by the Debtors' proposed liquidation advisor, sage-popovich, inc., which appraisal the Debtors provided to the Committee's advisors early in these Chapter 11 Cases.

the value of the releases granted therein has not been provided in the Disclosure Statement. The Debtors are not aware of any claims that have material value (and has so indicated in the revised version of the Disclosure Statement at Section II.B.), but, like the Committee, their analysis is continuing. Should the Debtors or the Committee identify the claims that the Debtors believe have material value, the Plan has been revised to provide for Preserved Claims that may be asserted against parties that would otherwise have been Released Parties.

15. The Disclosure Statement has been revised to address most of the Committee's remaining concerns about the adequacy of the information provided therein:

    a. A liquidation analysis is included. Disclosure Statement, Exhibit B.

    b. The best interests test discussion is expanded. Disclosure Statement, at VI.C.

    c. The grounds for substantive consolidation are more fully explained. *See* Disclosure Statement, at IV.B.

    d. The amount of the Creditors' Fund, and expected recoveries to Class 4 claimants (and all other claimants), are included. *See* Plan, "Creditors' Fund" definition; Disclosure Statement, at I.A.2., I.A.3.

    e. A discussion of unencumbered assets is included; and the treatment of such assets is addressed in the liquidation analysis. *See* Disclosure Statement, at IV.B.

    f. A qualitative discussion of the Debtors' sale efforts and the potential use of CARES Act funding in connection with those sale efforts is included. *See* Disclosure Statement, at III.H., III.I.

16. The Committee's argument that the Liquidation Trust Agreement must be included with the Disclosure Statement is unfounded. First, the Committee's complaints about

the lack of information around the Liquidation Trust and Liquidation Trust Agreement are, at best, misinformed: the Committee's assertion that "[r]ecovery to creditors will ultimately derive from the proceeds obtained through the disposition and liquidation of the Debtors' assets in the Liquidation Trust," Committee Objection, ¶ 23; *see also id.,* ¶ 45, is simply wrong. The putative beneficiaries of the Liquidation Trust are limited to the DIP Lenders and the holders of prepetition secured claims. Those parties have made no objection to the adequacy of the Debtors' disclosures. Recoveries under the Plan by the unsecured creditors represented by the Committee are fixed in the Creditors' Fund, which is funded on the Effective Date of the Plan without regard to recoveries by the Liquidation Trust.

17. Second, even if they were relevant, the core provisions of the Liquidation Trust, its operations and its governance, are all set forth in sufficient detail in the Plan and Disclosure Statement. Finally, the actual form of Liquidation Trust Agreement will be filed with the Plan Supplement and, as such, will permit affected parties – none of whom are general unsecured creditors – to raise confirmation issues at the confirmation hearing.

18. The Debtors do not object to permitting the Committee to provide a recommendation on the Plan but request an opportunity to review and comment on any material before solicitation.[5]

The US Objection

19. The US raises a number of objections and requests for clarification. The Debtors believe that the US's concerns are largely addressed in the revised Plan and the revised

---

[5] On May 23, 2020, counsel for the Debtors advised counsel for the Committee that it did not anticipate objecting to including a Committee recommendation with its solicitation materials but requested a draft of any proposed communication in advance of the hearing on the Motion. Counsel for the Committee indicated that they would provide such a draft, but as of the filing of this Reply, no such draft has been received.

Disclosure Statement. To the extent that they are not, the Debtors address the US Objection on the merits below.

20. First, the US notes that the Debtors should not receive a discharge, which the Debtors concede. US Objection, ¶¶ 6-7. The Debtors were erroneously included in the definition of "Released Parties" but have been removed, and the release language clarifies that the Debtors are not seeking a release pursuant to section 11.11 of the Plan. As the US implicitly acknowledges in its citation of *Midway Gold*, although the Debtors are not receiving a discharge, it is entirely permissible to provide that assets transferred to the Liquidation Trust should be insulated from claims that might otherwise be asserted against the Debtors. *See In re Midway Gold US, Inc.*, 575 B.R. 475, 515 (Bankr. D. Colo. 2017) (denying debtors a discharge but approving the following plan language as permissible: "Claimants may not seek payment or recourse against or otherwise be entitled to any Distribution from the Liquidating Trust Assets except as expressly provided in this Plan and the Liquidating Trust Agreement."); *see also In re Lambertson Truex, LLC*, No. 09-10747, 2009 Bankr. LEXIS 4812, at *14 (Bankr. D. Del. July 27, 2009) (confirming plan of liquidation with the following language: "the Debtor and the Estate shall be deemed to have transferred and/or assigned any and all of their assets as of the Effective Date … to the beneficiaries of the Liquidation Trust free and clear of all Claims, Liens and contractually imposed restrictions, except for the rights to distribution afforded to holders of Claims under the Plan; and immediately thereafter, such assets shall be deemed transferred by such beneficiaries to the Liquidation Trustee in trust."). Section 3.09 of the Plan has been revised for clarity and should address the concern expressed by the US that it could be used to justify a broader discharge than was intended.

