## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| RAVN AIR GROUP, INC., *et al.*, | Case No. 20-10755 (BLS) |
| Debtors.[1] | (Jointly Administered) |
| | **Hearing Date: June 25, 2020 at 11:00 a.m. (ET)**<br>**Obj. Deadline: June 18, 2020 at 4:00 p.m. (ET)** |

### AIRLINES REPORTING CORPORATION'S
### MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Airlines Reporting Corporation ("**ARC**") hereby moves the Court (the "**Motion**") under section 362(d)(1) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 4001(a) and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of an order, in substantially the form attached hereto as **Exhibit A**, modifying the automatic stay and permitting ARC to exercise its right of setoff to satisfy the fully-secured obligations owed by the Debtors to ARC. In support of this Motion, ARC respectfully states as follows:

### JURISDICTION AND VENUE

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b)(2) and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2), and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware* dated as of February 29, 2012.

2.     Venue is appropriate in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1]    The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: Ravn Air Group, Inc. (3047), Ravn Air Group Holdings, LLC (5356), JJM, Inc. (4858), HoTH, Inc. (9957), Peninsula Aviation Services, Inc. (6859), Corvus Airlines, Inc. (7666), Frontier Flying Services, Inc. (8091), and Hageland Aviation Services, Inc. (2754). The notice address for all of the Debtors is 4700 Old International Airport Road, Anchorage, AK 99502.

3.      The statutory predicates for the relief sought herein are sections 362 and 553 of the Bankruptcy Code, Bankruptcy Rule 4001, and Rule 4001-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

4.      Pursuant to Local Rule 9013(f), ARC consents to the entry of a final order on this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## BACKGROUND

A.      **General Background.**

5.      On April 5, 2020 (the "**Petition Date**"), each of the above-captioned debtors (the "**Debtors**") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Court**"), thereby commencing these cases (the "**Chapter 11 Cases**").

6.      The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      On April 20, 2020, the United States Trustee for Region 3 appointed an official committee of unsecured creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the "**Committee**").

B.      **Specific Background**

8.      Prior to the Petition Date, ARC and the Debtor Corvus Airlines, Inc. ("**Corvus**") entered into that certain Carrier Services Agreement, dated as of June 29, 2015 (the "**CSA**"), including the related Agent Reporting Agreement ("**ARA**"), Corporate Travel Department Reporting Agreements ("**CTDRA**") and the Sovereign Entity ARA and CTDRA (collectively with

the CSA, the "**ARC Agreements**").  A true and correct copy of the CSA is attached hereto as **Exhibit B**.  The ARC Agreements govern the terms and conditions under which ARC provides, and the Debtors use, ARC's services related to the issuance of the Debtors' passenger tickets and related documents by accredited travel agents.  Pursuant to the ARC Agreements, ARC provides a mechanism for travel agents to sell tickets to passengers for travel with the Debtors.  As consideration for ARC's services, the ARC Agreements create certain financial requirements and obligations for the Debtors in the event that the Debtors are unable to fulfill their obligations to passengers.

9.       Pursuant to the terms of the CSA, the Debtors provided ARC with a Cash Reserve Requirement ("**CRR**") in the amount of $100,000.  The CSA provides in relevant part that "[t]he CRR will be used to cover Carrier's potentially outstanding financial obligations including, without limitation, Carrier's projected cash refunds, unpaid fees and charges."  *See* CSA, Part IV, Sect. 1.3.

10.      In accordance with Part IV, Section 2.3 of the CSA, ARC was granted a security interest in any funds held in trust.  Specifically, the CSA provides: "Carrier grants ARC a security interest in any funds held in trust by ARC to satisfy Carrier's CRR.  Carrier agrees to execute all documents ARC may reasonably require to perfect ARC's security interest."  *See* CSA, Part IV, Sect. 2.3.

11.      Prior to the Petition Date, ARC was in possession of the CRR in the amount of $100,000, thereby perfecting ARC's lien and security interest in the CRR.

