**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: ) | |
| ) | **Chapter 11** |
| **RAVN AIR GROUP, INC.,** ) | Case No. 20-10755 (BLS) |
| ) | Jointly Administered |
| ) | |
| Debtors. ) | Hearing Date: June 25, 2020 at 11:00 am |
| ) | Obj. Deadline: June 22, 2020 at 12:00 pm |
| | Related Doc. No. 323 |

**UNITED STATES' OBJECTION TO CHAPTER 11 PLAN OF LIQUIDATION OF RAVN AIR GROUP, INC. AND ITS AFFILIATED DEBTORS AND TO THE ASSUMPTION AND ASSIGNMENT OF <u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>**

The United States of America objects pursuant to 11 U.S.C. § 1128(b) to the Chapter 11 Plan of Liquidation of Ravn Air Group, Inc., and its Affiliated Debtors ("Plan") and to the assumption and assignment of executory contracts and unexpired leases. In support of its objections, the United States states as follows.

<u>BACKGROUND</u>

1. On April 5, 2020, Ravn Air Group ("Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

2. The United States is a creditor and party in interest in this case. At this time, the United States Postal Service ("USPS") estimates that it is owed $725,000 for mail transferred by the Debtors to other carriers for delivery; the United States Customs and Border Protection has unliquidated claims for duties and fees; and according to the Debtors, the Transportation Security Administration is owed $12,326 for passenger security fees. The Internal Revenue Service also filed estimated claims against the Debtors exceeding $2,400,000. The Government bar date for

filing claims against the Debtors is October 2, 2020, and undersigned counsel for the United States is still determining the nature and amount of claims that other Government agencies might have against the Debtors. The Debtors have claims against the United States, and specifically the USPS for mail services and the Department of Transportation for services performed under the Essential Air Service Program. The Debtors and the United States have been working on reconciling the amounts owed for purposes of setoff and recoupment.

3. On April 27, 2020, the Debtors filed the [Proposed] Chapter 11 Plan of Liquidation and the [Proposed] Disclosure Statement for the Chapter 11 Plan of Liquidation. [Docket Nos. 112, 113]. On May 20, 2020, the United States filed an objection to the Disclosure Statement. [Docket No. 236]. On May 26, 2020, the Debtors filed a reply in support of its motion to approve disclosure statement ("Debtors' Reply") [Docket No. 258], and a revised plan and disclosure statement that addressed some of the United States' disclosure statement objections. [Docket Nos. 253, 256]. Based on the revised disclosure statement, the United States did not pursue its objections to the disclosure statement, but instead reserved all of its rights to object to plan confirmation. The Court approved the disclosure statement on June 7, 2020. [Docket No. 318]. On June 9, 2020, the Debtors filed the Plan and Disclosure Statement for the Chapter 11 Plan of Liquidation ("Disclosure Statement"). [Docket Nos. 323, 325]. Objections to the Plan and to the assumption and assignment of executory contracts and unexpired leases are due June 22, 2020.

4. Before the filing of this objection, counsel for the United States contacted Debtors' counsel to discuss the United States' concerns with the Plan, and proposed language, where applicable, to address its concerns. Because the United States has not yet received a revised

2

plan or proposed confirmation order, it does not know whether the revised plan or proposed order will address its concerns. Accordingly, due to the deadline for filing objections, the United States files this objection to preserve its rights. The United States will continue to work with the Debtors to try to resolve the issues raised in this objection.

