# EXHIBIT A

**Declaration of Richard Newman**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>RAVN AIR GROUP, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 19-11626 (KG)<br><br>Jointly Administered |

**DECLARATION OF RICHARD NEWMAN IN SUPPORT OF
OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO CONFIRMATION OF CHAPTER 11
PLAN OF RAVN AIR GROUP, INC. AND ITS AFFILIATED
DEBTORS AND CROSS-MOTION FOR CONVERSION TO CHAPTER 7**

I, Richard Newman, hereby declare under penalty of perjury:

1. I am a Managing Director with Alvarez & Marsal North America, LLC ("A&M"). The Official Committee of Unsecured Creditors (the "Committee") of the above-captioned debtors and debtors-in-possession (the "Debtors") has selected A&M as its financial advisor, and I am authorized to make this declaration (this "Declaration") on behalf of the Committee in support of the Committee's objection (the "Objection")[2] to confirmation of the *[Proposed] Chapter 11 Plan of Liquidation of Ravn Air Group, Inc. and Its Affiliated Debtors*, dated May 26, 2020 [D.I. 112] (as may be modified and amended, the "Plan").

---

[1] The Debtors in these Chapter 11 Cases and the last four digits of each Debtor's U.S. tax identification number are as follows: Ravn Air Group, Inc. (3047), Ravn Air Group Holdings, LLC (5356), JJM, Inc. (4858), HoTH, Inc. (9957), Peninsula Aviation Services, Inc. (6859), Corvus Airlines, Inc. (7666), Frontier Flying Service, Inc. (8091), and Hageland Aviation Services, Inc. (2754). The notice address for all of the Debtors is 4700 Old International Airport Road, Anchorage, AK 99502.

[2] Capitalized terms not otherwise defined in this Declaration shall have the meaning set forth in the Objection.

2. Except as otherwise noted,[3] all facts set forth in this Declaration are based upon (a) my personal knowledge of the Debtors' current operations and financial performance, (b) information learned from my review of relevant documents, and (c) information I have received from the Debtors' professionals. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

### Scope of the Declaration

3. I was asked to evaluate the appropriateness of the Debtors' (i) liquidation analysis attached as Exhibit B to the *Disclosure Statement for the Chapter 11 Plan of Liquidation of Ravn Air Group, Inc. and Its Affiliated Debtors* [D.I. 325] (such exhibit, the "Liquidation Analysis) and (ii) DIP Budget in order to determine whether the DIP Budget benefits the Debtors' Estates or is only a tool for the DIP Lenders to facilitate their foreclosure process through these Chapter 11 cases. In order to analyze the DIP Budget, I and other professionals at A&M reviewed actual expenditures from the Petition Date through June 12, 2020 and forecasts under the DIP Budget through the week of June 3, 2020.

### Qualifications

4. A&M is a global professional services firm that offers a wide variety of services to private and public clients, including financial turnaround and restructuring advisory services. My responsibilities at A&M primarily involve business plan review, liquidity management, budget planning, cash flow forecasting, and bankruptcy sales. In this capacity, I have advised clients in numerous chapter 11 cases, including those of: Avaya Inc.; Boomerang Tube, LLC; Communications Corporation of America, Inc.; Chesapeake Corporation; Endeavour Operating

---

[3] Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at A&M and are based on information provided by them.

Corp.; Dresser, Inc.; Freedom Communications, Inc.; Getty Petroleum Marking Inc.; Keywell LLC; Kimball Hill, Inc.; Eastman Kodak Corporation; NewPage Corporation; Orchids Paper Products Company; Reader's Digest Association Inc.; SunEdison Inc.; TK Holdings Inc.; Tronox Inc.; Union Carbide Corporation; and Visteon Corp.

5. During my approximately fifteen (15) years as a restructuring and turnaround management professional, I have been involved in analyses of sales under section 363(b) of the Bankruptcy Code and corresponding bid procedures, marketing efforts, and sale processes in numerous chapter 11 cases, including, among others, Bayou Steel BD Holdings LLC.; Freds, Inc.; Freedom Communications, Inc.; Hollander Sleep Products, LLC.; HRI Holding Corp. ("Houlihans") Keywell LLC; LifeCare Holdings, Inc.; NORPAC Foods Inc.; Orchids Paper Products Company; Synergy Pharmaceuticals, Inc.; and TK Holdings Inc.

6. A copy of my biography, which includes additional details regarding my professional experience, is attached hereto as **Exhibit 1**.

## ANALYSIS

### A. Liquidation Analysis

7. The Debtors prepared the Liquidation Analysis to demonstrate that the Plan is in the best interests of creditors when compared to a Chapter 7 liquidation. Based on my review of the Debtors' Liquidation Analysis, it is my opinion that the Debtors incorrectly conclude that the Plan is in the best interests of creditors.

8. The Debtors have not done a valuation analysis under the Plan in order to assess the value of their Estates as compared to proposed distributions. A proper valuation, however, is the starting point in determining whether creditors' distributions under a chapter 11 plan are appropriate.

9. The Liquidation Analysis appears to ignore recoveries from certain key assets of the Estates, including Ground Leases,[4] accounts receivable, intangible assets and Avoidance Actions. Additionally, the Liquidation Analysis does not take into account that certain costs of liquidation could be reduced in a chapter 7 liquidation. As set forth in my analysis (the "Committee Liquidation Analysis"), attached hereto as **Exhibit 2**, when taking the proper value of all unencumbered assets into account and adjusting for appropriate costs of liquidation, the range of recovery to general unsecured creditors is 1.8% in the low-end scenario to 5.9% in the high-end scenario, greater than the 0.4%–0.6% estimated by the Debtors. The value of the Debtors' assets also exceeds the DIP Obligations and all other administrative claims that have arisen in these Chapter 11 cases.

