**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>RAVN AIR GROUP, INC. *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-10755 (BLS)<br><br>(Jointly Administered)<br><br>**Requested Hearing Date: June 29, 2020 at 11:00 a.m. (ET)**<br>**Requested Objection Deadline: June 28, 2020 at 12:00 p.m. (ET)** |

**EMERGENCY MOTION OF THE DEBTORS FOR AN**
**ORDER AUTHORIZING ENTRY INTO PAYROLL**
**SUPPORT PROGRAM AGREEMENTS AND GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors") move this Court pursuant to sections 101 and 363 of title 11 of the United States Code (the "Bankruptcy Code") for entry of an order, in substantially the form attached hereto as Exhibit A, (i) authorizing the Debtors to enter into the Payroll Support Program Agreements and Bankruptcy Addendums with the United States Department of Treasury ("Treasury") attached hereto as Exhibit B (collectively, the "PSP Agreements"); (ii) authorizing the Debtors to enter into a Deposit Account Control Agreement with Treasury and First National Bank of Alaska ("FNBA") substantially in the form attached hereto as Exhibit C (the "DACA") and open an account with FNBA under the DACA (the "Deposit Account") to hold funds received pursuant to the PSP Agreements; and (iii) granting certain related relief. In support of this Motion, the Debtors submit the declaration of

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: Ravn Air Group, Inc. (3047), Ravn Air Group Holdings, LLC (5356), JJM, Inc. (4858), HoTH, Inc. (9957), Peninsula Aviation Services, Inc. (6859), Corvus Airlines, Inc. (7666), Frontier Flying Service, Inc. (8091), and Hageland Aviation Services, Inc. (2754). The notice address for all of the Debtors is 4700 Old International Airport Road, Anchorage, AK 99502.

146484.01601/123462285v.2

John Mannion (the "Mannion Declaration"), filed contemporaneously herewith, and respectfully represent as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. sections 157 and 1334 and the *Amended Standing Order of Reference* of the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. section 157(b). The Debtors confirm their consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue for this matter is proper in this district pursuant to 28 U.S.C. sections 1408 and 1409.

3. The bases for the relief requested herein are sections 105(a) and 363 of the Bankruptcy Code.

## BACKGROUND

*General Background*

4. On April 5, 2020 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

5. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtors' cases.

6. On April 20, 2020, the office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") in these Cases.

7. Pursuant to the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 (I) Authorizing the Debtors to Obtain Postpetition Senior Secured Superpriority Financing, (II) Authorizing the Debtors' Limited Use of Cash Collateral, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 49] and the *Final Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 364 and 507 (I) Authorizing the Debtors to Obtain Postpetition Senior Secured Superpriority Financing, (II) Authorizing the Debtors' Limited Use of Cash Collateral, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 148] (together, the "DIP Orders"), the Debtors must undertake an accelerated timetable for resolution of these Chapter 11 Cases. Specifically, the Debtors have agreed as a condition of borrowing under the DIP Facility (as defined in the DIP Orders) to meet certain bankruptcy case milestones ("Plan Milestones") set forth in the DIP Orders.

8. On April 27, 2020, the Debtors filed the *Chapter 11 Plan of Liquidation of Ravn Air Group and Its Affiliated Debtors* [Docket No. 112] (as amended on June 9 [Docket No. 323], as may be further amended, supplemented or otherwise modified, the "Plan"), and the *Disclosure Statement for the Chapter 11 Plan of Liquidation of Ravn Air Group and Its Affiliated Debtors* [Docket No. 113] (as amended on June 9 [Docket No. 325], and as may be further amended, supplemented or otherwise modified, the "Disclosure Statement"). The Court approved the Disclosure Statement by its *Order (I) Approving Proposed Disclosure Statement and the Form and Manner of the Notice of the Disclosure Statement Hearing, (II) Establishing Solicitation and*

*Voting Procedures, (III) Scheduling a Confirmation Hearing, and (IV) Establishing Notice and Objection Procedures for Confirmation of Debtors' Chapter 11 Plan of Liquidation* [Docket No. 318].

