**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>RAVN AIR GROUP, INC., *et al.*,[1]<br><br>　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 20-10755 (BLS)<br><br>(Jointly Administered)<br>Hearing date: June 25, 2020 at 11:00 a.m.<br>Re: Docket Nos. 112, 356 |

**RESPONSE OF BNP PARIBAS, AS AGENT FOR THE DIP
LENDERS AND PREPETITION LENDERS, TO THE OBJECTION
OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO CONFIRMATION OF CHAPTER 11
PLAN OF RAVN AIR GROUP, INC. AND ITS AFFILIATED
DEBTORS AND CROSS-MOTION FOR CONVERSION TO CHAPTER 7**

BNP Paribas, as DIP Agent and Prepetition Agent ("BNP" or the "Agent"), submits this response (the "Response") to the objection (the "Objection") of the Official Committee of Unsecured Creditors (the "Committee") to confirmation of the Plan of Liquidation and related relief, including cross-motions for conversion and a stay pending appeal, dated June 22, 2020 [Dkt. No. 353].[2]

　　　　1.　　　The Response summarizes certain assertions of the Committee and the Agent's response to those assertions.[3]

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: Ravn Air Group, Inc. (3047), Ravn Air Group Holdings, LLC (5356), JJM, Inc. (4858), HoTH, Inc. (9957), Peninsula Aviation Services, Inc. (6859), Corvus Airlines, Inc. (7666), Frontier Flying Service, Inc. (8091), and Hageland Aviation Services, Inc. (2754). The notice address for all of the Debtors is 4700 Old International Airport Road, Anchorage, AK 99502.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

[3] The failure to respond to certain of the Committee's assertions should not be construed as the Agent's agreement with any of those assertions.

| **Committee Assertion** | **Agent's Response** |
|---|---|
| Several interested going concern bidders have emerged and the CARES Act funding was approved seems to make no difference to the secured lender. (Obj. ¶1). | • The Plan allows for going concern sales and bidding procedures were approved by this Court. *See* Dkt. No. 295.<br><br>• The Debtors will be seeking Court approval for Debtors and going concern bidders to receive funding under the CARES Act. |
| The timeline for sales and to confirm the Plan are insufficient. (Obj. ¶¶ 4, 36) | • The Committee acknowledges that "the Debtors are suffering losses and unable to remain in Chapter 11 past their requested confirmation and effective date." (Obj. ¶ 88). |
| The Debtors' long-term ground leases with the State of Alaska are unencumbered. (Obj. ¶¶ 6, 29). | • Assuming *arguendo* the ground leases are not encumbered, the Final DIP Order provides that DIP Secured Parties have "pursuant to Bankruptcy Code section 364(c)(1), a superpriority administrative expense claim with priority over all other administrative expenses" in respect of the DIP Obligations. Final DIP Order ¶ 14(a).<br><br>• Assuming *arguendo* the ground leases are not encumbered, the Debtors' interests in the ground leases and the building improvements on the ground leases are DIP Collateral. The Final DIP Order defined DIP Collateral to include liens upon and security interests in all assets of the Debtors. Final DIP Order ¶15.<br><br>• The Final DIP Order is a final order no longer subject to appeal or review. *See* Dkt. No. 148. The Final DIP Order provides that DIP Collateral includes, among other things, "any leasehold or other real property interests, and commercial tort claims of the Debtors." Final DIP Order ¶ 15.<br><br>• Neither the Committee nor the State of Alaska objected to the inclusion of |

