# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| RAVN AIR GROUP, INC., *et al.*,[1] | Case No. 20-10755 (BLS) |
| Debtors. | (Jointly Administered) |

## SECOND AMENDED CHAPTER 11 PLAN OF LIQUIDATION OF RAVN AIR GROUP, INC. AND ITS AFFILIATED DEBTORS

Dated: Wilmington, Delaware
      June 26, 2020

BLANK ROME LLP
Victoria A. Guilfoyle (No. 5183)
Stanley B. Tarr (No. 5535)
Jose F. Bibiloni (No. 6261)
1201 N. Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464

-and-

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (admitted *pro hac vice*)
Jane Kim (admitted *pro hac vice*)
Thomas B. Rupp (admitted *pro hac vice*)
650 California Street, Suite 1900
San Francisco, California 94108
Telephone: (415) 496-6723
Facsimile: (650) 636-9251

*Counsel to the Debtors and Debtors in Possession*

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: Ravn Air Group, Inc. (3047), Ravn Air Group Holdings, LLC (5356), JJM, Inc. (4858), HoTH, Inc. (9957), Peninsula Aviation Services, Inc. (6859), Corvus Airlines, Inc. (7666), Frontier Flying Service, Inc. (8091), and Hageland Aviation Services, Inc. (2754). The notice address for all of the Debtors is 4700 Old International Airport Road, Anchorage, AK 99502.

# INTRODUCTION[2]

This Plan provides for the resolution of the outstanding Claims and Equity Interests asserted against the Debtors.  The Disclosure Statement to this Plan includes (i) a discussion of the Debtors' history, business, results of operations, and financial projections; (ii) a summary and analysis of this Plan; and (iii) certain related matters, including risk factors relating to the consummation of this Plan and Distributions to be made under this Plan. The Debtors are the proponents of the Plan within the meaning of Bankruptcy Code section 1129.

All Holders of Claims entitled to vote on the Plan are encouraged to read the Plan and the Disclosure Statement before voting to accept or reject the Plan. Subject to certain restrictions and requirements set forth in Bankruptcy Code section 1127, Bankruptcy Rule 3019, and Section 9.01, Section 11.06 and Section 11.14 of the Plan, the Debtors reserve the right to alter, amend, modify, revoke, or withdraw the Plan prior to its substantial consummation.

Other than the Disclosure Statement and related materials transmitted therewith, no solicitation materials have been approved by the Bankruptcy Court for use in soliciting acceptances and rejections of this Plan. Nothing in the Plan should be construed as constituting a solicitation of acceptances of the Plan unless and until the Disclosure Statement has been approved and distributed as required by Bankruptcy Code section 1125.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ CAREFULLY THE DISCLOSURE STATEMENT (INCLUDING ALL EXHIBITS AND SCHEDULES THERETO) AND THE PLAN, EACH IN ITS ENTIRETY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I

## DEFINED TERMS AND RULES OF INTERPRETATION

For purposes of the Plan, except as expressly provided or unless the context otherwise requires:

(a)     all Defined Terms shall have the meanings ascribed to them in this Article I of the Plan;

(b)     any term used in the Plan that is not a Defined Term, but that is used in the Bankruptcy Code or Bankruptcy Rules has the meaning assigned to such term in the Bankruptcy Code or Bankruptcy Rules, as applicable;

(c)     whenever the context requires, terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine;

(d)     any reference in the Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means

---

[2] Capitalized terms used in this Introduction have the meanings ascribed to those terms in Article I below.

that such agreement or document shall be substantially in such form or substantially on such terms and conditions;

        (e)     any reference in the Plan to an existing document, instrument, or exhibit means such document, instrument, or exhibit as it may have been or may be amended, modified, or supplemented from time to time;

        (f)     any reference to a specific Person includes any successors or lawful assigns of such Person, and all rights, benefits, interests, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, trustee, liquidator, rehabilitator, conservator, successor, or lawful assign of such Person;

        (g)     unless otherwise indicated, the phrase "under the Plan" and similar words or phrases refer to the Plan in its entirety rather than to only a particular portion of the Plan;

        (h)     unless otherwise specified, all references in the Plan to sections, articles, schedules, and exhibits are references to sections, articles, schedules, and exhibits of or to the Plan;

        (i)     the words "herein," "hereof," "hereto," "hereunder," "herewith," and other words of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan;

        (j)     whenever the Plan uses the word "including," such reference shall be deemed to mean "including, without limitation,";

        (k)     captions and headings to articles and sections are intended to be a part of the Plan;

        (l)     whenever the Plan provides that a document or thing must be "acceptable" or "satisfactory" to any Person, such requirement shall in each case be subject to a reasonableness qualifier;

        (m)     the definition given to any term or provision in the Plan supersedes and controls any different meaning that may be given to that term or provision in the Disclosure Statement, on any Ballot, or in any other document other than the Confirmation Order; and

        (n)     all other rules of construction set forth in Bankruptcy Code section 102 and in the Bankruptcy Rules shall apply.

        (o)     The following Defined Terms shall have the respective meanings specified below:

**<u>Administrative Claim</u>:** A Claim (other than a Professional Fee Claim, but including all Ordinary Course Professional Fee Claims) arising under Bankruptcy Code sections 503(b),

507(a)(2), 507(b), or 1114(e)(2), to the extent not previously paid, otherwise satisfied, or withdrawn, including (a) all fees and charges assessed against the Estates under chapter 123 of title 28 of the United States Code and (b) all Section 503(b)(9) Claims.

**Administrative Claims Bar Date:** The last date by which any Person must File a request for payment of an Administrative Claim, which date shall be the first Business Day that is at least thirty-five (35) calendar days after the Effective Date, or, alternatively, such subsequent date as is set by the Bankruptcy Court with the consent of the Liquidation Trust. Postpetition statutory tax claims shall not be subject to any Administrative Claims Bar Date. For the avoidance of doubt, the Claims Bar Date for Section 503(b)(9) Claims is the General Claims Bar Date.

**Administrative Claims Reserve:** The reserve established and funded by the Liquidation Trust to provide sufficient funds to satisfy in full all unpaid Allowed Administrative Claims.

**Allowed** or **Allowed Claim**:

(a)    with respect to a Claim arising prior to the Petition Date (including a Section 503(b)(9) Claim):

    (i)    either (A) a proof of claim was timely Filed by the applicable Claims Bar Date, or (B) a proof of claim is deemed timely Filed either as a result of such Claim being Scheduled or by a Final Order; and

    (ii)    either (A) the Claim is not a Contingent Claim, a Disputed Claim, an Unliquidated Claim, or a Disallowed Claim; or (B) the Claim is expressly allowed by a Final Order or under the Plan;

(b)    with respect to a Claim arising on or after the Petition Date (excluding a Section 503(b)(9) Claim), a Claim that has been allowed by a Final Order or under the Plan.

Unless otherwise specified in the Plan or by a Final Order, an "Allowed Administrative Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest, penalties, fees, or late charges on such Administrative Claim or Claim from and after the Petition Date. Moreover, any portion of a Claim that is satisfied, released, or waived during the Chapter 11 Cases is not an Allowed Claim.

**Asset Sale:** A sale or group of sales of all, substantially all, or less than substantially all of the Debtor's assets to be approved at Confirmation.

**Available Cash:** All Cash held by the Debtors on the Effective Date by the Liquidation Trust after payment, allocation, or reserve in accordance with the Plan for: (a) unpaid or unutilized amounts for Liquidation Trust Funding; and (b) any post-Confirmation reserve requirements in connection with the Plan, any agreements, or any Bankruptcy Court orders.

**Avoidance Actions:** Any and all Causes of Action, claims, remedies, or rights that may be brought by or on behalf of the Debtors or the Estates under Bankruptcy Code sections 542, 544, 547, 548, 549, 550, 551, or 553, or under related state or federal statutes, or pursuant to any theory or cause of action under common law, regardless whether such action has been commenced prior to the Effective Date.

**Ballot:** The ballot form distributed to each Holder of a Claim entitled to vote to accept or reject the Plan.

**Bankruptcy Code:** Title 11 of the United States Code sections 101 *et seq.*, as the same may be amended from time to time to the extent applicable to the Chapter 11 Cases.

**Bankruptcy Court:** The United States Bankruptcy Court for the District of Delaware, or in the event such court ceases to exercise jurisdiction over any Chapter 11 Case, such other court or adjunct thereof that exercises jurisdiction over such Chapter 11 Case in lieu of the United States Bankruptcy Court for the District of Delaware.

**Bankruptcy Rules:** The Federal Rules of Bankruptcy Procedure promulgated by the Supreme Court of the United States under 28 U.S.C. § 2075, as the same may be amended from time to time to the extent applicable to the Chapter 11 Cases.

**Board**: Collectively, each member of the board of directors and/or managers of each of the Debtors, whether such person served on or at any time after the Petition Date.

**Board Observer**: Any person with rights to attend and/or participate in Liquidation Trust Supervisory Board meetings but that is not a member of the Liquidation Trust Supervisory Board, whether such rights are granted under the Liquidation Trust Agreement or otherwise.

**Business Day:** Any day other than a Saturday, a Sunday, a "legal holiday" (as defined in Bankruptcy Rule 9006(a)), or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

**Cash:** Cash and cash equivalents, including bank deposits, wire transfers, checks representing good funds, and legal tender of the United States of America or instrumentalities thereof.

**Causes of Action:** Any and all claims, rights, actions, causes of action, liabilities, obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, rights of setoff, third-party claims, subordination claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and cross claims, damages, or judgments whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, foreseen or unforeseen, asserted or unasserted, existing or hereafter arising, in law, at equity, by statute, whether for tort, fraud, contract, or otherwise.

**Chapter 11 Cases:** The voluntary chapter 11 bankruptcy cases commenced by the Debtors, which are being jointly administered under the case caption *In re Ravn Air Group, Inc., et al.*, Case No. 20-10755 (BLS) (Bankr. D. Del.).

**Claim:** Any "claim," as defined in Bankruptcy Code section 101(5), against any of the Debtors or against any property of the Debtors.

**Claim Objection Deadline:** Subject to extension as set forth in Section 8.02 of the Plan, the date that is the first Business Day that is at least 180 calendar days after the Effective Date. For the avoidance of doubt, the Claim Objection Deadline may be extended one or more times by the Bankruptcy Court.

**Claims Agent:** Bankruptcy Management Systems, Inc. d/b/a Stretto, the Debtors' court-appointed claims, noticing, and balloting agent.

**Claims Bar Date:** As applicable, the Administrative Claims Bar Date, the General Claims Bar Date, the Governmental Claims Bar Date, or the Rejection Claims Bar Date.

**Class:** A category of Claims or Equity Interests designated pursuant to the Plan, or any subclass thereof.

**Class A Liquidation Trust Interests:** The Liquidation Trust Interests to be Distributed to the Holders in respect of certain Allowed Roll-Up Claims.

**Class B Liquidation Trust Interests:** The Liquidation Trust Interests to be Distributed to the Holders of Allowed Claims in Class 1.

**Class C Liquidation Trust Interests:** The Liquidation Trust Interests to be Distributed to the Holders of Allowed Claims in Class 4.

**Closing Date:** The date on which all of the Chapter 11 Cases have been closed in accordance with Section 11.21 of the Plan.

**Collateral:** Any Estate Asset that is subject to a Lien to secure the payment or performance of a Claim, which Lien is perfected and not subject to avoidance under the Bankruptcy Code or otherwise invalid or unenforceable under the Bankruptcy Code or applicable nonbankruptcy law.

**Confirmation:** Entry by the Bankruptcy Court of the Confirmation Order.

**Confirmation Hearing:** The hearing or hearings held by the Bankruptcy Court to consider confirmation of the Plan as required by Bankruptcy Code section 1128(a), as such hearing may be continued from time to time.

**Confirmation Order:** The order of the Bankruptcy Court confirming the Plan pursuant to Bankruptcy Code section 1129.

**Contingent Claim:** Any Claim that is Scheduled or Filed as contingent.

**Corporate Action:** Any action, approval, authorization, decision, or other act of any kind that would be necessary on the part of any Person for any corporation, limited liability company, or other Person to in turn act.

**Creditor:** Any Holder of a Claim.

**Creditors' Committee:** The official committee of unsecured creditors, as contemplated under Bankruptcy Code section 1102, which was appointed in the Chapter 11 Cases as of April 20, 2020, as it may be reconstituted from time to time.

**Creditors' Fund:** A fund to be established on the Effective Date for distribution to General Unsecured Creditors, comprised of Cash in the amount of Two Hundred Fifty Thousand Dollars ($250,000), and administered by the Liquidation Trustee.

**Cure Payment:** The payment of Cash or the distribution of other property (as the parties may agree or the Bankruptcy Court may order) that is necessary to cure any and all defaults under an executory contract or unexpired lease so that such contract or lease may be assumed, or assumed and assigned, pursuant to Bankruptcy Code section 1123(b)(2).

**Debtor** or **Debtors:** Individually and collectively, each of the debtors in the Chapter 11 Cases: Ravn Air Group, Inc.; Ravn Air Group Holdings, LLC; JJM, Inc.; HoTH, Inc.; Peninsula Aviation Services, Inc.; Corvus Airlines, Inc.; Frontier Flying Service, Inc.; and Hageland Aviation Services, Inc.

**Defined Term:** Any capitalized term that is defined in this Article I of the Plan.

**DIP Agent:** BNP Paribas in its capacity as agent under the DIP Facility, or its successor thereunder.

**DIP Claims:** Any and all Claims held by any DIP Lenders or the DIP Agent arising from or in connection with the DIP Loan Documents or the DIP Orders.

**DIP Facility:** That certain $14 million senior secured super priority debtor-in-possession financing facility provided by the DIP Lenders on the terms of, and subject to the conditions set forth in, the DIP Loan Agreement and the DIP Orders.

**DIP Lenders:** Any lenders under the DIP Facility, solely in their capacity as such.

**DIP Loan Agreement:** That certain Senior Secured Superpriority Debtor-in-Possession Credit Agreement dated as of April 7, 2020, as amended, restated, modified, supplemented, or replaced from time to time in accordance with its terms, by and among the Debtors, the DIP Lenders, and the DIP Agent.

**DIP Loan Documents:** The DIP Loan Agreement and any amendments, modifications, supplements thereto, as well as any related notes, certificates, agreements, security agreements, documents, and instruments (including any amendments, restatements, supplements, or modifications of any of the foregoing) related to or executed in connection with the DIP Loan Agreement, including, without limitation, the DIP Orders.

**DIP Orders:** Collectively, the Final DIP Order and the preceding interim order entered by the Bankruptcy Court authorizing the applicable Debtors to enter into the DIP Loan Agreement and access the DIP Facility.

**Disallowed Claim:** Any Claim that (a) is not Scheduled, or is listed thereon as contingent, unliquidated, disputed, or in an amount equal to zero, and whose Holder failed to timely File a proof of claim by the applicable Claims Bar Date (unless late filing was permitted by a Bankruptcy Court order), but excluding any Claim that is expressly Allowed by a Final Order or under the Plan; or (b) has been disallowed pursuant to an order of the Bankruptcy Court.

**Disclosure Statement:** That certain disclosure statement relating to the Plan, including all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to Bankruptcy Code section 1125, as it subsequently may be amended, modified, or supplemented by the Debtors.