21.     Second, the US Objection focuses on exculpation.  US Objection, ¶ 8.  Its concerns are largely addressed in corrective and clarifying Plan revisions:  (a) the Debtors *qua* debtors have been removed from the definition of "Exculpated Parties"; (b) the definition of "Related Persons" has been narrowed in scope, such that these persons are only released to the extent that they are being exculpated as agents of otherwise Exculpated Parties (*e.g.*, the Committee's attorneys are only being released in their capacity as Committee attorneys and not to the extent of their independent dealings with the Debtors as individuals, if any); and (c) section 11.12 has been slightly revised to delete "the Debtors" from the phrase "in connection with, relating to, or arising out of the Debtors, the Chapter 11 Cases, …."  While the Debtors believe that these revisions should resolve the US Objection entirely, the US may wish to press questions regarding the propriety of exculpation for lenders or prepetition conduct.[6]  To the extent that the US chooses to do so, the Debtors submit that these questions are confirmation questions.  *See, e.g.*, *In re W.R. Grace & Co.*, 446 B.R. 96, 132-33 (Bankr. D. Del. 2011) (addressing exculpation issues in connection with plan confirmation); *In re Wash Mut. Inc.*, 442 B.R. 314, 350-51 (Bankr. D. Del. 2011) (same); *In re Indianapolis Downs, LLC*, 486 B.R. 286, 306 (Bankr. D. Del. 2013) (same); *In re Nassau Broadcasting Partners, L.P.*, 11-12934 (KG), Docket No. 1000 (Bankr. D. Del. July 31, 2013) (same); *In re Nortel Networks, Inc.*, 09-10138 (KG) Docket No. 17807 (Bankr. D. Del. Jan. 24, 2017) (same); *In re EBH TopCo, LLC*, 18-11212 (BLS), Docket No. 765 (Bankr. D. Del. Feb. 13, 2019) (same).

---

[6]     The Debtors are prepared to argue that (i) exculpation of lenders goes hand in glove with releases, and should be granted if releases may be granted, and (ii) pre-petition conduct that is limited to case-related issues and events can and should be included in the exculpation provision to foreclose arguments that otherwise exculpated conduct during the cases might give rise to liability if preliminary assistance was provided pre-petition.  Neither of these issues need be addressed at the hearing on the Motion, however, and should be addressed at the confirmation hearing.

146484.01601/123317687v.2

22. Third, the US Objection seeks confirmation that governmental penalties will not be subordinated, consistent with Supreme Court authority. US Objection, ¶ 9. That clarification is now contained in the revised definition of "Non-Compensatory Penalty Claims." The Debtors reserve the right to subordinate non-governmental claims otherwise fitting the definition and will address any challenge thereto at confirmation.

23. Fourth, the US Objection seeks clarification that no assumption of an executory contract or lease shall be "deemed" while a dispute is pending. US Objection, ¶ 10. The revised language of section 6.01(b) of the Plan does away with the notion of "deemed" assumption and confirms instead that the Liquidation Trust shall have standing to act as successor to the Debtors in any pending dispute.

24. Finally, the US Objection requests further disclosures about a number of matters the US asserts are necessary to provide creditors with adequate information. US Objection, ¶¶ 11-22. Many of these further disclosures are addressed above; the Debtors believe the changes described herein obviate the need for further disclosures in the Disclosure Statement. The remaining issues can be addressed summarily:

    a. The definition of "Secured Claim" and treatment of such claims (section 3.03 of the Plan) do not purport to add requirements to creditors asserting setoff rights. US Objection, ¶ 15, 22. Rather, the Plan is clear that those claims will remain unaltered "notwithstanding substantive consolidation." Plan, §3.03. The Debtors submit that no further disclosures are required but will further consult with the US on requested revisions.

    b. The treatment of FAA air carrier operating certificates is not addressed in the Plan. US Objection, ¶ 18. The Debtors understand that the US takes the position that

such certificates are not transferrable. In anticipation of that possibility, section 5.03(c) of the Plan provides for the treatment of assets that cannot be transferred. This possibility is further addressed in the Disclosure Statement, at IV.C.

   c. The US Objection asks the Debtors to identify all circumstances in which the Debtors may waive "requisite government approvals" under section 9.01 of the Plan. US Objection, ¶ 19. The Debtors have not identified any "specific transactions" that might be contemplated and whether otherwise requisite government approvals "might be waived." Accordingly, while the Debtors are not averse to making fuller disclosures, no such disclosures are obvious or necessary.

   d. The US Objection states that it is unclear whether the definition of "Allowed Claim" excludes an unliquidated claim even if a proof of claim has been filed. US Objection, ¶ 20. The Debtors submit that the Plan is clear that an unliquidated claim is not an Allowed Claim, even if a proof of claim is filed, and no further disclosure is required.

   e. The US Objection inquires about the availability of distributions if the Bar Date occurs after the Effective Date. US Objection, ¶ 21. The term "Distribution Record Date" has been revised to address the US concern.

WHEREFORE, the Debtors respectfully request the Court enter an order granting (i) the relief requested in the Motion and (ii) such other relief as may be equitable and just.

| | |
|---|---|
| Dated: May 26, 2020<br>Wilmington, Delaware | **BLANK ROME LLP**<br><br>*/s/ Victoria Guilfoyle*<br>Victoria A. Guilfoyle (No. 5183)<br>Stanley B. Tarr (No. 5535)<br>Jose F. Bibiloni (No. 6261)<br>1201 N. Market Street, Suite 800<br>Wilmington, Delaware 19801<br>Telephone: (302) 425-6400<br>Facsimile: (302) 425-6464<br>Email: guilfoyle@blankrome.com<br>         tarr@blankrome.com<br>         jbibiloni@blankrome.com<br><br>    -and-<br><br>**KELLER BENVENUTTI KIM LLP**<br>Tobias S. Keller (*pro hac vice*)<br>Jane Kim (*pro hac vice*)<br>Thomas B. Rupp (*pro hac vice*)<br>650 California Street, Suite 1900<br>San Francisco, California 94108<br>Telephone: (415) 496-6723<br>Facsimile: (650) 636-9251<br>Email: tkeller@kbkllp.com<br>         jkim@kbkllp.com<br>         trupp@kbkllp.com<br><br>*Attorneys for Debtors*<br>*and Debtors-in-Possession* |

146484.01601/123317687v.2