12.      In connection with services provided by ARC under the CSA, the Debtors have incurred an outstanding balance in the approximate amount of $136,994.32, consisting of the following:

- $23,760.54 from pre-petition shortages under the CSA (the "**Prepetition Claim**");

- $68,801.28 from post-petition shortages under the CSA (the "**Postpetition Claim**"); and

- $44,432.50 due under the CSA for outside counsel expenses (the "**Legal Fees**", and collectively, the "**ARC Claim**").[2]

13.     Therefore, the Debtors have outstanding secured obligations due and owing to ARC under the CSA in the amount of at least $136,994.32.  Under the CSA, the Prepetition Claim, the Postpetition Claim and the claim for Legal Fees are all secured by ARC's security interest in the CRR.  Additionally, ARC is fully secured for all amounts as of the Petition Date by its right of set-off against the CRR.

## **RELIEF REQUESTED**

14.     By this Motion, ARC seeks entry of an order, substantially in the form attached hereto as **Exhibit A**, modifying the automatic stay to the extent necessary to permit ARC to apply the full amount of the funds from the CRR to satisfy the Debtors' unpaid obligations under the CSA.

## **BASIS FOR RELIEF**

### I.     **"Cause" Exists to Grant Relief from the Automatic Stay**

15.     Relief from the automatic stay is appropriate in this case, because "cause" exists under section 362(d)(1) of the Bankruptcy Code to modify the automatic stay and grant the limited relief sought by this Motion.

16.     Section 362(d)(1) of the Bankruptcy Code provides, in pertinent part, that:

---

[2] At least $44,432.50 in Legal Fees were incurred as of June 8, 2020.  Such Legal Fees continue to accrue and the ARC Claim specifically includes any and all Legal Fees incurred by ARC and due under the CSA.  Further, ARC specifically reserves the right to amend the amount of the ARC Claim to include any and all additional amounts due under the CSA whether incurred pre or post-petition.

> the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay –
>
> (1) for cause, including the lack of adequate protection of an interest of such party in interest;

11 U.S.C. § 362(d)(1).

17.    A court may grant relief from the automatic stay for "cause." *See* 11 U.S.C. § 362(d)(1). While the Bankruptcy Code does not define "cause," it is a flexible concept, and whether sufficient cause exists to modify the stay is determined by the totality of the circumstances on a case-by-case basis. *See Baldino v. Wilson (In re Wilson)*, 116 F.3d 87, 90 (3d Cir. 1997); *In re The SCO Group, Inc.*, 395 B.R. 852, 856 (Bankr. D. Del. 2007).

18.    Further, "cause" is not limited to lack of adequate protection. *In re Cumberland Farms*, 162 B.R. 62, 69 (Bankr. D. Mass. 1993) ("Grounds for lifting the automatic stay are not limited to the creditor's lack of adequate protection."); *In re Madison Hotel Corp.*, 175 B.R. 94, 97 (Bankr. N.D. Ala. 1994) ("Although Congress singled out lack of adequate protection as sufficient cause for modification of the automatic stay, it also made clear that cause under section 362(d)(1) was not limited to lack of adequate protection.").

19.    In evaluating whether "cause" exists to modify the stay, "[a] court may consider the policies reflected in the bankruptcy code, and the interests of the debtor, other creditors and any other interested parties." *See In re Mu'min*, 374 B.R. 149, 164 (Bankr. E.D. Pa. 2007) (citing *In re Brown*, 311 B.R. 409, 412-13 (E.D. Pa. 2004)); *see also Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992). Courts will consider: (i) the hardship to the estate if relief is granted; (ii) the hardship to the movant if stay relief is not granted; and, where an underlying dispute is at issue, (iii) the underlying merits. *See, e.g., In re Rexene Prods. Co.*, 141 B.R. at 576. A balancing of the relative hardships in this case favors the

modification of the automatic stay to permit ARC to apply funds from the CRR to the Debtors' outstanding obligations under the CSA.

20.     First, the Debtors' estates and their creditors will not suffer any hardship and will not be prejudiced by the requested modification of the automatic stay.  As of the Petition Date, ARC held a fully secured interest in the CRR, which secured all of the Debtors' payment obligations under the CSA.  Additionally, by its setoff rights ARC holds a fully secured interest, which secures the Debtors' obligations under the CSA as to the Prepetition Claim.

21.     Second, ARC is likely to be prejudiced by any further delay in the satisfaction of the Debtors' obligations under the CSA.  Because the Debtors have stopped operating, ARC has been required to issue refunds out of its own operating funds for flights cancelled by the Debtors.  It is extremely prejudicial for ARC to be unwillingly forced to fund the Debtors' ongoing operating losses through the CSA.  Simply stated, there is no upside gained by the Debtors or their estates and creditors to further delay payment of the Debtors' obligations under the CSA.  Rather, there is only downside and continued risk of loss to ARC.  The automatic stay should be lifted to the extent necessary to permit ARC to apply the full amount of the funds from the CRR to satisfy the Debtors' unpaid obligations under the CSA.