## OBJECTIONS

5.  The United States objects to the Plan because it does not satisfy the requirements of confirmation under 11 U.SC. § 1129(a) for the following twelve reasons: (i) the Plan violates section 1129(a)(1) by providing for an injunction when the Debtors are not entitled to a discharge; (ii) the Plan violates section 1129(a)(1) by failing to preserve the United States' offset and recoupment rights; (iii) the Plan violates section 1129(a)(1) to the extent it enjoins the United States' police and regulatory powers; (iv) the Plan violates section 1129(a)(3) by providing an exculpation provision that extends to non-estate fiduciaries and to pre-petition activity and that contains a third party non-debtor permanent injunction; (v) the Plan violates section 1129(a)(1) to the extent that the Plan prevents the United States, and specifically, the United States Customs and Border Protection, from pursuing any surety that might be liable for any debt owed to the United States; (vi) the Plan violates section 1129(a)(1) by providing for a settlement of all claims held against the Debtors; (vii) the Plan violates section 1129(a)(1) by assuming any government contract or lease without the United States' consent, and by failing to provide adequate assurance of future performance, (viii) the Plan violates section 1129(a)(3) to the extent that the Plan provides for the transfer of the FAA operating certificates to the Litigation Trust or for the Litigation Trust to obtain a security interest on the certificate; (ix) the Plan violates section 1129(a)(3) by waiving as a condition to the effective date any requisite governmental approvals

for the transactions contemplated by the Plan; (x) the Plan violates section 1129(a)(1) by providing that timely filed unliquidated claims shall not be allowed claims without an objection being filed; (xi) the Plan violates section 1129(a)(3) by providing that federal bankruptcy law can trump applicable non-bankruptcy law to the extent that non-bankruptcy law would prohibit or restrict any act contemplated by the Plan; and (xii) The Plan violates section 1129(a)(3) to the extent that it attempts to create jurisdiction that the Court would not have under applicable law.

6. <u>Improper Injunction</u>.  Section 11.10 of the Plan contains an improper injunction and provides that "all Persons are precluded and barred from asserting against any property to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, Equity Interests, or other action or remedy based on any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or the Confirmation Order." Plan, § 11.10.

The Debtors concede that the Plan does not discharge the Debtors.  Plan, § 11.10.  Indeed, under 11 U.S.C. § 1141(d)(3)(A), the Debtors are not entitled to a discharge when their plan provides for liquidation of all or substantially all of the property of the estate; the Debtors do not engage in business after consummation of the Plan; and the corporate debtor would be denied a discharge under 11 U.S.C. § 727(a), which it would, if this was a case under chapter 7.  Since the Debtors are not entitled to a discharge, they are not entitled to an injunction preventing creditors from taking actions on account of those debts.  *See In re Midway Gold US, Inc.,* 575 B.R. 475, 515 (Bankr. D. Colo. 2017) (liquidating chapter 11 plan may not provide for the discharge of a debtor or enjoin actions against property of the debtor's estate); *In re Sis Corp.,* 120 B.R. 93, 96 (Bankr. N.D. Ohio 1990) (holding that injunction contained in liquidating plan

was "in derogation of § 1141(d)(3)"). The Plan, therefore, does not comply with section 1141(d)(3) and may not be confirmed under section 1129(a)(1).

Even if the Debtors were entitled to a discharge and injunction – which they are not – the injunction is impermissibly broader than what the Code allows. Section 11.10 is tied to claims arising before the Effective Date (as defined under the Plan) rather than to claims arising before the confirmation date, as provided by 11 U.S.C. § 1141(d)(1)(A).

7.      <u>Setoff and Recoupment</u>.  The United States objects to the Plan to the extent it fails to preserve the setoff and recoupment rights of the United States. Confirmation of a plan does not extinguish setoff claims when they are timely asserted. *In re Continental Airlines*, 134 F.3d 536 (3d Cir. 1998). Like other creditors, the United States has the common law right to setoff mutual debts. "The government has the same right 'which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him.'" *United States v. Munsey Trust Co. of Washington*, 332 U.S. 234, 239 (1947) (quoting *Gratiot v. United* States, 40 U.S. 336, 370 (1841)). Section 553(a) preserves the right of setoff in bankruptcy. *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995); *In re Luongo*, 259 F.3d 323, 333 (5th Cir. 2001) ("It is impossible for us to ignore the clear statement of § 553 that this title. . . does not affect any right of a creditor to offset. . ."). Moreover, "[t]he government of the United States suffers no special handicap under § 553 of the Bankruptcy Code." U*nited States v. Maxell*, 157 F.3d 1099, 1103 (7th Cir. 1998).