10. In my opinion, the following modifications should be made to the Debtors' Liquidation Analysis for purposes of the best interests test:

   a. Treating certain assets, most notably Ground Leases and Avoidance Actions, as unencumbered under both the DIP Facility and Prepetition Facility;

   b. Attributing a more appropriate valuation to the Debtors' assets and assigning value to assets that were omitted from or given no value in the Liquidation Analysis;

   c. Providing that all DIP Liens must be satisfied before the DIP Secured Parties may seek payment under their superpriority claim;[5] and

   d. Reducing chapter 7 costs to a more reasonable level for Chapter 11 cases of this size and complexity.

---

[4] The Ground Leases were shown to have substantial value in the Debtors' most recent appraisal. *See* App'x A attached to the Committee Liquidation Analysis (as filed under seal).

[5] It should be noted that, even though the DIP Secured Parties and Prepetition Secured Parties are waiving the unsecured portion of their DIP Claims as part of their treatment under the Plan, the Committee Liquidation Analysis accounts for such deficiency claims that would arise in Chapter 7 and still finds a greater recovery to general unsecured creditors than what is provided under the Plan.

11. Based on the foregoing, and as set forth in greater detail in the Committee Liquidation Analysis, it is my opinion that a Chapter 7 liquidation is more beneficial to general unsecured creditors than what is provided under the Plan.

### B. DIP Budget Analysis

12. My analysis concluded that the DIP Budget only facilitates the DIP Lenders' foreclosure efforts with the benefits of a Chapter 11 process. The following points support my conclusion:

   a. 42% of the $12 million DIP financing is allocated towards professional fees, most of which aid the lender's goal of obtaining the benefits of the Plan as opposed to a Chapter 7 liquidation or foreclosure action.

   b. Approximately 18% of the $12 million DIP financing funds the Lenders through (i) $1.275 million allocated to lender professional fees and (ii) approximately $830,000 allocated to DIP interest.

   c. The DIP Budget provides for professional fees and expenses of three different law firms for the DIP Lenders, as compared to two law firms for each of the Debtors and the Committee.

   d. The Debtors' liquidation advisor, Sage-Popovich, Inc., is budgeted as early as April 2020. This is clearly an illustration that a going concern was never a real option as funds are allocated to a liquidator, rather than an investment banker.

   e. The last week of the Debtors' most recent DIP Budget includes $250,000 for recovery to general unsecured creditors. However, a $250,000 payout to general unsecured creditors likely amounts to a recovery of less than a penny on the dollar. General unsecured creditors could do better by challenging unencumbered assets in a Chapter 7.

   f. The Debtors' DIP Budget, even without the United States Postal Service's receivable, continues to outperform the projections. The Debtors received a $580,000 payroll tax refund from the IRS on June 12, 2020. Excluding the timing of professional fees, the Debtors have outperformed budget by approximately $1.3 million through June 12, 2020. These available proceeds could be used to fund the sale process.

13. Just as telling is what line items are not included in the DIP Budget. The Debtors have not hired an investment banker or similar financial advisor in connection with the potential

sale of the Debtors' assets as a going concern. Instead, their rushed *ad hoc* efforts have been forced by the DIP Lenders' pre-baked desire to liquidate the Debtors' assets as quickly as possible. Finally, given the importance of the CARES Act funding to induce a willing going concern buyer to purchase the Debtors' assets, no money was budgeted for a lobbyist or government affairs specialist.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: Chicago, IL
June 22, 2020                                          /s/ *Richard Newman*
                                                       Richard Newman

## Exhibit 1

**Richard Newman Curriculum Vitae**

# Rich Newman

## Managing Director – Co-Leader of UCC Practice

- Co-leads Alvarez & Marsal's Unsecured Creditors' Committee practice. Managing Director with Alvarez & Marsal Creditor Advisory in Chicago where he provides financial advisory services to creditors and focuses on representing official committees of unsecured creditors in bankruptcy proceedings. Specializes in 363 sales, liquidity management, business plan review, solvency, formulation of reorganization plans and litigation support

- With more than fifteen years of restructuring experience, Mr. Newman has advised unsecured creditor committees, healthy and distressed companies in leveraged recapitalizations, mergers and acquisitions, and support of interim management roles.

- Unsecured Creditor Committee assignments: Avaya, Boomerang Tube, Buccaneer Energy, Constar, Endeavour, Getty Petroleum, Global Aviation, Hollander Sleep Products, Keywell LLC, Kodak, LifeCare, NewPage, Orchids Paper, NORPAC Foods, Inc., Ryckman Creek Resources, LLC, SunEdison, Synergy Pharmaceuticals, Takata, Tintri, and Westinghouse

- Debtor financial advisory, bank advisory, or out-of-court deals: Appleton Coated, Chesapeake Corporation, Detroit Public Schools, Dresser, Inc., Kimball Hill Homes, Severstal North America, Inc., Tronox Inc., Union Carbide and Visteon Corp.

- Testimony experience includes (i) Orchids Paper Products Company Case No. 19-10729, (ii) TK Holdings Inc. (f/k/a Takata) Case No. 17-11375 (November 2017), and (iii) Deposition re: SGK Ventures, LLC (f/k/a Keywell, LLC) Case No. 13-37603 (August 2014), among others

- B.S. in economics from George Washington University and a master's degree in business administration from The University of Texas. I have passed all three levels of the CIRA exam and received the Kroll Zolfo Cooper / Randy Waits Award for excellence on the CIRA exam



Phone: (+1) 312 288 4056

E-mail Address:
rnewman@alvarezandmarsal.com

1

ALVAREZ & MARSAL

**Exhibit 2**

**Committee Liquidation Analysis**

**Filed Under Seal**