9. On June 3, 2020, the Court entered the *Order (I)(A) Authorizing and Approving the Bidding Procedures, (B) Approving Procedures Related to the Assumption of Certain Executory Contracts and Unexpired Leases, (C) Approving the Notice Procedures, (D) Authorizing Entry Into One or More Stalking Horse Agreements, and (E) Setting a Date for the Sale Hearing; and (II) Authorizing and Approving (A) the Sale of Certain Assets Free and Clear of All Liens, Claims, Encumbrances and Interests, (B) the Assumption and Assignment of Certain Contracts, and (C) Payment of Bid Protections, If Applicable* [Docket No. 295] (the "Bidding Procedures Order"), which approved bidding procedures by which the Debtors will entertain offers to purchase all, substantially all, or a substantial portion of the Debtors' assets. The bid deadline under the Bidding Procedures Order is June 24, 2020.

10. Additional information regarding the Debtors' businesses and the circumstances leading to the commencement of these chapter 11 cases (the "Chapter 11 Cases") is set forth in the *Declaration of John Mannion in Support of First Day Motions* filed on the Petition Date [Docket No. 5] and the *Supplemental Declaration of John Mannion in Support of First Day Motions* filed on April 7, 2020 [Docket No. 36].

***The CARES Applications and PSP Agreements***

11. On April 3, 2020, the Debtors submitted applications for Payroll Support Program ("PSP") grants under the CARES Act. The Debtors submitted two applications under the PSP: one for Corvus Airlines, Inc. (which provides passenger carrier service), for $19.8 million (the "Passenger PSP Application"), and one for Hageland Aviation Services, Inc. (which provides

cargo air services), for $16.6 million (the "Cargo PSP Application," and, together with the Passenger PSP Application, the "PSP Applications").

12. On April 5, 2020, prior to the filing of these Chapter 11 Cases, the Debtors laid off almost all of their remaining workforce, other than a very small number of employees necessary to the administration of these Chapter 11 Cases.

13. On May 14, the Debtors received correspondence from Treasury indicating that Ravn had been conditionally approved to move forward with their PSP applications under the CARES Act. On June 5, 2020, Treasury sent the Debtors the forms of PSP Agreements to sign and informed the Debtors that, subject to execution of the PSP Agreements and satisfaction of the terms and conditions set forth therein, Treasury would approve a grant of 76% of the Debtors' Passenger PSP Application and a grant of 100% of the Debtors' Cargo PSP Application (collectively, the "PSP Grants").

14. The PSP Agreements provide that the PSP Grants are conditioned on, among other things, the Debtors' satisfaction and compliance with the following:[2]

  (a) The PSP Grants are available for use exclusively for the continuation of payment of Wages, Salaries, and Benefits to Employees;

  (b) The Debtors will not conduct an Involuntary Termination or Furlough of any Employee, and will not reduce, without the Employee's consent, the pay rate or Benefits of any Employee, between the date of the PSP Agreements and September 30, 2020; and

  (c) The Debtors will be subject to certain reporting and auditing requirements set forth in the PSP Agreements.

---

[2] Capitalized terms used but not defined in this paragraph have the meanings ascribed to them in the PSP Agreements.

15. Moreover, because of the pendency of these Chapter 11 Cases, Treasury has conditioned the PSP Grants on execution of a Bankruptcy Addendum (the "<u>Bankruptcy Addendum</u>"), which among other things requires that the Debtors:

    (a) Maintain the PSP Grant funds in a separate account over which Treasury will have a perfected security interest; and

    (b) File a Motion and obtain an order of the Bankruptcy Court authorizing and approving the Debtors' entry into and performance under the PSP Agreements, including the Bankruptcy Addendum.

16. To satisfy the first condition described above, the Debtors, FNBA, and Treasury have agreed to establish the Deposit Account at FNBA, pursuant to the form of DACA attached hereto as Exhibit C, to hold the PSP Grant funds. The DACA defines the Deposit Account as a "deposit account" as such term is defined in section 9-102(a)(29) of the Uniform Commercial Code, subject to the control of Treasury.

17. Almost all, if not all, of the parties that have indicated interest in a going concern transaction have made clear that the availability of the PSP Grant money would be a condition to consummating a transaction.

18. Although the Debtors expect that the majority of the funds available under the PSP Grants will be used by a purchaser of the Debtors' assets as a going concern, if the Debtors are able to find such a purchaser, the approval of the PSP Applications means that some funds will be available to the Debtors, upon entry into the PSP Agreements and the Court's approval of this Motion, to use for payment of the remaining employees' salaries and benefits. The PSP Agreements provide for an initial payment to the Debtors of a total of $5,278,484.17, which is expected to be funded within three business days of Court approval of this Motion. If that amount

is funded before July 3, the Debtors anticipate that they will use over $117,000 by July 9, the anticipated effective date of the Plan, to fund the payroll payments on July 7 and July 9.