| **Committee Assertion** | **Agent's Response** |
|---|---|
| | leasehold or other real property interests as DIP Collateral.<br><br>• Alaska Assistant Attorney General Robert H. Schmidt, who attended the hearing on the Final DIP Order, did not object to the inclusion of ground leases and leasehold interests as DIP Collateral and indicated that the "the state is in favor of a more rapid liquidation." Hrg. Tr. Apr. 29, 2020, 75:14-15. |
| Certain assets of Peninsula Aviation Services, Inc., Commercial Tort Claims, motor vehicles, and certain deposit accounts were not subject to properly perfected prepetition liens. (Obj. ¶¶ 30, 31, 32, 33). | Under the Final DIP Order, all of these assets constitute DIP Collateral. *See* Dkt. No. 148, Final DIP Order ¶ 15. |
| Avoidance Actions, Causes of Action and certain ground leases are not DIP Collateral or Prepetition Collateral. (Obj. ¶¶ 6, 7, 29). | • The Committee acknowledges that The Prepetition Secured Parties are owed approximately $91 million in principal (Obj. ¶ 17).<br><br>• The DIP Secured Parties have superpriority administrative expense claims. (Obj. ¶ 25).<br><br>• Allowed administrative expense claims against the Debtors substantially exceed the value of Avoidance Actions and Causes of Action. |
| The DIP Budget has no utility other than to aid the secured lenders through the chapter 11 process. (Obj. ¶ 52). | In addition to providing substantial compensation to the Committee's professionals and to pay administrative expenses of the Debtors, the DIP Facility allowed the Debtors to pay $ 6,520,000 to compensate 1300 employees of the Debtors for accrued but unpaid prepetition wages. *See* Dkt. No. 31 Ex. A. |
| The Debtors should have performed a valuation analysis using "valuation methodologies that focus on a debtor's earning | • The Committee acknowledges that a valuation based on cash flows is not viable "[g]iven that the Debtors currently do not generate cash flows." (Obj. ¶ 66). |

| Committee Assertion | Agent's Response |
|---|---|
| capacity" or a "market-based approach." (Obj. ¶¶ 61-67). | - With respect to a market based approach, the Plan allows for going concern sales and bidding procedures were approved by this Court. *See* Dkt. No. 295.<br><br>- As of the Petition Date not less than $92,410,045.26 was owed by each Debtor in respect of their Obligations under the Prepetition Credit Documents consisting of the following: (i) $90,907,954.51 in principal; and (ii) $1,502,090.75 in interest owed as of the Petition Date. *See, e.g.,* Final DIP Order ¶ 19(c).<br><br>- Pursuant to the Final DIP Order, the DIP Lenders provided a DIP Facility of $12 million. Final DIP Order ¶ 7(b).<br><br>- The aggregate Prepetition and DIP Obligations as of the date of the confirmation hearing are not less than $104 million of fully funded debt by the Prepetition Lenders and DIP Lenders. There is no conceivable way the Committee can demonstrate that any valuation of the Debtors would exceed the Debtors' secured Obligations. |
| As shown in the Newman Declaration, unsecured creditors would actually stand to receive distributions ranging from nearly 2% in the low-end to 6% in the high-end scenario based on a properly performed liquidation analysis. (Obj. ¶69, Newman Dec. ¶ 9). | - The Newman liquidation analysis fails to acknowledge that the Prepetition Secured Parties are secured and entitled to payment ahead of general unsecured creditors. The Newman liquidation analysis improperly includes the Prepetition Secured Parties as general unsecured creditors (Newman Dec. Ex. 2 at p. 6).<br><br>- The Prepetition Secured Parties have Prepetition Agent Adequate Protection Liens "upon all property of the Debtors whether arising prepetition or postpetition of any nature whatsoever, wherever located, in each case to secure the |

| **Committee Assertion** | **Agent's Response** |
|---|---|
| | Obligations against, without duplication, the aggregate diminution, if any, subsequent to the Petition Date, in the value of the Collateral by (i) the reduction in Collateral available to satisfy Prepetition Obligations as a consequence of the priming of the Prepetition Obligations by the DIP Obligations; (ii) depreciation, use, sale, loss, decline in market price or otherwise of the Prepetition Collateral as a consequence of the use, sale or lease of the Prepetition Collateral by the Debtors or as a result of the imposition of the automatic stay; and (iii) the sum of the aggregate amount of all Cash Collateral and the aggregate value of all non-cash Prepetition Collateral which is applied in payment of the DIP Obligations or any other obligations or expenses of the Debtors other than Prepetition Obligations, but only to the extent of any decrease in the value of the Prepetition Collateral on account of subsections (i), (ii) and (iii) above, all to the extent authorized by the Bankruptcy Code.." Final DIP Order ¶22(a).<br><br>• The Prepetition Secured Parties have a superpriority administrative expense claim pursuant to section 507(b) of the Bankruptcy Code. Final DIP Order ¶22(b).<br><br>• The Final DIP Order provides that "[n]one of the DIP Secured Parties, Prepetition Secured Parties, DIP Collateral or Prepetition Collateral shall be subject to the doctrine of marshaling or any similar doctrine or law of any jurisdiction requiring the recovery upon or application to any indebtedness of any collateral or proceeds in any particular order or action." Final DIP Order ¶ 42. |