**Disclosure Statement Order:** The order approving the Disclosure Statement, authorizing the Debtors to solicit acceptances of the Plan, and establishing certain related procedures and deadlines.

**Disputed Claim:** Any Claim:

(a)      that is disputed in whole or in part under the Plan; or

(b)      that

      (i)      is not expressly Allowed by a Final Order or under the Plan; and

      (ii)     as to which a proof of claim is Filed or is deemed Filed as a result of such Claim being Scheduled; and

      (iii)     as to which either:

           (1)     an objection or request for estimation or subordination (A) has been timely Filed within the applicable period of limitations fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order under which the applicable period of limitation has expired, and (B) has not been denied by a Final Order or withdrawn; or

(2)      the Claim Objection Deadline has not passed as to such Claim (unless the Liquidation Trust has determined that it will not object to such Claim).

**Distribute**, **Distributed**, or **Distribution**: Any initial or subsequent issuance, payment, or transfer of consideration made under the Plan, including, without limitation, the recording on the books and records of the Liquidation Trust of Liquidation Trust Interests

**Distribution Date**: Any date on which a Distribution is made.

**Distribution Record Date**: The record date for determining entitlement of Holders of Claims to receive Distributions under the Plan, which date shall be the later of (a) the Effective Date and (b) the Bar Date.  To the extent that a Bar Date has not occurred on the Effective Date, a reserve will be established for the benefit of any claimants that may still assert claimants in an amount that is either (i) approved by the claimant, to the extent known, or (ii) authorized by order of the Bankruptcy Court.

**Distribution Reserve**: One or more reserves in respect of Contingent Claims, Disputed Claims, or Unliquidated Claims established under the Plan for Distributions under the Plan with respect to such Claims.

**Effective Date**: The date that is the first Business Day on which each condition set forth in Article IX of the Plan has been satisfied or waived as set forth therein.

**Equity Interests**: All previously issued and outstanding common stock, preferred stock, membership interests, or other ownership interests in any of the Debtors outstanding immediately prior to the Effective Date, including restricted stock, treasury stock, and all options, warrants, calls, rights, puts, awards, commitments, appreciation rights, or any other agreements of any character to convert, exchange, exercise for, or otherwise receive any such common stock, preferred stock, membership interests, or other ownership interests.

**Estate Assets**: Collectively, (a) any and all right, title, and interest of the Debtors and the Estates in and to property of whatever type or nature, including their books and records and all Avoidance Actions and Causes of Action, as of the Effective Date; and (b) any proceeds thereof.

**Estates**: The chapter 11 estates of the Debtors created by Bankruptcy Code section 541(a).

**Exculpated Parties**: Collectively, (a) the Board, (b) the Committee, and (c) each of the preceding's respective Related Parties; *provided that* such exculpation shall apply to the foregoing only to the extent they have acted as, or advised as professionals, estate fiduciaries.

**Exit Financing**: Indebtedness to be issued by the DIP Lenders at Confirmation as more fully set forth herein and in the Plan Supplement.

**Exit Financing Administrative Agent:** The Person acting in such capacity in respect of the Exit Financing.

**File**, **Filed**, or **Filing:** Duly and properly filed with the Bankruptcy Court and reflected on the docket of the Chapter 11 Cases, except with respect to proofs of claim that must be filed with the Claims Agent, in which case "File" or "Filed" means duly and properly filed with the Claims Agent and reflected on the official claims register maintained by the Claims Agent.

**Final Decree:** An order entered pursuant to Bankruptcy Code section 350, Bankruptcy Rule 3022, and Local Rule 5009-1 closing the Chapter 11 Case for the Remaining Debtor.

**Final DIP Order:** That certain *Final Order Pursuant to 11 U.S.C. Sections 105, 361, 362, 363, 364 and 507 and Bankruptcy Rules 2002, 4001, and 6004 (I) Authorizing the Debtors to Obtain Postpetition Senior Secured Superpriority Financing, (II) Authorizing the Debtors' Limited Use of Cash Collateral, (III) Granting Adequate Protection to the Prepetition Secured Parties, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* entered on April 30, 2020 [Docket No. 148].

**Final Order:** An order or judgment of the Bankruptcy Court entered on the docket of the Chapter 11 Cases:

    (a)       that has not been reversed, rescinded, stayed, modified, or amended;

    (b)       that is in full force and effect; and

    (c)       with respect to which (i) the time to appeal or to seek review, rehearing, remand, or a writ of certiorari has expired and as to which no timely filed appeal or petition for review, rehearing, remand, or writ of certiorari is pending; or (ii) any such appeal or petition has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, or a writ of certiorari was sought.

For the avoidance of doubt, no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to Bankruptcy Code section 502(j), Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rules 9023 or 9024 may be or has been filed with respect to such order.

**General Claims Bar Date:** June 15, 2020.

**General Unsecured Claim:** Any unsecured, non-priority Claim asserted against any of the Debtors or the Estates that is not a Subordinated Claim including all Rejection Claims but excluding (a) any Claims arising from any executory contracts or unexpired leases that are assumed during the Chapter 11 Cases, and (b) any vendor or other Claims satisfied in the ordinary course of business or pursuant to any order of the Bankruptcy Court.

**Governmental Claims Bar Date:** October 2, 2020

**Holder:** The Person that is the owner of record of a Claim, Equity Interest, or Liquidation Trust Interest, as applicable.

**Impaired:** Any Class of Claims or Equity Interests that is impaired within the meaning of Bankruptcy Code section 1124.

**Insured Claim:** Any Claim or portion of a Claim (other than a Claim held by an employee of the Debtors for workers' compensation coverage under the workers' compensation program applicable in the particular state in which the employee is employed by the Debtors) that is insured under the Debtors' insurance policies, but only to the extent of such coverage.

**Intercompany Claim:** A Claim of one Debtor against another Debtor.

**Lien:** Any lien, security interest, pledge, title retention agreement, encumbrance, leasehold, charge, mortgage, or hypothecation to secure payment of a debt or performance of an obligation, other than, in the case of securities and any other equity ownership interests, any restrictions imposed by applicable United States or foreign securities laws.

**Liquidation Trust:** A liquidation trust established on the Effective Date for the benefit of the Liquidation Trust Beneficiaries in accordance with the terms of the Plan and the Liquidation Trust Agreement.

**Liquidation Trust Actions:** Collectively, all Avoidance Actions and Causes of Action held by the Debtors or the Estates.

**Liquidation Trust Agreement:** The agreement substantially in the form Filed in the Plan Supplement establishing and delineating the terms and conditions of the Liquidation Trust, including the rights and duties of the Liquidation Trustee and the Liquidation Trust Supervisory Board.

**Liquidation Trust Assets:** Collectively, (a) the Liquidation Trust Actions, (b) the Liquidation Trust Funding, (c) Available Cash as of the Effective Date and Available Cash that is possessed by or turned over to the Liquidation Trust after the Effective Date, (d) all Estate Assets, including, without limitation, all aviation-related personal property and real estate assets, including leasehold improvements, and (e) other assets or entities that may be transferred or otherwise provided, directly or indirectly, to or for the benefit of the Debtors (after the Petition Date but before the Effective Date) or the Liquidation Trust (on or after the Effective Date) by any Person.

**Liquidation Trust Beneficiary:** Each Holder of a Liquidation Trust Interest. Liquidation Trust Interests are to be Distributed to Holders of certain Roll-Up Claims, Class 1 Claims and Class 4 General Unsecured Claims, in accordance with Section 3.02, Section 3.03, and Section 3.06, respectively of the Plan.

**Liquidation Trust Expenses:** Any and all reasonable fees, costs, and expenses incurred by the Liquidation Trustee not inconsistent with the Plan or the Liquidation Trust Agreement, including the maintenance or disposition of the Liquidation Trust Assets (including fees of the Liquidation Trustee, insurance, indemnity reserves, attorneys' fees, the fees of professionals, and other Persons retained by the Liquidation Trustee, personnel-related expenses, and any taxes imposed on the Liquidation Trust or in respect of the Liquidation Trust Assets), and any other expenses incurred or otherwise payable in accordance with the Liquidation Trust Agreement.

**Liquidation Trust Funding:** The Liquidation Trust Seed Funding, any cash collateral or reserves extant as of the Effective Date, and all Cash required (a) to make payments in accordance with the Plan to Administrative Claims, Professional Fee Claims, Priority Tax Claims, and Priority Claims; or (b) to fund any other unfunded post-Confirmation reserve requirements of the Liquidation Trust (including Distribution Reserves) in connection with the Plan, any agreements, or any Bankruptcy Court orders. For the avoidance of doubt, Cash set aside to pay unclassified Classes of Allowed Claims (other than DIP Claims) and Allowed Claims in Classes 3 and 4 shall be administered by the Liquidation Trustee but shall not be transferred to the Liquidation Trust and will not constitute Liquidation Trust Funding.

**Liquidation Trust Indemnified Parties:** The Liquidation Trustee, the Liquidation Trust Supervisory Board and any Board Observer, and their respective Related Parties, each in their respective capacity as such.

**Liquidation Trust Interests:** Together, the Class A Liquidation Trust Interests, the Class B Liquidation Trust Interests and Class C Liquidation Trust Interests. Liquidation Trust Interests shall not be certificated. All Liquidation Trust Interests shall be recorded on the books and records of the Liquidation Trust, and such recording shall be all that is required in order for Liquidation Trust Interests to be Distributed.

**Liquidation Trust Interests Waterfall:** as defined in Section 5.03(j)(iv).

**Liquidation Trust Seed Funding:** Cash remaining from the DIP Facility plus any additional financing provided from the Exit Financing.

**Liquidation Trust Supervisory Board:** A supervisory board for the Liquidation Trust, whose initial members shall be identified at or before the Confirmation Hearing and shall be selected as follows: one (1) individual nominated by the Administrative Agent for the Exit Financing, and two (2) individuals nominated by Holders of the DIP Claims. Should an individual nominated refuse or thereafter cease to serve in such capacity, the aforementioned entities and Holders may nominate an individual(s) to replace the previously-nominated individual(s); *provided, however*, that if none of such entities are reasonably available and willing to make the nomination, then the remaining members of the Liquidation Trust Supervisory Board shall select the replacement member(s).

**Liquidation Trustee:** An individual identified in the Plan Supplement and any successor thereto appointed pursuant to the Liquidation Trust Agreement, which successor appointment

will require approval of the Liquidation Trust Supervisory Board, in each case acting in the capacity as trustee of the Liquidation Trust.

**Local Rules:** The Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, as amended from time to time.

**Non-Compensatory Penalty Claims:** Any Claim, secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or punitive damages, to the extent such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the Holder of such Claim; *provided* that Non-Compensatory Penalty Claims shall not include governmental penalty claims as provided in *U.S. v. Reorganized CF&I Fabricators of Utah, Inc.*, 518 U.S. 213 (1996) and *United States v. Noland*, 517 U.S. 535 (1996).

**Ordinary Course Professional:** Any Ordinary Course Professional, as that term is defined in the *Order Authorizing the Employment and Payment of Professionals Used in the Ordinary Course of Business* [Docket No. 148].

**Ordinary Course Professional Fee Claim:** A Claim of an Ordinary Course Professional for compensation or reimbursement of costs and expenses relating to services provided during the period from the Petition Date through and including the Effective Date.

**Other Secured Claims:** Any Secured Claims that are not DIP Claims or Prepetition Secured Creditor Claims.

**Person:** Any person or organization created or recognized by law, including any association, company, cooperative, corporation, entity, estate, fund, individual, joint stock company, joint venture, limited liability company, partnership, trust, trustee, unincorporated organization, government or any political subdivision thereof, or any other entity or organization of whatever nature.

**Petition Date:** April 5, 2020.

**Plan:** This *Chapter 11 Plan of Liquidation of Ravn Air Group, Inc. of and Its Affiliated Debtors* and all exhibits thereto, including the Plan Supplement, as the same may be amended, modified, or supplemented in the Debtors' reasonable discretion.

**Plan Supplement:** The ancillary documents regarding the implementation and effectuation of the Plan, which will be Filed on or before the date that is seven (7) calendar days prior to the Voting Deadline, as such documents may be amended and supplemented prior to the Confirmation Hearing.

**Prepetition Secured Creditor Claim**: A Claim arising under that certain Credit Agreement dated as of July 31, 2015, by and among each of the Debtors (whether in its capacity as a borrower or a guarantor), BNP Paribas, as administrative agent, collateral agent, issuing bank, swingline lender, and certain of the lenders party thereto, as such credit agreement was thereafter amended, modified and restated as of the Petition Date.

**Preserved Claim**: Any Cause of Action specifically identified as such in the Plan Supplement.

**Priority Claim**: A Claim that is entitled to priority under Bankruptcy Code section 507(a), other than an Administrative Claim and a Priority Tax Claim.

**Priority Tax Claim**: A Claim that is entitled to priority under Bankruptcy Code section 507(a)(8).

**Professional**: Any professional (other than an Ordinary Course Professional) employed in the Chapter 11 Cases pursuant to Bankruptcy Code sections 327, 328, 1103, or 1104 or any professional or other Person (in each case, other than an Ordinary Course Professional) seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to Bankruptcy Code section 503(b)(3) or 503(b)(4).

**Professional Fee Claim**: A Claim of a Professional for compensation or reimbursement of costs and expenses (or of members of the Committee for reimbursement of expenses) relating to services provided during the period from the Petition Date through and including the Effective Date.

**Professional Fee Reserve**: The reserve established and funded by the Liquidation Trust pursuant to Section 11.02 of the Plan to provide sufficient funds to satisfy in full all unpaid Allowed Professional Fee Claims.

**Pro Rata**: Proportionately so that the ratio of (a) the amount of consideration distributed on account of a particular Allowed Claim or Liquidation Trust Interest to (b) the amount or number of that Allowed Claim or Liquidation Trust Interest, is the same as the ratio of (x) the amount of consideration available for Distribution on account of, as applicable, all Allowed Claims in the Class in which the particular Allowed Claim is included or all applicable Liquidation Trust Interests (*e.g.*, all Liquidation Trust Interests, all Class A Liquidation Trust Interests, or all Class B Liquidation Trust Interests) to (y) as applicable, the amount of all Allowed Claims of that Class or the number of applicable Liquidation Trust Interests, as adjusted to take into account any applicable Distribution Reserves.

**Rejection Claim**: Any Claim for monetary damages as a result of the rejection of any prepetition executory contract or unexpired lease, whether rejected pursuant to the Confirmation Order or otherwise.

**Rejection Claims Bar Date**: To the extent not previously established by prior order of the Bankruptcy Court, the first Business Day that is at least thirty (30) calendar days after the Effective Date.

**Related Parties**: Collectively, all of the respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, managers, members, officers, partners, predecessors, principals, professional persons,

representatives, and successors of the reference Person, but only in such capacities with respect to such reference Person.

**Released Parties:** Collectively, (a) the Board, (b) the Committee, (c) the DIP Agent, DIP Lenders, Holders of Prepetition Secured Creditor Claims, and (d) each of the preceding's respective Related Parties, except to the extent that a Related Party is subject to a Preserved Claim.