## II.     Relief From the Automatic Stay Should be Granted to Permit ARC to Setoff the Debtors' Obligations Against the CRR

22.     ARC has a valid right of setoff under the CSA, and this Court should grant relief from the automatic stay in order to allow ARC to setoff its Prepetition Claim against the Debtors.

23.     Section 553(a) of the Bankruptcy Code provides, in relevant part, as follows:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect the right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case ….

11 U.S.C. § 553(a).

24.    Setoff is an equitable right that "allows entities that owe each other money to apply their mutual debt against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *See Citizens Bank v. Strumpf*, 516 U.S. 16, 18 (1995) (citation omitted).

25.    The elements necessary to exercise a right of setoff under section 553(a) of the Bankruptcy Code are the following: (a) a debt exists from the creditor to the debtor that arose before the commencement of the bankruptcy case; (b) the creditor has a claim against the debtor that arose before the commencement of the bankruptcy case; and (c) the debt and the claim are mutual obligations.  *Folger Adam Security, Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252, 262-63 (3d Cir. 2000).

26.    Here, each of the elements necessary to exercise a right of setoff under section 553(a) of the Bankruptcy Code are satisfied.  First, any obligations ARC owes to the Debtors arose from a pre-petition contract, namely the CSA.

27.    Second, ARC's Prepetition Claim against the Debtors arose before the commencement of the Chapter 11 Cases.  The CRR under the CSA was delivered prior to the Petition Date, and likewise, the services performed in connection with the Prepetition Claim under the CSA was completed prior to the Petition Date.

28.    Third, the mutuality requirement under section 553(a) of the Bankruptcy Code requires that the claims sought to be setoff be between the same parties.  *See In re SemCrude, L.P.*, 399 B.R. 388, 393 (Bankr. D. Del. 2009), *aff'd*, 428 B.R. 590 (D. Del. 2010).  Here, ARC's claim is against Corvus, and Corvus's claim is against ARC, so they are between the same parties.

29.    ARC therefore holds a valid and enforceable right of setoff against Corvus under section 553(a) of the Bankruptcy Code.  Because ARC possesses a valid right of setoff against

Corvus, this Court should modify the automatic stay under section 362(d)(1) of the Bankruptcy Code to allow ARC to exercise its setoff rights.

30.     Accordingly, there are adequate grounds for this Court to grant ARC relief from the automatic stay under section 352(d) of the Bankruptcy Code so as to permit ARC to exercise its rights and remedies under the CSA.

## NOTICE

31.     Notice of this Motion has been given to (a) counsel for the Debtors; (b) the Office of the United States Trustee; (c) counsel for the Committee; and (d) all parties who have requested notice in these Chapter 11 Cases.  ARC respectfully submits that no further notice is necessary.

WHEREFORE, for the reasons set forth above, ARC respectfully requests the Court: (i) modify the automatic stay so as to permit ARC to exercise its rights and remedies under the CSA with respect to the CRR and satisfy the payment obligations related thereto; and (ii) grant ARC such other and further relief as just and equitable.

Dated:  June 10, 2020
      Wilmington, Delaware

CHIPMAN BROWN CICERO & COLE, LLP

_/s/ William E. Chipman, Jr._

William E. Chipman, Jr. (No. 3818)
Mark D. Olivere (No. 4291)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:     (302) 295-0191
Facsimile:     (302) 295-0199
Email:          chipman@chipmanbrown.com
                 olivere@chipmanbrown.com

—and—

Erika L. Morabito
Brittany J. Nelson
**FOLEY & LARDNER LLP**
3000 K Street, N.W., Suite 600
Washington, DC 20007-5109
Telephone:     (202) 672-5300
Email:          bnelson@foley.com
                emorabito@foley.com

—and—

Derek L. Wright
**FOLEY & LARDNER LLP**
321 North Clark Street, Suite 3000
Chicago, Illinois 60654
Telephone:     (312) 832-4577
Email:          dlwright@foley.com

*Counsel for Airlines Reporting Corporation*