For the avoidance of doubt, the United States hereby asserts its setoff rights, and accordingly has preserved those rights. *See, e.g.,* Final Order Authorizing Debtors to Obtain PostPetition Senior Secured Superpriority Financing at ¶ 37 (providing that, to the extent the

United States "has any setoff or recoupment rights in existence as of the Petition date that are valid and not avoidable" nothing in the order "shall impair such rights . . . . "). [Docket No. 148]. From the outset of this case, the United States and the Debtors have been working to reconcile the amounts owed to the Government. The Debtors have acknowledged that the United States has valid claims against them and that the United States may set off or recoup those claims against the amounts currently held by the United States. The only issue is the amount of the United States' claims. Once the reconciliation of the United States' claims has been completed, the parties will prepare a stipulation for the Court's approval on the amounts that will be offset and recouped by the Government and the amounts, if any, that will be released to the Debtors. Because the Plan purports to adversely impair the United States' asserted setoff rights, it violates section 1129(a)(1).[1]

Moreover, the Plan also improperly fails to preserve recoupment rights of the United States. Recoupment is the setting up of a demand arising from the same transaction as the plaintiff's claim, to abate or reduce that claim. *See In re Ruiz*, 146 B.R. 877, 880 (Bankr. S.D. Fla. 1992). Recoupment, a creditor's right long recognized in bankruptcy proceedings, is merely the means used for determining the proper liability on the amounts owed. *See Reiter v. Cooper*,

---

[1] The Plan contemplates a substantive consolidation of all the Debtors into Ravn Air Group with the remaining Debtors to be dissolved upon entry of the Confirmation Order. Section 5.06 of the Plan states that the substantive consolidation shall not affect "requirements for any third party to establish mutuality with respect to a particular Debtor prior to substantive consolidation in order to assert a right of setoff against the Debtors or the Liquidation Trust." Plan, § 5.06(c). The United States objects to substantive consolidation of the Debtors to the extent that it requires a creditor to prove before the substantive consolidation that it has mutuality for purposes of exercising offset rights. The Government bar date is October 2, 2020, and the Government should not need to know the universe of claims by the time of plan confirmation when it occurs before the government bar date.

507 U.S. 258, 265 n. 2 (1993); *In re Holford*, 896 F.2d 176, 178 (5th Cir. 1990).  It carries with it no right to payment.  Thus, recoupment is neither a claim nor a debt under the Bankruptcy Code, and even if the Debtors were entitled to a discharge in bankruptcy – which they are not – that discharge would not affect recoupment rights.  *See In re Flagstaff Realty Assocs.*, 60 F.3d 1031 (3d Cir. 1995) (recoupment survives confirmation of plan); *In re Harmon*, 188 B.R. 421, 425 (B.A.P. 9th Cir. 1995) ("Because recoupment only reduces a debt as opposed to constituting an independent basis for a debt, it is not a claim in bankruptcy, and is therefore unaffected by the debtor's discharge."); *Brown v. General Motors Corp.*, 152 B.R. 935, 938 (W.D. Wis. 1993); *In re Delicruz*, 300 B.R. 669, 681 (Bankr. E.D. Mich. 2003) ("right of recoupment is not subject to the discharge").

For all these reasons, the United States objects to the Plan to the extent that it fails to preserve the United States setoff and recoupment rights and to the extent it purports to expand the Debtors' discharge rights – which the Debtors are not entitled – to beyond the scope of 11 U.S.C. §§ 524 and 1141.

8.    <u>Effect on Regulatory and Police Powers</u>.  The United States objects to the Plan to the extent that it improperly bars the United States from exercising its police or regulatory powers.  As a liquidating Plan, the Debtors are not entitled to a discharge or injunction.  The Plan may not enjoin the United States from seeking nonmonetary relief.  *See In re Torwico Elecs., Inc.,* 8 F.3d 146, 151 (3d Cir. 1993) ("there is no option to accept payment in lieu of continued pollution") (quoting *In re Chateaugay Corp.*, 944 F.2d 997, 1008 (2nd Cir. 1991).  To the extent that the Plan purports to enjoin proceedings that are not provided for in 11 U.S.C. § 524, it is invalid and may not be confirmed.