19. The Debtors have limited financing available under the DIP facility. The funds that will be available to the Debtors under the PSP Grants will provide much needed liquidity to the Debtors to pay employee obligations incurred during the Chapter 11 Cases. Moreover, the availability of the PSP funds is important to prospective going concern purchasers.[3]

## RELIEF REQUESTED

20. By this Motion, the Debtors request entry of an order, in substantially the form attached hereto as Exhibit A, (i) authorizing the Debtors to enter into the Payroll Support Program Agreements and Bankruptcy Addendums with Treasury; (ii) authorizing the Debtors to enter into a Deposit Account Control Agreement with Treasury and FNBA and open the Deposit Account with FNBA under the DACA to hold funds received pursuant to the PSP Agreements; and (iii) granting certain related relief.

## BASIS FOR RELIEF

21. The Court has authority to approve the Debtors' entry into the PSP Agreements and the DACA pursuant to section 363(b) of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). When determining whether to authorize the use of property outside the ordinary course of business, courts require that a debtor "show that a sound business purpose justifies such

---

[3] Although the Motion will not be heard before the June 24 bid deadline, the Debtors believe that the filing of this Motion before the bid deadline will encourage bidding. If the Debtors receive more than one Qualified Bid under the Bidding Procedures Order and determine that an auction is necessary, the Debtors believe that approval of this Motion in advance of the auction will be important to maximize the value of bids obtained at the auction.

actions." *Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 253 (D. Del. 1999); *see also In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 178 (D. Del. 1991) (affirming decision permitting debtor to sell assets where sound business reasons supported the sale). When a sound business purpose exists, the Debtors' use of property pursuant to section 363(b)(1) of the Bankruptcy Code should be approved.

22. Furthermore, the Court has authority to approve entry into the PSP Agreements pursuant to section 105 of the Bankruptcy Code, which provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

23. Here, a sound business purpose exists for the Debtors to enter into the PSP Agreements and DACA, and approval of the Motion is necessary and appropriate in these Chapter 11 Cases. First, as the Court is aware, the Debtors have limited financing available under the DIP Facility. The funds that will be available to the Debtors under the PSP Grants will provide much needed liquidity to the Debtors to pay employee obligations incurred during the Chapter 11 Cases.

24. Second, it is the Debtors' expectation that any going concern purchaser will condition its purchase on the availability of the PSP Grants. Entry into the PSP Agreements, and Court approval thereof, is the final step to receiving the PSP Grants. As such, approval of the Motion on an expedited basis is important to satisfying potential bidders that the PSP Grants will be available, subject to Treasury approval of a sale transaction, as bidders conduct their diligence and prepare bids in advance of the June 24 bid deadline and any subsequent auction.

## **NOTICE**

25. Notice of this Motion shall be given to (a) the office of the U.S. Trustee; (b) Counsel for the Committee; (c) the DIP Agent; (d) the United States Attorney for the District of Delaware;

8

146484.01601/123462285v.2

and (e) parties requesting notice under Bankruptcy Rule 2002-1.  The Debtors submit that no other or further notice need be provided.

WHEREFORE, the Debtors respectfully request the Court enter an order, substantially in the form attached hereto as Exhibit A, and grant such other and further relief as the Court deems necessary.

| | |
|---|---|
| Dated:  June 23, 2020<br>            Wilmington, Delaware | **BLANK ROME LLP**<br><br>By:  */s/ Victoria Guilfoyle*<br>Victoria A. Guilfoyle (No. 5183)<br>Stanley B. Tarr (No. 5535)<br>Jose F. Bibiloni (No. 6261)<br>1201 N. Market Street, Suite 800<br>Wilmington, Delaware 19801<br>Telephone: (302) 425-6400<br>Facsimile: (302) 425-6464<br>Email: guilfoyle@blankrome.com<br>          tarr@blankrome.com<br>          jbibiloni@blankrome.com]<br><br>-and-<br><br>**KELLER BENVENUTTI KIM LLP**<br>Tobias S. Keller (*pro hac vice* pending)<br>Jane Kim (*pro hac vice* pending)<br>Thomas B. Rupp (*pro hac vice* pending)<br>650 California Street, Suite 1900<br>San Francisco, California 94108<br>Telephone:  (415) 496-6723<br>Facsimile:  (650) 636-9251<br>Email: tkeller@kbkllp.com<br>          jkim@kbkllp.com<br>          trupp@kbkllp.com<br><br>*Attorneys for Debtors*<br>*and Debtors-in-Possession* |