**Opposition to Cross-Motion to Stay Pending Appeal**

2. In addition to the foregoing, the Agent opposes the Committee's motion for a stay pending appeal.

3. Bankruptcy Rule 8007 provides that a party seeking a stay of a judgment, order, or decree of the bankruptcy court, approval of a bond or other security provided to obtain a stay of that judgment, or other similar relief, must first move in the bankruptcy court. *See* Fed. R. Bankr. P. 8007(a)(1). Such relief must be sought by motion made either before or after the notice of appeal is filed. *See id.* at 8007(a)(2).[4]

4. The decision whether to grant stay pending appeal is within the court's discretion. *See also In re Nuverra Envtl. Solutions*, Civ. No. 17-1024-RGA, 2017 U.S. Dist. LEXIS 122317, *5 (D. Del. Aug. 3, 2017) (quoting *In re Trans World Airlines, Inc.*, 2001 Bankr. LEXIS 723, at *2-3 (Bankr. D. Del. Mar. 27, 2001)) (denying stay pending appeal of a confirmation order, noting the appellant's failure to demonstrate a likelihood of success on the merits and irreparable harm absent a stay); *see also Revel AC, Inc. v. IDEA Boardwalk LLC*, 802 F.3d 558, 565 (3d Cir. 2015).

5. "Appellant bears the burden of proving that a stay of the confirmation order is warranted based on the following criteria: (1) whether the movant has made 'a strong showing' that it is likely to succeed on the merits; (2) whether the movant will be irreparably injured absent a stay; (3) whether a stay will substantially injure other interested parties; and (4) where the public interest lies." *Nuverra Envtl. Solutions*, 2017 U.S. Dist. LEXIS 123317, at *5 (*citing Republic of Phil. v. Westinghouse Electric Corp.*, 949 F.2d 653, 658 (3d Cir. 1991)).

6. With respect to the foregoing factors, the Third Circuit has adopted a "sliding-scale approach." *In re Revel AC, Inc.*, 802 F.3d 558, 567-68 (3d Cir. 2015). The most "critical factors"

---

[4] The Agent respectfully submits that such relief sought in objection to confirmation of the Plan is procedurally inappropriate. Rather the Committee must seek such relief by separate motion. *See* Fed. R. Bankr. P. 8007(a).

are the first two: whether the movant seeking the stay has demonstrated "(1) a strong showing of the likelihood of success, and (2) that it will suffer irreparable harm - the latter referring to harm that cannot be prevented or fully rectified by a successful appeal." *Id.* at 568 (citing *Nken v. Holder*, 556 U.S. 418, 434, 129 S. Ct. 1749, 173 L. Ed. 2d 550 (2009) (internal citations and quotations omitted). And though both are necessary, the Third Circuit went on to say that the former is the more important piece of the stay analysis, because "as equity jurisdiction exists only to remedy legal wrongs; thus, without some showing of a probable right, there is no basis for invoking it." *Id.* (quoting Judge Posner in *Roland Mach. Coto. v. Dresser Indus.*, 749 F.2d 380, 386 (7th Cir. 1984)).

7.  "If the movant does not make the requisite showings on either of these first two factors, the inquiry into the balance of harms and the public interest is unnecessary, and the stay should be denied without further analysis." *Revel AC, Inc.*, 802 F.3d at 571 (internal quotations and citations omitted); *see also Nuverra Envtl. Solutions*, 2017 U.S. Dist. LEXIS 122317, at *6.