**Releasing Parties:** Collectively, (a) the Debtors, (b) the Estates, and (c) any Person exercising or seeking to exercise any rights of the Estates (but solely in that capacity), including the Committee (but not its individual members), the Liquidation Trustee, and any other successor to the Debtors or any other estate representative that is or could be appointed or selected pursuant to Bankruptcy Code section 1123(b)(3) or otherwise.

**Remaining Debtor:** Ravn Air Group, Inc. and JJM, Inc. collectively; provided, however, that the Liquidating Trustee may elect to dissolve either entity in its discretion, in which case the surviving entity alone shall be the Remaining Debtor.

**Schedule of Assumed Agreements:** The schedule of those certain executory contracts and unexpired leases that the Debtors have determined, in the Debtors' reasonable discretion, the Debtors may assume and assign on the Effective Date. The initial Schedule of Assumed Agreements will be Filed as part of the initial Plan Supplement but remains subject to any modifications that may be made prior to the Effective Date pursuant to Section 6.01 of the Plan.

**Scheduled:** Set forth in the Schedules.

**Schedules:** The Schedules of Assets and Liabilities Filed by the Debtors on May 11 and 12, 2020, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009.

**Section 503(b)(9) Claim:** A Claim arising under Bankruptcy Code section 503(b)(9) for the value of any goods received by the Debtors within twenty (20) calendar days before the Petition Date and that were sold to the Debtors in the ordinary course of their business.

**Secured Claim:** A Claim that is secured by a valid, perfected, and enforceable Lien on property in which the Debtors or the Estates have an interest, which Lien is valid, perfected, and enforceable under applicable law and not subject to avoidance under the Bankruptcy Code or applicable nonbankruptcy law. A Claim is a Secured Claim only to the extent of the value of the Holder's interest in the Debtors' interest in the Collateral or to the extent of the amount subject to setoff against a Cause of Action held by the Debtors, whichever is applicable, and as determined under Bankruptcy Code section 506(a). To the extent that the value of such interest in the Debtors' interest in the subject Collateral or the amount subject to setoff against a Cause of Action held by the Debtors (as applicable) is less than the amount of the Claim which has the benefit of such security or is supported by such setoff right, such portion of the Claim is unsecured and shall be treated as a General Unsecured Claim unless, in any such case, the Class of which the Secured Claim is a part makes a valid and timely election in accordance with Bankruptcy Code section 1111(b) to have such Claim(s) treated as a Secured Claim to the extent

Allowed. For the avoidance of doubt, Intercompany Claims are not defined, classified, or treated as Secured Claims under the Plan as a result of the comprehensive settlement and compromise to be effected under the Plan.

**Securities Act:** The Securities Act of 1933, as amended.

**Subordinated Claim:** Collectively, (a) any Non-Compensatory Penalty Claims and (b) any other Claim that is subordinated to General Unsecured Claims pursuant to Bankruptcy Code section 510, a Final Order, or by consent of the Creditor holding such Claim.

**Unimpaired:** Any Class of Claims that is not impaired within the meaning of Bankruptcy Code section 1124.

**Uninsured Portion:** The portion of any Insured Claim, if any, that is not insured under the Debtors' insurance policies or that is beyond the extent of such coverage.

**Unliquidated Claim:** Any Claim that is Scheduled as unliquidated or that was Filed in an unliquidated amount.

**U.S. Trustee:** The Office of the United States Trustee for the District of Delaware.

**Voting Deadline:** The date and time by which all Ballots to accept or reject the Plan must be received in order to be counted under the Disclosure Statement Order.

**ARTICLE II**

**CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS**

**SECTION 2.01    Summary and Classification of Claims.** This Section classifies Claims – except for Administrative Claims, Professional Fee Claims, Priority Tax Claims, and DIP Claims, which are not classified for any purpose, including confirmation, Distributions, and voting. A Claim is classified in a particular Class only to the extent that the Claim falls within the Class description. To the extent that part of a Claim falls within a different Class description, that part of the Claim is classified in that different Class. The following table summarizes the Classes of Claims under the Plan:

| CLASS | DESCRIPTION | IMPAIRED/ UNIMPAIRED | VOTING STATUS |
|---|---|---|---|
| None | Administrative Claims | Unimpaired | Not Entitled to Vote |
| None | Professional Fee Claims | Unimpaired | Not Entitled to Vote |
| None | Priority Tax Claims | Unimpaired | Not Entitled to Vote |
| None | DIP Claims | Impaired | Not Entitled to Vote but Must Consent |

| Class 1 | Prepetition Secured Creditor Claims | Impaired | Entitled to Vote |
|---|---|---|---|
| Class 2 | Other Secured Claims[3] | Unimpaired | Not Entitled to Vote |
| Class 3 | Priority Claims | Unimpaired | Not Entitled to Vote |
| Class 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 5 | Subordinated Claims | Impaired | Not Entitled to Vote (deemed to reject) |
| Class 6 | Equity Interests | Impaired | Not Entitled to Vote (deemed to reject) |

**NOTWITHSTANDING ANY OTHER TERM OR PROVISION OF THE PLAN, NO DISTRIBUTIONS WILL BE MADE ON ACCOUNT OF ANY CLAIM THAT IS NOT AN ALLOWED CLAIM AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM THAT IS A DISALLOWED CLAIM.**

SECTION 2.02   **Classification and Voting Controversies**.

(a)      If a controversy arises regarding whether any Claim is properly classified under the Plan, then the Bankruptcy Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing.

(b)      If the Bankruptcy Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the Holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Bankruptcy Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan.

ARTICLE III

**TREATMENT OF CLAIMS AND EQUITY INTERESTS**

SECTION 3.01   **Unclassified Claims**.

(a)      **Administrative Claims.** As part of their agreement to provide funding embodied in this Plan, pursuant to Bankruptcy Rule 9019, Holders of DIP Claims have established the Administrative Claims Reserve to pay all Allowed Administrative Claims. Allowed Administrative Claims shall be paid solely from the Administrative Claims Reserve.

---

[3] For voting purposes and to comply with Bankruptcy Code section 1122(a), each Allowed Other Secured Claim shall be deemed to be in its own subclass (unless such Holder shares the same Lien on Collateral with a different Holder of another Other Secured Claim, in which case such Claims shall be deemed to be included together in the same subclass).

Except as otherwise provided for herein, and subject to the requirements of the Plan, on or as soon as reasonably practicable after the later of (i) the Effective Date and (ii) thirty (30) days following the date on which an Administrative Claim becomes an Allowed Administrative Claim, the Holder of such Allowed Administrative Claim shall receive, in full satisfaction, settlement, and release of and in exchange for such Allowed Administrative Claim from the Administrative Claims Reserve, (a) Cash equal to the unpaid portion of such Allowed Administrative Claim or (b) such other less favorable treatment as to which such Holder and the Liquidation Trust shall have agreed upon in writing. Any excess funds in the Administrative Claims Reserve shall be released to the Liquidation Trust to be used for other purposes consistent with the Plan.

(b)    **Professional Fee Claims.** As part of their agreement to provide funding embodied in this Plan, pursuant to Bankruptcy Rule 9019, Holders of DIP Claims have established the Professional Fee Claim Reserve to pay all Allowed Professional Fee Claims. Professional Fee Claims shall be paid as set forth in Section 11.02 of the Plan.

(c)    **Priority Tax Claims.** In full satisfaction, settlement, and release of and in exchange for such Claims, Allowed Priority Tax Claims shall be paid, at the Liquidation Trust's option, as follows: (a) Cash equal to the unpaid portion of such Allowed Priority Tax Claim on the later of the Effective Date and thirty (30) calendar days following the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim; (b) in regular installment payments in Cash over a period not exceeding five (5) years after the Petition Date, plus interest on the unpaid portion thereof at the rate determined under applicable nonbankruptcy law as of the calendar month in which the Effective Date occurs (*provided* that such election shall be without prejudice to the right to prepay any such Allowed Priority Tax Claim in full or in part without penalty); or (c) such other treatment as to which the Holder of an Allowed Priority Tax Claim and the Liquidation Trust shall have agreed upon in writing.

**SECTION 3.02    DIP Claims.**  Subject to the DIP Orders, on the Effective Date, the DIP Claims shall be deemed to be Allowed in the full amount due and owing under the DIP Facility as of the Effective Date, if any. On the Effective Date, each Holder of an outstanding DIP Claim (inclusive of certain Roll-Up Loans as defined in the DIP Loan Agreement) shall be Distributed (a) a Pro Rata Share of the Exit Financing by converting such DIP Claims (inclusive of the Roll-Up Loans as defined in the DIP Loan Agreement) on a dollar-for-dollar basis into loans under the Exit Financing, and (b) One Class A Liquidation Trust Interest in exchange for every Thousand Dollars ($1,000) of such Holder's DIP Claim consisting of certain Roll-Up Loans that are not converted as specified in clause (a), and the Debtors obligations under the DIP Facility shall be transferred to the Liquidation Trust and any rights under the DIP Facility shall be cancelled. Notwithstanding Section 506(a) of the Bankruptcy Code, Holders of DIP Claims shall be deemed to have waived the unsecured portion of their DIP Claims, if any, and will have no right to recover anything from the Creditors' Fund with respect to any deficiency Claims.

**SECTION 3.03    Class 1: Prepetition Secured Creditor Claims.** Class 1 consists of Prepetition Secured Creditor Claims. Class 1 is Impaired under the Plan. On the Effective Date, each Holder of an outstanding Prepetition Secured Creditor Claim shall be Distributed One Class B Liquidation Trust Interest in exchange for every Thousand Dollars ($1,000) of such Holder's

Class 1 Claim. Notwithstanding Section 506(a) of the Bankruptcy Code, Holders of Claims in Class 1 shall be deemed to have waived the unsecured portion of their Class 1 Claims, if any, and will have no right to recover anything from the Creditors' Fund with respect to any deficiency Claims.

**SECTION 3.04    Class 2: Other Secured Claims**. Class 2 consists of all Other Secured Claims. Class 2 is Unimpaired under the Plan. The legal, equitable, and contractual rights of Holders of Allowed Class 2 Claims are unaltered by the Plan, and, notwithstanding deemed consolidation of the Debtors and vesting of the Liquidation Trust Assets in the Liquidation Trust, the Liens of the Holders of Allowed Class 2 Claims will continue to attach to their respective Collateral, provided that all such Claims shall remain subject to any and all defenses, counterclaims, and setoff or recoupment rights with respect thereto. Unless the Holder of an Allowed Class 2 Claim agrees to other treatment, on or as soon as is reasonably practicable after the Effective Date, each Holder of an Allowed Class 2 Claim shall receive, at the Liquidation Trust's option: (i) Cash in the Allowed amount of such Holder's Allowed Class 2 Claim; or (ii) the return of the Collateral securing such Allowed Class 2 Claim, without representation or warranty by any Person (and without recourse against any Person regarding such Other Secured Claim); or (iii) (A) the cure of any default, other than a default of the kind specified in Bankruptcy Code section 365(b)(2), that Bankruptcy Code section 1124(2) requires to be cured, with respect to such Holder's Allowed Class 2 Claim, without recognition of any default rate of interest or similar penalty or charge, and upon such cure, no default shall exist; (B) the reinstatement of the maturity of such Allowed Class 2 Claim as the maturity existed before any default, without recognition of any default rate of interest or similar penalty or charge; and (C) retention of its unaltered legal, equitable, and contractual rights with respect to such Allowed Class 2 Claim, including through the retention of any associated Lien on the Collateral securing such Allowed Class 2 Claim.

The Bankruptcy Court shall retain jurisdiction and power to determine the amount necessary to satisfy any Allowed Class 2 Claim for which treatment is elected under clause (i) or clause (iii) of the immediately foregoing paragraph. With respect to any Allowed Class 2 Claim for which treatment is elected under clause (i), any Holder of such Allowed Class 2 Claim shall release (and by the Confirmation Order shall be deemed to release) all Liens against any Estate Assets.

**SECTION 3.05    Class 3: Priority Claims**. Class 3 consists of all Priority Claims. Class 3 is Unimpaired under the Plan. On, or as soon as reasonably practicable after, the later of (i) the Effective Date  and (ii) the date on which a Priority Claim becomes payable pursuant to and as specified by an order of the Bankruptcy Court, the Holder of such Allowed Priority Claim shall receive, in full satisfaction, settlement, and release of and in exchange for such Allowed Priority Claim, either (a) Cash equal to the unpaid portion of such Allowed Priority Claim or (b) such other less favorable treatment from the Liquidation Trust to which such Holder and the Liquidation Trust shall have agreed upon in writing.

**SECTION 3.06    Class 4: General Unsecured Claims**. Class 4 consists of all General Unsecured Claims. Class 4 is Impaired under the Plan. Each Holder of an Allowed General Unsecured Claim, in full satisfaction, settlement, and release of and in exchange for such

Allowed General Unsecured Claim, (A) on, or as soon as reasonably practicable after the later of (i) the Effective Date and (ii) the date on which a General Unsecured Claim becomes payable pursuant to and as specified by an order of the Bankruptcy Court, , shall receive its Pro Rata share of the Creditors' Fund; and (ii) on the Effective Date, One Class C Liquidation Trust Interest in exchange for every Hundred Dollars ($100) of such Holder's Class 4 Claim shall be Distributed. As part of their agreement to fund the Administrative Claims Reserve, the Professional Fees Reserve and the Creditors' Fund, pursuant to Bankruptcy Rule 9019, Holders of DIP Claims and Class 1 Claims shall be deemed to have waived their rights to Distributions in respect of their deficiency General Unsecured Claims. Allowed General Unsecured Claims will be paid from the Creditors' Fund and the Liquidation Trust Assets.

**SECTION 3.07    Class 5: Subordinated Claims**.  Class 5 consists of all Subordinated Claims. Class 5 is Impaired under the Plan.  Holders of Class 5 Claims shall not receive any property or interest in property under the Plan on account of such Subordinated Claims. Class 5 is deemed to have rejected the Plan and, therefore, Holders of Class 5 Claims are not entitled to vote on the Plan.

**SECTION 3.08    Class 6: Equity Interests**.  Class 6 consists of all Equity Interests. Class 6 is Impaired under the Plan.  As of the Effective Date, all Equity Interests shall be deemed void, cancelled, and of no further force and effect. On and after the Effective Date, Holders of Equity Interests shall not be entitled to, and shall not receive or retain any property or interest in property under the Plan on account of such Equity Interests. Class 6 is deemed to have rejected the Plan and, therefore, Holders of Equity Interests are not entitled to vote on the Plan.

**SECTION 3.09    Special Provisions Regarding Insured Claims**.

(a)    Any Allowed General Unsecured Claim with respect to an Insured Claim shall be limited to the Uninsured Portion of such Claim, provided such Claims have been timely Filed by the applicable Claims Bar Date.

(b)    If there is insurance purchased by or otherwise applicable to the Debtors, any Person with rights against or under the applicable insurance policy, including the Liquidation Trust and Holders of Insured Claims, may pursue such rights.

(c)    Nothing in this Section 3.09 shall constitute a waiver of any Causes of Action the Debtors, the Estates, or the Liquidation Trust may hold against any Person, including the Debtors' insurance carriers; and nothing in this Section 3.09 is intended to, shall, or shall be deemed to preclude any Holder of an Insured Claim from seeking or obtaining a distribution or other recovery from any insurer of the Debtors in addition to (but not in duplication of) any Distribution such Holder may receive under the Plan; *provided, however*, that the Debtors and the Liquidation Trust do not waive, and expressly reserve their rights to assert that any insurance coverage is property of the Estates to which they are entitled.