9. <u>Exculpation</u>.  Section 11.12's exculpation provision is contrary to the Bankruptcy Code and Third Circuit law.  The exculpation provision provides that "none of the Exculpated Parties shall have or incur any liability to any Person, including to any Holder of a Claim . . . for any prepetition or postpetition act or omission in connection with, relating to, or arising out of the Chapter 11 Cases, the formulation, negotiation, preparation, dissemination, solicitation of acceptances, implementation, confirmation, or consummation of the Plan, Disclosure Statement . . or the administration of the Plan or the property to be distributed under the Plan . . . .  The Confirmation Order shall serve as a permanent injunction against any Person seeking to enforce any Causes of Action against the Exculpated Parties that are encompassed by the exculpation . . . ."  Plan, § 11.12.  The exculpation provision further states that it shall not apply to any acts or omissions constituting actual fraud or misconduct by an Exculpated Party.  *See Id.*

The Plan defines "Exculpated Parties" to include the Board, the Committee, the DIP Agent, DIP Lenders, Holders of PrePetition Secured Claims and each of the preceding's respective Related Parties.  Plan, Article I at p. 9.  "Related Parties" include accountants, attorneys, directors, employees, officers, partners, and financial advisers.  Plan, Article I at p. 14.

The exculpation provision is impermissible as to who is entitled to exculpation, and what claims are the subject of exculpation.  As drafted, the exculpation provision is not limited to estate fiduciaries as required by controlling Third Circuit precedent.  *In re PWS Holding Corp.,* 228 F.3d 224, 246-47 (3d Cir. 2000); *accord In re Indianapolis Downs, LLC.,* 486 B.R. 286, 306 (Bankr. D. Del. 2013) (Shannon, J.) (approving exculpation clause limited to estate fiduciaries); *In re Washington Mutual, Inc.,* 442 B.R. 314, 350-51 (Bankr. D. Del. 2011) (Walrath, J.) (limiting exculpation clause to fiduciaries who have served during chapter 11 case); *In re Tribune Co.,* 464

8

B.R. 126, 189 (Bankr.D. Del. 2011) (Carey, J.) (exculpation clause must exclude non-fiduciaries); *In re PTL Holdings LLC,* No. 11-12676, 2011 WL 5509031, at *12 (Bankr. D. Del. Nov. 10, 2011) (Shannon, J.) (refusing to extend exculpation clause to prepetition lenders who are not estate fiduciaries). As drafted, the exculpation clause extends to non-estate fiduciaries, such as the DIP Agent, DIP Lenders, and Holders of PrePetition Secured Claims and their Related Parties.

Furthermore, even with respect to estate fiduciaries that can be covered, the exculpation clause is impermissibly broad, because it is not limited to actions taken during the case, but also includes pre-petition activity. *In re PWS Holding Corp.,* 228 F.3d at 235 (limiting release of Committee members and professionals who provided services after petition date for work on the reorganization plan ); *Washington Mutual, Inc.,* 442 B.R. at 350-351 (limiting exculpation clause to actions taken during the bankruptcy case); *In re Genesis Health Ventures, Inc.,* 266 B.R. 591, 605 (Bankr. D. Del. 2001) (Wizmur, J.) (exculpation clause limited to claims held by creditors "which are connected with or arising out of the reorganization cases . . . . Presumably, any pre-petition claims . . . are not implicated by this clause."). Thus, as drafted, the Plan violates 1129(a)(3) and may not be confirmed.

Finally, the exculpation provision also contains a permanent injunction against any person seeking to enforce any cause of action against the Exculpated Parties that is encompassed by the exculpation. In the Debtors' Reply, the Debtors state that the "exculpation of lenders goes hand in glove with releases, and should be granted if releases may be granted . . . ." Debtors' reply at ¶ 21 n.6. The United States is not subject to the release provision of section 11.11 of the Plan because it is not a "Releasing Party" as defined under the Plan. However, the third party permanent injunction contained in the exculpation provision is binding on all creditors, including

9

the United States, regardless of whether or not they vote on the Plan, and it is non-consensual. The Third Circuit Court has expressly held that there must be findings that the third party injunction is essential to reorganization. *In re Continental Airlines,* 203 F.3d 203, 214 (3d Cir. 2000). No such showing can be made here because the Debtors are not reorganizing. The Plan, therefore, Plan violates section 1129(a)(3) and may not be confirmed.