8.  Here, the Committee listed its possible issues to be heard on appeal, but has not demonstrated *any* likelihood of success on the merits of its claims, let alone the required "strong showing" necessary to carry its burden. *See* Committee Objection at ¶ 102. On that basis alone, given the importance of this first factor, the Committee's request for a stay should be denied.

9.  When it comes to irreparable harm, the Committee claims that, absent the stay, the Debtors consummation of the Plan will render the appeal "equitably moot" and dissolve the Committee, leaving no fiduciary representative for unsecured creditors. *See* Committee Objection at ¶ 102. "The possibility that an appeal may become moot does not alone constitute irreparable harm for purposes of obtaining a stay." *Nuverra Envtl. Solutions*, 2017 U.S. Dist. LEXIS 122317, at *6.

10.     Pursuant to the Third Circuit's guidance in *Revel AC, Inc.*, based on the Committee's failure to demonstrate these first two factors, the requested stay should be denied. Even if the Court were to consider the final two of four factors, the Committee failed to carry its burden to demonstrate (or even acknowledge) whether the stay would substantially injure other interested parties and where the public interest lies. The Agent submits that other interested parties would be harmed by any delay in consummation of the Plan because, as the Committee acknowledges, even the current limited activities of the Debtors and their 20 employees are unsustainable. Objection ¶88. Public interest favors quick and final resolution and confirmation of bankruptcy cases.

11.     Despite the Committee's failure to carry its burden, should the Court be so inclined to entertain a stay pending appeal, the Agent submits that the Committee must be required to post a bond. Judge Carey, in the *Tribune* case, stated succinctly,

> In determining whether a bond should be ordered, the court looks to whether the bond would be necessary to protect "against diminution in the value of property pending appeal" and to "secure the prevailing party against any loss that might be sustained as a result of an ineffectual appeal." Moreover, the posting of a bond "guarantees the costs of delay incident to the appeal." In analyzing whether to order movants to post a bond in support of a stay pending an appeal of a bankruptcy court order, district courts have obtained guidance from Federal Rule of Civil Procedure 62(d), which requires appellants to post a bond when appealing a lower court order absent "exceptional circumstances."

*In re Tribune Co.*, 477 B.R. 465, 478 (Bankr. D. Del. 2012) (citing and quoting *ACC Bondholder Group v. Adelphia Communs. Corp. (In re Adelphia Communs. Corp.)*, 361 B.R. 337, 351 (S.D.N.Y. 2007).

12.     In *Tribune*, Judge Carey found that the value of the bond could very well have been valued at the post-emergence equity value ($4.5 billion) or the difference between reorganization

and liquidation value ($3+ billion), but ultimately settled on a $1.5 billion figure suggested by the plan proponents. 477 B.R. at 478.

13. Similar to *Tribune*, significant harms would befall the reorganization if a stay is imposed, warranting a bonding to remedy such losses. The Debtors' limited operations are unsustainable, and the funding provided by the DIP Lenders and their agreement to consummate the Plan without repayment of the DIP Obligations is the only thing preventing conversion of these Cases.

## Conclusion

For the foregoing reasons, as well as those to be addressed at the confirmation hearing, BNP Paribas requests that the Objection be overruled and the Plan confirmed.

Dated: June 24, 2020

ASHBY & GEDDES, P.A.
/s/ William P. Bowden
William P. Bowden, Esq. (DE #2553)
Gregory A. Taylor, Esq. (DE #4008)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19801
Tel: (302) 654-1888
Fax: (302) 654-2067
Email: wbowden@ashbygeddes.com
Email: gtaylor@ashbygeddes.com

-and-

WINSTON & STRAWN LLP
David Neier, Esq
Carrie Hardman, Esq.
200 Park Avenue
New York, NY 10166-4193
Tel: (212) 294-6700
Fax: (212) 294-4700
Email: dneier@winston.com

*Counsel to BNP Paribas, as Administrative Agent*