**SECTION 3.10    Resolution of Claims and Controversies Among Debtors**.

(a)    **Generally.** Pursuant to Bankruptcy Code sections 1123(a)(5), 1123(b)(3), and 1123(b)(6), as well as Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good faith compromise and settlement of the Intercompany Claims. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of the Intercompany Claims and the Bankruptcy Court's finding that such compromises are (i) in the best interest of the Debtors, the Estates, and their respective property and stakeholders; and (ii) fair, equitable, and reasonable.

(b)    **Implementing Elements.** Pursuant to the resolution set forth herein, the Plan effectuates, among other things, the following:

(i)    In accordance with Section 5.06 of the Plan, subject to the rights of Allowed Other Secured Claims, the Debtors will be deemed consolidated into Ravn Air Group, Inc.;

(ii)    The Holders of Allowed Claims in Class 1 (Prepetition Secured Creditor Claims and Class 4 (General Unsecured Claims) will receive the treatment provided for such Holders under the Plan;

(iii)    The Liquidation Trust will be created to most effectively and efficiently pursue the Liquidation Trust Actions for the collective benefit of all the Liquidation Trust Beneficiaries; and

(iv)    Any Intercompany Claims that could be asserted by one Debtor against another Debtor will be extinguished immediately before the Effective Date with no separate recovery on account of any such Claims that could be asserted by one Debtor regarding any Estate Assets owned by another Debtor will be deemed released and discharged on the Effective Date.

ARTICLE 4

## ACCEPTANCE OR REJECTION OF THE PLAN

**SECTION 4.01    Impaired Class of Claims Entitled to Vote.** Only the votes of Holders of Allowed Claims in Class 1 and Class 4 shall be solicited with respect to the Plan. The unanimous consent of Holders of DIP Claims, which class of Claims is unclassified, is also being sought.

**SECTION 4.02    Acceptance by an Impaired Class.** In accordance with Bankruptcy Code section 1126(c), and except as provided in Bankruptcy Code section 1126(e), the Holders of Claims in any Class entitled to vote on the Plan shall have accepted the Plan if the Plan is accepted by the Holders of at least two-thirds (⅔) in dollar amount and more than one-half (½) in number of the Allowed Claims in such Class that have timely and properly voted to accept or reject the Plan.

**SECTION 4.03    Presumed Acceptances by Unimpaired Classes.** Class 2 and Class 3

are Unimpaired under the Plan. Under Bankruptcy Code section 1126(f), the Holders of Claims in such Unimpaired Classes are conclusively presumed to have accepted the Plan, and, therefore, the votes of such Holders shall not be solicited.

**SECTION 4.04    Impaired Classes Deemed to Reject Plan.** The Debtors have determined not to solicit the votes of Holders of any Claims in Class 5, and such Holders shall be deemed to have rejected the Plan and, therefore, such Holders are not entitled to vote on the Plan. Holders of Equity Interests in Class 6 are not entitled to receive or retain any property or interests in property under the Plan. Under Bankruptcy Code section 1126(g), such Holders are deemed to have rejected the Plan, and, therefore, the votes of such Holders shall not be solicited.

**SECTION 4.05    Modifications of Votes.** Following the Voting Deadline, no Creditors entitled to vote on the Plan will be able to change their votes cast on the Plan or any attendant elections or preferences without the written consent of the Debtors, which consent may be given or withheld in the Debtors' reasonable discretion.

**SECTION 4.06    Confirmation Pursuant to Bankruptcy Code Section 1129(b).** Because at least one Impaired Class is deemed to have rejected the Plan, the Debtors will and hereby request confirmation of the Plan under Bankruptcy Code section 1129(b). The Debtors reserve the right to alter, amend, modify, revoke, or withdraw the Plan, the Plan Supplement, or any schedule or exhibit, including to amend or modify it to satisfy the requirements of Bankruptcy Code section 1129(b), if necessary.

**SECTION 4.07    Elimination of Vacant Classes.** Any Class of Claims or Equity Interests that does not contain, as of the date of the commencement of the Confirmation Hearing, a Holder of an Allowed Claim, or a Holder of a Claim temporarily allowed under Bankruptcy Rule 3018, shall be deemed deleted from the Plan for purposes of determining acceptance of the Plan by such Class under Bankruptcy Code section 1129(a)(8).

**SECTION 4.08    Severability of Joint Plan.** This Plan represents a joint plan comprised of individual plans for each of the Debtors. As further discussed in Section 11.06 of the Plan, the Debtors may alter, amend, or modify this Plan at or before the Confirmation Hearing, including to remove one or more Debtors from this Plan, in the Debtors' reasonable discretion.

## IMPLEMENTATION OF THE PLAN

**SECTION 5.01    Implementation of the Plan.** The Plan will be implemented by various acts and transactions as set forth in the Plan, including, among other things, the establishment of the Liquidation Trust, the appointment of the Liquidation Trustee, and the making of Distributions by the Liquidation Trust.

**SECTION 5.02    Streamlining the Debtors' Corporate Affairs.**

(a)    **Debtors' Existing Directors, Officers, and Managers.** On the Effective Date, each of the Debtors' existing directors, officers, and managers shall be terminated automatically without the need for any Corporate Action and without the need for any corporate or limited liability company filings, and shall have no ongoing rights against or obligations to the Debtors or the Estates, including under any applicable prepetition agreements (all of which will be deemed terminated). On the Effective Date, the Liquidation Trustee shall succeed to all such powers as would have been applicable to the Debtors' officers and managers in respect of all Liquidation Trust Assets; *provided, however*, that the Liquidation Trustee may continue to consult with or employ the Debtors' former directors, officers, employees, and managers to the extent required to comply with applicable law or contractual provisions regarding the Debtors.

(b)    **Dissolution of the Debtors.** On the Effective Date, each of the Debtors other than the Remaining Debtor will be dissolved automatically without the need for any further Corporate Action, without the need for any corporate or limited liability company filings, and without the need for any other or further actions to be taken by or on behalf of such dissolving Debtor or any other Person or any payments to be made in connection therewith; *provided, however*, that the Liquidation Trust may in its discretion file any certificates of cancellation as may be appropriate in connection with dissolution of any Debtors.

(c)    **Corporate Documents and Corporate Authority.** On the Effective Date, the certificates of incorporation, bylaws, operating agreements, and articles of organization, as applicable, of all the Debtors shall be deemed amended to the extent necessary to carry out the provisions of the Plan. The entry of the Confirmation Order shall constitute authorization for the Debtors and the Liquidation Trustee, as applicable, to take or cause to be taken all actions (including, if applicable, Corporate Actions) necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on, and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act, or action under any applicable law, order, rule, or regulation.

**SECTION 5.03    Liquidation Trust.**

(a)    **Appointments**.

(i)    On and after the Effective Date, the initial Liquidation Trustee shall become and serve as Liquidation Trustee. The Liquidation Trustee will receive compensation and reimbursement of reasonable expenses, as shall be specifically set forth in the Liquidation Trust Agreement.

(ii)    On and after the Effective Date, the initial Liquidation Trust Supervisory Board shall begin to serve without further action. Any compensation and reimbursement of reasonable expenses shall be specifically set forth in the Liquidation Trust Agreement.

   (b) **Creation and Governance of the Liquidation Trust.** On the Effective Date, the Liquidation Trustee shall execute the Liquidation Trust Agreement and shall take any other steps necessary to establish the Liquidation Trust in accordance with the Plan and the beneficial interests therein. For federal income tax purposes, the transfer of the assets to the Liquidation Trust will be treated as a sale or other disposition of assets (except for the assets transferred to the Disputed Ownership Fund as provided in Section 7.10 of the Plan) to the Liquidation Trust Beneficiaries in exchange for their claims in the Chapter 11 Cases. Any income or loss from the transfer of assets to the Liquidation Trust shall flow through to the ultimate taxpaying member of the Remaining Debtor, which will be responsible to pay the tax liability, if any. For federal income tax purposes, the Liquidation Trust Beneficiaries shall be treated as the grantors of the Liquidation Trust and deemed to be the owners of the assets of the Liquidation Trust. The transfer of the Liquidation Trust Assets to the Liquidation Trust shall be deemed a transfer to the Liquidation Trust Beneficiaries by the Debtors, followed by a deemed transfer by such Liquidation Trust Beneficiaries to the Liquidation Trust. The Debtors, the Liquidation Trust Beneficiaries, and the Liquidation Trust will consistently report the valuation of the assets transferred to the Liquidation Trust. Such consistent valuations and revised reporting will be used for all federal income tax purposes. Income deductions, gain, or loss from the Liquidation Trust shall be reported to the beneficiaries of the Liquidation Trust in conjunction with the filing of the Liquidation Trust's income tax returns. Each Liquidation Trust Beneficiary shall report income, deductions, gain, or loss on such Liquidation Trust Beneficiary's income tax returns. The Liquidation Trust shall be governed by the Liquidation Trust Agreement and administered by the Liquidation Trustee. The powers, rights, and responsibilities of the Liquidation Trustee shall be specified in the Liquidation Trust Agreement. After an objection to a Disputed Claim is resolved or a Contingent Claim or Unliquidated Claim has been determined in whole or in part by a Final Order or by agreement, the Liquidation Trust Interests and/or Cash held in the Disputed Ownership Fund shall be transferred as described in Section 7.10 of the Plan.

   (c) **Vesting of Liquidation Trust Assets.** On the Effective Date, the Liquidation Trust will be automatically vested with all of the Debtors' and the Estates' respective rights, title, and interest in and to all Liquidation Trust Assets; *provided* that, to the extent that the Debtors cannot or are prohibited from transferring any asset or assets to the Liquidation Trust, the Liquidation Trust shall have a perfected, first priority claim on each such asset or its proceeds, as permitted under applicable law. Except with respect to liens granted in connection with the Exit Financing or as otherwise provided in the Plan or the Confirmation Order, the Liquidation Trust Assets shall automatically vest in the Liquidation Trust free and clear of all Claims, Liens, or interests subject only to the Liquidation Trust Interests and the Liquidation Trust Expenses, as provided for in the Liquidation Trust Agreement, and such vesting shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax. The Liquidation Trustee shall be the exclusive trustee of the Liquidation Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to Bankruptcy Code section 1123(b)(3) regarding all Liquidation Trust Assets. The Liquidation Trust shall hold and distribute the Liquidation Trust Assets in accordance with the provisions of the Plan and the Liquidation Trust Agreement.

(d)    **Purpose of the Liquidation Trust.** The Liquidation Trust shall be established for the purpose of pursuing or liquidating the Liquidation Trust Assets and making Distributions to the Liquidation Trust Beneficiaries in accordance with Treasury Regulation section 301.7701- 4(d), with no objective to continue or engage in the conduct of a trade or business.

(e)    **Authority.** Subject to the supervision of the Liquidation Trust Supervisory Board, the Liquidation Trustee shall have the authority and right on behalf of the Debtors and the Estates and without the need for Bankruptcy Court approval (in each case, unless otherwise provided in the Plan) to carry out and implement all applicable provisions of the Plan, including to:

(i)    review, reconcile, compromise, settle, or object to Claims and resolve such objections as set forth in the Plan, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules;

(ii)    calculate and make Distributions under the Plan and calculate and establish reserves under and in accordance with the Plan;

(iii)    pay, negotiate, restructure, and discharge obligations relating to the Exit Financing;

(iv)    retain, compensate, and employ professionals and other Persons to represent the Liquidation Trustee with respect to and in connection with its rights and responsibilities;

(v)    establish, maintain, and administer documents and accounts (including the Creditors' Fund) as appropriate, which shall be segregated to the extent appropriate in accordance with the Plan;

(vi)    maintain, conserve, collect, settle, and protect the Liquidation Trust Assets (subject to the limitations described herein);

(vii)    sell, liquidate, transfer, assign, distribute, abandon, or otherwise dispose of the Liquidation Trust Assets or any part thereof or interest therein upon such terms as the Liquidation Trustee determines to be necessary, appropriate, or desirable;

(viii)   negotiate, incur, and pay the Liquidation Trust Expenses;

(ix)    prepare and file any and all informational returns, reports, statements, returns, and other documents or disclosures relating to the Debtors that are required under the Plan, by any governmental unit, or by applicable law;

(x)    compile and maintain the official claims register, including for purposes of making initial and subsequent Distributions under the Plan;

(xi)    take such actions as are necessary or appropriate to wind down the Remaining Debtor;

(xii)    comply with the Plan, exercise the Liquidation Trustee's rights, and perform the Liquidation Trustee's obligations; and

(xiii)    exercise such other powers as deemed by the Liquidation Trustee to be necessary and proper to implement the Plan.

To the extent necessary to give full effect to its administrative rights and duties under the Plan, the Liquidation Trustee shall be deemed to be vested with all rights, powers, privileges, and authorities of (i) an appropriate corporate or limited liability company officer or manager of each of the Debtors under any applicable nonbankruptcy law and (ii) a "trustee" of each of the Debtors under Bankruptcy Code sections 704 and 1106. The Liquidation Trust Supervisory Board will have all rights and powers of a corporate board appointed under Delaware law.

(f)    **Limitation of Liability.** The Liquidation Trustee shall enjoy all of the rights, powers, immunities, and privileges applicable to a Bankruptcy Code chapter 7 trustee with respect to limitations of liability. The Liquidation Trustee may, in connection with the performance of its functions, in its sole and absolute discretion, consult with its attorneys, accountants, advisors, and agents, and shall not be liable for any act taken, or omitted to be taken, or suggested to be done in accordance with advice or opinions rendered by such Persons, regardless of whether such advice or opinions were in writing. Notwithstanding such authority, the Liquidation Trustee shall be under no obligation to consult with any such attorneys, accountants, advisors, or agents, and its determination not to do so shall not result in the imposition of liability on the Liquidation Trustee unless such determination is based on willful misconduct or gross negligence. Persons dealing with the Liquidation Trustee shall look only to the Liquidation Trust Assets to satisfy any liability incurred by the Liquidation Trustee to such Person in carrying out the terms of the Plan or the Liquidation Trust Agreement, and the Liquidation Trustee shall have no personal obligation to satisfy such liability.

(g)    **Indemnification.** The Liquidation Trust shall indemnify the Liquidation Trust Indemnified Parties for, and shall defend and hold them harmless against, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including the reasonable fees and expenses of their respective professionals) incurred without gross negligence or willful misconduct on the part of the Liquidation Trust Indemnified Parties (which gross negligence or willful misconduct, if any, must be determined by a final, non-appealable order of a court of competent jurisdiction) for any action taken, suffered, or omitted to be taken by the Liquidation Trust Indemnified Parties in connection with the acceptance, administration, exercise, and performance of their duties under the Plan or the Liquidation Trust Agreement, as applicable. An act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence or willful misconduct. In addition, the Liquidation Trust shall, to the fullest extent permitted by law, indemnify, defend, and hold harmless the Liquidation Trust Indemnified Parties, from and against and with respect to any and all liabilities, losses, damages, claims, costs, and expenses, including attorneys' fees arising out of or due to their actions or omissions, or consequences of

such actions or omissions, with respect to the Liquidation Trust, the Remaining Debtor, or the implementation or administration of the Plan if the Liquidation Trust Indemnified Party acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the Liquidation Trust or the Remaining Debtor. To the extent the Liquidation Trust indemnifies, defends, and holds harmless any Liquidation Trust Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Liquidation Trustee in monitoring or participating in the defense of such claims giving rise to the right of indemnification shall be paid as Liquidation Trust Expenses. The costs and expenses incurred in enforcing the right of indemnification in this Section 5.03(g) shall be paid by the Liquidation Trust.