10. <u>Cancellation of Instruments</u>. Section 5.05(c) of the Plan provides that any "bond . . . or other instrument or document evidencing or creating any indebtedness or obligation of the Debtors shall be deemed cancelled on the Effective Date . . . and all obligations of the Debtors thereunder or in any way related thereto shall be discharged." Plan, § 5.05(c). The United States objects to the Plan to the extent that this section or any other Plan provision might impair or purport to impair the rights of the United States, and specifically, the United States Customs and Border Protection ("CBP") to pursue any non-debtor third party with respect to any debt owed to the United States, including, but not limited to debts owed by any customs bond surety to the United States. The United States should not be barred from making a demand on, being paid by, or otherwise pursuing any surety that is liable for any debt owed to the United States. To the extent that the Plan precludes or purports to preclude such action, the Plan violates section 524(e) and may not be confirmed under section 1129(a)(1).

11. <u>Settlement of Claims</u>. Section 3.10 of the Plan states that, under section 1123(b)(3), as well as Bankruptcy Rule 9019, "the provisions of the Plan will constitute a good faith compromise and settlement of all claims and controversies set forth herein or in the Plan Supplement with respect to any Claim . . . The Confirmation Order will constitute Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims .

. . . " Plan, § 3.10(a). The United States objects to the Plan because section 1123(b)(3) permits the Debtors to settle claims they hold, but not to unilaterally "settle" any and all claims held by creditors against the Debtors. 11 U.S.C. § 1123(b)(3)(A). Because the United States has not agreed to any such "settlement" under Fed. R. Bankr. P. 9019, the Plan violates section 1129(a)(1) and may not be confirmed to the extent it does not clarify that the United States is not agreeing to any "settlement" approved under the Plan or order confirming the Plan.

12. <u>Executory Contracts and Leases</u>. Section 6.01 of the Plan provides for the assumption of all executory contracts and unexpired leases that are listed on the Schedule of Assumed Agreements (as defined in the Plan). On June 12, 2020, the Debtors filed the Schedule of Agreements ("Schedule") which included several leases with the General Services Administration ("GSA") and the Order Selecting Carrier with the Department of Transportation ("Provision of Essential Air Service"). [Docket No. 337-5]. Objections to cure amounts and assumption of the agreements are due by the Plan confirmation objection deadline.

The United States objects to the Plan to the extent it seeks to assume any government contracts or unexpired leases without the government's consent. Section 365(c)(1) of the Bankruptcy Code provides that the debtor "may not assume or assign any executory contract or unexpired lease . . . if . . . applicable law excuses a party, other than the debtor, to such contract or lease from accepting performance from . . . an entity other than the debtor . . . and . . . such party does not consent to such assumption or assignment." Thus, a debtor may not assume or assign an executory contract if its contracting party need not accept performance under that contract from a third party under "applicable law," unless the debtor's contracting party consents to the assumption or assignment. 11 U.S.C. § 365(c)(1).

The "applicable law" here is the Anti-Assignment Act, 41 U.S.C. § 6305, which prohibits government contractors from assigning contracts with the United States to third parties without the consent of the United States. The Anti-Assignment Act specifically states that "[t]he party to whom the Federal Government gives a contract or order may not transfer the contract or order, or any interest in the contract or order, to another party." 41 U.S.C. § 6305(a). Thus, according to the Anti-Assignment Act and section 365(c) of the Bankruptcy Code, the Debtors cannot assume and assign any government contracts or leases without the consent of the United States. *See In re West Elecs. Inc.*, 852 F.2d 79, 83 (3d Cir. 1988) (contract for production of military equipment could not be assigned without government's consent under the Anti-Assignment Act and Code section 365(c)(1)).