(h)    **Insurance.** The Liquidation Trustee shall be authorized, but not required, to obtain any insurance coverages deemed to be reasonably necessary, at the Liquidation Trust's sole expense, for itself and its respective agents, including coverage with respect to the liabilities, duties, and obligations of the Liquidation Trustee, which insurance coverage may, at the sole discretion of the Liquidation Trustee, be extended for a reasonable period after the termination of the Liquidation Trust.

(i)    **Tax Reporting**.

(i)    The Liquidation Trust shall timely file tax returns for the Liquidation Trust treating the Liquidation Trust as a grantor trust pursuant to Treasury Regulation section 1.671- 4(a).

(ii)    The Liquidation Trust shall be responsible for timely payment of all taxes (if any) imposed on and payable by the Liquidation Trust, the Remaining Debtor, or any Liquidation Trust Assets.

(iii)    The Liquidation Trust shall distribute such tax-related notices, beneficiary statements, and information returns, as applicable, to the applicable Holders of Allowed Claims as are required by applicable law or that the Liquidation Trustee determines are otherwise necessary or desirable.

(iv)    The Liquidation Trust is authorized to file a request for expedited determination under Bankruptcy Code section 505(b) for any tax returns filed with respect to the Debtors.

(j)    **Distributions from the Liquidation Trust**.

(i)    The Liquidation Trust may make Distributions from the Administrative Claims Reserve to Holders of Allowed Administrative Claims and from Available Cash to Holders of Priority Tax Claims, Priority Claims, and to the Liquidation Trust Beneficiaries at any time following the Effective Date, provided that such Distributions are otherwise permitted under, and not inconsistent with, the other terms of the Plan, the Liquidation Trust Agreement, and applicable law.

(ii)     The Liquidation Trust shall, prior to making any Distributions to Liquidation Trust Beneficiaries, pay Available Cash to the Exit Financing Administrative Agent to satisfy all obligations under the Exit Financing in accordance with the terms of the Exit Financing until such obligations are indefeasibly paid in full in cash.

(iii)     No later than (i) the first Business Day that is at least 180 calendar days after the Effective Date and (ii) the last Business Day of each subsequent 180-calendar-day period after the Effective Date until the Closing Date, the Liquidation Trustee shall calculate the Distributions that could potentially be made to the Liquidation Trust Beneficiaries based on the amount of then-Available Cash and, based on such calculation, promptly thereafter may make Distributions, if any, of the amount so determined.

(iv)     On each Distribution Date, the Liquidation Trust shall distribute its Available Cash to Liquidation Trust Beneficiaries (the "Liquidation Trust Interests Waterfall") as follows:

(A)     The Liquidation Trust shall distribute Available Cash to each Holder of Class A Liquidation Trust Interests Pro Rata based on such Holder's number of Class A Liquidation Trust Interests until the aggregate amount of all Distributions made indefeasibly pays the Roll-Up Loans converted to Class A Liquidation Trust Interests in full in cash;

(B)     The Liquidation Trust shall Distribute Available Cash to each Holder of Class B Liquidation Trust Interests Pro Rata based on such Holder's number of Class B Liquidation Trust Interests until the aggregate amount of all Distributions made indefeasibly pays the Prepetition Obligations in full in cash; and

(C)     On the Asset Sale Realization Date (as defined below), the Liquidation Trust shall Distribute to each Holder of Class C Liquidation Trust Interests Pro Rata 20% of excess cash received from any Asset Sales consummated by the Debtors and the Liquidation Trust after $55 million (before Liquidation Trust Expenses) in Asset Sales (the "Asset Sale Realization") are consummated (the "Asset Sale Realization Date"), on a Pro Rata basis with Class A Beneficial Interests and Class B Beneficial Interests. For the avoidance of doubt, no Liquidation Trust Expenses shall be netted from the sale price to calculate the $55 million Asset Sale Realization threshold.  The books and records of the Liquidating Trust shall be available for inspection by any Holder of Class C Liquidation Trust Interests upon reasonable notice for the purposes of ascertaining whether an Asset Sale Realization has occurred.

(k)     **Other Plan Distributions**.

(i)     The Liquidation Trustee shall make Distributions from the Creditors' Fund to Holders of Allowed General Unsecured Claims as required by the Plan., provided that such Distributions are otherwise permitted under, and not inconsistent with, the other terms of the Plan and applicable law.

(ii)     No later than (i) the first Business Day that is at least 180 calendar days after the Effective Date and (ii) the last Business Day of each subsequent 180-calendar-day period after the Effective Date until the Closing Date, the Liquidation Trustee shall calculate the Distributions that could potentially be made to Holders of Allowed General Unsecured Claims based on the amount remaining in the Creditors' Fund and, based on such calculation, promptly thereafter may make Distributions, if any, of the amount so determined.

(l)     **Cash Investments.** The Liquidation Trustee may invest Cash of the Liquidation Trust, including any earnings thereon or proceeds therefrom, any Cash realized from the liquidation of the Liquidation Trust Assets, or any Cash that is otherwise remitted to the Liquidation Trust, which investments, for the avoidance of doubt, will not be required to comply with Bankruptcy Code section 345(b); *provided, however*, that such investments must be investments that are permitted to be made by a "liquidating trust" within the meaning of Treasury Regulation section 301.7701-4(d), as reflected therein, or under applicable guidelines, rulings, or other controlling authorities.

(m)     **Registration and Transfer of the Liquidation Trust Interests**.

(i)     The record holders of the Liquidation Trust Interests shall be recorded and set forth in a registry maintained by, or at the direction of, the Liquidation Trustee expressly for such purpose. Such obligation may be satisfied by the Liquidation Trust's retention of an institutional transfer agent for the maintenance of such registry.

(ii)     Upon their issuance as of the Effective Date, the Liquidation Trust Interests will be subject to restrictions on transfer under the Liquidation Trust Agreement, which restrictions shall prohibit the Liquidation Trust Interests from being certificated or transferable except by operation of law or by will or the laws of descent and distribution, in each case following written notice to the Liquidation Trust, or as otherwise provided therein.

(n)     **Exemption.** To the extent the Liquidation Trust Interests are deemed to be "securities," the issuance of such interests under the Plan are exempt, pursuant to Bankruptcy Code section 1145, from registration under the Securities Act and any applicable state and local laws requiring registration of securities.

(o)     **Pursuit and Resolution of Liquidation Trust Actions.** The Liquidation Trust, as a successor in interest to the Debtors and the Estates, may, and will have the exclusive right, power, and interest on behalf of itself, the Debtors and the Estates to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw any and all Liquidation Trust Actions without any further order of the Bankruptcy Court, except as otherwise provided in the Liquidation Trust Agreement. From and after the Effective Date, the Liquidation Trust, in accordance with Bankruptcy Code section 1123(b)(3), shall serve as a representative of the Estates with respect to any and all Liquidation Trust Actions that were Estate Assets and shall retain and possess the right to institute, commence, file, pursue,

prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all Liquidation Trust Actions in any court or other tribunal.

(p)    **Termination of the Liquidation Trust.** The Liquidation Trustee and the Liquidation Trust shall be discharged or terminated, as the case may be, at such time as: (a) the Liquidation Trustee determines that the pursuit of additional Liquidation Trust Actions is not likely to yield sufficient additional proceeds to justify further pursuit of such Liquidation Trust Actions; and (b) all Distributions required to be made by the Liquidation Trust to the Holders of Allowed Claims and to the Liquidation Trust Beneficiaries under the Plan and the Liquidation Trust Agreement have been made, but in no event shall the Liquidation Trust be terminated later than five (5) years from the Effective Date unless the Bankruptcy Court, upon motion made at least six (6) months before such fifth anniversary (and, in the event of further extension, by order of the Bankruptcy Court, upon motion made at least six (6) months before the end of the preceding extension), determines that a fixed period extension (not to exceed three (3) years, together with any prior extensions, unless the Liquidation Trust receives a favorable letter ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidation Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery on, and liquidation of, the Liquidation Trust Assets. Upon termination of the Liquidation Trust, any remaining Liquidation Trust Assets that exceed the amounts required to be paid under the Plan may be transferred by the Liquidation Trustee to the American Bankruptcy Institute Endowment Fund.

(q)    **Control Provision.** To the extent there is any inconsistency between the Plan, as it relates to the Liquidation Trust, and the Liquidation Trust Agreement, the Plan shall control.

**SECTION 5.04    Preservation of Privileges and Defenses.** The actions taken by the Debtors, the Liquidation Trust, or any of their respective Related Parties in connection with the Plan shall not be (or be deemed to be) a waiver of any privilege or defense of the Debtors, or the Liquidation Trust, as applicable, including any attorney-client privilege or work-product doctrine. Notwithstanding any Debtors providing any privileged information related to any Liquidation Trust Actions to the Liquidation Trustee, the Liquidation Trust, or any Person associated with any of the foregoing, such privileged information shall be without waiver in recognition of the joint, common, or successor interest in prosecuting the Liquidation Trust Actions and shall remain privileged. The Liquidation Trust each shall retain the right to waive its own privileges. Only the Liquidation Trustee shall have the right to waive the attorney-client privilege, work-product doctrine, or other protections as to the Debtors, the Remaining Debtor, and the Liquidation Trust.

**SECTION 5.05    Preservation of Rights of Action.**

(a)    **Maintenance of Avoidance Actions and Causes of Action.** Except as otherwise provided in the Plan or the Confirmation Order, from and after the Effective Date, the Liquidation Trust will retain all rights to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all of the Debtors' or Estates' Causes of Action (whether existing as of the Petition Date or thereafter

arising), and all Avoidance Actions, all as Liquidation Trust Actions, in each case in any court or other tribunal, including in an adversary proceeding Filed in the Chapter 11 Cases. The Liquidation Trust, as a successor in interest to the Debtors and the Estates, may, and will have the exclusive right, power, and interest on behalf of itself, the Debtors and the Estates, to enforce, sue on, settle, compromise, transfer, or assign (or decline to do any of the foregoing) any or all of the Liquidation Trust Actions without notice to or approval from the Bankruptcy Court. In accordance with the Plan, and pursuant to Bankruptcy Code section 363 and Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, from and after the Effective Date, the Liquidation Trust may compromise and settle Liquidation Trust Actions.

(b)    **Preservation of All Liquidation Trust Actions Not Expressly Settled or Released.** The failure to specifically identify in the Disclosure Statement or the Plan any potential or existing Avoidance Actions or Causes of Action as a Liquidation Trust Action is not intended to and shall not limit the rights of the Liquidation Trust to pursue (i) any such Avoidance Actions or Causes of Action or (ii) a Preserved Claim. Unless a Liquidation Trust Action is expressly waived, relinquished, released, compromised, or settled in the Plan or any Final Order (including the Confirmation Order), which the Debtors expressly reserve such Liquidation Trust Action for later resolution by the Liquidation Trust (including any Avoidance Actions or Causes of Action not specifically identified or of which the Debtors may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist). As such, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches will apply to any such Avoidance Actions or Causes of Action upon or after Confirmation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except when such Avoidance Actions or Causes of Action have been expressly released. In addition, the right to pursue or adopt any claims alleged in any lawsuit in which any Debtor or the Liquidation Trust is a plaintiff, defendant, or an interested party is fully reserved as against any Person that is not a Released Party, including the plaintiffs or co-defendants in such lawsuits. For the avoidance of doubt, notwithstanding any release or exculpation provision contained herein, the Liquidation Trust may assert Causes of Action against Released Parties if such Causes of Action are Preserved Claims.

(c)    **Cancellation of Instruments.** Except with respect to any executory contracts and unexpired leases that are assumed and assigned to the Liquidation Trust under the Plan or otherwise assumed and assigned pursuant to a Final Order, any agreement, bond, certificate, contract, indenture, lease, note, security, warrant, or other instrument or document evidencing or creating any indebtedness or obligation of the Debtors shall be deemed cancelled on the Effective Date, and all Liens, mortgages, pledges, grants, trusts, and other interests relating thereto shall be automatically cancelled, and all obligations of the Debtors thereunder or in any way related thereto shall be discharged.

### SECTION 5.06    Deemed Consolidation.

(a)    Entry of the Confirmation Order shall constitute the approval, pursuant to

Bankruptcy Code sections 105(a), 541, 1123, and 1129, of the deemed consolidation of the Debtors. Notwithstanding such deemed consolidation, however, fees payable pursuant to 28 U.S.C. § 1930 shall be due and payable by each individual Debtor through the Effective Date.

(b)      In connection with the Deemed consolidation of the Debtors, all assets of the Debtors shall be consolidated in and shall be held by the Liquidation Trust.

(c)      The deemed consolidation effected pursuant to the Plan shall not affect, without limitation, (i) the Debtors' or the Liquidation Trust's defenses to any Claim or Cause of Action, including the ability to assert any counterclaim; (ii) the Debtors' or the Liquidation Trust's setoff or recoupment rights; (iii) requirements for any third party to establish mutuality with respect to a particular Debtor prior to deemed consolidation in order to assert a right of setoff against the Debtors or the Liquidation Trust; or (iv) distributions to the Debtors, the Estates, or the Liquidation Trust out of any insurance policies or proceeds of such policies.

(d)      The Disclosure Statement and the Plan shall be deemed to be a motion requesting that the Bankruptcy Court approve the deemed consolidation contemplated by the Plan. Unless an objection to the proposed deemed consolidation is made in writing by any Creditor purportedly affected by such deemed consolidation on or before the deadline to object to confirmation of the Plan, or such other date as may be fixed by the Bankruptcy Court, the deemed consolidation contemplated by the Plan may be approved by the Bankruptcy Court at the Confirmation Hearing. In the event any such objections are timely filed, a hearing with respect thereto shall be scheduled by the Bankruptcy Court, which hearing may, but need not, be the Confirmation Hearing.

(e)      If the Bankruptcy Court determines that deemed consolidation of any given Debtors is not appropriate, then the Debtors may request that the Bankruptcy Court otherwise confirm the Plan and approve the treatment of and Distributions to the different Classes under the Plan on an adjusted, Debtor-by-Debtor basis. Furthermore, the Debtors reserve their rights (i) to seek confirmation of the Plan without implementing deemed consolidation of any given Debtor, and, in the Debtors' reasonable discretion, to request that the Bankruptcy Court approve the treatment of and Distributions to any given Class under the Plan on an adjusted, Debtor-by-Debtor basis; and (ii) to seek to consolidate all Debtors into Ravn Air Group, Inc. if all Impaired Classes entitled to vote on the Plan vote to accept the Plan.