In addition, it is unclear how and why contracts and leases are being assigned to the Litigation Trust. Furthermore, six GSA leases appear on the Schedule. Five of the six leases have expired, and therefore, under the express terms of section 365(a), they cannot be assumed. *See* 11 U.S.C. § 365(a) (trustee may "assume . . . unexpired lease of the debtor"); *see also In re Atkins*, 237 B.R. 816, 818 (Bankr. M.D. Fla. 1999) ("lease can be assumed only if it is unexpired . . . [n]othing remains for the debtor to assume once a lease has expired or is terminated."). The only active and unexpired lease is listed on page 6 of the Schedule as the "DLG Airport Sublease."

Finally, at this time, the United States objects to the assumption of the Provision of Essential Air Service to the Litigation Trust. Pursuant to 49 U.S.C. § 41738, a carrier may provide air service under the Essential Air Service Program, only when the Secretary of Transportation finds that the carrier is "fit, willing, and able to perform the service or

transportation." 49 U.S.C. § 41738(1). The Debtors have ceased operations. The Debtors, and any successors in interest, such as the Litigation Trust, would need to provide the Department of Transportation with the requisite information on their continuing fitness to operate as required by 14 C.F.R. § 204.3. The United States further objects to the assumption of the Provision of Essential Air Service to the Litigation Trust because it has no information on the Litigation Trust's ability to comply with section 365 of the Bankruptcy Code, including its ability to provide adequate assurance of future performance as required by 11 U.S.C. § 365(f)(2)(B). [2]

13.     Liquidation Trust Assets. The United States objects to the Plan to the extent that the Liquidation Trust Assets (as defined in the Plan) includes the air carrier operating certificates issued by the FAA. Section 5.03(c) provides that on the "Effective Date, the Liquidation Trust will be automatically vested with all of the Debtors' and the Estates' respective rights, title, and interest in and to all Liquidation Trust Assets; *provided* that, to the extent that the Debtors cannot or are prohibited from transferring any asset or assets to the Liquidation Trust, the Liquidation Trust shall have a perfected, first priority claim on each such asset or its proceeds, as permitted under applicable law." Plan, § 5.03(c). The Debtors added the proviso in response to the United States' objection to the disclosure statement. Disclosure Statement at p. 22. However, the United States still has concerns with section 5.03(c). The Debtors cannot assign greater rights than they possess. *See Florida Bahamas Lines. Ltd. v. The Steel Barge 'Star 800' of Nassau,*

---

[2] On June 3, 2020, the Court entered an order approving bidding procedures. [Docket No. 295]. According to that order, objections to the sale and assumption and assignment of contracts and leases are due June 29, 2020. The United States reserves all rights to object to the assumption and assignment of any government contract or lease and/or the provision of essential air service as part of any sale contemplated by the Debtors.

433 F.2d 1243, 1246 (5th Cir. 1970) (holding that assignee acquires no greater rights or interests than those possessed by the assignor). The FAA operating certificates cannot be transferred or sold to another person at all, including the Liquidation Trust. The Debtors cannot pledge as collateral the FAA operating certificate, and the Liquidation Trust cannot obtain a perfected security interest in the certificates. Accordingly, the Plan violates 11 U.S.C. § 1129(a)(3) and cannot be confirmed.

14.     <u>Conditions to Effective Date</u>.  According to section 9.01 of the Plan, one of the conditions to the Effective Date is that all requisite governmental approvals for the transactions contemplated by the Plan shall be obtained. But the Plan also appears to allow Debtors to waive conditions to effectiveness. The United States objects to section 9.02 of the Plan to the extent that it could be interpreted to permit confirmation and effectiveness of a Plan without required governmental approvals, due to the Debtors' purported ability to waive this condition. The United States requests that the confirmation order clarify that nothing in the Plan, including, without limitation, the provisions of section 9.02 of the Plan, can be construed to relieve any requirement of the Debtors to obtain any governmental approvals required for transactions contemplated by the Plan.

15.     <u>Allowed Claim Definition</u>.  The United States objects to the definition of "Allowed Claim" to the extent it excludes an unliquidated claim even if a proof of claim is timely filed. Under 11 U.S.C. § 502(a), a claim is deemed allowed unless a party in interest objects. Moreover, the broad definition of the term "claim" in section 101(5) specifically includes unliquidated claims. Furthermore, such claims do not fall within the exceptions to allowance set forth in section 502(b). Thus, to the extent the United States timely files an unliquidated

claim, the claim shall be deemed allowed unless a party in interest objects. However, as drafted, the Plan provides that the unliquidated claim is automatically not an "Allowed Claim" without an objection ever being filed. Thus, the Plan violates section 1129(a)(1) and may not be confirmed.