**SECTION 5.07    Asset Sale at Confirmation.** To the extent that the Debtors conclude that an Asset Sale at Confirmation will yield a higher or better return to the Estates than a sale by the Liquidation Trust, they may seek approval of an Asset Sale at Confirmation; *provided* that no Asset Sale shall be considered at the Confirmation Hearing or at Confirmation without adequate notice prior to the Confirmation Hearing and absent the consent of the DIP Lenders. Proceeds of an Asset Sale, if any, shall constitute Available Cash and shall be administered as set forth herein.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**SECTION 6.01    Assumption of Certain Executory Contracts and Unexpired Leases**.

       (a)      **Assumption of Agreements**.

On the Effective Date, the Debtors shall assume all executory contracts and unexpired leases that are listed on the Schedule of Assumed Agreements and shall assign such contracts and leases to the Liquidation Trust.

The Debtors reserve the right to amend the Schedule of Assumed Agreements at any time prior to the Effective Date, in the Debtors' reasonable discretion (i) to delete any executory contract or unexpired lease and provide for its rejection under the Plan or otherwise, or (ii) to add any executory contract or unexpired lease and provide for its assumption and assignment under the Plan. The Debtors will provide notice of any amendment to the Schedule of Assumed Agreements to the party or parties to those agreements affected by the amendment.

Unless otherwise specified on the Schedule of Assumed Agreements, each executory contract and unexpired lease listed or to be listed therein shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument, or other document is also listed on the Schedule of Assumed Agreements.

The Confirmation Order will constitute a Bankruptcy Court order approving the assumption and assignment, on the Effective Date, of all executory contracts and unexpired leases identified on the Schedule of Assumed Agreements.

       (b)      **Cure Payments**.

Any amount that must be paid under Bankruptcy Code section 365(b)(1) to cure a default under and compensate the non-debtor party to an executory contract or unexpired lease to be assumed under the Plan is identified as the "Cure Payment" on the Schedule of Assumed Agreements. Unless the parties mutually agree to a different date, such payment shall be made in Cash within ten (10) Business Days following the later of: (i) the Effective Date and (ii) entry of a Final Order resolving any disputes regarding (A) the amount of any Cure Payment, (B) the ability of the Liquidation Trust to provide "adequate assurance of future performance" within the meaning of Bankruptcy Code section 365 with respect to a contract or lease to be assumed, to the extent required, or (C) any other matter pertaining to assumption and assignment.

Pending the Bankruptcy Court's ruling on any such dispute, if the Effective Date shall have passed, the Liquidation Trust shall have standing to seek to compel assumption of the executory contract or unexpired lease at issue, as successor in interest to the Debtors.

       (c)      **Objections to Assumption/Cure Payment Amounts**.

Any Person that is a party to an executory contract or unexpired lease that will be

assumed and assigned under the Plan and that objects to such assumption or assignment (including the proposed Cure Payment) must File with the Bankruptcy Court and serve on parties entitled to notice a written statement and, if applicable, a supporting declaration stating the basis for its objection. This statement and, if applicable, declaration must be Filed and served on or before the deadline established by the Disclosure Statement Order. Any Person that fails to timely File and serve such a statement and, if applicable, a declaration shall be deemed to waive any and all objections to the proposed assumption and assignment (including the proposed Cure Payment) of its contract or lease.

In the absence of a timely objection by a Person that is a party to an executory contract or unexpired lease, the Confirmation Order shall constitute a conclusive determination regarding the amount of any cure and compensation due under the applicable executory contract or unexpired lease, as well as a conclusive finding that the Liquidation Trust has demonstrated adequate assurance of future performance with respect to such executory contract or unexpired lease, to the extent required.

(d)    **Resolution of Claims Relating to Assumed Contracts and Leases.** Payment of the Cure Payment established under the Plan, by the Confirmation Order, or by any other order of the Bankruptcy Court, with respect to an assumed and assigned executory contract or unexpired lease, shall be deemed to satisfy, in full, any prepetition or postpetition arrearage or other Claim (including any Claim asserted in a Filed proof of claim or listed on the Schedules) with respect to such contract or lease (irrespective of whether the Cure Payment is less than the amount set forth in such proof of claim or the Schedules). Upon the tendering of the Cure Payment, any such Filed or Scheduled Claim shall be disallowed with prejudice, without further order of the Bankruptcy Court or action by any Person.

**SECTION 6.02    Rejection of Executory Contracts and Unexpired Leases.**

(a)    **Rejected Agreements.** On the Effective Date all executory contracts and unexpired leases of the Debtors shall be rejected except for (i) executory contracts and unexpired leases that have been previously assumed or rejected by the Debtors, (ii) executory contracts and unexpired leases that are set forth in the Schedule of Assumed Agreements, and (iii) any agreement, obligation, security interest, transaction, or similar undertaking that the Debtors believe is not executory or a lease, but that is later determined by the Bankruptcy Court to be an executory contract or unexpired lease that is subject to assumption or rejection under Bankruptcy Code section 365. The Confirmation Order will constitute a Bankruptcy Court order approving the rejection, on the Effective Date, of the executory contracts and unexpired leases to be rejected under the Plan.

(b)    **Rejection Claims Bar Date.** Any Rejection Claim or other Claim for damages arising from the rejection under the Plan of an executory contract or unexpired lease must be Filed and served no later than the Rejection Claims Bar Date. Any such Rejection Claims that are not timely Filed and served will be forever disallowed, barred, and unenforceable, and Persons holding such Claims will not receive and will be barred from receiving any Distributions on account of such untimely Claims. If one or more Rejection Claims are timely Filed, the Liquidation Trust may object to any Rejection Claim on or prior to the

Claim Objection Deadline. For the avoidance of doubt, the Rejection Claims Bar Date established by the Plan does not alter any rejection claims bar date established by a prior order of the Bankruptcy Court with respect to any executory contract or unexpired leases that was previously rejected in these Chapter 11 Cases.

## PROVISIONS GOVERNING DISTRIBUTIONS
ARTICLE VII

**SECTION 7.01    Timing of Distributions for Allowed Claims.** Except as otherwise provided herein or as ordered by the Bankruptcy Court, all Distributions to Holders of Allowed Claims as of the applicable Distribution Date shall be made on or as soon as practicable after the applicable Distribution Date; *provided, however*, that the Liquidation Trustee, in its discretion, may defer Distributions to a given Holder of Liquidation Trust Interests (other than the final Distribution) if the amount available for Distribution to such Holder is not at least $20.00. Distributions on account of Claims that first become Allowed Claims after the applicable Distribution Date shall be made pursuant to Section 8.04 of the Plan and on the day selected by the Liquidation Trustee. Distributions made as soon as reasonably practicable after the Effective Date or such other date set forth herein shall be deemed to have been made on such date.

**SECTION 7.02    Calculating Distributions and Related Matters.** The Liquidation Trust shall undertake in its reasonable discretion to make in accordance with the Plan all calculations of Available Cash, and of other amounts for or relating to Distributions for Holders of Allowed Claims to be made from the Liquidation Trust or for reserves for Holders of Contingent Claims, Disputed Claims, and Unliquidated Claims to be established by the Liquidation Trust, and may establish and hold back from Distributions reasonable reserves for other contingencies.

**SECTION 7.03    Interest and Other Amounts Regarding Claims.** Except to the extent provided (i) in Bankruptcy Code section 506(b) and Allowed by a Final Order or otherwise agreed, (ii) in the Plan, or (iii) in the Confirmation Order, postpetition interest shall not accrue or be paid on any Claims, and no Holder of an Allowed Claim shall be entitled to interest, penalties, fees, or late charges accruing or chargeable on any Claim from and after the Petition Date.

**SECTION 7.04    Distributions by Liquidation Trustee as Disbursing Agent.** The Liquidation Trustee shall serve as the disbursing agent under the Plan with respect to Distributions required pursuant to the Plan and Distributions to be paid by the Liquidation Trust. The Liquidation Trustee shall not be required to give any bond or surety or other security for the performance of any duties as disbursing agent.

**SECTION 7.05    Means of Cash Payment.** Cash payments under the Plan shall be made, at the option and in the sole discretion of the Liquidation Trustee, by (i) checks drawn on or (ii) wire transfer, electronic funds transfer, or ACH from a domestic bank. Cash payments to foreign Creditors may be made, at the option and in the sole discretion of the Liquidation Trustee by such means as are necessary or customary in a particular foreign jurisdiction. Cash payments made pursuant to the Plan in the form of checks shall be null and void if not cashed within 180

calendar days of the date of the issuance thereof. Requests for reissuance of any check within 180 calendar days of the date of the issuance thereof shall be made directly to the Liquidation Trustee.

**SECTION 7.06   Form of Currency for Distributions.** All Distributions under the Plan shall be made in U.S. Dollars. Where a Claim has been denominated in foreign currency on a proof of claim, the Allowed amount of such Claim shall be calculated in U.S. Dollars based upon the currency conversion rate in place as of the Petition Date and in accordance with Bankruptcy Code section 502(b).

**SECTION 7.07   Fractional Distributions.**

(a)   **Liquidation Trust Interests.** Liquidation Trust Interests shall be Distributed only in integral units and shall not be Distributed in fractional units. Where a Holder of an Allowed Claim is entitled to Liquidation Trust Interests, the actual number of interests Distributed shall reflect a rounding of such fraction to the nearest whole number of units (up or down), with half units or more being rounded up and fractions less than half of a unit being rounded down.

(b)   **Cash and Exit Financing.** Notwithstanding anything in the Plan to the contrary, no payment of fractional cents shall be made pursuant to the Plan. Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made, whether in Cash or obligations in respect of the Exit Financing, shall reflect a rounding of such fraction to the nearest whole penny (up or down), with half cents or more being rounded up and fractions less than half of a cent being rounded down.

**SECTION 7.08   De Minimis Distributions.** Notwithstanding anything in the Plan to the contrary, the Liquidation Trust shall not be required to distribute, and shall not distribute, Cash or other property to the Holder of any Allowed Claim if the amount of Cash or other property to be distributed on account of such Claim on any given Distribution Date is less than $20.00, and such amount shall be distributed to other Creditors on such Distribution Date in accordance with the terms of the Plan. Any Holder of an Allowed Claim on account of which the amount of Cash or other property to be distributed on any given Distribution Date is less than $20.00 shall be forever barred from asserting any Claim with respect to such eliminated Distribution against any Estate Assets.

**SECTION 7.09   No Distributions with Respect to Certain Claims.** Notwithstanding anything in the Plan to the contrary, no Distributions or other consideration of any kind shall be made on account of any Contingent Claim, Disputed Claim, or Unliquidated Claim unless and until such Claim becomes an Allowed Claim, and then only to the extent that such Claim becomes an Allowed Claim and as provided under the Plan for such Allowed Claim. Nonetheless, in undertaking the calculations concerning Allowed Claims under the Plan, including the determination of Distributions due to the Holders of Allowed Claims, each Contingent Claim, Disputed Claim, or Unliquidated Claim shall be treated as if it were an Allowed Claim (which, for Unliquidated Claims, shall mean they shall be treated as if Allowed in such amounts as determined in the reasonable discretion of the Liquidation Trust), except that

if the Bankruptcy Court estimates the likely portion of such a Claim to be Allowed or authorized or the Bankruptcy Court or the Holder of such Claim and the Liquidation Trustee otherwise determine the amount or number that would constitute a sufficient reserve for such a Claim, such amount or number as determined by the Bankruptcy Court or by agreement of the Holder of such Claim and the Liquidation Trustee shall be used with respect to such Claim. Distributions due in respect of a Contingent Claim, Disputed Claim, or Unliquidated Claim shall be held in reserve by the Liquidation Trust in one or more Distribution Reserves. The Liquidation Trust will elect to treat any Distribution Reserve as a "Disputed Ownership Fund," pursuant to Treasury Regulation section 1.468B-9(c)(2)(ii). As outlined in this election, Creditors holding such Claims are not treated as transferors of the money or property transferred to the "Disputed Ownership Fund." For federal income tax purposes, a "Disputed Ownership Fund" is treated as the owner of all assets that it holds. A "Disputed Ownership Fund" is treated as a C corporation for purposes of the Internal Revenue Code. A "Disputed Ownership Fund" must file all required income and information tax returns and make all tax payments.

**SECTION 7.10** **Distributions and Transfers Upon Resolution of Contingent Claims, Disputed Claims, or Unliquidated Claims.** After an objection to a Disputed Claim is resolved or a Contingent Claim or Unliquidated Claim has been determined in whole or in part by a Final Order or by agreement, an amount of Liquidation Trust Interests and/or Cash held in the Disputed Ownership Fund corresponding to the amount of any resulting Allowed Claim shall be transferred, net of any tax payable by the Disputed Ownership Fund with respect to the transfer, in a taxable transaction to the Holder of the formerly Contingent Claim, Disputed Claim, or Unliquidated Claim. Upon each such resolution of a Claim against the Disputed Ownership Fund and such transfer with respect to any resulting Allowed Claim, (i) any remaining Liquidation Trust Interests in the Disputed Ownership Fund that had been held with respect to such formerly Contingent Claim, Disputed Claim, or Unliquidated Claim prior to its resolution shall be cancelled; and (ii) any remaining Cash in the Disputed Ownership Fund that had been held with respect to such formerly Contingent Claim, Disputed Claim, or Unliquidated Claim prior to its resolution shall be transferred, net of any tax payable by the Disputed Ownership Fund with respect to such transfers, for use as follows, provided that such Cash transfers shall be treated as a taxable transfer by the Disputed Ownership Fund and to the recipients of such Cash. Such remaining Cash may be utilized for payment, allocation, or reserve in accordance with the Plan for (a) unpaid or unutilized amounts for Liquidation Trust Funding or (b) any post-Confirmation reserve requirements of the Liquidation Trust in connection with the Plan, any agreements, or any Bankruptcy Court orders. To the extent any such remaining Cash is not so utilized, it shall become Available Cash for distribution to the Holders of Liquidation Trust Interests (including each Holder of Liquidation Trust Interests to the extent it obtains an Allowed Claim as a result of resolution of a formerly Contingent Claim, Disputed Claim, or Unliquidated Claim) in a manner reasonably allocated by the Liquidation Trust so that all Holders of Liquidation Trust Interests will receive Cash in proportion to their Liquidation Trust Interests, net of any tax payable by the Disputed Ownership Fund with respect to the respective transfers.

**SECTION 7.11** **Delivery of Distributions.** Distributions in respect of Liquidation Trust Interests shall be made to Holders of Liquidation Trust Interests as of the record date set for such Distribution. Distributions to Holders of Liquidation Trust Interests or Allowed Claims

that have not been converted to Liquidation Trust Interests shall be made (a) at the addresses set forth in the proofs of claim Filed by such Holders, (b) at the addresses reflected in the Schedules if no proof of claim has been Filed, or (c) at the addresses set forth in any written notices of address changes delivered to the Claims Agent or the Liquidation Trustee. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until the Liquidation Trustee is notified of such Holder's then-current address. The responsibility to provide the Claims Agent or the Liquidation Trustee with a current address of a Holder of Liquidation Trust Interests or Claims shall always be the responsibility of such Holder. Amounts in respect of undeliverable Distributions made by the Liquidation Trustee shall be held in trust on behalf of the Holder of the Liquidation Trust Interest or Claim to which they are payable by the Liquidation Trustee until the earlier of the date that such undeliverable Distributions are claimed by such Holder and 180 calendar days after the date the undeliverable Distributions were made.