16. <u>Governing Law Provision</u>. The United States objects to the Governing Law provision of Section 11.19 of the Plan which provides that "[a]ny applicable nonbankruptcy law that would prohibit, limit, or otherwise restrict implementation of the Plan based on . . . (ii) the appointment of the Liquidation Trustee, (iii) the wind-down of the Debtors, (iv) the liquidation of some or all of the Liquidation Trust Assets, or (v) any other act or action to be done pursuant to or contemplated by the Plan is superseded and rendered inoperative by the Plan and federal bankruptcy law." Plan, § 11.19. The United States objects to this provision to the extent that it attempts to provide that the terms of the Plan could trump applicable federal non-bankruptcy law with respect to transactions contemplated under the Plan even though the Bankruptcy Code would not supersede applicable non-bankruptcy law.

17. <u>Jurisdiction</u>. The Retention of Jurisdiction provision set forth in Article X of the Plan is overly broad to the extent that it attempts to create jurisdiction that the Bankruptcy Court would not have under applicable law. The United States reserves the right to assert that the Court lacks jurisdiction over any matter set forth in Article X.

<u>RESERVATION OF RIGHTS</u>

18. The United States reserves all its rights and objections with respect to any revised plan that might be filed and any order confirming the Plan.

WHEREFORE, the United States respectfully requests that the Court deny confirmation of the Plan.

Dated: June 22, 2020                                    Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

DAVID C. WEISS
United States Attorney

ELLEN W. SLIGHTS
Assistant United States Attorney
Delaware State Bar No. 2782
1007 Orange Street, Suite 700
P.O. Box 2046
Wilmington, DE 19899-2046
Tel: (302) 573-6277

/s/Andrea Horowitz Handel
RUTH A. HARVEY
MARGARET M. NEWELL
ANDREA HOROWITZ HANDEL
Civil Division, U.S. Dept. of Justice
P.O. Box 875 Ben Franklin Station
Washington, DC 20044
Tel: (202) 307-0358
andrea.handel@usdoj.gov

Richard E. Zuckerman
Principal Deputy Assistant Attorney General

Christopher J. Williamson
Trial Attorney, Tax Division
U.S. Department of Justice
Ben Franklin Station, PO Box 227
Washington, DC 200044
Tel: 202-307-2250
Fax: 202-514-6866
Christopher.j.williamson@usdoj.gov

Attorneys for the United States

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document has been served by (1) electronic mail on those parties listed below and (2) electronic mail on all parties on the Court's ECF system, this 22nd day of June 2020.

John Mannion
4700 Old International Airport Road
Anchorage, AK 99502
jmannion@ravanairgroup.com

Tobias Keller
Jane Kim
Thomas B. Rupp
Keller, Benvenutti Kim LLP
650 California Street, Suite 1900
San Francisco, CA 94108
tkeller@kbkllp.com
jkim@kbkllp.com
trupp@kbkllp.com

Victoria A. Guilfoyle
Stanley Tarr
Blank Rome LLP
1201 N. Market Street, Suite 800
Wilmington, DE 19801
guilfoyle@blankrome.com
tarr@blankrome.com

Robert Stark
Oksana Lashko
Brown Rudnick LLP
Seven Times Square
New York, New York 10036
olashko@brownrudnick.com
rstark@brownrudnick.com

Christopher A. Ward
Polsinelli PC
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
cward@polsinelli.com

Davie Neier
Carrie v. Hardman
Winston & Strawn LLP
200 Park Avenue
New York, New York 10166-4193
dneier@winston.com
chardman@winston.com

William P. Bowden
Ashby & Geddes PA
500 Delaware Avenue, 8th Floor
Wilmington, Delaware 19899
wbowden@ashby-geddes.com

                                                 /s/ Andrea Horowitz Handel