**SECTION 7.12** **Application of Distribution Record Date and Other Transfer Restrictions.** At the close of business on the Distribution Record Date, the claims register for all Claims shall be closed, and there shall be no further changes in the record holders of any Claims. Except as provided herein, the Liquidation Trust and each of its Related Parties shall have no obligation to recognize any putative transfer of Claims occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the claims registers as of the close of business on the Distribution Record Date irrespective of the number of Distributions to be made under the Plan to such Persons or the date of such Distributions. Nothing in this Section 7.12 is intended to or will impair or limit (i) the transferability of any Liquidation Trust Interests once such Liquidation Trust Interests have been Distributed to the record Holders of Allowed DIP Claims and Allowed Prepetition Secured Creditor Claims, or (ii) the right of Holders at the record dates established from time to time regarding Liquidation Trust Interests to receive all Distributions in respect of such Liquidation Trust Interests when any Distributions are made.

**SECTION 7.13** **Withholding, Payment, and Reporting Requirements Regarding Distributions.** All Distributions under the Plan shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions shall be subject to any such withholding, payment, and reporting requirements. The Liquidation Trust shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment, and reporting requirements, including, to the extent such information is not already available to the Liquidation Trust, requiring each Holder of a Liquidation Trust Interest or Claim to provide an executed current Form W-9, Form W-8, or similar tax form as a prerequisite to receiving a Distribution. Notwithstanding any other provision of the Plan, (a) each Holder of a Liquidation Trust Interest or an Allowed Claim that is to receive a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution, and including, in the case of any Holder of a Disputed Claim that has become an Allowed Claim, any tax obligation that would be imposed on the Liquidation Trust in connection with such Distribution; and (b) no Distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements

reasonably satisfactory to the Liquidation Trust for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed in connection with such Distribution.

**SECTION 7.14    Defenses and Setoffs.** On and after the Effective Date, the Liquidation Trust shall have all of the Debtors' and the Estates' rights under Bankruptcy Code section 558. Nothing under the Plan shall affect the rights and defenses of the Debtors, the Estates, or the Liquidation Trust in respect of any Claim, including all rights in respect of legal and equitable objections, defenses, setoffs, or recoupment against such Claims. Accordingly, the Liquidation Trust may, but shall not be required to, set off against any Claim or any Allowed Claim, and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtors, the Estates, or the Liquidation Trust, as applicable, may have against the Holder of such Claim; *provided, however*, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claim or rights that may exist against such Holder.

**SECTION 7.15    Allocation of Distributions.** All Distributions received under the Plan by Holders of Liquidation Trust Interests and Claims shall be deemed to be allocated first to the principal amount of such Claim, or the Claim to which the applicable Liquidation Trust Interest relates, as determined for United States federal income tax purposes, and then to accrued interest, if any, with respect to such Claim.

**SECTION 7.16    Joint Distributions.** The Liquidation Trustee may, in its sole discretion, make Distributions jointly to any Holder of a Claim and any other Person that the Liquidation Trustee has determined to have an interest in such Claim.

**SECTION 7.17    Forfeiture of Distributions.** If the Holder of a Claim fails to cash a check payable to it within the time period set forth in Section 7.06, fails to claim an undeliverable Distribution within the time limit set forth in Section 7.12, or fails to complete and return to the Liquidation Trustee the appropriate Form W-8 or Form W-9 within 180 calendar days after a request for the completion and return of the appropriate form pursuant to Section 7.13 (or such later time as approved by a Bankruptcy Court order), then such Holder shall be deemed to have forfeited its right to any reserved and future Distributions under the Plan. Any such forfeited Distributions shall be deemed Available Cash for all purposes, notwithstanding any federal or state escheat laws to the contrary.

**PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS AND DISTRIBUTIONS WITH RESPECT THERETO**

ARTICLE VIII

**SECTION 8.01    Objections to and Resolution of Disputed Claims.** From and after the Effective Date, the Liquidation Trust shall have the exclusive authority to compromise, resolve, and Allow any Disputed Claim without the need to obtain approval from the Bankruptcy Court, and any agreement entered into by the Liquidation Trust with respect to the Allowance of any Claim shall be conclusive evidence and a final determination of the Allowance of such Claim.

**SECTION 8.02    Claim Objections.** All objections to Claims (other than Professional Fee Claims, which shall be governed by Section 11.02 of the Plan) shall be Filed by the Liquidation Trust on or before the Claim Objection Deadline, which date may be extended on presentment of an order to the Bankruptcy Court by the Liquidation Trust prior to the expiration of such period and without need for notice or hearing. The Claim Objection Deadline shall be automatically extended as provided by Local Rule 9006-2 upon the Filing of a proposed form of order by the Liquidation Trust requesting an extension of the Claim Objection Deadline. If a timely objection has not been Filed to a proof of claim or the Schedules have not been amended with respect to a Claim that was Scheduled by the Debtors but was not Scheduled as contingent, unliquidated, or disputed, then the Claim to which the proof of claim or Scheduled Claim relates will be treated as an Allowed Claim.

**SECTION 8.03    Estimation of Certain Claims.** The Liquidation Trust may, at any time, move for a Bankruptcy Court order estimating any Contingent Claim, Disputed Claim, or Unliquidated Claim pursuant to Bankruptcy Code section 502(c), regardless of whether the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction and power to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. The estimated amount of any Claim so determined by the Bankruptcy Court shall constitute the maximum recovery that the Holder thereof may recover after the ultimate liquidation of its Claim, irrespective of the actual amount that is ultimately Allowed. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another.

**SECTION 8.04    Distributions Following Allowance.** Once a Contingent Claim, a Disputed Claim, or an Unliquidated Claim becomes an Allowed Claim, in whole or in part, including pursuant to the Plan, the Liquidation Trust shall distribute from the applicable Distribution Reserves to the Holder thereof the Distributions, if any, to which such Holder is then entitled under the Plan. Such Distributions, if any, shall be made on the next Distribution Date after the date on which the order or judgment allowing any such Claim becomes a Final Order or on which the Claim otherwise becomes an Allowed Claim, or, if there is no applicable Distribution Date, then within ninety (90) calendar days after the date on which the Claim becomes an Allowed Claim. Unless otherwise specifically provided in the Plan or allowed by a Final Order, no interest shall be paid on Contingent Claims, Disputed Claims, or Unliquidated Claims that later become Allowed Claims.

**SECTION 8.05    Disposition of Assets in Reserves After Disallowance.** After an objection to a Disputed Claim is sustained or a Contingent Claim or Unliquidated Claim has been determined in whole or in part by a Final Order or by agreement, such that the Contingent Claim, Disputed Claim, or Unliquidated Claim is a Disallowed Claim in whole or in part, any Cash held in an applicable Distribution Reserve in respect of the particular Claim in excess of the Distributions due on account of any resulting Allowed Claim shall be used or distributed in a manner consistent with the Plan, and any reserved Liquidation Trust Interests shall be cancelled.

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

**SECTION 9.01    Conditions to the Effective Date.** The occurrence of the Effective Date shall not occur and the Plan shall not be consummated unless and until each of the following conditions has been satisfied or duly waived pursuant to Section 9.02 of the Plan:

    (a)    the Bankruptcy Court shall have entered the Confirmation Order;

    (b)    the Confirmation Order shall not be subject to any stay;

    (c)    all governmental and material third-party approvals and consents necessary in connection with the transactions contemplated by the Plan, if any, shall have been obtained and be in full force and effect;

    (d)    all actions and all agreements, instruments, or other documents necessary to implement the terms and provisions of the Plan are effected or executed and delivered, as applicable; and

    (e)    the Professional Fee Reserve and Administrative Claims is funded pursuant to Section 11.02 of the Plan.

**SECTION 9.02    Waiver of Conditions to the Effective Date.** The conditions to the Effective Date set forth in clauses Section 9.01(c) and Section 9.01(d) of the Plan may be waived in writing by the Debtors, in the Debtors' reasonable discretion; *provided that* nothing contained herein shall exempt the Debtors from complying with their legal obligations.

**SECTION 9.03    Effect of Non-Occurrence of Conditions to the Effective Date.** If each of the conditions to the Effective Date is not satisfied or duly waived in accordance with Section 9.01 and Section 9.02 of the Plan, upon notification Filed by the Debtors with the Bankruptcy Court, (i) the Confirmation Order shall be vacated; (ii) no Distributions shall be made; (iii) the Debtors, the Estates, and all Creditors shall be restored to the *status quo* as of the day immediately preceding the Confirmation Hearing as though the Confirmation Order was not entered; and (iv) all of the Debtors' and the Estates' obligations with respect to Claims shall remain unchanged and nothing contained in the Plan shall constitute a waiver or release of any Causes of Action by or against the Debtors, the Estates, or any other Person or prejudice in any manner the rights, claims, or defenses of the Debtors, the Estates, or any other Person.

**SECTION 9.04    Notice of the Effective Date.** Promptly after the occurrence of the Effective Date, the Liquidation Trust or its agents shall mail or cause to be mailed to all Creditors a notice that informs such Creditors of (i) entry of the Confirmation Order and the resulting confirmation of the Plan; (ii) the occurrence of the Effective Date; (iii) the assumption, assignment, and rejection of executory contracts and unexpired leases pursuant to the Plan, as well as the deadline for the filing of resulting Rejection Claims; (iv) the deadline established under the Plan for the filing of Administrative Claims; and (v) such other matters as the Liquidation Trustee finds appropriate.

## RETENTION OF JURISDICTION AND POWER

**SECTION 10.01    Scope of Retained Jurisdiction and Power.** Under Bankruptcy Code sections 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, the Bankruptcy Court shall retain jurisdiction and power over all matters arising in, arising under, or related to the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including jurisdiction and power to do the following:

(a)    except as otherwise Allowed pursuant to the Plan or in the Confirmation Order, Allow, classify, determine, disallow, establish the priority or secured or unsecured status of, estimate, limit, liquidate, or subordinate any Claim, in whole or in part, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims;

(b)    hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under Bankruptcy Code sections 327, 328, 330, 331, 363, 503(b), 1103, and 1129(a)(4);

(c)    hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable, including, if necessary, the nature or amount of any required cure or the liquidation or allowance of any Claims arising therefrom;

(d)    effectuate performance of and payments under the provisions of the Plan and enforce remedies on any default under the Plan;

(e)    hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Cases, including the Liquidation Trust Actions, and with respect to the Plan;

(f)    enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created, executed, or contemplated in connection with the Plan, the Disclosure Statement, or the Confirmation Order;

(g)    hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents, or instruments executed in connection with the Plan, or to maintain the integrity of the Plan following consummation;

(h)    consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(i)    issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with the implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(j)    enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(k)    hear and determine any matters arising in connection with or relating to the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created, executed, or contemplated in connection with any of the foregoing documents and orders;

(l)    enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings associated with the Plan or otherwise entered in connection with the Chapter 11 Cases (whether or not any or all of the Chapter 11 Cases have been closed);

(m)    except as otherwise limited herein, recover all Estate Assets, wherever located;

(n)    hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code sections 346, 505 and 1146;

(o)    hear and determine all disputes involving the existence, nature, or scope of the Plan's injunctions;

(p)    hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, the Bankruptcy Code and title 28 of the United States Code;

(q)    resolve any cases, controversies, suits, or disputes related to the Liquidation Trust and the Liquidation Trustee; and

(r)    enter a final decree closing the Chapter 11 Cases or any of them.

SECTION 10.02 **Reserved Rights to Seek Bankruptcy Court Approval**. Notwithstanding any provision of the Plan allowing an act to be taken without Bankruptcy Court approval, the Liquidation Trustee shall have the right to submit to the Bankruptcy Court any question or questions that it may desire to have explicit approval of the Bankruptcy Court for the taking of any specific action proposed to be taken by the Liquidation Trust, including the administration, distribution, or proposed sale of any of the Estate Assets or Liquidation Trust Assets. The Bankruptcy Court shall retain jurisdiction and power for such purposes and shall approve or disapprove any such proposed action upon motion Filed by the Liquidation Trust.

SECTION 10.03 **Non-Exercise of Jurisdiction.** If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in Section 10.01 of the Plan, the provisions of this Article X shall have no effect on, and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

# MISCELLANEOUS PROVISIONS
### ARTICLE XI

SECTION 11.01 **Administrative Claims.** Subject to the last sentence of this Section 11.01, all requests for payment of an Administrative Claim must be Filed with the Bankruptcy Court no later than the Administrative Claims Bar Date. In the event of an objection to Allowance of an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim. **THE FAILURE TO FILE A MOTION REQUESTING ALLOWANCE OF AN ADMINISTRATIVE CLAIM ON OR BEFORE THE ADMINISTRATIVE CLAIMS BAR DATE, OR THE FAILURE TO SERVE SUCH MOTION TIMELY AND PROPERLY, SHALL RESULT IN THE ADMINISTRATIVE CLAIM BEING FOREVER BARRED AND DISALLOWED WITHOUT FURTHER ORDER OF THE BANKRUPTCY COURT. IF FOR ANY REASON ANY SUCH ADMINISTRATIVE CLAIM IS INCAPABLE OF BEING FOREVER BARRED AND DISALLOWED, THEN THE HOLDER OF SUCH CLAIM SHALL IN NO EVENT HAVE RECOURSE TO ANY PROPERTY TO BE DISTRIBUTED PURSUANT TO THE PLAN.** Postpetition statutory tax claims shall not be subject to any Administrative Claims Bar Date.

SECTION 11.02 **Professional Fee Claims.** As part of their agreement to provide funding embodied in this Plan, pursuant to Bankruptcy Rule 9019, Holders of DIP Claims have established the Professional Fee Reserve to pay all Allowed Professional Fee Claims. Professional Fee Claims shall be paid initially from the Professional Fee Reserve.  All final requests for payment of Professional Fee Claims pursuant to Bankruptcy Code sections 327, 328, 330, 331, 363, 503(b), or 1103 must be made by application Filed with the Bankruptcy Court and served on counsel to the Liquidation Trust and counsel to the U.S. Trustee no later than forty-five (45) calendar days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Objections to such applications must be Filed and served on counsel to the Liquidation Trust, counsel to the U.S. Trustee, and the requesting Professional on or before the date that is twenty-one (21) calendar days after the date on which the applicable application was served (or

such longer period as may be allowed by order of the Bankruptcy Court or by agreement with the requesting Professional). All Professional Fee Claims shall be paid by the Liquidation Trust to the extent approved by order of the Bankruptcy Court within five (5) Business Days after entry of such order. On the Effective Date, the Liquidation Trust shall establish the Professional Fee Reserve. The Professional Fee Reserve shall vest in the Liquidation Trust and shall be maintained by the Liquidation Trust in accordance with the Plan. The Liquidation Trust shall fully fund the Professional Fee Reserve on the Effective Date in an amount that is fixed by the Debtors and that approximates the total projected amount of unpaid Professional Fee Claims on the Effective Date. If a dispute regarding the amount of the Professional Fee Reserve arises, then any beneficiary thereof may submit the issue to the Bankruptcy Court, which, following notice and a hearing, shall fix the amount of the required funding. All Professional Fee Claims that have not previously been paid, otherwise satisfied, or withdrawn shall be paid from the Professional Fee Reserve. Any excess funds in the Professional Fee Reserve shall be released to the Liquidation Trust to be used for other purposes consistent with the Plan. For the avoidance of doubt, the Professional Fee Reserve is an estimate and shall not be construed as a cap on the Liquidation Trust's obligation to pay in full Allowed Professional Fee Claims.

**SECTION 11.03  <u>Payment of Statutory Fees</u>.** All fees payable pursuant to 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtors on or before the Effective Date. All such fees that arise after the Effective Date shall be paid by the Liquidation Trust. Notwithstanding the foregoing: (i) for the Remaining Debtor, quarterly fees for the quarter in which the Effective Date occurs will be calculated on the basis of all Estate Assets distributed to the Liquidation Trust on the Effective Date in the Chapter 11 Case of the Remaining Debtor; (ii) for all other Debtors, quarterly fees for the quarter in which the Effective Date occurs will be calculated on the basis of disbursements (if any) made by such Debtors prior to the Effective Date; and (iii) quarterly fees for each quarter after the quarter in which the Effective Date occurs will be the minimum payment for the Remaining Debtor through the entry of the Final Decree for the Remaining Debtor or the dismissal or conversion of the Chapter 11 Case regarding the Remaining Debtor unless the Remaining Debtor makes additional disbursements, in which case the Remaining Debtor shall pay the applicable fee. Notwithstanding anything to the contrary in the Plan, the U.S. Trustee shall not be required to file any proofs of claim with respect to quarterly fees payable pursuant to 28 U.S.C. § 1930.

**SECTION 11.04  <u>Post-Effective-Date Reporting</u>**.

(a)       Beginning the first full quarter-end following the Effective Date and continuing on each quarter-end thereafter until the Closing Date, within thirty (30) calendar days after the end of such period, the Liquidation Trust shall File quarterly reports with the Bankruptcy Court. Each quarterly report shall contain a cash flow statement which shall show Distributions by Class during the prior quarter, an unaudited balance sheet, the terms of any settlement of an individual Claim in an amount greater than $100,000, the terms of any litigation settlement where the Cause of Action or the Liquidation Trust Action was greater than $100,000 or the settlement is for more than $100,000, the terms of any sale of Estate Assets where the proceeds of such sale are $100,000 or greater, and such other information as the Liquidation Trust determines is material.

(b)    The Liquidation Trust shall, as soon as practicable after the end of each calendar year and upon termination of the Liquidation Trust, provide or make available a written report and account to the Holders of Liquidation Trust Interests, which report and account sets forth (i) the assets and liabilities of the Liquidation Trust at the end of such calendar year or upon termination and the receipts and disbursements of the Liquidation Trust for such calendar year or period, and (ii) changes in the Liquidation Trust Assets and actions taken by the Liquidation Trustee in the performance of its duties under the Plan or the Liquidation Trust Agreement that the Liquidation Trustee determines in its discretion may be relevant to Holders of Liquidation Trust Interests, such as material changes or actions that, in the opinion of the Liquidation Trustee, may have a material effect on the Liquidation Trust Assets that were not previously reported. The Liquidation Trust may provide or make available to Holders of Liquidation Trust Interests similar reports for such interim periods during the calendar year as the Liquidation Trustee deems advisable. Such reports may be provided or made available to the Holders of Liquidation Trust Interests, in the discretion of the Liquidation Trustee, by any reasonable means, including U.S. mail, electronic transmission, display on IntraLinks or a similar virtual data room to which Holders shall have access, or publication to a publicly-available website or by press release distributed via a generally recognized business news service.

**SECTION 11.05  Dissolution of the Creditors' Committee.** The Creditors' Committee shall be automatically dissolved on the Effective Date and, on the Effective Date, each member of the Creditors' Committee and each Professional retained by the Creditors' Committee shall be released and discharged from all rights, duties, responsibilities, and obligations arising from, or related to, the Debtors, their membership on the Creditors' Committee, the Plan, or the Chapter 11 Cases, except with respect to any matters concerning any Professional Fee Claims held or asserted by any Professional retained by the Creditors' Committee.

**SECTION 11.06  Modifications and Amendments.**

(a)    In the Debtors' reasonable discretion, the Debtors may alter, amend, or modify the Plan under Bankruptcy Code section 1127(a) at any time at or prior to the conclusion of the Confirmation Hearing. All alterations, amendments, or modifications to the Plan must comply with Bankruptcy Code section 1127. The Debtors shall provide parties in interest with notice of such amendments or modifications as may be required by the Bankruptcy Rules or order of the Bankruptcy Court. A Creditor that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or clarified, if the proposed alteration, amendment, modification, or clarification does not materially and adversely change the treatment of the Claim of such Creditor.

(b)    After entry of the Confirmation Order and prior to substantial consummation (as defined in Bankruptcy Code section 1101(2)) of the Plan, the Debtors or the Liquidation Trust, as applicable, may, under Bankruptcy Code section 1127(b), institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement approved with respect to the Plan, or the Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of the Plan so long as such proceedings do not adversely affect the treatment of Holders of Claims under the Plan. Such proceedings must comply with Bankruptcy Code section 1127. To the

extent required, prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or an order of the Bankruptcy Court. A Creditor that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or clarified, if the proposed alteration, amendment, modification, or clarification does not materially and adversely change the treatment of the Claim of such Creditor.

SECTION 11.07 **Severability of Plan Provisions.** If, at or before the Confirmation Hearing, the Bankruptcy Court holds that any Plan term or provision is invalid, void, or unenforceable, the Bankruptcy Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision. That term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will in no way be affected, impaired, or invalidated. The Confirmation Order will constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted in accordance with this Section, is valid and enforceable under its terms.

SECTION 11.08 **Compromises and Settlements.** From and after the Effective Date, the Liquidation Trust may compromise and settle disputes about any Claims or about any Liquidation Trust Actions, without any further approval by the Bankruptcy Court. Until the Effective Date, the Debtors expressly reserve the right to compromise and settle (subject to the approval of the Bankruptcy Court) Claims against them or any Avoidance Actions and Causes of Action belonging to the Estates.

SECTION 11.09 **Binding Effect of Plan.** Upon the Effective Date, Bankruptcy Code section 1141 shall become applicable with respect to the Plan and the Plan shall be binding on all Persons to the fullest extent permitted by Bankruptcy Code section 1141(a). Confirmation of the Plan binds each Holder of a Claim or Equity Interest to all the terms and conditions of the Plan, whether or not such Holder's Claim or Equity Interest is Allowed, whether or not such Holder holds a Claim or Equity Interest that is in a Class that is Impaired under the Plan, and whether or not such Holder has accepted the Plan.

SECTION 11.10 **Non-Discharge of the Debtors; Injunction. In accordance with Bankruptcy Code section 1141(d)(3)(A), the Plan does not discharge the Debtors. Bankruptcy Code section 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Equity Interests against the Debtors. As such, no Person holding a Claim or an Equity Interest may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Person under the Plan. As of the Effective Date, all Persons are precluded and barred from asserting against any property to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, Equity Interests, or other action or remedy based on any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or the Confirmation Order.**

SECTION 11.11 **Releases and Related Matters.**

(a)    On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each of the Releasing Parties shall be deemed to have forever released, waived, and discharged each of the Released Parties from any and all claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities whatsoever, whether known or unknown, whether foreseen or unforeseen, whether liquidated or unliquidated, whether fixed or contingent, whether matured or unmatured, existing or hereafter arising, at law, in equity, or otherwise, that are based in whole or in part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the conduct of the Debtors' business, the Chapter 11 Cases, or the Plan, except for acts or omissions that are determined in a Final Order to have constituted actual fraud or willful misconduct; *provided, however*, that nothing in this Section 11.11 shall release or otherwise affect any Person's rights under the Plan or the Confirmation Order.  Nothing contained in this paragraph shall constitute a release of a Debtor or any of them.

**(b)    Entry of the Confirmation Order shall constitute (i) the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases set forth in this Section 11.11; and (ii) the Bankruptcy Court's findings that such releases are (1) in exchange for good and valuable consideration provided by the Released Parties (including performance of the terms of the Plan), and a good-faith settlement and compromise of the released claims, (2) in the best interests of the Debtors, the Estates, and any Holders of Claims that are Releasing Parties, (3) fair, equitable, and reasonable, (4) given and made after due notice and opportunity for hearing, and (5) a bar to any of the Releasing Parties asserting any released claim against any of the Released Parties.**

**SECTION 11.12    Exculpation and Limitation of Liability. On the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, to the maximum extent permitted by law, none of the Exculpated Parties shall have or incur any liability to any Person, including to any Holder of a Claim or an Equity Interest, for any prepetition or postpetition act or omission in connection with, relating to, or arising out of the Chapter 11 Cases, the formulation, negotiation, preparation, dissemination, solicitation of acceptances, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, or any contract, instrument, release, or other agreement or document created, executed, or contemplated in connection with the Plan, or the administration of the Plan or the property to be distributed under the Plan; *provided, however*, that nothing in this Section 11.12 shall release or otherwise affect any Person's rights under the Plan or the Confirmation Order; and *provided, further*, that the exculpation provisions of this Section 11.12 shall not apply to acts or omissions constituting actual fraud or willful misconduct by such Exculpated Party as determined by a Final Order. For purposes of the foregoing, it is expressly understood that any act or omission effected with the approval of the Bankruptcy Court conclusively will be deemed not to constitute actual fraud or willful misconduct unless the approval of the Bankruptcy Court was obtained by fraud or intentional misrepresentation, and in all respects, the Exculpated Parties shall be entitled to rely on the written advice of counsel with respect to their duties and responsibilities under, or in connection with, the Chapter 11 Cases, the Plan, and administration thereof. The Confirmation Order shall serve as a permanent injunction against any Person seeking to**

enforce any Causes of Action against the Exculpated Parties that are encompassed by the exculpation provided by this Section 11.12 of the Plan.

**SECTION 11.13  Term of Injunctions or Stays.** Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in the Chapter 11 Cases under Bankruptcy Code sections 105 or 362 or otherwise, and extant as of the Confirmation Hearing (excluding any injunctions or stays contained in or arising from the Plan or the Confirmation Order), shall remain in full force and effect through and inclusive of the Effective Date.

**SECTION 11.14  Revocation, Withdrawal, or Non-Consummation.** The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Hearing and to File subsequent plans. If the Debtors revoke or withdraw the Plan prior to the Confirmation Hearing, or if the Effective Date does not occur, then (a) the Plan shall be null and void in all respects; and (b) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims against, or any Equity Interests in, any Debtor, or any Causes of Action by or against any Debtor or any other Person, (ii) prejudice in any manner the rights of any Debtor or any other Person in any further proceedings involving a Debtor, or (iii) constitute an admission of any sort by any Debtor or any other Person.

**SECTION 11.15  Exemption from Transfer Taxes.** Pursuant to Bankruptcy Code section 1146, the vesting of the Liquidation Trust Assets in the Liquidation Trust, the vesting of the Estate Assets in the Liquidation Trust, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, lien, pledge, or other security interest, or the making or assignment of any lease or sublease, or making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

**SECTION 11.16  Computation of Time.** In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**SECTION 11.17  Transactions on Business Days.** If the Effective Date or any other date on which a transaction may occur under the Plan shall occur on a day that is not a Business Day, any transactions or other actions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day.

**SECTION 11.18  Good Faith.** Confirmation of the Plan shall constitute a conclusive determination that: (a) the Plan, and all the transactions and settlements contemplated thereby, have been proposed in good faith and in compliance with all applicable provisions of the Bankruptcy Code and the Bankruptcy Rules; and (b) the solicitation of acceptances or rejections of the Plan has been in good faith and in compliance with all applicable provisions of the Bankruptcy Code, and the Bankruptcy Rules, and, in each case, that the Debtors and all Related Parties have acted in good faith in connection therewith.

**SECTION 11.19  Governing Law.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), (a) the laws of the State of

Delaware shall govern the construction and implementation of the Plan and (except as may be provided otherwise in any such agreements, documents, or instruments) any agreements, documents, and instruments executed in connection with the Plan and (b) the laws of the state of incorporation or formation of each Debtor shall govern corporate or limited liability company governance matters with respect to such Debtor; in each case without giving effect to the principles of conflicts of law thereof. Any applicable nonbankruptcy law that would prohibit, limit, or otherwise restrict implementation of the Plan based on (i) the commencement of the Chapter 11 Cases, (ii) the appointment of the Liquidation Trustee, (iii) the wind down of the Debtors, (iv) the liquidation of some or all of the Liquidation Trust Assets, or (v) any other act or action to be done pursuant to or contemplated by the Plan is superseded and rendered inoperative by the Plan and federal bankruptcy law.

**SECTION 11.20  Notices.** Following the Effective Date, all pleadings and notices Filed in the Chapter 11 Cases shall be served solely on (a) the Liquidation Trust and its counsel, (b) the U.S. Trustee, (c) any Person whose rights are affected by the applicable pleading or notice, and (d) any Person Filing a specific request for notices and papers on and after the Effective Date.

**SECTION 11.21  Final Decree.** Upon the Liquidation Trustee's determination that all Claims have been Allowed, disallowed, expunged, or withdrawn and that all Liquidation Trust Assets have been liquidated, abandoned, or otherwise administered, the Liquidation Trust shall move for the entry of the Final Decree with respect to the Remaining Debtor. On entry of the Final Decree, the Liquidation Trustee, the Liquidation Trust Supervisory Board, and their respective Related Parties, in each case to the extent not previously discharged by the Bankruptcy Court, shall be deemed discharged and have no further duties or obligations to any Person.

**SECTION 11.22  Closing of Certain Chapter 11 Cases.** On the Effective Date, the Chapter 11 Cases for all Debtors other than the Remaining Debtor will be deemed closed and no further fees in respect of such closed cases will thereafter accrue or be payable to any Person. As soon as practicable after the Effective Date, the Liquidation Trust shall submit a separate order to the Bankruptcy Court under certification of counsel closing the Chapter 11 Cases for all Debtors other than the Remaining Debtor. The Liquidation Trust may at any point File a motion to close the Chapter 11 Case for the Remaining Debtor.

**SECTION 11.23  Additional Documents.** On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors, the Liquidation Trust, all Holders receiving Distributions pursuant to the Plan, and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other acts as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**SECTION 11.24  Conflicts with the Plan.** In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, any other

order entered in the Chapter 11 Cases, or any other agreement to be executed by any Person pursuant to the Plan, the provisions of the Plan shall control and take precedence; provided, however, that the Confirmation Order shall control and take precedence in the event of any inconsistency between the Confirmation Order, any provision of the Plan, and any of the foregoing documents.

## REQUEST FOR CONFIRMATION AND RECOMMENDATION

**SECTION 12.01  Request for Confirmation.** The Debtors request confirmation of the Plan in accordance with Bankruptcy Code section 1129.

**SECTION 12.02  Recommendation.** The Debtors believe that confirmation and implementation of the Plan are the best alternative under the circumstances and urge all Holders of Claims in Impaired Classes entitled to vote on the Plan to vote in favor of and support confirmation of the Plan.

Respectfully submitted,

**RAVN AIR GROUP, INC., ET AL.**

By:  */s/ John Mannion*
     John Mannion
Its: Chief Financial Officer